JEFFREY I. WEINBERGER (State Bar No. 56214)
jeffrey.weinberger@mto.com
TED DANE (State Bar No. 143195)
ted.dane@mto.com
PETER E. GRATZINGER (State Bar No. 228764)
peter. gratzinger@mto.com
ADAM R. LAWTON (State Bar No. 252546)
adam.lawton@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Defendant-Counterclaimant
KITE PHARMA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JUNO THERAPEUTICS, INC., MEMORIAL SLOAN KETTERING CANCER CENTER, AND SLOAN KETTERING INSTITUTE FOR CANCER RESEARCH,<br><br>Plaintiffs,<br><br>vs.<br><br>KITE PHARMA, INC.,<br><br>Defendant.<br><br>KITE PHARMA, INC.,<br><br>Counterclaimant,<br><br>vs.<br><br>JUNO THERAPEUTICS, INC., MEMORIAL SLOAN KETTERING CANCER CENTER, AND SLOAN KETTERING INSTITUTE FOR CANCER RESEARCH,<br><br>Counterdefendants. | Case No. 2:17-cv-7639-SJO-RAO<br><br>**KITE PHARMA, INC.'S AMENDED ANSWER AND COUNTERCLAIMS**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge:  Hon. S. James Otero<br>Ctrm:   10C |

Defendant Kite Pharma, Inc. ("Kite") answers as follows in response to the corresponding numbered paragraphs in Plaintiffs Juno Therapeutics, Inc., Memorial Sloan Kettering Cancer Center, and Sloan Kettering Institute for Cancer Research's ("Plaintiffs") Complaint For Patent Infringement And Demand For Trial By Jury ("Complaint") dated October 18, 2017:

**ANSWER**

**INTRODUCTORY PARAGRAPHS**

The introductory, non-numbered paragraphs of the Complaint are Plaintiffs' characterization of their claims and argument, for which no response is required. Additionally, there are statements within the introductory paragraphs that call for legal analyses and conclusions for which no response is required, but to the extent one is required, Kite denies those statements.

**NATURE OF THE ACTION**

1. Kite admits that this action purports to arise under the patent laws of the United States. Kite denies any express or implied allegation in Paragraph 1 that it has infringed or is infringing any patent, or that Plaintiffs are entitled to any relief on their Complaint. Except as expressly admitted, Kite denies the allegations of Paragraph 1 of the Complaint.

**THE PARTIES**

2. Kite admits that, upon information and belief, Juno is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 400 Dexter Avenue North, Suite 1200, Seattle, Washington 98109.

3. Kite admits that, upon information and belief, Sloan Kettering is a research affiliate of Memorial Sloan Kettering Cancer Center, which is a corporation organized and existing under the laws of the State of New York with its principal place of business at 1275 York Avenue, New York, New York 10065.

4.      Answering Paragraph 4, Kite admits that it is a wholly owned subsidiary of Gilead Sciences, Inc., organized and existing under the laws of the State of Delaware with its principal place of business at 2225 Colorado Avenue, Santa Monica, California 90404.  Except as expressly admitted, Kite denies the allegations of Paragraph 4 of the Complaint.

## JURISDICTION

5.      Kite admits that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).  Except as expressly admitted, Kite denies the allegations of Paragraph 5 of the Complaint.

6.      Kite admits that this Court has personal jurisdiction over Kite in this matter.  Except as expressly admitted, Kite denies the allegations of Paragraph 6 of the Complaint.

## VENUE

7.      Kite admits that the Central District of California is a suitable venue for Plaintiffs' claims.  Except as expressly admitted, Kite denies the allegations of Paragraph 7 of the Complaint.

## BACKGROUND

8.      Answering Paragraph 8, Kite lacks sufficient knowledge or information to form a belief as to the truthfulness of the allegations contained therein, and on that basis denies each and every allegation.

9.      Answering Paragraph 9, Kite lacks sufficient knowledge or information to form a belief as to the truthfulness of the allegations contained therein, and on that basis denies each and every allegation.

10.     Answering Paragraph 10, Kite admits that the '190 patent is attached to the Complaint as Exhibit 1.  Kite admits that the '190 patent states on its face that it was issued on November 4, 2008, and that it is entitled "Nucleic Acids Encoding Chimeric T Cell Receptors."  Except as expressly admitted, Kite denies the allegations of Paragraph 10 of the Complaint.

11.     Answering Paragraph 11, Kite admits that Michel Sadelain, Renier Brentjens, and John Maher are listed as inventors on the face of the '190 patent.  The remaining allegations in Paragraph 11 are legal conclusions for which no response is required.  To the extent a response is required, Kite lacks sufficient knowledge or information to form a belief as to the truthfulness of the allegations contained therein, and on that basis denies each and every allegation except as expressly admitted.

12.     Answering Paragraph 12, Kite admits that claim 1 of the '190 patent recites "a nucleic acid polymer."  Except as expressly admitted, Kite denies the allegations of Paragraph 12 of the Complaint.

13.     Answering Paragraph 13, Kite admits that the claims of the '190 patent recite "a nucleic acid polymer encoding a chimeric T cell receptor" "comprising (a) a zeta chain portion comprising the intracellular domain of human CD3ζ chain, (b) a costimulatory signaling region, and (c) a binding element that specifically interacts with a selected target."  Except as expressly admitted, Kite denies the allegations of Paragraph 13 of the Complaint.

14.     Answering Paragraph 14, Kite admits that it has conducted clinical trials involving chimeric antigen receptor (CAR) T-cell therapy.  Except as expressly admitted, Kite denies the allegations of Paragraph 14 of the Complaint.

15.     Answering Paragraph 15, Kite lacks sufficient knowledge or information to form a belief as to the truthfulness of the allegations contained therein, and on that basis denies each and every allegation.

16.     Answering Paragraph 16, Kite admits that it filed an IPR petition on August 13, 2015 against the '190 patent, which Plaintiffs attached to their Complaint as Exhibit 2.  Kite admits that the text of 35 U.S.C. §311(a) has been reproduced accurately in Paragraph 16 of the Complaint.  Kite admits that on December 16, 2016, the Board issued a Final Written Decision, which Plaintiffs attached to their Complaint as Exhibit 3, and which is the subject of a pending

1  appeal by Kite to the Federal Circuit.  Except as expressly admitted, Kite denies the

2  allegations of Paragraph 16 of the Complaint.

3          17.    The allegations of Paragraph 17 call for a legal conclusion and/or

4  legal analysis for which no response is required here.

5                        **KITE'S ALLEGED INFRINGEMENT**

6          18.    Kite admits that YESCARTA™ is one of its products.  Kite

7  admits that it issued a press release on December 13, 2016, which Plaintiffs attached

8  to their Complaint as Exhibit 4.

9          19.    Kite admits that it entered into a Cooperative Research And

10 Development Agreement with the National Cancer Institute ("NCI").

11         20.    Kite admits that James N. Kochenderfer et al. published Exhibit

12 6 to the Complaint, and that Paragraph 20 contains some, but not all, of the

13 information set forth in that publication.  The remainder of the allegations in

14 Paragraph 20 contain legal conclusions, for which no response is required.

15         21.    Kite admits that Exhibit 6 references the publication that

16 Plaintiffs have attached to their Complaint as Exhibit 7.  The remainder of the

17 allegations in Paragraph 21 contain legal conclusions, for which no response is

18 required.  To the extent a response is required, Kite lacks sufficient knowledge or

19 information to form a belief as to the truthfulness of the allegations contained

20 therein, and on that basis denies each and every allegation except as expressly

21 admitted.

22         22.    Kite admits that Dr. Rosenberg is one of its scientific

23 collaborators and that Dr. Rosenberg gave a speech at the 2015 American Society of

24 Gene & Cell Therapy Conference.  To the extent allegations do not relate to Kite,

25 Kite lacks sufficient knowledge or information to form a belief as to the truthfulness

26 of the allegations contained therein, and on that basis denies each and every

27 allegation.

28

23.     Answering Paragraph 23, the allegations appear to be internally inconsistent and at a minimum unclear.  To the extent that Kite understands the allegations, Kite denies each and every allegation of Paragraph 23 of the Complaint.

24.     Answering Paragraph 24, Kite admits that Exhibit 8 to the Complaint is an abstract publication from the American Society of Hematology (ASH) and that Exhibit 9 is a presentation by Armin Ghobadi.  Kite admits that Plaintiffs have copied a schematic from Exhibit 9 into the Complaint.  Except as expressly admitted, Kite denies the allegations of Paragraph 24 of the Complaint.

25.     Kite denies each and every allegation of Paragraph 25 of the Complaint.

26.     Answering Paragraph 26, Kite admits that Plaintiffs have attached select pages from Appendix M of Kite's OBA/RAC Review document as Exhibits 10 and 11 to the Complaint.  The remainder of the allegations in this Paragraph are argument and call for legal analyses and/or legal conclusions, and therefore do not require a response.  Except as expressly admitted, Kite denies the allegations of Paragraph 26 of the Complaint.

27.     Answering Paragraph 27, Kite admits that Exhibit 12 to the Complaint contains Professor Brocker's declaration that was submitted in the IPR proceeding.  Kite further admits that the NCI chimeric TCR analyzed by Professor Brocker contains the same nucleotide sequence as KTE-C19's chimeric TCR.  To the extent the allegations do not relate to Kite, Kite lacks sufficient knowledge or information to form a belief as to the truthfulness of such allegations, and on that basis denies each and every allegation.  The remainder of the allegations in this paragraph are argument and call for legal analyses and/or legal conclusions, and therefore do not require a response.  Except as expressly admitted, Kite denies the allegations of Paragraph 27 of the Complaint.

28.     Answering Paragraph 28, Kite admits that on October 18, 2017, it received approval from the FDA to market and sell YESCARTA™ (axicabtagene ciloleucel) in the United States.

## COUNT 1

### (Alleged Infringement of the '190 Patent Under 35 U.S.C. § 271(a))

29.     Kite incorporates its responses to and denials of the allegations contained in Paragraphs 1 through 28 of the Complaint, as if fully set forth herein.

30.     Kite denies the allegations in Paragraph 30 of the Complaint.

31.     Kite denies the allegations in Paragraph 31 of the Complaint.

32.     Kite denies the allegations in Paragraph 32 of the Complaint.

33.     Kite denies the allegations in Paragraph 33 of the Complaint.

34.     Kite denies the allegations in Paragraph 34 of the Complaint.

35.     Kite denies the allegations in Paragraph 35 of the Complaint. Specifically, Kite denies that the contents of Exhibit 13 to the Complaint demonstrate Kite's infringement of the '190 patent.

36.     Kite denies the allegations in Paragraph 36 of the Complaint.

37.     Kite admits that it filed a petition for *inter partes* review against the '190 patent on August 13, 2015, that it had knowledge of the '190 patent at that time, and that a true and correct copy of its petition appears as Exhibit 2 to the Complaint.  Kite further admits that it received a copy of the Complaint.  Except as expressly admitted, Kite denies the allegations of Paragraph 37 of the Complaint.

38.     Kite denies the allegations in Paragraph 38 of the Complaint.

39.     Kite denies the allegations in Paragraph 39 of the Complaint.

40.     Kite admits that it filed a petition for *inter partes* review against the '190 patent on August 13, 2015 and that it had knowledge of the '190 patent at that time.  Except as expressly admitted, Kite denies the allegations of Paragraph 40 of the Complaint.

## **JURY TRIAL DEMANDED**

41.     Kite demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues presented by the Complaint that are so triable.

## **PRAYER FOR RELIEF**

Kite denies that Plaintiffs are entitled to any relief whatsoever, either legal or equitable, from Kite or this Court.  Further, Kite denies that this is an exceptional case such that an award of attorneys' fees to Plaintiffs or an award of enhanced damages to Plaintiffs is appropriate.

## **GENERAL DENIAL AND NON-WAIVER**

Each and every allegation in the Complaint not specifically admitted is denied, and the failure to deny a specific allegation, or assert a specific defense, shall not be deemed to be an admission of an allegation or a waiver of a defense.

## **AFFIRMATIVE DEFENSES**

Without assuming any burden of proof that it would not otherwise bear, Kite asserts the following separate and additional defenses, all of which are pled in the alternative, and none of which constitutes an admission that Kite is in any way liable to Plaintiffs, that Plaintiffs have been or will be injured or damaged in any way, or that Plaintiffs are entitled to any relief whatsoever.  Kite reserves the right to assert additional defenses in the event that discovery and other analyses indicate that additional defenses are appropriate.

## **FIRST AFFIRMATIVE DEFENSE**

### **(Non-Infringement)**

1.     Kite has not infringed and does not infringe, directly or indirectly, either literally or by application of the doctrine of equivalents, either willfully or otherwise, any claim of the '190 patent, nor does Kite contribute to the infringement of, or actively induce others to infringe, either literally or by application of the doctrine of equivalents, any claim of the '190 patent.

2.    For example, Kite does not infringe any claim of the '190 patent because every claim of the '190 patent requires, expressly or by incorporation, a "costimulatory signaling region compris[ing] the amino acid sequence encoded by SEQ ID NO:6."

3.    In 2013—more than four years after the '190 patent was issued—the alleged inventors purported to modify the '190 patent specification's definition of SEQ ID NO:6 by requesting that the U.S. Patent and Trademark Office ("PTO") issue a certificate of correction to the '190 patent's specification.  In its request, the alleged inventors admitted that the '190 patent's specification contained a mistake and that the mistake was not the fault of the PTO.

4.    Under 35 U.S.C. § 255, which governs certificates of correction for mistakes that were not the fault of the PTO, a certificate of correction cannot be validly issued unless the mistake to be corrected is "of a clerical or typographical nature, or of minor character."   The mistake corrected by the certificate of correction, however, was not of a clerical or typographical nature and was not of minor character.    Accordingly, the certificate of correction is invalid.

5.    Because the certificate of correction is invalid, the claims of the '190 patent must be interpreted without the benefit of the certificate of correction.

6.    The accused product does not comprise a costimulatory signaling region comprising the amino acid sequence encoded by SEQ ID NO:6, as defined in the originally issued patent and without the benefit of the certificate of correction.

7.    Therefore, according to the claim limitations and the definition of SEQ ID NO:6 in the originally issued patent, which is the operative definition, Kite does not infringe any claim of the '190 patent.

8.    Further, to the extent that the complaint alleges that Kite made, used, offered to sell, sold, or imported the accused product for uses reasonably related to the development and submission of a Biologics License Application with the FDA, the claim of infringement is barred by 35 U.S.C. § 271(e)(1).

## SECOND AFFIRMATIVE DEFENSE

### (Invalidity)

9.      The claims of the '190 patent are invalid, in whole or in part, for failing to meet one or more of the requirements for patentability under United States law, including, *inter alia*, 35 U.S.C. §§ 102, 103, and 112.

10.      The claims of the '190 patent are invalid under 35 U.S.C. § 102(f) because the patent does not name as an inventor each person who made a significant contribution to the conception of each claim of the patent.  For example, on information and belief, Anja Krause made a significant contribution to the conception of at least claim 1 through her work developing a chimeric construct containing a costimulatory signaling region comprising the amino acid sequence encoded by SEQ ID NO:6 (as purportedly corrected by the certificate of correction), but is not named as an inventor of the '190 patent.

11.      The claims of the '190 patent are invalid under 35 U.S.C. § 103 because each element of the claims is disclosed in combinations of prior art references that a person of ordinary skill in the art would have found obvious to make.  Such prior art references include, but are not limited to, Krause et al., *Antigen-Dependent CD28 Signaling Selectivity Enhances Survival and Proliferation in Genetically Modified Activated Human Primary T Lymphocytes*, 188 J. Exp. Med. 619 (1998), which is prior art in the field of the '190 patent and discloses a chimeric construct combining a single-chain antibody binding element (scFv) that specifically interacts with a target and a CD28 costimulatory signaling region; Finney et al., *Chimeric Receptors Providing Both Primary and Costimulatory Signaling in T Cells from a Single Gene Product*, 161 J. Immunol. 2791 (1998), which is prior art in the field of the '190 patent and discloses a chimeric construct combining an scFv, a CD28 region, and a zeta chain portion comprising the intracellular domain of human CD3ζ chain, including the sequence obtained by amplifying human zeta chain DNA with the primers of SEQ ID NOs:1 and 2; Aruffo et al., *Molecular Cloning of a*

*CD28 cDNA by a High-Efficiency COS Cell Expression System*, 84 PNAS USA Immunol. 8573 (1987), which is prior art in the field of the '190 patent and discloses a CD28 costimulatory region containing an amino acid sequence encoded by SEQ ID NO:6 ; Gong et al., *Cancer Patient T Cells Genetically Targeted to Prostate-Specific Membrane Antigen Specifically Lyse Prostate Cancer Cells and Release Cytokines in Response to Prostate-Specific Membrane Antigen*, 1 Neoplasia 123 (1999), which is prior art in the field of the '190 patent and discloses an scFv that binds to prostate-specific membrane antigen; and Bejcek et al., *Development and Characterization of Three Recombinant Single Chain Antibody Fragments (scFvs) Directed Against the CD19 Antigen*, 55 Cancer Res. 2346 (1995), which is prior art in the field of the '190 patent and discloses an scFv that binds to CD19.[*]

12. The claims of the '190 patent are invalid under 35 U.S.C. § 112, ¶ 1. For example, the '190 patent fails to provide a written description that conveys with reasonable clarity to those skilled in the art that, as of the filing date, the purported inventors of the '190 patent were in possession of the subject matter claimed there because during the prosecution of the application that issued as the '190 patent, Plaintiffs added new matter to SEQ. ID No. 6 at least through the amendment dated September 4, 2007 in violation of 35 U.S.C. § 132(a).

---

[*] At present, under 35 U.S.C. § 315(e)(2), Kite "may not assert" that any claim of the '190 patent is invalid on any ground that Kite "raised or reasonably could have raised during th[e] *inter partes* review" described in paragraph 16 of the Complaint, including grounds that consist solely of the references identified above alone or in combination with any other references relied upon in the IPR. Kite reserves the right to assert these grounds of invalidity in the event of changed circumstances, including, for example, in the event that the final written decision of the PTAB is vacated on appeal or the Supreme Court's judgment in *Oil States Energy Services, LLC v. Greene's Energy Group, LLC*, No. 16-712, calls the application of § 315(e)(2) into question .

## COUNTERCLAIMS

Counterclaimant Kite Pharma, Inc. ("Kite") hereby alleges against Counterdefendants Juno Therapeutics, Inc., Memorial Sloan Kettering Cancer Center, and Sloan Kettering Institute for Cancer Research ("Counterdefendants") as follows:

## THE PARTIES

1.      Kite was founded in 2009 as a biopharmaceutical company seeking to develop novel immunotherapy treatments for cancer.  In association with its strategic collaborators, including the National Cancer Institute ("NCI"), Kite has advanced an industry-leading pipeline of life-saving therapies for the treatment of hematological and solid cancers.  Using its small team of key innovators in the cutting-edge field of T cell therapy, Kite is one of the first companies to receive approval from the FDA to use a chimeric antigen receptor for the treatment of cancer.

2.      Kite is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 2225 Colorado Avenue, Santa Monica, California, 90404.

3.      Upon information and belief, Memorial Sloan Kettering Cancer Center ("MSKCC") is a corporation organized and existing under the laws of the State of New York, with a principal place of business at 1275 York Avenue, New York, New York, 10065.

4.      Upon information and belief, Sloan Kettering Institute for Cancer Research ("Sloan Kettering") is a corporation organized and existing under the laws of the State of New York, with a principal place of business at 1275 York Avenue, New York, New York, 10065.  Upon information and belief, Sloan Kettering is the named assignee of U.S. Patent No. 7,446,190 (the "'190 patent").

5.      Upon information and belief, Juno Therapeutics, Inc. ("Juno") is a corporation organized and existing under the laws of the State of Delaware, with

its principal place of business at 400 Dexter Avenue North, Suite 1200, Seattle, Washington 98109, and is a wholly owned subsidiary of Celgene Corporation.

**JURISDICTION AND VENUE**

6.      These counterclaims arise under the Declaratory Judgment Act and the patent laws of the United States of America, Titles 28 and 35 of the United States Code.

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

8.      This Court has personal jurisdiction over Juno, including because Juno has purposefully availed itself of the benefits and protections of this State, and has consented to jurisdiction in this State.

9.      This Court has personal jurisdiction over Sloan Kettering, including because Sloan Kettering has purposefully availed itself of the benefits and protections of this State, and has consented to jurisdiction in this State.

10.     This Court has personal jurisdiction over MSKCC, including because MSKCC has purposefully availed itself of the benefits and protections of this State, and has consented to jurisdiction in this State.

11.     Venue is proper based on the choice of forum by Counterdefendants.

12.     Counterdefendants have accused Kite of infringement of the '190 patent, which Kite denies.

13.     Counterdefendants' filing of their Complaint, including their allegations that Kite has infringed certain claims of the '190 patent, has created an actual and justiciable controversy between Kite and Counterdefendants with respect to noninfringement and invalidity of the '190 patent.

**FACTUAL BACKGROUND**

14.     Kite is the owner of axicabtagene ciloleucel ("KTE-C19" or "YESCARTA™"), a revolutionary drug therapy for the treatment of various forms

of cancer.  YESCARTA™ involves the engineering of a cancer patient's own T cells to produce a chimeric antigen receptor ("CAR-T"), which targets CD19, an antigen found on the surface of leukemias and B-cell lymphomas.  A chimeric antigen receptor is an engineered protein that is introduced into a patient's own immune cells (T cells) allowing the cells to recognize a specific protein (antigen) on tumor cells and target and kill those cancer cells.  CAR-T effectively repurposes the body's immune system to treat the specific form of cancer a patient presents.

15.     Kite's KTE-C19 therapy is the product of a long development process by its renowned team of researchers and collaborators.

16.     Unlike conventional cancer therapies, the field of CAR-T treatments represents a truly individualized form of treatment.  This therapy involves taking T cells out of a patient, engineering the cells to express the appropriate CAR, expanding the engineered cell population, and ultimately reintroducing the cells back into the patient's body, where they attack the target cancer.

**(a)     YESCARTA™: A Clinical Success**

17.     In 2012, Kite entered into a Cooperative Research and Development Agreement ("CRADA") with NCI, with Dr. Steven A. Rosenberg as the Principal Investigator for the CRADA.  Exhibit A (2012 CRADA) at 24.  The principal goal of the CRADA was to "develop and clinically evaluate safe and effective NCI proprietary genetically modified peripheral blood Autologous T Cell Therapy (ACT)/T cell receptor (TCR) products for treating patients with various advanced and metastatic cancer indications, utilizing the development expertise of Kite Pharma, Inc." *Id.* at 23.

18.     By 2012, NCI-conducted trials evaluating early CARs had demonstrated significant, durable clinical responses in cancer patients with advanced (metastatic) cancers.  Exhibit B (October 16, 2012 GEN News Highlights).

19.     Through its collaboration with Dr. Rosenberg and NCI, Kite further developed its drug therapy, KTE-C19, now known as YESCARTA™. Kite successfully completed a KTE-C19 diffuse large B-cell lymphoma Phase 1 study with a rapid and durable response rate in patients who did not otherwise respond to chemotherapy.  Exhibit C (October 7, 2016, "Kite Pharma Presents 12-Month Follow-Up Data from ZUMA-1 Phase 1 at the European Society for Medical Oncology (ESMO) Annual Congress").

20.     Kite also reported further positive results on its ZUMA-1 trial of YESCARTA™, wherein 76% of patients with diffuse large B-cell lymphoma achieved the objective—*i.e.*, measurable—response, and 47% achieved complete remission. Exhibit D (December 6, 2016, "Kite Pharma Presents Results of Multi-Center Pivotal ZUMA-1 Trial of Axicabtagene Ciloleucel (KTE-C19) in Aggressive Non-Hodgkin Lymphoma as Late-Breaking Abstract at Annual Meeting of American Society of Hematology").

21.     Following the successes of the ZUMA-1 trial, Kite prepared for and is conducting four additional clinical trials using the KTE-C19 therapy: ZUMA-2, a Phase II trial in patients with relapsed/refractory mantle cell lymphoma; ZUMA-3, a Phase I/II trial in patients with relapsed/refractory B-precursor acute lymphoblastic leukemia; ZUMA-4, a Phase I/II study in pediatric and adolescent patients with relapsed/refractory B-precursor acute lymphoblastic leukemia; and ZUMA-6, a Phase I/II study involving the combination of KTE-C19 and atezolizumab in patients with refractory diffuse large B-cell lymphoma conducted in collaboration with Genentech.

22.     Kite has planned or is running three additional clinical studies to evaluate the safety and efficacy of KTE-C19 in patients suffering from (1) indolent non-Hodgkin's lymphoma (ZUMA-5), (2) diffuse large B-cell lymphoma (ZUMA-7), and (3) chronic lymphocytic leukemia (ZUMA-8).

23.     Kite is also in the beginning stages of a European clinical program in order to pursue approval for the use of its breakthrough YESCARTA™ therapy in the European Union ("EU").  All of these studies may be used to support current and future regulatory submissions.  Exhibit E (August 7, 2017, "Kite Announces Initiation of Axicabtagene Ciloleucel CAR-T Clinical Program in the European Union").

24.     On December 3, 2015, the FDA granted KTE-C19 "Breakthrough Therapy Designation" status for treatment of diffuse large B-cell lymphoma, transformed follicular lymphoma, and primary mediastinal B-cell lymphoma.  Such a designation is assigned to a drug if it is "intended alone or in combination with one or more other drugs to treat a serious or life threatening disease or condition" and "preliminary clinical evidence indicates that the drug may demonstrate substantial improvement over existing therapies on one or more clinically significant endpoints, such as substantial treatment effects observed early in clinical development."  Exhibit F (Fact Sheet: Breakthrough Therapies).

25.     On December 4, 2016, Kite announced that it had started to make rolling submissions to the FDA of required portions of a Biologics License Application ("BLA") for KTE-C19.  Kite also received access to the European Medicines Agency's Priority Medicines regulatory initiative—which provides early and enhanced regulatory support to optimize regulatory applications and speed up the review of medicines that address a high unmet need—for KTE-C19 in the treatment of patients with refractory diffuse large B-cell lymphoma.

26.     Kite completed its BLA submission on March 31, 2017. Simultaneously, the President and Chief Executive Officer of the Leukemia & Lymphoma Society "applaud[ed] Kite for achieving this significant milestone and bringing this promising therapy closer to patients with lymphoma who desperately need new options."  Exhibit G (March 31, 2017, "Kite Completes Submission of U.S. Biologics License Application (BLA) for Axicabtagene Ciloleucel as the First

CAR-T Therapy for the Treatment of Patients With Aggressive Non- Hodgkin Lymphoma (NHL)").

27.    On August 28, 2017, Kite and Gilead Sciences, Inc. ("Gilead") announced that Gilead had entered into a definitive agreement pursuant to which Gilead would acquire Kite.  The deal closed on October 3, 2017.

28.    On October 18, 2017, Kite received marketing approval from the FDA for its YESCARTA™ product.  Exhibit H (October 18, 2017, "FDA approves CAR-T cell therapy to treat adults with certain types of large B-cell lymphoma").

**(b)    Kite's CAR-T Collaborations**

29.    Kite's success with KTE-C19 has not gone unnoticed.  Kite currently collaborates with several top biotechnology companies to further develop its CAR program.  For instance, Kite has entered into a partnership with the Leukemia & Lymphoma Society to enhance the development of KTE-C19 for the treatment of patients with refractory aggressive non-Hodgkin lymphoma.  Exhibit I (July 1, 2015 LLS Press Release).

30.    Kite has also agreed to collaborate with Genentech on a combination therapy involving Roche's atezolizumab and KTE-C19 for treatment of patients with non-Hodgkin lymphoma who have not otherwise responded to treatment.  Exhibit J (March 17, 2016, "Kite Pharma Announces Clinical Collaboration to Evaluate Two Novel Immunotherapies for Patients with Non-Hodgkin Lymphoma").

**(c)    Juno's CAR-T Failure**

31.    Upon information and belief, Juno's own CAR-T drug candidate JCAR015, which Juno alleges is covered by the '190 patent (Compl., ¶ 16), has demonstrated serious clinical problems and will not be commercially marketed.

32.    The '190 patent is entitled "Nucleic Acids Encoding Chimeric T Cell Receptors."  Dkt. 1-1, Compl. Ex. 1.

33.     Upon information and belief, Juno licensed the '190 patent from MSKCC.

34.     Upon information and belief, MSKCC was also the site of Juno's clinical trials for JCAR015.

35.     Juno's phase II clinical trial (the "ROCKET" trial) on JCAR015 was put on clinical hold on July 7, 2016 after "[t]hree patients [] died" "from cerebral edema," a condition in which excess fluids flood the brain.  Exhibit K (July 7, 2016, "Juno Therapeutics Stops Trial Of Cancer-Killing Cells After 3 Patient Deaths").

36.     After Juno was permitted to resume its clinical trial involving JCAR015, Juno reported that another two patients participating in Juno's trial had died, again due to cerebral edema.  Exhibit L (Ben Adams, "Juno CAR-T Study Put on Hold, Again, After Cerebral Edemas and Fatality, Again" (November 23, 2016)).

37.     Upon information and belief, Juno's JCAR015 trial was put on hold and remains on hold to date.  Juno's Executive Vice President of Portfolio Strategy has admitted that "the rapid proliferation of CAR-T cells, once they've been injected back into the body, seems to be directly correlated with patients developing cerebral edema."  Exhibit M (November 23, 2016, "Two Patient Deaths Halt Trial of Juno's New Approach to Treating Cancer").

38.     Upon information and belief, following these deaths, Juno suspended development work on the JCAR015 therapy indefinitely, and announced it would pursue its alternative JCAR017 therapy.

39.     Juno's JCAR017 therapy uses a different amino acid sequence from the CAR sequence in JCAR015 and is not an embodiment described in the '190 patent.

1               **(d)**    **The '190 Patent**

2                 40.    Every claim of the '190 patent requires, expressly or by

3 incorporation, a "costimulatory signaling region compris[ing] the amino acid

4 sequence encoded by SEQ ID NO:6."

5                 41.    The claims of the '190 patent are invalid under 35 U.S.C.

6 § 102(f) because the patent does not name as an inventor each person who made a

7 significant contribution to the conception of each claim of the patent.  For example,

8 on information and belief, Anja Krause made a significant contribution to the

9 conception of at least claim 1 through her work developing a chimeric construct

10 containing a costimulatory signaling region comprising the amino acid sequence

11 encoded by SEQ ID NO:6 (as purportedly corrected by the certificate of correction),

12 but is not named as an inventor of the '190 patent.

13                 42.    The claims of the '190 patent are invalid under 35 U.S.C. § 112,

14 ¶ 1.  For example, the '190 patent fails to provide a written description that conveys

15 with reasonable clarity to those skilled in the art that, as of the filing date, the

16 purported inventors of the '190 patent were in possession of the subject matter

17 claimed there because during the prosecution of the application that issued as the

18 '190 patent, Plaintiffs added new matter to SEQ. ID No. 6 at least through the

19 amendment dated September 4, 2007 in violation of 35 U.S.C. § 132(a).

20                 43.    Furthermore, in 2013—more than four years after the '190 patent

21 was issued—the alleged inventors purported to modify the '190 patent

22 specification's definition of SEQ ID NO:6 by requesting that the U.S. Patent and

23 Trademark Office ("PTO") issue a certificate of correction to the '190 patent's

24 specification.  In its request, the alleged inventors admitted that '190 patent's

25 specification contained a mistake and that the mistake was not the fault of the PTO.

26                 44.    Under 35 U.S.C. § 255, which governs certificates of correction

27 for mistakes that were not the fault of the PTO, a certificate of correction cannot be

28 validly issued unless the mistake to be corrected is "of a clerical or typographical

nature, or of minor character." The mistake corrected by the certificate of correction, however, was not of a clerical or typographical nature and was not of minor character. Accordingly, the certificate of correction is invalid.

45. Because the certificate of correction is invalid, the claims of the '190 patent must be interpreted without the benefit of the certificate of correction. The accused product does not comprise a costimulatory signaling region comprising the amino acid sequence encoded by SEQ ID NO:6, as defined in the originally issued patent.

46. Therefore, Kite has not infringed and does not infringe any claim of the '190 patent.

## FIRST COUNTERCLAIM

### (Declaratory Judgment of Invalidity of the '190 Patent)

47. Kite repeats and realleges Paragraphs 1-46 as if set forth specifically herein.

48. There is an actual, live controversy between Kite and Counterdefendants as to whether the claims of the '190 patent are invalid. Specifically, Kite contends that the claims of the '190 patent are invalid, whereas Counterdefendants contend that the claims are not invalid.

49. The claims of the '190 patent are invalid for failure to comply with one or more of the conditions for patentability specified in 35 U.S.C. §§ 102 and 112.

50. Kite hereby seeks a declaration that the claims of the '190 patent are invalid.

## SECOND COUNTERCLAIM

### (Declaratory Judgment of Noninfringement of the '190 Patent)

51. Kite repeats and realleges Paragraphs 1-46 as if set forth specifically herein.

52.     There is an actual, live controversy between Kite and Counterdefendants as to whether Kite has infringed or does infringe, directly or indirectly, any valid claim of the '190 patent.  Specifically, Kite contends that the claims of the '190 patent are not infringed, whereas Counterdefendants contend that the claims are infringed.

53.     The use, manufacture, sale, offer for sale, and/or importation into the United States of YESCARTA™ by Kite does not directly or indirectly, literally or by equivalents, willfully or otherwise, infringe any claim of the '190 patent.

54.      Kite hereby seeks a declaration that it has not infringed and does not directly or indirectly infringe any valid claim of the '190 patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Kite respectfully prays for relief as follows:

A.     That the Court enter judgment in favor of Kite and against Plaintiffs on the claim alleged in the Complaint;

B.     That Plaintiffs' claim be dismissed in its entirety with prejudice;

C.     That Plaintiffs take nothing by way of their claim;

D.     That the Court enter a declaratory judgment that that the '190 patent, and each claim therein, is invalid;

E.     That the Court enter a declaratory judgment that the use, manufacture, sale, offer for sale, and/or importation into the United States of YESCARTA™ by Kite do not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '190 patent;

F.     That Kite be awarded its costs and attorneys' fees under 35 U.S.C. § 285; and

G.     That Kite be awarded such other relief as the Court deems just and proper.

1

## **JURY DEMAND**

2           Kite demands a trial by jury, pursuant to Rule 38(b) of the Federal

3  Rules of Civil Procedure, of all issues presented by Kite's Counterclaims that are so

4  triable.

5

6

7  DATED:  March 29, 2018        MUNGER, TOLLES & OLSON LLP

8

9

10                   By:     /s/ Adam R. Lawton

11                     ADAM R. LAWTON

Attorneys for Defendant-Counterclaimant

12                    KITE PHARMA, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KITE'S AMENDED ANSWER AND COUNTERCLAIMS