Morgan Chu (SBN 70446)
mchu@irell.com
Alan J. Heinrich (SBN 212782)
aheinrich@irell.com
C. Maclain Wells (SBN 221609)
mwells@irell.com
Elizabeth C. Tuan (SBN 295020)
etuan@irell.com
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:    (310) 277-1010
Facsimile:    (310) 203-7199

Andrea Weiss Jeffries (SBN 183408)
ajeffries@jonesday.com
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071
Telephone:    (213) 489-3939
Facsimile:    (213) 243-2539

*[List of counsel continues on next page]*

*Attorneys for Plaintiffs*
JUNO THERAPEUTICS, INC.,
MEMORIAL SLOAN KETTERING
CANCER CENTER, and SLOAN
KETTERING INSTITUTE FOR
CANCER RESEARCH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JUNO THERAPEUTICS, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KITE PHARMA, INC.,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 2:17-cv-07639-SJO-KS<br><br>**PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO LOCAL RULE 16-4**<br><br>Judge:  Hon. S. James Otero<br>Date:  November 26, 2019<br>Time:  9 A.M.<br>Courtroom:  10C<br><br>Trial Date: December 3, 2019 |

Rebecca Carson (SBN 254105)
rcarson@irell.com
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone    (949) 760-0991
Facsimile:    (949) 760-5200

Christopher J. Harnett (*Pro Hac Vice*)
charnett@jonesday.com
Sarah A. Geers (*Pro Hac Vice*)
sgeers@jonesday.com
Kevin V. McCarthy (*Pro Hac Vice*)
kmccarthy@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone:   (212) 326-3939
Facsimile:   (212) 755-7306

*Attorneys for Plaintiffs*
JUNO THERAPEUTICS, INC., MEMORIAL
SLOAN KETTERING CANCER CENTER,
and SLOAN KETTERING INSTITUTE FOR
CANCER RESEARCH

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Table OF Contents

**Page**

I.    PLAINTIFFS' CLAIMS AND DEFENSES (L.R. 16-4.1(a)-(f))...................1

      A.    Summary of Plaintiffs' Claims ................................................... 1

      B.    Elements Required to Establish Plaintiffs' Claims............................. 2

      C.    Brief Description of Key Evidence in Support of Plaintiffs'
            Claims ......................................................................... 6

      D.    Summary of Kite's Counterclaims & Affirmative Defenses.............. 11

      E.    Elements Required to Establish Kite's Counterclaims &
            Affirmative Defenses ......................................................... 12

      F.    Brief Description of Key Evidence in Opposition to Kite's
            Counterclaims and Affirmative Defenses............................... 13

II.   IDENTIFICATION OF EVIDENTIARY ISSUES (L.R. 16-4.1(h)) .......... 15

III.  IDENTIFICATION OF ISSUES OF LAW (L.R. 16-4.1(i)) ....................... 16

IV.   BIFURCATION OF ISSUES (L.R 16-4.3) ................................................. 17

V.    JURY TRIAL (L.R. 16-4.4) ........................................................... 17

VI.   ATTORNEYS' FEES (L.R. 16-4.5) ................................................... 17

VII.  ABANDONMENT OF ISSUES (L.R. 16-4.6)............................................ 18

# TABLE OF AUTHORITIES

Page

**CASES**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012) ............................................................... 6

*Affinity Labs of Tex., LLC v. BMW N. Am., LLC*,
   783 F. Supp. 2d 891 (E.D. Tex. 2011) ................................................... 6

*Amado v. Microsoft Corp.*,
   517 F.3d 1353 (Fed. Cir. 2008) ............................................................... 6

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
   598 F.3d 1336 (Fed. Cir. 2010) (en banc) ........................................... 12

*Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557
   (Fed. Cir. 1988) ....................................................................................... 18

*Beckman Instruments, Inc. v. LKB Produkter AB*,
   892 F.2d 1547 (Fed. Cir. 1989) ............................................................. 17

*Cubist Pharms., Inc. v. Hospira, Inc.*,
   805 F.3d 1112 (Fed. Cir. 2015) ............................................................. 13

*eBay Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006) ................................................................................. 5

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) ................................................... 4, 6

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
   355 F.3d 1327 (Fed. Cir. 2004) ............................................................. 17

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016) ............................................................................. 5

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
   802 F.2d 1367 (Fed. Cir. 1986) ............................................................. 12

*In re Buchner*,
929 F.2d 660 (Fed. Cir. 1991) ........................................................................ 12

*In re Wands*,
858 F.2d 731 (Fed. Cir. 1988) ........................................................................ 12

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ........................................................................ 2

*Microsoft Corp. v. i4i Ltd. P'ship*,
564 U.S. 91 (2011) ........................................................................................ 11

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) ........................................................................................ 6

*Paice LLC v. Toyota Motor Corp.*,
504 F.3d 1293 (Fed. Cir. 2007) .................................................................... 5, 6

*Superior Fireplace Co. v. Majestic Prods. Co.*,
270 F.3d 1358 (Fed. Cir. 2001) ..................................................................... 13

*United States v. Telectronics, Inc.*,
857 F.2d 778 (Fed. Cir. 1988) ....................................................................... 12

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
837 F.3d 1358 (Fed. Cir. 2016) ....................................................................... 5

*WesternGeco LLC v. ION Geophysical Corp.*,
138 S. Ct. 2129 (2018) ..................................................................................... 5

**STATUTES**

35 U.S.C. § 102 .............................................................................................. 18

35 U.S.C. § 103 .............................................................................................. 18

35 U.S.C. § 112 .................................................................................... 11, 12, 13

35 U.S.C. § 271 .......................................................................................... 1, 18

35 U.S.C. § 282 .............................................................................................. 11

35 U.S.C. § 283 ......................................................................................... 5, 16

PLAINTIFFS' MEMO. OF CONTENTIONS OF FACT AND LAW
Case No. 2:17-cv-07639-SJO-KSx

1

35 U.S.C. § 284 ........................................................................... 1, 2, 5, 16

2

35 U.S.C. § 285 ............................................................................... 2, 16, 17

3

**OTHER AUTHORITIES**

4

L.R. 16-4.1 ..................................................................................... 1, 14, 16

5

L.R. 16-4.3 ............................................................................................. 16

6

L.R. 16-4.4 ............................................................................................. 17

7

L.R. 16-4.5 ............................................................................................. 17

8

L.R. 16-4.6 ............................................................................................. 18

9

L.R. 51-1 ............................................................................................... 17

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs Juno Therapeutics, Inc., Memorial Sloan Kettering Cancer Center, and Sloan Kettering Institute for Cancer Research (collectively, "Plaintiffs") respectfully submit this Memorandum of Contentions of Fact and Law pursuant to L.R. 16-4 and the Court's Standing Order:

# I.   PLAINTIFFS' CLAIMS AND DEFENSES (L.R. 16-4.1(a)-(f))

## A.   Summary of Plaintiffs' Claims

Plaintiffs brought suit in this Court against Defendant Kite Pharma, Inc. ("Defendant" or "Kite") alleging infringement of United States Patent No. 7,446,190 ("the '190 Patent") based on Kite's activities relating to its Yescarta® (also known as "axicabtagene ciloleucel" or "axi-cel") product.

Claim 1:  Kite has infringed and continues to infringe claims 3, 5, 9, and 11 of the '190 Patent (the "Asserted Claims") under 35 U.S.C. § 271(a) as a result of making, using, offering to sell, and selling Yescarta® in the United States.  For example, Kite manufactures nucleic acid polymers within the scope of the Asserted Claims for use in Yescarta® in the United States.  While Kite wrongly contends the Certificate of Correction issued by the USPTO correcting the Asserted Claims of the '190 Patent is invalid, Kite stipulates to literally infringing the Asserted Claims of the '190 Patent if the jury finds the Certificate of Correction not invalid.[1]

Claim 2:  Plaintiffs are entitled to damages for Kite's infringement of the '190 Patent pursuant to 35 U.S.C. § 284 in an amount adequate to compensate for the

_____

[1] For purposes of this Memorandum, Plaintiffs limit their infringement claims, contentions, and evidence to literal infringement, given the Court's September 27, 2019 Order granting summary judgment to Kite on the doctrine of equivalents (Dkt. No. 247).  Plaintiffs, however, have moved for partial reconsideration of the Court's September 27, 2019 Order, on this issue (see Dkt. No. 264), and as of this filing, Plaintiffs' motion remains pending.  Accordingly, Plaintiffs reserve their right to pursue infringement under the doctrine of equivalents before the jury, to show that, even if the jury were to find the Certificate of Correction invalid, Kite infringes the originally issued claims under the doctrine of equivalents.

infringement but in no event less than a reasonable royalty for the use made of the invention by Kite, together with interest and costs as fixed by the Court.

Claim 3:  Kite's infringement of the '190 Patent has been and is willful and, at the Court's discretion, Plaintiffs are entitled to enhanced damages pursuant to 35 U.S.C. § 284.

Claim 4:  Plaintiffs are entitled to an injunction or, at minimum in lieu of an injunction, an ongoing royalty determined by the Court.

Claim 5:  This case qualifies as exceptional pursuant to 35 U.S.C. § 285 and, at the Court's discretion, Plaintiffs are entitled to attorneys' fees.

**B.    Elements Required to Establish Plaintiffs' Claims**

Claim 1:  To prove literal infringement, Plaintiffs must show that Kite makes, uses, offers for sale, or sells the accused product, Yescarta®, in the United States and that Yescarta® meets each claim limitation of at least one Asserted Claim.  Plaintiffs do not need to prove literal infringement of the Asserted Claims because Kite has stipulated to literal infringement if the jury does not find the Certificate of Correction invalid.

Claim 2:  Upon a finding of infringement, Plaintiffs are entitled to damages pursuant to 35 U.S.C. § 284.  In this case, Plaintiffs are seeking a reasonable royalty as compensation for Kite's infringing sales of Yescarta®, which is the minimum measure of damages to which Plaintiffs are entitled by statute.  Plaintiffs must prove by a preponderance of the evidence the reasonable royalty to which they are entitled. That royalty is defined as the royalty to which Plaintiffs and Kite would have agreed as a license for Kite's use of Plaintiffs' invention as part of a hypothetical negotiation occurring on the eve of Kite's infringement, i.e., on October 18, 2017. *See* 35 U.S.C. § 284; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).  The hypothetical negotiation would have proceeded with both parties having adopted the assumption the '190 Patent is both valid and infringed.

Some of the factors the jury may consider in determining a reasonable royalty include:

(1)   The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)   The rates paid by licensees for the use of other patents comparable to the patent-in-suit.

(3)   The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)   The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)   The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)   The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)   The duration of the patent and the term of the license.

(8)   The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)   The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)  The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)   The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)   The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)   The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)   The opinion and testimony of qualified experts.

(15)   The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  Plaintiffs will prove that the reasonable royalty arising from the hypothetical negotiation between Juno and Kite, on the eve of Kite's infringement of the '190 Patent, would have taken the form of an initial payment of approximately $1.1 billion plus a running royalty of 27.6% on infringing sales of Yescarta® through the date of the judgment (with ongoing royalties assessed by the Court if an injunction is not granted).

Claim 3:  To prove Kite's infringement has been and is willful, Plaintiffs must prove by a preponderance of the evidence that Kite intentionally ignored or

1   recklessly disregarded Plaintiffs' patent rights, *see* 35 U.S.C. § 284; N.D. Cal.

2   Model Patent Jury Instruction B.3.8, or that Kite acted despite a risk of infringement

3   that was either known or so obvious that it should have been known to Kite.

4   *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir.

5   2016) (interpreting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1930

6   (2016)), *rev'd on other grounds sub nom. WesternGeco LLC v. ION Geophysical*

7   *Corp.*, 138 S. Ct. 2129 (2018).

8        In assessing Kite's conduct for willful infringement, the jury should consider

9   all relevant facts including whether Kite intentionally copied Plaintiffs' patented

10  technology in developing Yescarta®; whether Kite knew, or should have known, that

11  its conduct involved an unreasonable risk of infringement; and whether Kite had a

12  reasonable belief that at the time of infringement that Yescarta® did not infringe the

13  '190 Patent.  *See* N.D. Cal. Model Patent Jury Instruction B.3.8.

14       In so proving, Plaintiffs will demonstrate that the Court should, in its

15  discretion, enhance damages up to three times the amount found or assessed by the

16  jury.  *See* 35 U.S.C. § 284.

17       <u>Claim 4</u>:  To prove entitlement to an injunction, Plaintiffs must show:  (1) that

18  they have suffered an irreparable injury; (2) that remedies available at law, such as

19  monetary damages, are inadequate to compensate for that injury; (3) that,

20  considering the balance of hardships between Plaintiffs and Kite, a remedy in equity

21  is warranted; and (4) that the public interest would not be disserved by a permanent

22  injunction.  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

23  Alternately, the Court may determine that an award of an ongoing royalty for patent

24  infringement in lieu of an injunction is appropriate in accordance with the principles

25  of equity to prevent the violation of any right secured by patent, on such terms as the

26  Court deems reasonable.  35 U.S.C. § 283; *Paice LLC v. Toyota Motor Corp.*, 504

27  F.3d 1293, 1314 (Fed. Cir. 2007).  To set the ongoing royalty to which Plaintiffs are

28  entitled, the Court should consider changes in the parties' bargaining positions; the

1  *Georgia-Pacific* factors, using the date of judgment as the date of the new
2  hypothetical negotiation; and the fact that any continued sale and/or use of the
3  relevant products is necessarily willful.  *See Paice*, 504 F.3d at 1314; *Amado v.*
4  *Microsoft Corp.*, 517 F.3d 1353, 1361-62 (Fed. Cir. 2008); *ActiveVideo Networks,*
5  *Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1342 (Fed. Cir. 2012); *Affinity Labs*
6  *of Tex., LLC v. BMW N. Am., LLC*, 783 F. Supp. 2d 891, 897-99 (E.D. Tex. 2011).

7      Claim 5:  To prove exceptionality and entitlement to attorneys' fees, Plaintiffs
8  must prove by a preponderance of the evidence that this case stands out from others
9  with respect to the substantive weakness of Kite's positions or the unreasonable
10  manner in which Kite has conducted the litigation.  The Court may find this case
11  "exceptional" and award attorneys' fees at the Court's discretion, considering the
12  totality of the circumstances.  *See Octane Fitness, LLC v. ICON Health & Fitness,*
13  *Inc.*, 572 U.S. 545, 553-54 (2014).

14      **C.    Brief Description of Key Evidence in Support of Plaintiffs' Claims**

15      Claim 1:  The evidence on which Plaintiffs will rely to prove Kite literally
16  infringes the asserted claims of the '190 Patent includes:

17  - Plaintiffs will rely on Kite's stipulation of literal infringement of the '190
18    Patent if the Certificate of Correction is not invalid.  *See* Dkt. No. 223.

19  - Plaintiffs may rely on the expert testimony of Wayne Marasco, M.D.,
20    Ph.D., and Ryan Sullivan, Ph.D., as well as on testimony from former or
21    current Kite or Gilead employees regarding the making, using, offering for
22    sale and selling of Yescarta® in the United States.

23  - Plaintiffs reserve the right to rely on any other document properly
24    submitted as a trial exhibit which bears relevance or later comes to bear
25    relevance to this claim, as well as evidence submitted to the Court in
26    connection with these issues.

27
28

PLAINTIFFS' MEMO. OF CONTENTIONS OF FACT AND LAW
Case No. 2:17-cv-07639-SJO-KSx

<u>Claim 2</u>:  To prove the measure of damages to which Plaintiffs are entitled as compensation for Kite's infringement, Plaintiffs may rely on the following testimony and evidence:

- Plaintiffs may rely on the expert testimony of Ryan Sullivan, Ph.D., Mark Gilbert, M.D., Mark Robbins, Ph.D., J.D., and Wayne Marasco, M.D., Ph.D. to show the proper measure of damages to compensate Plaintiffs for Kite's infringement, including the proper measure of a reasonable royalty. Plaintiffs may further rely on Dr. Sullivan's, Gilbert's, Robbins's, and Marasco's expert reports and the documents cited therein to establish the proper measure of damages.

- Plaintiffs may rely on contemporaneous documents from Juno, Celgene, Kite, Gilead, and external financial analysts regarding strategy and/or valuations to show the proper valuations and royalty rates for the accused product and the various factors which are relevant to that analysis.

- Plaintiffs may rely on comparable license agreements to show what a proper royalty rate should be.

- Plaintiffs may rely on Kite's and Gilead's SEC filings to show accurate valuations for the various CAR-T therapies developed by those companies.

- Plaintiffs may rely on contemporaneous records of Plaintiffs' interactions with the FDA to show how Kite's infringement affected Plaintiffs' own FDA approval process.

- Plaintiffs may rely on contemporaneous technical documents in the CAR-T field to prove and/or disprove the availability of non-infringing alternatives.

- Plaintiffs may rely on contemporaneous technical documents related to Yescarta®, Kymriah®, JCAR017 (also known as "lisocabtagene maraleucel" or "liso-cel"), and other CAR-T therapies to demonstrate the

1  value of the claimed invention and its effect on safety, efficacy, and

2  manufacturing.

3  • Plaintiffs may rely on documents related to Kite's and Gilead's internal

4  valuation of Yescarta®.

5  • Plaintiffs may rely on documents related to Kite's and Gilead's sales of

6  Yescarta®.

7  • Plaintiffs may rely on Kite's interrogatory responses and contentions.

8  • Plaintiffs may rely on testimony from former or current Kite and Gilead

9  employees, including for example Michael Amoroso, Arie Belldegrun,

10  Andrew Dickinson, Neville Mehenti, Tim Moore, Timothy Pigot, and

11  Shawn Tomasello, as well as current or former Juno and Celgene

12  witnesses, including for example Hans Bishop, Mark Gilbert, and Steven

13  Harr.

14  • Plaintiffs reserve the right to rely on any other document properly

15  submitted as a trial exhibit which bears relevance or later comes to bear

16  relevance to this claim, as well as evidence submitted to the Court in

17  connection with these issues.

18  Claim 3:  To show Kite's knowledge of and deliberate disregard for the '190

19  Patent, and that Plaintiffs are entitled to enhanced damages, Plaintiffs may rely on

20  the following testimony and evidence:

21  • Plaintiffs may rely on the fact testimony of Drs. Michel Sadelain,

22  Yashodhara Dash, Arie Belldegrun, and other contemporaneous witnesses

23  to show that Kite was aware of the '190 Patent and acted knowingly,

24  intentionally and/or recklessly with regard to infringing it.

25  • Plaintiffs may rely on contemporaneous emails and other documents from

26  Memorial Sloan Kettering personnel to demonstrate that Dr. Steven

27  Rosenberg and the NCI obtained information that they used to make the

28  construct used in Yescarta® from Memorial Sloan Kettering.  Plaintiffs

may further rely on such documents to show that Kite attempted, and failed, to license the '190 Patent.

- Plaintiffs may rely on contemporaneous emails and other documents from Kite personnel to show that Kite was aware of and concerned about the '190 Patent.  Plaintiffs may further rely on such documents to show that Kite intentionally sought to avoid fairly acquiring a license to Plaintiffs' intellectual property.

- Plaintiffs may rely on contemporaneous academic papers published by Kite and NCI personnel to show that Kite was aware of the construct of the '190 Patent, and specifically relied on and incorporated that construct in its own research and development efforts.

- Plaintiffs may rely on publications and statements by Kite's NCI collaborators.

- Plaintiffs may rely on Kite's public statements, filings, and disclosures.

- Plaintiffs may rely on documents related to the origins of the Yescarta® construct.

- Plaintiffs may rely on Kite's interrogatory responses and contentions.

- Plaintiffs may rely on Kite's stipulation of literal infringement.

- Plaintiffs may rely on documents from *inter partes* review proceeding IPR2015-01719 to show, among other things, Kite's knowledge of and intentional or reckless disregard of the '190 Patent, Kite's knowledge that the CAR construct used in Yescarta® is covered by the '190 Patent and hence that Yescarta® would infringe upon commercial release, Kite's awareness, when it commercially released Yescarta®, that its invalidity challenge to the '190 Patent had already been rejected, depriving Kite of its freedom to operate rationale, and Kite's lack of a good-faith belief of noninfringement.

- Plaintiffs reserve the right to rely on any other document properly submitted as a trial exhibit which bears relevance or later comes to bear relevance to this claim, as well as evidence submitted to the Court in connection with these issues.

Claim 4:  To demonstrate that Plaintiffs are entitled to an injunction or, in the alternative, to ongoing royalties in lieu of an injunction for Kite's ongoing infringement after the judgment, Plaintiffs may rely on the following testimony and evidence:

- Plaintiffs may rely on the expert testimony of Dr. Sullivan, Dr. Robbins, Dr. Gilbert, and Dr. Marasco to show the damage which Plaintiffs continue to suffer through Kite's ongoing infringement.

- Plaintiffs may rely on the testimony of Juno fact witnesses regarding the effect of Yescarta® FDA approval on Juno FDA approval and business outlook.

- Plaintiffs may rely on clinical and pharmacological data, contemporaneous documents, and fact testimony showing that Juno's JCAR017 candidate is safer and just as efficacious as Yescarta®, and the equities thus favor restraint of Kite's impact on Juno's entry into the market or commensurate compensation to Plaintiffs.

- Plaintiffs may rely on evidence previously cited for Claim 2 (Damages) to show the proper ongoing royalty rate.

- Plaintiffs reserve the right to rely on any other document properly submitted as a trial exhibit which bears relevance or later comes to bear relevance to this claim, as well as evidence submitted to the Court in connection with these issues.

1      Claim 5:  To show that this is an exceptional case and that Plaintiffs are

2  entitled to attorneys' fees, Plaintiffs may rely on the following testimony and

3  evidence:

- The testimony and evidence cited previously for Claim 3 (Willful Infringement/Enhancement) to show that Kite's infringement was willful.
- Kite's interrogatory responses, invalidity contentions, and infringement contentions.
- Kite's bad faith claim that Dr. Anja Krause was an inventor of the '190 Patent.
- Kite's bad faith claim that MSK does not possess right and title to the '190 Patent.
- Plaintiffs reserve the right to rely on any other document properly submitted as a trial exhibit which bears relevance or later comes to bear relevance to this claim, as well as evidence submitted to the Court in connection with these issues.

**D.     Summary of Kite's Counterclaims & Affirmative Defenses**

In response to Plaintiffs' claims for infringement (including willful infringement), damages, an injunction or an ongoing royalty, and attorneys' fees, Kite raises the following defenses and counterclaims:

Claim 1:  Kite asserts that the Asserted Claims of the '190 Patent are invalid for failure to comply with 35 U.S.C. § 112.  Kite asserts that the '190 Patent is invalid under Section 112 for both lack of enablement and failure to satisfy the written description requirement.  Neither contention has merit.

Claim 2:  Kite asserts it does not infringe the '190 Patent because the Certificate of Correction is invalid.  Again, Kite's contention has no merit.

1    **E.    Elements Required to Establish Kite's Counterclaims &**

2    **Affirmative Defenses**

3        <u>Claim 1</u>:  Kite must prove the Asserted Claims of the '190 Patent are invalid

4    by clear and convincing evidence, i.e., that it is highly probable that the claims are

5    invalid, to overcome the statutory presumption of validity.  35 U.S.C. § 282;

6    *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 102-03 (2011); N.D. Cal. Model

7    Patent Jury Instruction B.4.1a.

8        To prevail in showing a lack of enablement under Section 112, Kite must

9    prove by clear and convincing evidence that a person of ordinary skill in the art

10   could not make or use the invention from the disclosures in the '190 Patent in

11   combination with information known in the art without undue experimentation.

12   *United States v. Telectronics, Inc.,* 857 F.2d 778, 785 (Fed. Cir. 1988).  A patent

13   need not teach, and preferably omits, what is well known in the art.  *In re Buchner*,

14   929 F.2d 660, 661 (Fed. Cir. 1991); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*,

15   802 F.2d 1367, 1384 (Fed. Cir. 1986).  In determining whether undue

16   experimentation would be required, the jury may consider the following factors:

17       a.  the scope of the claimed invention;

18       b.  the amount of guidance presented in the patent;

19       c.  the amount of experimentation necessary;

20       d.  the time and cost of any necessary experimentation;

21       e.  how routine any necessary experimentation is in the field;

22       f.  whether the patent discloses specific working examples of the claimed

23           invention;

24       g.  the nature and predictability of the field; and

25       h.  the level of ordinary skill in the field.

26   *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988); N.D. Cal. Model Patent Jury

27   Instruction B.4.2b.

28

To prevail in showing a failure to satisfy the written description requirement under Section 112, Kite must prove by clear and convincing evidence that a person of ordinary skill in the art would be unable to discern from the description of the claimed invention that the inventors were in possession of the claimed invention at the time the application was filed.  *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc); N.D. Cal. Model Patent Jury Instruction B.4.2a.

Claim 2:  Kite has stipulated to infringement of the Asserted Claims of the '190 Patent if the jury does not find the Certificate of Correction invalid.  To prevail in showing that the Certificate of Correction is invalid, Kite must prove by clear and convincing evidence that the error and its correction set forth in the Certificate would not have been clearly evident to a person of ordinary skill in the art from the patent and its prosecution history.  *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1367, 1373 (Fed. Cir. 2001).  That burden is a "heavy" one.  *Cubist Pharms., Inc. v. Hospira, Inc.*, 805 F.3d 1112, 1119 (Fed. Cir. 2015).

## F.    Brief Description of Key Evidence in Opposition to Kite's Counterclaims and Affirmative Defenses

Claim 1:  In opposition to Kite's claim that the Asserted Claims are invalid under Section 112, Plaintiffs may rely on the following testimony and evidence:

- Thomas Brocker, Ph.D. may testify that a person of ordinary skill would have been able to make or use the claimed invention from the disclosures in the '190 Patent in combination with information known in the art without undue experimentation.
- Dr. Brocker may testify that a person of ordinary skill would have understood that the inventors were in possession of the claimed invention at the time the application was filed.

- Plaintiffs may rely on the specification, claims, and prosecution history of the '190 Patent to show that the inventors were in possession of, and enabled the creation of, their claimed invention.

- Plaintiffs may rely on publications known to those of skill in the art to show the background knowledge of skilled artisans and to show that a skilled artisan would have understood that the inventors were in possession of, and enabled the creation of, their claimed invention.

- Plaintiffs reserve the right to rely on any other document properly submitted as a trial exhibit which bears relevance or later comes to bear relevance to this claim, as well as evidence submitted to the Court in connection with these issues.

Claim 2:  In opposition to Kite's claim that the Certificate of Correction is invalid, Plaintiffs may rely on the following testimony and evidence:

- John Quackenbush, Ph.D., may testify that a person of ordinary skill would readily appreciate the error and its appropriate correction from the patent's intrinsic record.

- Dr. Brocker may testify that a person of ordinary skill would readily appreciate the error and its appropriate correction from the patent's intrinsic record.

- Bruce Stoner, former Chief Administrative Patent Judge of the Board of Patent Appeals and Interferences, may testify regarding the procedures of the United States Patent and Trademark Office relating to prosecution and certificates of correction.

- Plaintiffs may rely on the prosecution record, contemporaneous email discussions, and admissions by Kite to show that a person of skill would have understood the error and how to correct it.

- Plaintiffs reserve the right to rely on any other document properly submitted as a trial exhibit which bears relevance or later comes to bear

1   relevance to this claim, as well as evidence submitted to the Court in
2   connection with these issues.

3   **II.     IDENTIFICATION OF EVIDENTIARY ISSUES (L.R. 16-4.1(h))**

4        Plaintiffs have filed the following evidentiary motions to exclude improper
5   evidence and/or argument by Kite:

6   - **Plaintiffs' Motion *in Limine* #1 to Exclude Kite's Irrelevant and**
7     **Inappropriate Evidence and Argument Regarding the Certificate of**
8     **Correction (Dkt. No. 284):**  Plaintiffs have moved to exclude all evidence
9     or argument concerning the pre-Certificate of Correction ("CoC") analysis
10    of Kite's former Chief Scientific Officer, Dr. Adrian Bot, of SEQ ID NO:6
11    listed in the '190 Patent, and all other evidence and argument relating to
12    Kite's improper reliance on the 2012, pre-CoC analysis of Dr. Bot, of SEQ
13    ID NO:6, as well as any evidence and argument that improperly rely on
14    the timing of the CoC, to suggest that the CoC is invalid or to avoid a
15    willfulness finding.

16  - **Plaintiffs' Motion *in Limine* #2 Regarding Evidence and Argument**
17    **Relating to the ROCKET Clinical Trial (Dkt. No. 276):**  Plaintiffs have
18    moved for exclusion of three types of evidence or argument regarding
19    patient deaths that occurred during one of Plaintiffs' clinical trials:
20    (1) evidence or argument that engenders speculation regarding the cause of
21    the deaths, including that the '190 Patent construct itself or any part
22    thereof caused the deaths; (2) use of inflammatory language, such as
23    "killed," to describe the deaths; and (3) reference to lawsuits raising
24    wrongful death and other state-law claims relating to the deaths.

25  - **Plaintiffs' Motion *in Limine* #3 Regarding Evidence and Argument**
26    **Relating to the Pending BMS Acquisition (Dkt. No. 283):**  Plaintiffs
27    have moved to preclude all evidence, testimony, and argument regarding

28

1   the pending acquisition by Bristol-Myers Squibb Company of Celgene, the
2   parent company of Juno.

3   • **Plaintiffs' *Daubert* Motion to Exclude Dr. Mohan Rao's Testimony**
4   **Regarding Damages (Dkt. No. 274):**  Plaintiffs have moved to exclude
5   the testimony of Kite's damages expert Dr. Mohan Rao, and any reference
6   to Juno's and Celgene's settlement estimates.

7   Kite has followed the following evidentiary motions, to which Plaintiffs will
8   timely file oppositions:

9   • **Kite's Motion *in Limine* No. 1 (Dkt. No. 270):**  Kite has moved to
10   exclude the damages opinions of Plaintiffs' expert Dr. Ryan Sullivan.

11   • **Kite's Motion *in Limine* No. 2 (Dkt. No. 271):**  Kite has moved to
12   preclude the medical and technical opinions of Plaintiffs' expert Dr. Mark
13   Gilbert.

14   • **Kite's Motion *in Limine* No. 3 (Dkt. No. 272):**  Kite has moved to
15   exclude any mention of *inter partes* review proceeding IPR2015-01719,
16   including the United States Patent and Trademark Office Patent and Trial
17   Appeal Board's finding in that proceeding that the claims of the '190
18   Patent are not invalid.

19   • **Kite's Motion *in Limine* No. 4 (Dkt. No. 273):**  Kite has moved to
20   exclude the mention of the absence of testimony from Kite's collaborators
21   at the National Cancer Institute.

22   **III.   IDENTIFICATION OF ISSUES OF LAW (L.R. 16-4.1(i))**

23   Plaintiffs respectfully submit that at least the following legal issues remain to
24   be decided by the Court after trial:

25   • Whether Plaintiffs are entitled to enhanced damages pursuant to 35 U.S.C.
26   § 284 (part of Claim 3).

27   • Whether Plaintiffs are entitled to an injunction or to an ongoing royalty in
28   lieu of an injunction, pursuant to 35 U.S.C. § 283 (Claim 4).

- Whether Plaintiffs are entitled to attorneys' fees pursuant to 35 U.S.C. § 285 (Claim 5).

Additionally, Plaintiffs identify any questions of law presented in the following pending motions:

- Kite's motion to dismiss (Dkt. No. 258) and Plaintiffs' corresponding opposition, which sets forth why Kite's motion to dismiss lacks merit (Dkt. No. 260);
- Plaintiffs' motion for partial reconsideration of the Court's summary judgment ruling (Dkt. No. 264); and
- Kite's motion for partial reconsideration of the Court's summary judgment ruling (Dkt. No. 265) and Plaintiffs' opposition (Dkt. No. 266), which sets forth why Kite's motion lacks merit.

## IV.   BIFURCATION OF ISSUES (L.R 16-4.3)

The parties agree that no issue for the jury shall be bifurcated.

## V.   JURY TRIAL (L.R. 16-4.4)

The parties have requested a jury trial.  By order dated February 11, 2019, the Court scheduled trial to begin December 3, 2019, or as soon thereafter as is convenient for the Court (Dkt. No. 128).[2]  At least seven (7) days prior to the trial date, the parties shall file and serve by e-mail, fax, or personal delivery: (a) proposed jury instructions as required by L.R. 51-1; and (b) any special questions requested to be asked on voir dire.

---

[2] By email from the Courtroom Deputy on September 12, 2019, the parties were informed that trial is scheduled to proceed on December 3, 2019.  However, by email sent by the Courtroom Deputy to the parties on October 22, 2019, the trial date was identified as December 4, 2019.  By email to the Courtroom Deputy on October 25, 2019, the parties have requested clarification regarding the trial date.

PLAINTIFFS' MEMO. OF CONTENTIONS OF FACT AND LAW
Case No. 2:17-cv-07639-SJO-KSx

## VI.   <u>ATTORNEYS' FEES (L.R. 16-4.5)</u>

As noted in Claim 5, Plaintiffs, if they prevail, will move for an award of attorneys' fees pursuant to 35 U.S.C. § 285.  Kite has followed at least two courses of action that make this an exceptional case.  First, as discussed factually in the previous discussion of Claim 3 (Willful Infringement/Enhancement), Kite's willful infringement has been egregious.  Second, Kite has advanced theories in this litigation that cannot be taken seriously, including the claim that Dr. Anja Krause was entitled to inventorship of the '190 Patent, which the Court found to have no factual basis, and the claim that Plaintiffs failed to secure title to the '190 Patent.  Both willfulness and bad faith arguments are grounds for the Court to find an exceptional case.  *See Golight, Inc. v. Wal-Mart Stores, Inc*., 355 F.3d 1327, 1340 (Fed. Cir. 2004) ("[W]illfulness of the infringement by the accused infringer may be a sufficient basis in a particular case for finding the case 'exceptional' for purposes of awarding attorney fees to the prevailing patent owner." (quoting *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1567 (Fed. Cir. 1988)); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989) ("Among the types of conduct which can form a basis for finding a case exceptional are willful infringement, inequitable conduct before the P.T.O., misconduct during litigation, vexatious or unjustified litigation, and frivolous suit.") (upholding district court's determination that defendant's assertion of meritless defenses qualified as vexatious litigation).

## VII.  <u>ABANDONMENT OF ISSUES (L.R. 16-4.6)</u>

The following claims and counterclaims have been dismissed or abandoned:

- Kite has stipulated to literal infringement if the Certificate of Correction is not invalid.  (Dkt. No. 223.)

- In light of Kite's stipulation to literal infringement, Plaintiffs will not pursue their claims that Kite infringed and continues to infringe claims 3,

5, 9, and 11 of the '190 Patent under 35 U.S.C. § 271(b), (c), (f)(1), and (f)(2).

- Kite has withdrawn its affirmative defenses and counterclaims that the claims are invalid under 35 U.S.C. §§ 102 and 103.

Dated:  November 5, 2019                    Respectfully submitted,


                                            By:  */s/ Andrea W. Jeffries*
                                                 Andrea W. Jeffries (SBN 183408)
                                                 JONES DAY
                                                 555 South Flower Street, Fiftieth Floor
                                                 Los Angeles, CA 90071
                                                 Telephone:(213) 489-3939
                                                 Facsimile: (213) 243-2539

                                                 Morgan Chu (SBN 70446)
                                                 Alan J. Heinrich (SBN 212782)
                                                 C. Maclain Wells (SBN 221609)
                                                 Elizabeth C. Tuan (SBN 295020)
                                                 IRELL & MANELLA LLP
                                                 1800 Avenue of the Stars, Suite 900
                                                 Los Angeles, California 90067-4276
                                                 Telephone:(310) 277-1010
                                                 Facsimile: (310) 203-7199

                                                 Rebecca Carson (SBN 254105)
                                                 IRELL & MANELLA LLP
                                                 840 Newport Center Drive, Suite 400
                                                 Newport Beach, CA 92660
                                                 Telephone (949) 760-0991
                                                 Facsimile: (949) 760-5200

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Christopher J. Harnett (*Pro Hac Vice*)
Sarah A. Geers (*Pro Hac Vice*)
Kevin V. McCarthy (*Pro Hac Vice*)
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone:(212) 326-3939
Facsimile: (212) 755-7306

*Attorneys for Plaintiffs*
*Juno Therapeutics, Inc., Memorial Sloan*
*Kettering Cancer Center, and Sloan*
*Kettering Institute for Cancer Research*

PLAINTIFFS' MEMO. OF CONTENTIONS OF FACT AND LAW
Case No. 2:17-cv-07639-SJO-KSx

1

## **CERTIFICATE OF SERVICE**

2           A copy of the foregoing document was electronically filed with the Court this

3   November 5, 2019.  Notice of this filing will be sent by operation of the Court's

4   electronic filing system.  Parties may access this filing through the Court's system.

5

6                                          _/s/ Andrea W. Jeffries_
                                           Andrea W. Jeffries
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMO. OF CONTENTIONS OF FACT AND LAW
                                                    Case No. 2:17-cv-07639-SJO-KSx