1  IRELL & MANELLA LLP
   Morgan Chu (SBN 70446)
2  mchu@irell.com
   Alan J. Heinrich (SBN 212782)
3  aheinrich@irell.com
   C. Maclain Wells (SBN 221609)
4  mwells@irell.com
   Elizabeth C. Tuan (SBN 295020)
5  etuan@irell.com
   1800 Avenue of the Stars, Suite 900
6  Los Angeles, California 90067-4276
   Telephone:    (310) 277-1010
7  Facsimile:    (310) 203-7199

8  Rebecca Carson (SBN 254105)
   rcarson@irell.com
9  840 Newport Center Drive, Suite 400
   Newport Beach, CA 92660
10 Telephone    (949) 760-0991
   Facsimile:    (949) 760-5200

11
   Attorneys for Plaintiffs
12 JUNO THERAPEUTICS, INC. and SLOAN
   KETTERING INSTITUTE FOR CANCER
13 RESEARCH

14 [List of counsel continued to next page]

15

16                 UNITED STATES DISTRICT COURT

17              CENTRAL DISTRICT OF CALIFORNIA

18 JUNO THERAPEUTICS, INC., et al.,        Case No. 2:17-cv-07639-SJO-KSx

19            Plaintiffs,                   **PLAINTIFFS' OPPOSITION TO
                                            DEFENDANT KITE PHARMA,
20        v.                                INC.'S MOTION IN LIMINE
                                            (NO. 1) TO EXCLUDE DAMAGES
21 KITE PHARMA, INC.,                       OPINIONS OF RYAN SULLIVAN,
                                            PH.D.**
22            Defendant.
                                            Date: December 3, 2019
23                                          Time: 8:30 am
                                            Courtroom: 10C
24
                                            Hon. S. James Otero
25
   _____          **REDACTED VERSION OF
26 AND RELATED COUNTERCLAIMS               DOCUMENT PROPOSED TO BE
                                            FILED UNDER SEAL**
27

28

JONES DAY
Andrea Weiss Jeffries (SBN 183408)
ajeffries@jonesday.com
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071
Telephone:   (213) 489-3939
Facsimile:   (213) 243-2539

Christopher J. Harnett (*Pro Hac Vice*)
Sarah A. Geers (*Pro Hac Vice*)
Kevin V. McCarthy (*Pro Hac Vice*)
250 Vesey Street
New York, NY 10281
Telephone:   (212) 326-3939
Facsimile:   (212) 755-7306

Attorneys for Plaintiffs
JUNO THERAPEUTICS, INC. and SLOAN
KETTERING INSTITUTE FOR CANCER
RESEARCH

# TABLE OF CONTENTS

**Page**

I.   OVERVIEW OF DR. SULLIVAN'S DAMAGES OPINION .......................1

II.  LEGAL STANDARD ........................................................................4

III. ARGUMENT ..................................................................................4

    A.   Dr. Sullivan's Proposed Royalty Is Reasonable ...................................4

    B.   Dr. Sullivan Complies With The Law On Apportionment ..................6

    C.   Dr. Sullivan's Adjustments Are Reliable ............................................7

    D.   Sullivan's Stock Analysis Is Legally Sound........................................9

    E.   Dr. Sullivan's Upfront Payment Is Appropriate ...............................10

    F.   Dr. Sullivan's Launch Delay Consideration Is Proper ......................11

    G.   There Is No Basis To Exclude Relevant Economic Data
       Points...................................................................................................11

IV.  CONCLUSION ............................................................................12

OPPOSITION TO KITE'S MOTION IN LIMINE (NO. 1)
TO EXCLUDE DAMAGES OPINIONS OF
RYAN SULLIVAN, PH.D.

- i -

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*,
   2009 WL 4723733 (E.D. Tex. 2009)..........................................................8

*Allure Energy v. Nest Labs*,
   No. 13-cv-00102-RC, Dkt. No. 281 ..........................................................12

*Amgen Inc. v. Hospira*,
   336 F. Supp. 3d 333 (D. Del. 2018) ..........................................................11

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (2014) .................................................................................4

*Applied Med. Res. v. U.S. Surgical*,
   435 F.3d 1356 (Fed. Cir. 2006) .................................................................11

*Asetek Danmark A/S v. CMI USA*,
   852 F.3d 1362-64 (Fed. Cir. 2017)............................................................12

*AstraZeneca AB v. Apotex Corp.*,
   782 F.3d 1324 (Fed. Cir. 2015) ..................................................................7

*Commonwealth Sci. v. Cisco Sys.*,
   809 F.3d 1295 (Fed. Cir. 2015) ..................................................................6

*Elbit Sys. Land v. Hughes Network Sys.*,
   927 F.3d 1292 (Fed. Cir. 2019) ..................................................................6

*Ericsson, Inc. v. D-Link Sys.*,
   773 F. 3d 1201 (Fed. Cir. 2014) .................................................................6

*Finjan v. Blue Coat Sys.*,
   2015 WL 4129193 (N.D. Cal. July 8, 2015) ............................................12

*Function Media v. Google Inc.*,
   2010 WL 272409 (E.D. Tex. Jan. 15, 2010) ..............................................9

*Function Media v. Google, Inc.*,
   2010 WL 276093 (E.D. Tex. Jan. 15, 2010) ........................................9, 10

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970) .................................................................. 1, 7

*Golight v. Wal-Mart Stores*,
  355 F.3d 1327 (Fed. Cir. 2004) ............................................................................ 5

*Hanson v. Alpine Valley Ski Area.*,
  718 F.2d 1075 (Fed. Cir. 1983) ......................................................................... 11

*i4i Ltd. P'ship v. Microsoft*,
  598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).................................. 9

*Innogenetics v. Abbott Labs.*,
  512 F.3d 1363 (Fed. Cir. 2008) ............................................................................ 5

*Integra Lifesciences I, Ltd. v. Merck KGaA*,
  331 F.3d 860 (Fed. Cir. 2003), *vacated on other grounds*,
  545 U.S. 193 (2005) .............................................................................................. 8

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) .......................................................................... 7, 12

*Lindemann v. Am. Hoist*,
  895 F.2d 1403 (Fed. Cir. 1990) ............................................................................ 6

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ............................................................................ 7

*Powell v. Home Depot*,
  663 F.3d 1221 (Fed. Cir. 2011) ............................................................................ 5

*Prism Techs. v. Sprint Spectrum*,
  849 F. 3d 1360 (Fed. Cir. 2017) ................................................................... 1, 2, 3

*Rite-Hite Corp. v. Kelley Co.*,
  56 F.3d 1538 (Fed. Cir. 1995) ......................................................................... 9, 12

*Skyhook Wireless v. Google*,
  No. 10-11571-RWZ, Dkt. No. at *3-5 (D. Mass. Feb. 27, 2015) ...................... 12

*Syneron Med. Ltd. v. Invasix, Inc.*,
  2018 WL 4696969 (C.D. Cal. Aug. 27, 2018) .................................................. 10

*Syntrix Biosys., Inc. v. Illumina, Inc.*,
  No. C10-5870 BHS, Dkt. 250 (W.D. Wash. Feb. 15, 2013)................................ 9

OPPOSITION TO KITE'S MOTION IN LIMINE (NO. 1)
TO EXCLUDE DAMAGES OPINIONS OF
RYAN SULLIVAN, PH.D.

- i -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Transclean Corp. v. Bridgewood Servs.,*
    290 F.3d 1364 (Fed. Cir. 2002) ........................................................................ 10

*Transocean Offshore v. Maersk Drilling,*
    699 F.3d 1340 (Fed. Cir. 2012) ........................................................................ 11

*Uniloc Inc. v. Microsoft,*
    632 F.3d 1292 (Fed. Cir. 2011) ........................................................................ 12

*WesternGeco v. ION Geophysical Corp.,*
    791 F.3d 1340 (Fed. Cir. 2015),
    *judgment vacated*, 136 S. Ct. 2486 (2016) ...................................................... 5

*Wordtech Sys., Inc v. Integrated Networks Sols., Inc.,*
    609 F.3d 1308 (Fed. Cir. 2010) .......................................................................... 7

- ii -

OPPOSITION TO KITE'S MOTION IN LIMINE (NO. 1)
TO EXCLUDE DAMAGES OPINIONS OF
RYAN SULLIVAN, PH.D.

Plaintiffs Juno Therapeutics, Inc. ("Juno") and Sloan Kettering Institute for Cancer Research ("Sloan," and together, "Plaintiffs") oppose Defendant Kite Pharma, Inc.'s ("Kite") motion to exclude the reasonable royalty opinion of Dr. Ryan Sullivan. Dr. Sullivan uses reliable, court-approved methods and considers relevant evidence for his calculations. Kite disputes Dr. Sullivan's conclusions, not his methodology, and those disputes are the subject for cross-examination, not exclusion.

Dr. Sullivan's opinion is the result of a careful *Georgia-Pacific* analysis and reflects the importance of the '190 Patent to Kite's infringing YESCARTA product. Both Dr. Sullivan and Kite's own expert use the comparative-license method. Like Kite's expert, Dr. Sullivan uses the 2013 "Exclusive License Agreement" between Juno and Memorial Sloan Kettering ("MSK") as his starting point. He makes two adjustments to account for significant differences between that license and the 2017 hypothetical negotiation. A proper comparable license analysis ***must*** account for these differences, and Dr. Sullivan did so. Many courts have approved this methodology.

From the very first sentence of its motion, it is clear that Kite's complaints about Dr. Sullivan's royalty boil down to the fact that Kite just thinks it is too high. And the primary reason Kite claims it is too high is its repeated mischaracterization that Dr. Sullivan's royalty is "for a mere 18-month license," based on Plaintiffs' reservation of the right to seek an injunction. This is false. ***Plaintiffs accept that, if the jury awards the upfront payment Dr. Sullivan proposes, Plaintiffs will not be entitled to an injunction under binding Federal Circuit law***. Dr. Sullivan's royalty must therefore be assessed from the perspective of the full remaining term of the patent. Correcting this one mistaken premise undermines nearly every argument Kite levels against Dr. Sullivan. The Court should deny Kite's motion in its entirety.

## I.    OVERVIEW OF DR. SULLIVAN'S DAMAGES OPINION

Dr. Sullivan grounds his opinion in a careful consideration of the "footprint of the invention" of the '190 Patent. *Prism Techs. v. Sprint Spectrum*, 849 F. 3d 1360, 1375-76 (Fed. Cir. 2017). The patent covers the CAR of YESCARTA, which is its

OPPOSITION TO KITE'S MOTION IN LIMINE (NO. 1)
TO EXCLUDE DAMAGES OPINIONS OF
RYAN SULLIVAN, PH.D.

- 1 -

1   active ingredient and without which there would be no therapy. Dkt. 311-1 ¶¶ 72-73.

2      When assessing the invention's footprint, Dr. Sullivan considered Kite's own
3   conduct in connection with the '190 Patent, which highlights Kite's awareness of the
4   '190 Patent's critical importance to its CAR-T business. Ex. A at 36:1-11. Years ago,
5   Kite decided to commercialize a copy of the '190 Patent inventors' CAR. *See* Opp'n
6   to Kite's MIL No. 4 at 2-4, *filed concurrently*. Kite was aware of both the copying and
7   the '190 Patent claims' coverage of YESCARTA. *See id.* In 2013, Kite tried but failed
8   to license the '190 Patent from Sloan. Ex. A at 36:1-11. Unable to obtain a license,
9   Kite filed an unprovoked *inter partes* review to invalidate the patent, but the USPTO
10  upheld every claim. *Id.* Kite then tried, but failed, to develop a non-infringing
11  alternative. Dkt. 311-1 ¶¶ 88-89. By the time of the hypothetical negotiation in October
12  2017, Kite had exhausted all options with respect to the '190 Patent. *Id.*, ¶¶ 56, 62.

13     Dr. Sullivan also considered that, at the time of the hypothetical negotiation,
14  Juno was advancing its own CAR-T therapy, JCAR017, and was targeting the same
15  indication as YESCARTA: adult non-hodgkins lymphoma. Dr. Sullivan assessed the
16  commercial harm the parties would have anticipated that Juno would experience by
17  enabling Kite's competing product to come to market first. Dkt. 311-1 ¶¶ 134-37

18     Dr. Sullivan considered these and other relevant facts in assessing the parties'
19  bargaining positions at the hypothetical negotiation. Ex. A at 98:10-99:3. Kite would
20  have known that, if it did not obtain a license, it could not enter the lucrative CAR-T
21  market until the patent's expiration in 2024. The potential value of YESCARTA is
22  not in dispute: in October 2017, Gilead Sciences, Inc. ("Gilead") acquired Kite for
23  $11.9 billion. Dkt. 311-1 ¶ 27. Of that amount,
24  ████████████████████████████. *Id.* 141.
25  ████████████████████████████████████
26  ████████████████████████████████████
27  ████████ *Id.* ¶ 85. Kite and Gilead would thus have understood that their
28  therapy, based on the '190 Patent, would be substantially worthless without a license.

OPPOSITION TO KITE'S MOTION IN LIMINE (NO. 1)
TO EXCLUDE DAMAGES OPINIONS OF
RYAN SULLIVAN, PH.D.

- 2 -

1    Against this backdrop, Dr. Sullivan opines that the parties would have agreed

2    to a license with three components: ████████████████████████████████████

3    ████████████████████████████████████████████████████████████████████████

4    ████    Dr. Sullivan calculates these amounts using the well-accepted comparable-

5    license method. Dkt. 311-1 ¶ 190. Both Dr. Sullivan and Kite's expert, Dr. Rao, use

6    as their starting point the November 21, 2013 "Exclusive License Agreement" to the

7    '190 Patent between Juno and MSK, Sloan's sister institution. *Id.* Under that

8    agreement, ████████████████████████████████████████████████████████████

9    ██████████████, which include products covered by a single valid claim of the '190

10   patent. Dkt. 311-10 §§ 1.10, 4.2.1. Thus, the parties would have understood that Juno

11   would owe a ████████████████████████████████████████.[1]

12       To the ████████████████, Dr. Sullivan makes two adjustments to account

13   for differences between the 2013 Exclusive License Agreement and the 2017

14   hypothetical license, as required under controlling law. Dkt. 311-1 ¶ 218. Those

15   adjustments account for the fact that MSK/Sloan were non-profit research institutions,

16   whereas Kite is a commercial competitor. *Id.* ¶¶ 218, 249. Dr. Sullivan bases this

17   adjustment on Juno and Novartis's 2015 settlement agreement ("Novartis

18   Settlement") for a different CAR patent. *Id.* ¶ 219. Then, he makes a second

19   adjustment because the Novartis Settlement was executed in 2015, still years before

20   the commercialization of any CAR therapy, whereas the hypothetical license would

21   occur at the launch of Kite's competing product in October 2017. *Id.* ¶ 347. Kite

22   would thus be viewed as a greater competitive threat in October 2017 than Novartis

23

24       [1] The Court's ruling that the 2013 Exclusive License Agreement did not grant

25   Juno constitutional standing as of that date is irrelevant to damages. As the Court
     recognized, in terms of enforcement as between Sloan, MSK, and Juno, the agreement

26   gave Juno contractual rights in the '190 Patent. *See* Dkt. 304 at 11. As such, Juno's

27   commercial interests, either directly or indirectly via Sloan, would have been
     represented in the 2017 hypothetical negotiation. Sloan could not have licensed the

28   '190 Patent in October 2017 without Juno's express approval.

OPPOSITION TO KITE'S MOTION IN LIMINE (NO. 1)
TO EXCLUDE DAMAGES OPINIONS OF
RYAN SULLIVAN, PH.D.

- 3 -

was in 2015. He bases this second adjustment on Juno financial models created in the regular course of Juno's business. *Id.* ¶¶227-28. The two adjustments result in a ███████ ███████, amounting to ███████████████████████ through August 2019. Ex. B at Attach. G-2a. For the upfront payment, Dr. Sullivan uses the Exclusive License Agreement as his starting point and applies the same adjustment factors, which results in a ██████████████████. *Id.* at 1. Dr. Sullivan also considered that the parties at the hypothetical negotiation would know that Kite's first-to-market entry would cause regulatory hurdles and delays for Juno's CAR-T therapy, ███████████████████████. *Id.* at Attach. G-3a, G-4a. Damages through August 2019 would, therefore, ██████████████. ██████████████████████████. Based on Kite's own 2017 financial projections, Dr. Sullivan's proposed royalty would still leave Kite with ███████████████████████████████ ██████████████████████. *Id.* at Attach. L-1. Dr. Sullivan's opinion is thus well grounded.

## II.   LEGAL STANDARD

In ruling on a motion to exclude expert testimony, "[a] judge must be cautious not to overstep its gatekeeping role and weigh facts, evaluate the correctness of conclusions, impose its own preferred methodology, or judge credibility, including the credibility of one expert over another. These tasks are solely reserved for the fact finder." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1314 (2014).

## III.   ARGUMENT

### A.   Dr. Sullivan's Proposed Royalty Is Reasonable

Kite first argues that Dr. Sullivan's proposed royalty is unreasonable because it is too high. Dkt. 309 at 2-3. Kite claims that Dr. Sullivan's royalty would leave it without any revenue. Kite's argument is factually and legally erroneous.

First, Kite's claim that Dr. Sullivan's royalty is for a "limited 18-month period" is wrong. *Id.* at 3. The vast majority of Dr. Sullivan's royalty is ██████████████

OPPOSITION TO KITE'S MOTION IN LIMINE (NO. 1)
TO EXCLUDE DAMAGES OPINIONS OF
RYAN SULLIVAN, PH.D.

- 4 -

1    ▮▮▮▮▮▮▮▮▮▮▮▮▮, which is a one-time payment that the jury-award date would

2    not cap. The Federal Circuit considered a similar upfront payment in *Innogenetics v.*

3    *Abbott Labs.*, 512 F.3d 1363 (Fed. Cir. 2008)—which Kite itself cites. In that case,

4    the plaintiff's damages expert proposed, and the jury awarded, both an upfront

5    payment and a running royalty. *Id.*at 1380. The Federal Circuit noted that the upfront

6    component "was an amount paid in anticipation of [the defendant's] long-term license

7    to sell its products" and "was not capped by the date of the jury award." *Id.* The court

8    proceeded to hold that "[w]hen a patentee requests ***and receives such compensation***,"

9    it is not entitled to a permanent injunction. *Id.* (emphasis added). So too, here:

10   Plaintiffs accept that if the jury adopts Dr. Sullivan's upfront payment, Plaintiffs

11   cannot receive a permanent injunction. Just as in *Innogenetics*, Dr. Sullivan's royalty

12   is ***not*** for a "limited 18-month period," as Kite wrongly claims.

13       Kite bemoans that Dr. Sullivan's proposed royalty would be "financially

14   catastrophic," Dkt. 309 at 3, but this is demonstrably false. ▮▮▮▮▮▮▮▮▮▮

15   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. B at Attach. L-

16   1. After paying Dr. Sullivan's total damages amount, including his upfront payment

17   and ▮▮▮▮▮▮▮▮▮, Kite would have anticipated ▮▮▮▮▮▮▮▮▮▮

18   ▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at Attach. L-1. Without a license to

19   the '190 Patent, Kite would not have earned a dollar of this revenue.

20       Second, Kite's argument is legally erroneous. Under settled law, "an infringer's

21   net profit margin is not the ceiling by which a reasonable royalty is capped." *Powell*

22   *v. Home Depot*, 663 F.3d 1221, 1238 (Fed. Cir. 2011). The Federal Circuit, for

23   example, has endorsed a royalty four times the infringer's projected profit. *See*

24   *Golight v. Wal-Mart Stores*, 355 F.3d 1327, 1338 (Fed. Cir. 2004) (upholding a

25   $31.80 per unit royalty where the infringer's profit forecast was $8.00 per unit). Kite's

26   cited cases are far afield. *See WesternGeco v. ION Geophysical Corp.*, 791 F.3d 1340

27   (Fed. Cir. 2015), *judgment vacated*, 136 S. Ct. 2486 (2016) (patentee's expert

28   improperly included customers' revenue in royalty base); *Lindemann v. Am. Hoist*,

OPPOSITION TO KITE'S MOTION IN LIMINE (NO. 1)
TO EXCLUDE DAMAGES OPINIONS OF
RYAN SULLIVAN, PH.D.

- 5 -

1   895 F.2d 1403 (Fed. Cir. 1990) (not addressing the admissibility of expert at all; the

2   court simply affirmed a damages award).

3          **B.      Dr. Sullivan Complies With The Law On Apportionment**

4          Kite's argument that Dr. Sullivan's comparable-license approach violates the

5   apportionment rule also fails. Dkt. 309 at 3-6. The Exclusive License Agreement is

6   the only agreement for the '190 Patent, and both sides' experts use it as the starting

7   point. The Federal Circuit has recognized that in a comparable-license approach,

8   apportionment is "built in." *Commonwealth Sci. v. Cisco Sys.*, 809 F.3d 1295, 1303

9   (Fed. Cir. 2015) ("Because the parties' discussions centered on a license rate for the

10  [asserted] patent, this starting point for the district court's analysis already built in

11  apportionment."). Kite argues that, "by adjusting the terms of his starting license to

12  far exceed total revenues, Sullivan leaves no room for any other contribution to the

13  accused product." Dkt. 309 at 4. This is false; Dr. Sullivan leaves room for ████

14  ████████████████████████, as noted above.

15         Kite also charges that Dr. Sullivan "disregards the real-world terms" of the

16  Exclusive License Agreement and the 2015 Novartis Settlement. Not so. In fact, Dr.

17  Sullivan used both. He used the Exclusive License Agreement as his starting point

18  and then made two adjustments, the first of which was based on the Novartis

19  Settlement. A proper comparable-license analysis *requires* an expert to make

20  adjustments to account for the differences between the comparable license and the

21  hypothetical license. "Prior licenses, however, are almost never perfectly analogous

22  to the infringement action" and analysis *must account for such distinguishing facts*."

23  *Ericsson, Inc. v. D-Link Sys.*, 773 F. 3d 1201, 1227 (Fed. Cir. 2014) (emphasis added);

24  *see also Elbit Sys. Land v. Hughes Network Sys.*, 927 F.3d 1292, 1301 (Fed. Cir. 2019)

25  (approving expert's methodology using a comparable agreement and adjustments).

26         Kite also faults Dr. Sullivan for using the Exclusive License Agreement's

27  ████████ as his starting point, arguing that ████ "overstates the market valuation

28  of the '190 Patent alone, as the agreement also transfers significant know-how." Dkt.

OPPOSITION TO KITE'S MOTION IN LIMINE (NO. 1)
TO EXCLUDE DAMAGES OPINIONS OF
RYAN SULLIVAN, PH.D.

- 6 -

309 at 4. Kite's argument is refuted by the plain terms of the agreement, which make clear that the ███████ applies to products that are covered by a single valid claim of the patent, but include no MSK know-how. Dkt. 311-10 § 4.2.1.

Kite's cited cases are once again far afield. In *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 80 (Fed. Cir. 2012), the court simply noted that it was improper for an expert to base his opinion on non-comparable licenses, which is not the case here. In *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320-21 (Fed. Cir. 2010) and *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1332 (Fed. Cir. 2009), there was no expert testimony explaining how and why the licenses in evidence should be adjusted to support the jury's reasonable royalty.

Moreover, contrary to Kite's suggestion, the Federal Circuit has affirmed reasonable royalties that significantly exceeded the rates in the real-world licenses in evidence. For example, in *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1333 (Fed. Cir. 2015), the Federal Circuit rejected the infringer's complaint that the district court's 50% royalty rate gave "'short shrift to contemporaneous licensing agreements that Astra entered with other companies' for royalty rates lower than 50 percent."

## C.     Dr. Sullivan's Adjustments Are Reliable

Kite's complaint that Dr. Sullivan's adjustments are purportedly too big, Dkt. 309 at 7-8, is not grounds for exclusion. Dr. Sullivan's adjustments had to, and did, account for the significant differences between the hypothetical license on the one hand, and the Exclusive License Agreement and Novartis Settlement, on the other.

Unlike the hypothetical license, the Exclusive License Agreement was between collaborators, not competitors. This is crucial distinction. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Dr. Sullivan makes an adjustment based on the Novartis Settlement to account for this difference. Dr. Rao acknowledges this difference and makes his own adjustment based on the Novartis Settlement. Dkt. 311-3 ¶ 30. Kite complains that Dr. Sullivan makes his adjustment using a ratio rather than a flat numeric difference, but Kite ignores his explanation.

OPPOSITION TO KITE'S MOTION IN LIMINE (NO. 1)
TO EXCLUDE DAMAGES OPINIONS OF
RYAN SULLIVAN, PH.D.

- 7 -

1   Ex. A at 189:18-190:21. This is a topic for cross examination. *See Advanced Tech.*

2   *Incubator, Inc. v. Sharp Corp.*, 2009 WL 4723733, *5-*6 (E.D. Tex. 2009).

3          There are also substantial differences between the Novartis Settlement and the

4   hypothetical license. The Novartis Settlement was executed years before Novartis was

5   ready to launch a commercial CAR-T product. FDA approval was far from certain;

6   Novartis had not even reported clinical data for the type of cancer that Juno's

7   JCAR017 treats (adult non-Hodgkin lymphoma). In contrast, the hypothetical license

8   is in October 2017, when Kite received FDA approval and was about to commercially

9   launch YESCARTA, with which JCAR017 would directly compete upon approval.

10  Dr. Sullivan accordingly made a second adjustment to account for the far greater

11  competitive harm Juno would face by licensing Kite's competing, first-to-market and

12  market-ready product in 2017. In addition, unlike the hypothetical license, the

13  Novartis Settlement settled litigation in which Novartis was challenging the validity

14  of another CAR-T patent exclusively licensed to Juno.

15         In arguing that Dr. Sullivan should have made no further adjustment beyond an

16  adjustment based on the 2015 Novartis Settlement, Kite simply ignores the significant

17  differences between that agreement and the 2017 hypothetical license. *See* Dkt. 309

18  at 8. Kite's corporate witness on licensing agreed that the economics for licensing

19  agreements covering technology in earlier stages of development are smaller than for

20  technology on the verge of commercialization. Ex. C at 139:3-10. This is why

21  applying the wrong hypothetical negotiation date can be a critical error for a damages

22  analysis. *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 870-71 (Fed. Cir.

23  2003), *vacated on other grounds*, 545 U.S. 193 (2005) ("an earlier date will change

24  the risks and expectation of the parties"; "[t]he parties' inability to project success at

25  the pre-clinical research stage . . . weighs heavily in determining a reasonable royalty,

26  particularly if the time for the valuation of the project moves back to 1994").

27         Kite's only other complaint with Dr. Sullivan's second adjustment is that it is

28  based on a comparison of Juno's profit projections. Kite argues that there is no

OPPOSITION TO KITE'S MOTION IN LIMINE (NO. 1)
TO EXCLUDE DAMAGES OPINIONS OF
RYAN SULLIVAN, PH.D.

- 8 -

"logical connection" between the profits that a patentee may lose to a licensee and the license rate. Dkt. 270 at 9. But the Federal Circuit has squarely rejected this argument, stating that the patentee "would have been willing to grant a competitor a license to use the [patent] only if it received a royalty of no less than one-half of the per unit profits that it was foregoing." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995). Kite's disagreements with the "degree of relevance or accuracy" go to the weight of Dr. Sullivan's testimony, "not its admissibility." *See i4i Ltd. P'ship v. Microsoft*, 598 F.3d 831, 852 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).

### D.     Sullivan's Stock Analysis Is Legally Sound

Kite also argues that Dr. Sullivan's use of Kite's stock price to determine the adjusted value of the Exclusive License Agreement should be excluded, which is legally and factually incorrect. Dkt. 309 at 5-7. As an initial matter, courts routinely approve of the consideration of stock's present value when calculating a reasonable royalty. *See Syntrix Biosys., Inc. v. Illumina, Inc.*, No. C10-5870 BHS, Dkt. 250 at 11 (W.D. Wash. Feb. 15, 2013) *Function Media v. Google, Inc.*, 2010 WL 276093, at *4 (E.D. Tex. Jan. 15, 2010); *Function Media v. Google Inc.*, 2010 WL 272409, at *3 (E.D. Tex. Jan. 15, 2010). For example, where a licensee would have purchased a license with stock, not cash, ***the present value of the stock*** can be relevant, as it aids the jury's determination of the value of a license. *See Function Media*, 2019 WL 272409, at *3. Disputes about an expert's use of stock in damages calculations is addressable through cross-examination, not exclusion. *See Function Media*, 2010 WL 276093, at *4 (concluding that the jury could consider the present value of Google's stock, $3.4 billion, even though Google's stock was worth $160,000 in 1999, the date of the comparable license); *see also Syntrix*, No. C10-5870 BHS, Dkt. 250 at 11.

Dr. Sullivan also properly considered Kite's 2017 stock price. Part of the consideration Juno paid for its exclusive license to the '190 Patent was a grant of ████████████████████████████████████████████████ based on the performance of Juno's stock price. Dkt. 311-1 ¶ 204, Attach. B-1. As Dr. Sullivan

OPPOSITION TO KITE'S MOTION IN LIMINE (NO. 1)
TO EXCLUDE DAMAGES OPINIONS OF
RYAN SULLIVAN, PH.D.

- 9 -

explained, the comparable license method requires applying the terms of the comparable agreement (*i.e.*, the Exclusive License Agreement) to the facts of the hypothetical negotiation. *Id*. at 151:19-155:14. The facts of the hypothetical negotiation include: Kite (not Juno) as licensee, October 2017 (not November 2013) as the date, and YESCARTA (not Juno's CAR-T therapy) as the licensed product. *Id*. ¶¶ 184-85, 189-90. Accordingly, Kite's stock price as of October 2017 is the economically appropriate metric to which the Exclusive License Agreement's stock-based terms apply. Analogously, YESCARTA's sales revenues are the appropriate base to which the running royalty rate from the hypothetical negotiation applies.

Kite's cases are again inapplicable, as the courts in those cases took issue with the expert's method, not the application of the method. *See Transclean Corp. v. Bridgewood Servs.*, 290 F.3d 1364, 1376 (Fed. Cir. 2002) (opinion testimony was conclusory); *Syneron Med. Ltd. v. Invasix, Inc.*, 2018 WL 4696969, at *7 (C.D. Cal. Aug. 27, 2018) (expert ignored the fact that, at the hypothetical negotiation, an unrelated party owned the patents-in-suit). Here, Dr. Sullivan applies reliable economic principles to relevant evidence; Kite's complaints should be addressed through cross-examination. *Function Media*, 2010 WL 276093, at *4.

### E.    Dr. Sullivan's Upfront Payment Is Appropriate

Kite next argues that Dr. Sullivan's upfront payment "compensates past the license term," which Kite erroneously argues is "only through trial." Dkt. 309 at 9. Dr. Sullivan's proposed upfront payment is partial consideration for a license through the expiration of the '190 Patent, which is in August 2024. *See supra* at III.A. Dr. Sullivan was correct not to prorate his upfront payment based on the trial date.

Kite also criticizes Dr. Sullivan's consideration of the economic harms that a license to Kite would have caused Juno. Dkt. 309 at 9-10. Kite argues that such harms "may never materialize," *id.*, but Kite's argument runs afoul of the Federal Circuit's long-held rule that "a reasonable royalty determination for purposes of making a damages evaluation must relate to the time infringement occurred." *Applied Med. Res.*

OPPOSITION TO KITE'S MOTION IN LIMINE (NO. 1)
TO EXCLUDE DAMAGES OPINIONS OF
RYAN SULLIVAN, PH.D.

- 10 -

*v. U.S. Surgical*, 435 F.3d 1356, 1361 (Fed. Cir. 2006). Indeed, the hypothetical negotiation "is to be determined not on the basis of a hindsight evaluation of what actually happened, but on the basis of what the parties . . . would have considered at the time of the negotiation." *Hanson v. Alpine Valley Ski Area.*, 718 F.2d 1075, 1081 (Fed. Cir. 1983). And this same rule applies to upfront payments. *See Transocean Offshore v. Maersk Drilling*, 699 F.3d 1340, 1357-59 (Fed. Cir. 2012) (affirming damages award based on upfront payment where defendant offered infringing rig for sale, even though it never delivered infringing rig; reasonable royalty is based on "the agreement the parties would have reached at the time infringement began"). Thus, contrary to Kite's suggestion, *ex post* events do not alter the upfront payment amount.

### F.      Dr. Sullivan's Launch Delay Consideration Is Proper

Kite's objection to Dr. Sullivan's consideration of the regulatory launch delay Juno would experience because of Kite's market entry is meritless. If, at the time of the hypothetical negotiation, a party expects to experience launch delay, it is proper to consider the value of that delay. *Amgen Inc. v. Hospira*, 336 F. Supp. 3d 333, 352 (D. Del. 2018) (damages expert's testimony on value of avoiding launch delay supported damages award). Both sides' FDA experts agree that the parties would have been aware that Kite's approval could impact Juno's regulatory process. Ex. D at 197:5-19; Ex. E at 195:10-196:2. And Kite's market entry did, in fact, cause regulatory delay for Juno. Ex. F at 80:10-82:3. Dr. Sullivan thus properly determined that, "by granting Kite a license to the '190 patent at the hypothetical negotiation, Juno would expect to face a delayed launch for JCAR017." Dkt. 309 ¶¶ 134-37.

### G.      There Is No Basis To Exclude Relevant Economic Data Points

Kite concludes its motion with a request to exclude a series of highly relevant economic data points that the parties would have considered at the hypothetical negotiation. For example, concurrent with the hypothetical negotiation, Gilead acquired Kite for $11.9 billion, ██████████████████████████████████████████████████████ ██. The CAR claimed in the '190 Patent is the active ingredient of YESCARTA,

OPPOSITION TO KITE'S MOTION IN LIMINE (NO. 1)
TO EXCLUDE DAMAGES OPINIONS OF
RYAN SULLIVAN, PH.D.

- 11 -

1    and Kite could not have commercially launched this product without a license to the

2    patent. Evidence of Kite's and Gilead's view of ███████████████████

3    ███  at the time of the hypothetical negotiation is plainly relevant. *See Allure Energy*

4    *v. Nest Labs*, No. 13-cv-00102-RC, Dkt. No. 281 at *4 (denying Nest's motion to

5    exclude "Google's acquisition of Nest and the amount paid"); *Skyhook Wireless v.*

6    *Google*, No. 10-11571-RWZ, Dkt. No. at *3-5 (D. Mass. Feb. 27, 2015) ("evidence

7    of Skyhook's eventual acquisition price is relevant to the value of the hypothetical

8    license"); *Finjan v. Blue Coat Sys.*, 2015 WL 4129193, at *4 (N.D. Cal. July 8, 2015)

9    (denying motion to exclude "acquisition costs for technology containing the accused

10   feature" because it is "relevant and probative").

11         Dr. Sullivan also determined from Kite's own internal documents that Kite

12   considered first-to-market entry to be worth ███████. Dkt. 311-1 ¶¶ 118-19, 357.

13   Dr. Sullivan's calculation is directly relevant to how much Kite would have willingly

14   paid at the hypothetical negotiation. His calculation also rebuts Kite's hindsight claim

15   that it was not actually important for it to be first to market. Dkt. 309 at 62. Finally,

16   Dr. Sullivan calculated the anticipated impact of Kite's market entry on Juno's overall

17   company value (at least ███████), which is also relevant and admissible because

18   it reflects Juno's anticipated harm as of the hypothetical negotiation. *See Rite-Hite*,

19   56 F.3d at 1554 (holding that large profit the patentee would forgo was relevant to

20   reasonable royalty); *Asetek Danmark A/S v. CMI USA*, 852 F.3d 1362-64 (Fed. Cir.

21   2017) (expert properly relied on patentee's per-unit profit margin under license with

22   another company). Kite's cases are inapposite because, unlike here, they addressed

23   economic metrics that were untethered to the value of the patented technology. *See*

24   *LaserDynamics*, 694 F.3d at 68; *Uniloc Inc. v. Microsoft*, 632 F.3d 1292, 1318 (Fed.

25   Cir. 2011) (Microsoft's total Office and Windows revenues inadmissible where

26   patented feature was not basis of demand nor created value of component parts).

27   **IV.    CONCLUSION**

28         Kite's motion to exclude Dr. Sullivan's damages opinion should be denied.

OPPOSITION TO KITE'S MOTION IN LIMINE (NO. 1)
TO EXCLUDE DAMAGES OPINIONS OF
RYAN SULLIVAN, PH.D.

- 12 -

1   Dated:  November 12, 2019          IRELL & MANELLA LLP

2

3                                      By:  /s/ Alan J. Heinrich
                                           Alan J. Heinrich
4                                          *Attorneys for Plaintiffs*
                                           JUNO THERAPEUTICS, INC. and
5                                          SLOAN KETTERING INSTITUTE
                                           FOR CANCER RESEARCH
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO KITE'S MOTION IN LIMINE (NO. 1)
TO EXCLUDE DAMAGES OPINIONS OF
RYAN SULLIVAN, PH.D.

- 13 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

A copy of the foregoing document was electronically filed with the Court this 12th day of November, 2019.  Notice of this filing will be sent by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Alan J. Heinrich*
Alan J. Heinrich