Morgan Chu (SBN 70446)
mchu@irell.com
Alan J. Heinrich (SBN 212782)
aheinrich@irell.com
C. Maclain Wells (SBN 221609)
mwells@irell.com
Elizabeth C. Tuan (SBN 295020)
etuan@irell.com
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067-4276
Telephone:  (310) 277-1010
Facsimile:  (310) 203-7199

Andrea Weiss Jeffries (SBN 183408)
ajeffries@jonesday.com
Luke J. Burton (SBN 301247)
lburton@jonesday.com
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA  90071
Telephone:  (213) 489-3939
Facsimile:  (213) 243-2539

*[List of counsel continues on next page]*

*Attorneys for Plaintiffs*
JUNO THERAPEUTICS, INC.
MEMORIAL SLOAN KETTERING
CANCER CENTER and SLOAN
KETTERING INSTITUTE FOR
CANCER RESEARCH

Jeffrey I. Weinberger (SBN 56214)
jeffrey.weinberger@mto.com
Ted Dane (SBN 143195)
ted.dane@mto.com
Garth T. Vincent (SBN 146574)
garth.vincent@mto.com
Blanca F. Young (SBN 217533)
blanca.young@mto.com
Peter E. Gratzinger (SBN 228764)
peter.gratzinger@mto.com
Adam R. Lawton (SBN 252546)
adam.lawton@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Geoffrey D. Biegler (SBN 290040)
biegler@fr.com
Grant T. Rice (*Pro Hac Vice*)
rice@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA  92130
Telephone:  (858) 678-5070
Facsimile:  (858) 678-5099

*Attorneys for Defendant-Counterclaimant*
KITE PHARMA, INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| JUNO THERAPEUTICS, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KITE PHARMA, INC.,<br><br>Defendant.<br><br><hr>AND RELATED COUNTERCLAIMS | Case No. 2:17-cv-07639-SJO-KSx<br><br>**PARTIES' FIRST AMENDED DISPUTED JURY INSTRUCTIONS [AMENDING PRELIMINARY INSTRUCTION NO. 23]**<br><br>Before:  The Hon. S. James Otero<br><br>Trial:  Dec. 3, 2019<br>Time:  8:30 a.m.<br>Courtroom:  10C |

Rebecca Carson (SBN 254105)
rcarson@irell.com
Ingrid M. H. Petersen (SBN 313927)
ipetersen@irell.com
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone:  (949) 760-0991
Facsimile:  (949) 760-5200

Christopher J. Harnett (*Pro Hac Vice*)
charnett@jonesday.com
Sarah A. Geers (*Pro Hac Vice*)
sgeers@jonesday.com
Kevin V. McCarthy (*Pro Hac Vice*)
kmccarthy@jonesday.com
JONES DAY
250 Vesey Street
New York, NY  10281-1047
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

Jennifer L. Swize (*Pro Hac Vice*)
jswize@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
Telephone:  (202) 879-3939
Facsimile:   (202) 626-1700

John M. Michalik (*Pro Hac Vice*)
jmichalik@jonesday.com
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, IL 60601-1692
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585

*Attorneys for Plaintiffs*
JUNO THERAPEUTICS, INC.
MEMORIAL SLOAN KETTERING
CANCER CENTER and SLOAN
KETTERING INSTITUTE FOR
CANCER RESEARCH

The parties respectfully submit these First Amended Disputed Jury Instructions, which revise both Plaintiffs' and Defendant's Proposed Preliminary Instruction No. 23 (Outline of Trial) in light of the Court's rulings at the Pretrial Conference.  In addition, because those revisions have affected the pagination, the Index Table and internal cross-references have been updated accordingly.

Respectfully submitted,

Dated:  December 1, 2019            JONES DAY

                                   By:  */s/ Andrea W. Jeffries*
                                        Andrea W. Jeffries

                                   *Attorneys for Plaintiffs*
                                   *Juno Therapeutics, Inc., Memorial Sloan*
                                   *Kettering Cancer Center, and Sloan*
                                   *Kettering Institute for Cancer Research*

Dated:  December 1, 2019            MUNGER, TOLLES & OLSON LLP

                                   By:  */s/ Markus A. Brazill*
                                        Markus A. Brazill

                                   *Attorneys for Defendant-Counterclaimant*
                                   *Kite Pharma, Inc.*

# RESERVATION OF RIGHT AND OBJECTIONS

The parties—Plaintiffs (together, "Plaintiffs" or "Juno" or "Juno and Sloan Kettering") and Defendant ("Kite")—expressly reserve all rights and all objections to all prior rulings in this case.

# INDEX OF PROPOSED JURY INSTRUCTIONS

## Key:

Yellow highlighting indicates options set forth in model instructions for the Court's preference.

Text in blue and underlined indicates where proposed instructions differ from the model instructions on which they are based.  Other principal changes, including deletion of portions of the model instructions, are noted in the "Authority" field.

| NO. | TITLE | SOURCE | PAGE |
|---|---|---|---|
| Juno P4 | WHAT IS A PATENT AND HOW ONE IS OBTAINED | N.D. Cal. Model Patent Jury Instruction A.1; 35 U.S.C. §§ 132(b), 254, 255; 37 C.F.R. § 1.114 | 1 |
| Kite P4 | WHAT IS A PATENT AND HOW ONE IS OBTAINED | Final Pretrial Conference Order at § 15; "The Patent Process: An Overview For Jurors" (Jan. 1, 2013), *available at* https://www.fjc.gov/publications/ patent-process-overview-jurors | 5 |
| Juno P5 | PATENT AT ISSUE | N.D. Cal. Model Patent Jury Instructions A.2 and A.3 | 7 |
| Juno P6 | SUMMARY OF CONTENTIONS | N.D. Cal. Model Patent Jury Instruction A.3 | 9 |

| NO. | TITLE | SOURCE | PAGE |
|---|---|---|---|
| Kite P6 | SUMMARY OF CONTENTIONS | American Intellectual Property Law Association Model Patent Jury Instruction II.B | 12 |
| Juno P8 | CLAIM CONSTRUCTION | N.D. Cal. Model Patent Jury Instruction A.3; the Court's Claim Construction Order, Dkt. No. 100 | 15 |
| Kite P8 | CLAIM INTERPRETATION | American Intellectual Property Law Association Model Patent Jury Instructions 2.1 and 2.2 | 18 |
| Juno P9 | BURDEN OF PROOF | 9th Cir. Model Instructions 1.6 and 1.7 | 21 |
| Kite P9 | BURDEN OF PROOF | N.D. Cal. Model Patent Jury Instructions 4.1a and 5.1 | 23 |
| Juno P10 | OVERVIEW OF APPLICABLE LAW | N.D. Cal. Model Patent Jury Instruction A.4; Federal Circuit Bar Association Model Patent Jury Instruction A.4 | 25 |
| Kite P10 | OVERVIEW OF APPLICABLE LAW | Federal Circuit Bar Association Model Patent Jury Instruction A.4 | 29 |
| Juno P23 | OUTLINE OF TRIAL (as amended on 12/1/2019) | N.D. Cal. Model Patent Jury Instruction A.5 | 32 |

| NO. | TITLE | SOURCE | PAGE |
|---|---|---|---|
| Kite P23 | OUTLINE OF TRIAL (as amended on 12/1/2019) | N.D. Cal. Model Patent Jury Instruction A.5 | 36 |
| Kite | GLOSSARY | N.D. Cal. Model Patent Jury Instruction Glossary | 40 |
| Juno | GLOSSARY | N.D. Cal. Model Patent Jury Instruction Glossary | 44 |
| Juno C6 | IMPEACHMENT EVIDENCE— WITNESS | 9th Cir. Model Instruction 2.9 | 48 |
| Juno C7 | STIPULATIONS OF FACT | 9th Cir. Model Instruction 2.2 | 50 |
| Juno C11 | BURDEN OF PROOF | 9th Cir. Model Instructions 1.6 and 1.7 | 52 |
| Kite C11 | BURDEN OF PROOF | N.D. Cal. Model Patent Jury Instructions 4.1a and 5.1 | 54 |
| Juno C12 | SUMMARY OF CONTENTIONS | N.D. Cal. Model Patent Jury Instruction B.1 | 56 |
| Kite C12 | SUMMARY OF CONTENTIONS OF THE PARTIES | American Intellectual Property Law Association Model Patent Jury Instruction II.B | 59 |

| NO. | TITLE | SOURCE | PAGE |
|---|---|---|---|
| Juno C13 | WHAT IS A PATENT AND HOW ONE IS OBTAINED | N.D. Cal. Model Patent Jury Instruction A.1; 35 U.S.C. §§ 132(b), 254, 255; 37 C.F.R. § 1.114 | 61 |
| Juno C14 | INTERPRETATION OF CLAIMS | N.D. Cal. Model Patent Jury Instruction B.2.1; the Court's Claim Construction Order, Dkt. No. 100 | 65 |
| Kite C14 | CLAIM INTERPRETATION | American Intellectual Property Law Association Model Patent Jury Instructions 2.0 and 2.1 | 68 |
| Kite C15 | INFRINGEMENT | Joint Stipulation, Dkt. 223 | 71 |
| Juno C17 | WILLFUL INFRINGEMENT | N.D. Cal. Model Patent Jury Instruction B.3.8 | 73 |
| Kite C17 | WILLFUL INFRINGEMENT | American Intellectual Property Law Association Model Patent Jury Instruction 11.0 | 75 |
| Juno C18 | INVALIDITY— BURDEN OF PROOF | N.D. Cal. Model Patent Jury Instruction B.4.1a; Federal Circuit Bar Association Model Patent Jury Instruction B.4.1; *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1367 (Fed. Cir. 2001) | 77 |
| Kite C18 | INVALIDITY— BURDEN OF PROOF | N.D. Cal. Model Patent Jury Instruction B.4.1a | 79 |

| NO. | TITLE | SOURCE | PAGE |
|---|---|---|---|
| Juno C19 | INVALIDITY—PERSPECTIVE OF ONE OF ORDINARY SKILL IN THE ART | N.D. Cal. Model Patent Jury Instruction B.4.1b | 81 |
| Kite C19 | INVALIDITY—PERSPECTIVE OF ONE OF ORDINARY SKILL IN THE ART | N.D. Cal. Model Patent Jury Instruction B.4.1b | 83 |
| Juno C20 | CERTIFICATE OF CORRECTION | 35 U.S.C. § 255; *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358 (Fed. Cir. 2001); *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347 (Fed. Cir. 2007) | 85 |
| Kite C20 | INVALIDITY—CERTIFICATE OF CORRECTION | 35 U.S.C. § 255; *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347 (Fed. Cir. 2007) | 88 |
| Juno C21 | WRITTEN DESCRIPTION | N.D. Cal. Model Patent Jury Instruction B.4.2a; *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010) (en banc); *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1285 (Fed. Cir. 2012); *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1366-68 (Fed. Cir. 2006) | 90 |

| NO. | TITLE | SOURCE | PAGE |
|---|---|---|---|
| Kite  C21 | INVALIDITY— WRITTEN DESCRIPTION | FBCA Model Instruction 4.2a; *Regents of the Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559 (Fed. Cir. 1997); *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956 (Fed. Cir. 2002); *Regents of the Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559 (Fed. Cir. 1997); *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115 (Fed. Cir. 2008); *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010) (en banc); *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285 (Fed. Cir. 2014); *Wyeth v. Abbott Labs.*, No. CIV.A. 08-1021 JAP, 2012 WL 175023 (D. N.J. Jan. 19, 2012) | 93 |
| Juno C22 | ENABLEMENT | N.D. Cal. Model Patent Jury Instruction B.4.2b; *In re Wands*, 858 F.2d 731 (Fed. Cir. 1988) | 98 |
| Kite C22 | INVALIDITY— ENABLEMENT | Federal Circuit Bar Association Model Patent Jury Instruction 4.2b; *In re Wands*, 858 F.2d 731 (Fed. Cir. 1988); *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361 (Fed. Cir. 1997) | 100 |
| Juno C23 | DAMAGES— BURDEN OF PROOF | N.D. Cal. Model Patent Jury Instruction B.5.1 | 103 |
| Kite C23 | DAMAGES— INTRODUCTION | Federal Circuit Bar Association Model Patent Jury Instruction 6.1 | 105 |

| NO. | TITLE | SOURCE | PAGE |
|---|---|---|---|
| Juno C24 | REASONABLE ROYALTY— DEFINITION | N.D. Cal. Model Patent Jury Instruction B.5.7 | 108 |
| Kite C24 | REASONABLE ROYALTY— DEFINITION | American Intellectual Property Law Association Model Patent Jury Instruction 10.2.5.2 | 110 |
| Juno C25 | REASONABLE ROYALTY— DATE OF HYPOTHETICAL NEGOTIATION | N.D. Cal. Model Patent Jury Instruction B.5.9 | 112 |
| Kite C29 | REASONABLE ROYALTY— TIMING | American Intellectual Property Law Association Model Patent Jury Instruction 10.2.5.7 | 114 |
| Kite C30 | REASONABLE ROYALTY—TIME PERIOD | American Intellectual Property Law Association Model Patent Jury Instruction 10.1.1 | 116 |
| Juno C26 | REASONABLE ROYALTY—FORM | N.D. Cal. Model Patent Jury Instruction B.5.7 | 118 |
| Kite C26 | REASONABLE ROYALTY—FORM | See instruction. | 120 |
| Juno C27 | REASONABLE ROYALTY— FACTORS | Federal Circuit Bar Association Model Patent Jury Instruction B6.7; *Energy Transp. Group, Inc. v. William Demant Holding A/S/*, 697 F.3d 1342, 1357 (Fed. Cir. 2012); *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) | 122 |

| NO. | TITLE | SOURCE | PAGE |
|---|---|---|---|
| Kite C27.a | REASONABLE ROYALTY—RELEVANT FACTORS | Federal Circuit Bar Association Model Patent Jury Instruction B6.7 | 126 |
| Kite C27.b | REASONABLE ROYALTY—ATTRIBUTION/ APPORTIONMENT | American Intellectual Property Law Association Model Patent Jury Instruction 10.2.5.4 | 128 |
| Juno C28 | REASONABLE ROYALTY—COMPARABILITY | American Intellectual Property Law Association Model Patent Jury Instruction 10.2.5.9 | 130 |
| Kite C28 | REASONABLE ROYALTY—USE OF COMPARABLE LICENSE AGREEMENTS | American Intellectual Property Law Association Model Patent Jury Instruction 10.2.5.9 | 132 |
| Juno | Plaintiffs' Proposed Jury Verdict Form  (Defendant's Objections) | | 134  138 |
| Kite | Defendant's Proposed Jury Verdict Form  (Plaintiffs' Objections) | | 146  149 |

Parties' First Amended Disputed Jury Instructions
Case No. 2:17-cv-07639-SJO-KSx

**PRELIMINARY INSTRUCTION NO. 4** (AS PROPOSED BY PLAINTIFFS)
**(What Is a Patent and How One Is Obtained)**

This case involves a dispute relating to a United States patent.   Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office, sometimes called "the PTO."  A valid United States patent gives the patent holder the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent holder's permission.  A violation of the patent holder's rights is called infringement.  The patent holder may try to enforce a patent against persons believed to be infringers by means of a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO.  The process of obtaining a patent is called patent prosecution.  The PTO is an agency of the federal government and employs trained patent examiners who review applications for patents.  The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it.  The specification concludes with one or more numbered sentences. These are the patent "claims."  When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed and how to make and use it. In examining a patent application, the patent examiner reviews information about the state of the technology at the time the application was filed.  As part of that effort,

1   the patent examiner searches for and reviews information that is publicly available,

2   submitted by the applicant, or both.  That information is called "prior art."  Prior art

3   is defined by law.  In general, prior art includes things that existed before the claimed

4   invention, that were publicly known, or used in a publicly accessible way in this

5   country, or that were patented or described in a publication in any country.  The

6   patent examiner considers, among other things, whether each claim defines an

7   invention that is new, useful, and not obvious in view of the prior art.  A patent lists

8   the prior art that the examiner considered; this list is called the "cited references."

9        After the prior art search and examination of the application, the patent

10   examiner then informs the applicant in writing what the examiner has found and

11   whether any claim is patentable, and thus will be "allowed."  This writing from the

12   patent examiner is called an "office action."  If the examiner rejects the claims, the

13   applicant has an opportunity to respond and sometimes changes the claims or submits

14   new claims.  The patent applicant may file a Request for Continued Examination,

15   sometimes abbreviated as "RCE."  An RCE may be filed after the examiner finds that

16   the application and claims meet the requirements for a patent, but before the patent

17   is actually issued, in order for the applicant to submit additional information to be

18   considered by the examiner.  This process, which takes place only between the

19   examiner and the patent applicant, may go back and forth for some time until the

20   examiner is satisfied that the application and claims meet the requirements for a

21   patent and the patent is issued.  The papers generated during this time of

22   communicating back and forth between the patent examiner and the applicant make

23   up what is called the "prosecution history."  All of this material becomes available to

24   the public no later than the date when the patent issues.  Occasionally, patents are

25   issued with errors.  The patentee can request a Certificate of Correction to correct

26   such errors.  The request for a Certificate of Correction and the PTO's decision on

27   that request also become part of the prosecution history of that patent.  If the PTO

28   grants the request for a Certificate of Correction, the Certificate of Correction

Parties' First Amended Disputed Jury Instructions
Case No. 2:17-cv-07639-SJO-KSx

becomes part of the patent.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all the information that will be presented to you. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

Authority: N.D. Cal. Model Patent Jury Instruction A.1 (August 2017 Edition – Last Updated October 2019) ("N.D. Cal. Model") (modified at 2:3 to delete a sentence that refers to later instructions describing prior art, because Kite does not bring any prior art-based validity challenges, and further modified to explain to the jury the concept of a Request for Continued Examination ("RCE") and a Certificate of Correction ("CoC"), and to include enablement among the patentability requirements considered by the examiner when examining a patent application; also modified to delete a sentence that would follow the sentence ending on 2:21, stating "Sometimes, patents are issued after appeals with the PTO or to the court," to avoid confusion with the RCE and CoC); 35 U.S.C. §§ 132(b), 254, 255; 37 C.F.R. § 1.114.

**DEFENDANT'S OBJECTIONS:** THE PARTIES AGREED IN THE FINAL PRETRIAL CONFERENCE ORDER TO PLAY A VIDEO PREPARED BY THE FEDERAL JUDICIAL CENTER THAT EXPLAINS WHAT A PATENT IS AND HOW ONE IS OBTAINED. THE FORM INSTRUCTION DUPLICATES WHAT IS IN THAT VIDEO AND IS THEREFORE UNNECESSARY. THE LANGUAGE PLAINTIFFS HAVE ADDED REGARDING THE CERTIFICATE OF CORRECTION ("COC") IS (1) UNNECESSARY IN LIGHT OF SPECIFIC COC INSTRUCTIONS THE PARTIES HAVE PROPOSED, (2) INCLUDES STATEMENTS OF FACT THAT ARE ARGUMENTATIVE AND INAPPROPRIATE FOR JURY INSTRUCTIONS ("OCCASIONALLY PATENTS ARE ISSUED WITH ERRORS"), AND (3) IS INACCURATE IN THAT IT FAILS TO APPRISE THE JURY THAT A COC THAT BROADENS THE SCOPE OF THE PATENT MAY BE ISSUED ONLY FOR "A MISTAKE OF A CLERICAL OR TYPOGRAPHICAL NATURE, OR OF MINOR CHARACTER," 35 U.S.C. § 255, AND WHERE THE CLERICAL ERROR OR HOW TO CORRECT IT WOULD HAVE BEEN CLEARLY EVIDENT TO A PERSON OF SKILL IN THE ART ("POSITA"). *CENT. ADMIXTURE PHARMACY SERVS., INC. V. ADVANCED CARDIAC SOLS., P.C.*, 482 F.3D 1347, 1353 (FED. CIR. 2007). FINALLY, THE LANGUAGE PLAINTIFFS HAVE ADDED REGARDING A REQUEST FOR CONTINUED EXAMINATION ("RCE") IS UNNECESSARY, BUT KITE DOES NOT OBJECT TO INCLUDING A DEFINITION OF RCE IN A GLOSSARY TO BE PROVIDED TO THE JURY, AS SET FORTH IN DEFENDANT'S PROPOSED FOR A GLOSSARY.

**<u>PRELIMINARY INSTRUCTION NO. 4</u>** <span style="color:red">**(AS PROPOSED BY DEFENDANT)**</span>

**<u>(What Is a Patent and How One Is Obtained)</u>**

<span style="color:blue">This case involves a dispute relating to a United States patent.  I will now show you a video that explains what a patent is and how one is obtained.</span>

<u>Authority</u>:  Final Pretrial Conference Order, Section 15; "The Patent Process: An Overview for Jurors" (Jan. 1, 2013), available at https://www.fjc.gov/ publications/patent-process-overview-jurors.

**PLAINTIFFS' OBJECTIONS: (1)** PLAINTIFFS OBJECT TO KITE'S OMISSION OF ANY JURY INSTRUCTION ON WHAT A PATENT IS AND HOW IT IS OBTAINED. WHILE THE PARTIES HAVE AGREED THAT THE FJC VIDEO SHOULD BE SHOWN, THE N.D. CAL. MODEL INSTRUCTIONS PRESCRIBE AN INSTRUCTION THAT FURTHER EXPLAINS PATENTS AND PATENT LAW TO THE JURY AND HELPS TO REINFORCE WHAT IS IN THE VIDEO. COURTS IN THE NORTHERN DISTRICT ROUTINELY PRESCRIBE THE MODEL INSTRUCTION THAT PLAINTIFFS PROPOSE IN ADDITION TO THE FJC VIDEO. *SEE, E.G.*, *APPLE INC. V. SAMSUNG ELECS. CO. LTD.*, NO. 5-11-CV-01846 (N.D. CAL.) DKT. NO. 1427 AT 19-20 (PRELIMINARY JURY INSTRUCTIONS PRESCRIBING THE N.D. CAL. MODEL), DKT. NO. 3645 AT 1 (PRETRIAL ORDER REQUIRING BOTH THE PRELIMINARY INSTRUCTIONS AND THE FJC VIDEO). **(2)** THE FJC VIDEO DOES NOT INCLUDE A DISCUSSION OF A REQUEST FOR CONTINUED EXAMINATION OR A CERTIFICATE OF CORRECTION, AND THERE WILL BE EVIDENCE OF BOTH IN THIS TRIAL. KITE RECOGNIZES THE NEED FOR THESE CONCEPTS TO BE EXPLAINED, AS INDICATED BY OTHER OF ITS PROPOSED INSTRUCTIONS, *SEE* KITE PROPOSED GLOSSARY, BUT KITE'S PROPOSALS DO NOT PUT THESE CONCEPTS IN CONTEXT IN AS PLAINTIFFS' PROPOSED PRELIMINARY INSTRUCTION NO. 4 DOES.

**PRELIMINARY INSTRUCTION NO. 5** (AS PROPOSED BY PLAINTIFFS)

**(Patent at Issue)**

[The Court will show the jury the patent at issue.]

Let's take a moment to look at the patent at issue in this case:  United States Patent Number 7,446,190.  For convenience, the parties and I will often refer to this patent by the last three numbers of its patent number:  the '190 Patent.

The cover page of the patent identifies the title of the patent, the date the patent was granted, and the patent number at the top, as well as the inventors' names, the filing date, and a list of references considered by the PTO.

The specification of the patent begins with an abstract, also found on the cover page.  The abstract is a brief statement about the subject matter of the invention.  Next comes the drawings.  The drawings illustrate various aspects or features of the invention.  The specification continues with a description that is organized into two columns on each page, and that description ends with numbered paragraphs.  These numbered paragraphs are the patent claims.  The claims at issue in this case are claims 3, 5, 9, and 11.  The '190 Patent also has a Certificate of Correction at the very end.

Authority:  N.D. Cal. Model, Instructions A.2 and A.3 (modified throughout to provide basic, relevant information to the jury, including a reference to the '190 Patent's Certificate of Correction).

**DEFENDANT'S OBJECTIONS: 1.** PLAINTIFFS' PROPOSED INSTRUCTION INAPPROPRIATELY SUGGESTS THAT THE SPECIFICATION IN THE '190 PATENT ADEQUATELY DESCRIBES AND ENABLES THE INVENTION. THAT IS A DISPUTED ISSUE IN THIS CASE, AND THE JURY SHOULD NOT BE GIVEN THE MISIMPRESSION THAT IT HAS BEEN PREJUDGED IN PLAINTIFFS' FAVOR. THE PARTIES HAVE AGREED TO PLAY A VIDEO PREPARED BY THE FEDERAL JUDICIAL CENTER THAT CAREFULLY EXPLAINS THE DIFFERENT PARTS OF A PATENT—INCLUDING EXAMPLES OF THE PARTS DISCUSSED IN PLAINTIFFS' PROPOSED INSTRUCTION—WITHOUT MAKING SPECIFIC REFERENCE TO THE PATENT AT ISSUE. KITE'S PROPOSED PRELIMINARY INSTRUCTION NO. 4, AND THE VIDEO THE PARTIES HAVE AGREED TO PLAY, ADEQUATELY INSTRUCTS THE JURY ON THESE ISSUES WITHOUT INTRODUCING BIAS IN FAVOR OF PLAINTIFFS. **2.** EVEN WITHOUT THE MISLEADING DISCUSSION OF THE '190 PATENT, THIS INSTRUCTION UNNECESSARILY DUPLICATES THE INFORMATION IN THE PATENT VIDEO. **3.** MORE BROADLY, KITE OBJECTS TO OVERLOADING THE JURY WITH UNNECESSARY OR DUPLICATIVE INSTRUCTIONS. SUCH INSTRUCTIONS RECUR THROUGHOUT PLAINTIFFS' PROPOSED SET. JURORS CAN ONLY PROCESS SO MUCH INFORMATION, ESPECIALLY IN A COMPLEX CASE SUCH AS THIS. UNNECESSARY AND DUPLICATIVE MATERIAL RISKS FATIGUING THE JURY AND DISTRACTING THEM FROM THE IMPORTANT ISSUES THEY NEED TO DECIDE.

Parties' First Amended Disputed Jury Instructions
Case No. 2:17-cv-07639-SJO-KSx

**PRELIMINARY INSTRUCTION NO. 6 (AS PROPOSED BY PLAINTIFFS)**

**(Summary of Contentions)**

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The plaintiffs in this case are Juno Therapeutics, Inc. and Sloan Kettering Institute for Cancer Research.  The defendant in this case is Kite Pharma, Inc.  For convenience, the parties and I will often refer to the plaintiffs collectively as "Juno" or "Juno and Sloan Kettering" or simply as "Plaintiffs."  The parties and I will refer to the defendant as "Kite."

Juno and Sloan Kettering filed suit in this court seeking money damages from Kite for infringing the '190 Patent by making, importing, using, selling, and offering for sale Kite's Yescarta® product that Juno and Sloan Kettering argue are covered by claims 3, 5, 9, and 11 of the '190 Patent.  These are the asserted claims of the '190 Patent.  Kite admits that it infringes the asserted claims of the '190 Patent as corrected by the Certificate of Correction.  So you must accept that Kite infringes the '190 Patent as corrected by the Certificate of Correction, and Juno and Sloan Kettering are not required to prove infringement of the '190 Patent as corrected.  Juno and Sloan Kettering also argue that Kite's infringement of the '190 Patent was willful.

Kite argues that the Certificate of Correction is invalid.  Kite also argues that the asserted claims of the '190 Patent are invalid for reasons that you will hear about. Kite raises these invalidity issues as a defense to infringement.

Your job will be to decide whether Kite's infringement was willful.

Your job is also to decide whether the Certificate of Correction is invalid and whether the asserted claims of the '190 Patent are invalid.

If you decide that the Certificate of Correction is valid and that at least one of the asserted claims is valid, you will then need to decide any money damages to be awarded to the Plaintiffs to compensate them for Kite's infringement.  If you decide that any infringement was willful, that decision should not affect any damage award

1   you give.  I will take willfulness into account later.

2

3       <u>Authority</u>:   N.D. Cal. Model, Instruction A.3 (this model instruction, and

4   others, that refer to a single plaintiff are modified as needed to reflect that there are

5   multiple plaintiffs; the second paragraph of the model is modified to delete a sentence

6   that describes the asserted patent, because the preceding instruction has introduced

7   the jury to the '190 Patent; this instruction is modified at 9:11 to replace "allegedly

8   infringing" with "infringing"; this instruction, and others as appropriate, are also

9   modified throughout as necessary to describe the issues to be decided by the jury in

10  this case, and in a manner consistent with N.D. Cal. Model Instruction A.5 (Plaintiffs'

11  Proposed Instruction No. 23 on "Outline of Trial"), in which willful infringement is

12  presented before invalidity defenses, and to incorporate the parties' joint stipulation

13  on infringement, *see* Dkt. No. 223; this instruction does not include the paragraph in

14  the model regarding alleged infringer's patent that improves on the asserted patent,

15  because there is no evidence that Kite has a patent that improves on the '190 Patent;

16  the model instruction concludes with additional paragraphs on claim construction

17  that Plaintiffs propose to present separately in Preliminary Instruction No. 8).

18

19

20

21

22

23

24

25

26

27

28

1  **DEFENDANT'S OBJECTIONS:  1.** IT IS HIGHLY MISLEADING TO SAY:
2  "KITE ADMITS THAT IT INFRINGES THE ASSERTED CLAIMS OF THE '190
3  PATENT AS CORRECTED BY THE CERTIFICATE OF CORRECTION.  SO
4  YOU MUST ACCEPT THAT KITE INFRINGES THE '190 PATENT AS
5  CORRECTED BY THE CERTIFICATE OF CORRECTION." KITE IN FACT
6  CONTESTS THAT THE COC IS VALID AND EFFECTIVE. *SEE* DKT #223 ¶ 1
7  (STIPULATING THAT "*IF* THE [COC] IS NOT FOUND TO BE INVALID"
8  YESCARTA MEETS EACH LIMITATION OF THE ASSERTED CLAIMS). IF
9  THE COC IS INVALID, THEN THE ASSERTED CLAIMS HAVE THE SAME
10  MEANING AND SCOPE AS WHEN THE PATENT ORIGINALLY ISSUED. IT
11  IS  UNDISPUTED  THAT  YESCARTA'S  COSTIMULATORY  REGION  IS
12  ENCODED BY AMINO ACIDS 11**4**-220 IN THE CD28 SEQUENCE (DKT #121-
13  1 ¶¶ 31-33), WHEREAS, UNDER THE COURT'S CLAIM CONSTRUCTION
14  ORDER (DKT #100 AT 19), THE PATENT AS ORIGINALLY ISSUED
15  CLAIMED A COSTIMULATORY REGION ENCODED BY AMINO ACIDS 11**3**-
16  220 IN CD28. THEREFORE, IF THE COC IS INVALID AND THE PATENT IS
17  LIMITED TO ITS ORIGINAL SCOPE, YESCARTA DOES ***NOT*** INFRINGE ***AS***
18  ***A MATTER OF LAW***. (DKT #246 AT 8-9) (PLAINTIFFS ARE ESTOPPED
19  FROM ASSERTING THE DOCTRINE OF EQUIVALENTS). PLAINTIFFS'
20  PROPOSAL, BY IMPROPERLY SUGGESTING THAT INFRINGEMENT HAS
21  ALEADY BEEN DETERMINED, IS HIGHLY INACCURATE AND INVITES
22  ERROR. **2.** FOR THE SAME REASONS, IT IS PREJUDICIAL TO REPLACE
23  "ALLEGEDLY INFRINGING" WITH "INFRINGING" AND TO TELL THE
24  JURY THAT THEY WILL DECIDE IF "KITE'S INFRINGEMENT" WAS
25  WILLFUL. WHETHER KITE INFRINGED IS AN ISSUE TO BE DECIDED AT
26  TRIAL.   KITE'S  PROPOSED  INSTRUCTION  NO.  6  ACCURATELY
27  DESCRIBES THE PARTIES' STIPULATION AND ITS LEGAL IMPORT.
28

**PRELIMINARY INSTRUCTION NO. 6 (AS PROPOSED BY DEFENDANT)**

**(Summary of Contentions)**

You have seen a video about the patent process.  The patent involved in this case relates to a chimeric antigen receptor, or "CAR," for treatment of certain types of blood cancer.  CARs are used in CAR-T therapy.  CAR-T therapy involves collecting T-cells from a cancer patient's blood, using a complex manufacturing process to modify the patient's T-cells so that the CAR appears on the cells' surface, and then reinjecting the modified T-cells back into the patient.  During the trial, the parties will offer testimony to familiarize you with this technology.  For your convenience, the parties have also prepared a Glossary of some of the technical terms to which they may refer during the trial, which will be distributed to you.

The Sloan Kettering Institute is the owner of a patent, which is identified by the Patent Office number: 7,446,190 (which may be called "the '190 patent").  This patent may also be referred to as "Plaintiffs' patent."  Approximately a year after this lawsuit began, the Sloan Kettering Institute licensed its patent to Juno Therapeutics, Inc., who is the other plaintiff in this lawsuit.  Kite is the defendant here.

Plaintiffs contends that Kite sells a product that infringes claims 3, 5, 9 and 11 of the '190 patent.  A patent claim is literally infringed only if the accused product includes each and every element in that patent claim.

Kite denies that it has infringed the '190 patent because it contends the certificate of correction for the '190 patent is invalid.  Separately, Kite contends that claims 3, 5, 9 and 11 are invalid because the '190 patent neither has an adequate written description of these claims nor properly enables these claims.

Invalidity of the certificate of correction or asserted patent claims is a defense to infringement in this case.  Therefore, even though the Patent Examiner has allowed the certificate of correction and claims 3, 5, 9 and 11 of the '190 patent, you, the jury, must decide whether the certificate of correction and claims 3, 5, 9 and 11 are invalid.  Kite must prove invalidity of the certificate of correction and claims 3, 5, 9 and 11

by clear and convincing evidence in order to overcome the presumption of validity.

Clear and convincing evidence means that it is highly probable that the fact is true.  This standard is different from the standard that applies to other issues in this case.  Other issues may be found under a lower standard, namely, by a preponderance of the evidence.  You may think of this "preponderance of the evidence" as slightly greater than 50%.  This is different from the criminal law standard of "beyond a reasonable doubt."  You may think of this "beyond a reasonable doubt" standard as approaching certainty, without reasonable doubt.  The "clear and convincing" standard is between the two.

Authority:  American Intellectual Property Law Association's Model Patent Jury Instructions ("AIPLA Model") Model II.B (as modified to introduce parties, patent, and certificate of correction defense and to remove some discussion of infringement).

**PLAINTIFFS' OBJECTIONS: (1)** PLAINTIFFS OBJECT TO KITE'S MISLEADING AND UNDULY PREJUDICIAL STATEMENT (AT 12:20-21) THAT "KITE DENIED THAT IT HAS INFRINGED THE '190 PATENT BECAUSE IT CONTENDS THE [COC] FOR THE '190 PATENT IS INVALID." KITE HAS EXPRESSLY STIPULATED TO LITERAL INFRINGEMENT AFTER THE COC. *SEE* DKT. NO. 223. IT DID SO WHEN CONFRONTED WITH PLAINTIFFS' PROPOSED MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF THE CORRECTED CLAIMS, BECAUSE KITE HAD NO EVIDENCE OF NON-INFRINGEMENT. IT MERELY SOUGHT TO PRESERVE ITS ARGUMENT THAT THE COC IS INVALID. JUST LIKE OTHER INVALIDITY DEFENSES, THE VALIDITY OF THE COC IS AN ISSUE THAT KITE BEARS THE BURDEN TO PROVE BY CLEAR AND CONVINCING EVIDENCE. KITE IMPROPERLY SEEKS TO PRESENT THE COC VALIDITY ISSUE AS AN INFRINGEMENT ISSUE TO SHIFT THE BURDEN TO PLAINTIFFS; IT WOULD CONFUSE THE JURY AND UNDULY PREJUDICE PLAINTIFFS. **(2)** PLAINTIFFS OBJECT THAT KITE'S INSTRUCTION IMPROPERLY INCLUDES ARGUMENTS AND IRRELEVANT AND UNDULY PREJUDICIAL FACTUAL MATTERS, *E.G.*, AT 12:5-8, 12:14-16. THESE ARGUMENTS AND FACTUAL MATTERS ARE NOT FOR JURY INSTRUCTIONS, WHICH WILL CARRY UNDUE WEIGHT WHEN THE COURT READS THE INSTRUCTIONS TO THE JURY. **(3)** AS NOTED IN PLAINTIFFS' OBJECTIONS TO KITE'S GLOSSARY, PLAINTIFFS OBJECT TO ANY GLOSSARY, INCLUDING ANY TECHNICAL TERMS (*SEE* 12:9-11) AS UNNECESSARY AND UNDULY PREJUDICIAL. IN THE EVENT THE COURT PROVIDES A GLOSSARY, PLAINTIFFS OBJECT TO CALLING IT A GLOSSARY OF "TECHNICAL TERMS" AS UNCLEAR. **(4)** PLAINTIFFS OBJECT TO KITE'S IMPROPER BURDEN DESCRIPTIONS, WHICH USE "HIGHLY PROBABLE" WHILE OMITTING "EVIDENCE."

**PRELIMINARY INSTRUCTION NO. 8** (AS PROPOSED BY PLAINTIFFS) **(Claim Construction)**

**Plaintiffs object to an instruction on claim construction as improperly interfering with the jury's right to decide whether the Certificate of Correction is valid. In the event the Court overrules Plaintiffs' objection, Plaintiffs propose the following:**

Before you decide whether the claims of the '190 Patent are valid or not, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have already determined the meaning of certain terms of the claims of the '190 Patent. My interpretations are as follows:

For the term "the amino acid sequence encoded by SEQ ID NO:6":

- As originally issued, this term is construed as "Amino Acids 113-220 of CD28 (starting with lysine (K))"; and

- As corrected by the Certificate of Correction, this term is construed as "Amino Acids 114-220 of CD28 (starting with isoleucine (I))."

For the term "nucleic acid polymer encoding . . . a binding element that specifically interacts with a selected target," you should apply its plain and ordinary meaning.

For other claim terms for which I have not provided a definition, you should apply the plain and ordinary meaning.

You are to apply my definitions of these terms throughout this case. However, my interpretation of the language of the claims should not be taken as an indication that I have any view regarding issues such as the validity of the Certificate of Correction or the validity of the asserted claims. Those issues are yours to decide. I will provide you with more detailed instructions on the meaning of the claims before

1    you retire to deliberate your verdict.

2

3          Authority:  N.D. Cal. Model, Instruction A.3 (modified to state at 15:7 "Before

4    you decide whether the claims of the '190 Patent are valid or not . . ." because

5    infringement is not an issue to be decided by the jury; also modified at 15:23 to

6    consistently use "plain and ordinary meaning," as also used in the Court's Claim

7    Construction Order, *see* Dkt. No. 100 at 19); Claim Construction Order, Dkt. No. 100

8    at 19.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S OBJECTIONS:** **1.** PLAINTIFFS' OBJECTION IS MERITLESS. AN INSTRUCTION ABOUT WHAT THE PATENT MEANS DOES NOT REMOVE ANY ISSUE FROM THE JURY. COURTS, NOT JURIES, CONSTRUE PATENTS, AND "IT IS THE DUTY OF THE COURT TO INFORM JURORS BOTH OF THE COURT'S CLAIM CONSTRUCTION … AND OF THE JURY'S OBLIGATION TO ADOPT AND APPLY" THAT CONSTRUCTION. *SULZER TEXTIL A.G. V. PICANOL N.V.,* 358 F.3D 1356, 1366. FURTHER, WHICHEVER SET OF INSTRUCTIONS THE COURT ADOPTS, THE JURY WILL BE TOLD THAT THE VALIDITY OF THE COC IS FOR THEM TO DECIDE. **2.** FOR THE SAME REASON, IT IS UNNECESSARY TO TELL THE JURY THAT THE COURT'S INTERPRETATION DOES NOT MEAN IT HAS A VIEW ON THE ISSUES IN DISPUTE. RECOGNIZING AS MUCH, OTHER MODEL INSTRUCTIONS DO NOT INCLUDE SUCH AN ADMONITION. *SEE* AIPLA MODEL 2.0 & 2.1 **3.** PLAINTIFFS HAVE OMITTED A CRUCIAL SENTENCE IN THE MODEL THEY USE: "YOU MUST ACCEPT [THE COURT'S] INTERPRETATIONS AS CORRECT." THIS INVITES ERROR. THE JURY **MUST** FOLLOW THE COURT'S CONSTRUCTION AND THE JURY **MUST** BE SO INSTRUCTED. *SULZER,* 358 F.3D AT 1366 ("THE JURY MUST BE TOLD THAT THE COURT HAS MADE A CLAIM CONSTRUCTION RULING THAT THE JURY MUST FOLLOW…."). **4.** COMPOUNDING THE PROBLEM, THE STATEMENT: "THAT QUESTION INVOLVES ISSUES FOR YOU TO DECIDE" IS AMBIGUOUS AND COULD ERRONEOUSLY SUGGEST THE JURY IS FREE TO DISAGREE WITH THE COURT'S CONSTRUCTION. **5.** IT IS DUPLICATIVE AND CONFUSING TO INSTRUCT THAT THE "BINDING ELEMENT" SHOULD RECEIVE ITS PLAIN AND ORDINARY MEANING AND SEPARATELY STATE THAT EVERY UNDEFINED TERM SHOULD ALSO RECEIVE ITS PLAIN AND ORDINARY MEANING.

**PRELIMINARY INSTRUCTION NO. 8 (AS PROPOSED BY DEFENDANT)**

**(Claim Interpretation)**

Before you decide whether Plaintiffs' certificate of correction and claims 3, 5, 9 and 11 are invalid, you will have to understand the patent claims.  The patent claims are numbered sentences at the end of the patent.  The patent claims involved here are 3, 5, 9 and 11, beginning at column 25, line 41 of the patent, which is Exhibit XX in evidence.  Each of these claims incorporates claim 1, beginning at column 25, line 29 of the patent.

The claims are intended to define, in words, the boundaries of the inventor's rights.  Only the claims of the patent can be infringed.  Neither the written description, nor the drawings of a patent can be infringed.

It is my job to provide to you the meaning of any claim language that must be interpreted.  You must accept the meanings I give you and use them when you decide whether any claim is invalid.  I will now tell you the meaning of the following group of words from the patent claim.

My interpretation is the following:

| Term | Meaning |
| --- | --- |
| "the amino acid sequence encoded by SEQ ID NO:6" | **Before the Certificate of Correction:** |
|  | Amino Acids 113-220 of CD28 (starting with lysine (K)) |
|  | **After the Certificate of Correction:** |
|  | Amino Acids 114-220 of CD28 (starting with isoleucine (I)) |

For other claim terms for which I have not provided a definition, you should apply the plain and ordinary meaning. .

1       <u>Authority</u>:  AIPLA Model 2.0 & 2.1 (as modified to incorporate certificate of

2  correction defense and the Court's claim construction order and to remove some

3  discussion of infringement).

1   **PLAINTIFFS' OBJECTIONS: (1)** PLAINTIFFS RESERVE ALL OBJECTIONS
2   TO THE COURT'S CLAIM CONSTRUCTION ORDER.   **(2)** PLAINTIFFS
3   OBJECT TO INCLUDING ANY CLAIM CONSTRUCTION INSTRUCTION AS
4   PREJUDICIAL; IT WOULD SUGGEST TO THE JURY THAT THE COC IS
5   INVALID AND THUS INTERFERE WITH THE JURY'S ABILITY TO FAIRLY
6   DECIDE THE ISSUE.   *SEE* DKT. NO. 246 AT 7.   KITE'S PROPOSAL
7   EXACERBATES THIS PROBLEM BY OMITTING ANOTHER TERM
8   ADDRESSED BY THE COURT, THUS CREATING A GREATER FOCUS,
9   IMPROPERLY, ON THE TERM AT ISSUE FOR COC VALIDITY.   WITH OR
10  WITHOUT THE OMITTED TERM, HOWEVER, KITE'S INSTRUCTION
11  IMPROPERLY SUGGESTS THE COURT HAS A FAVORABLE VIEW OF
12  KITE'S COC POSITION AND IS UNDULY PREJUDICIAL AND MISLEADING
13  TO THE JURY.   **(3)** IF THE COURT ISSUES A CLAIM CONSTRUCTION
14  INSTRUCTION, IT SHOULD USE PLAINTIFFS' PROPOSAL, WHICH: (A)
15  INCLUDES ALL TERMS CONSTRUED BY THE COURT; (B) AVOIDS KITE'S
16  INAPPROPRIATE AND UNDULY CONFUSING AND MISLEADING
17  REFERENCE TO CONSTRUCTIONS "BEFORE" AND "AFTER" THE COC; IF
18  THE COC IS VALID, ANY MEANING OF THE PATENT "BEFORE" THE COC
19  IS IRRELEVANT; AND (C) APPROPRIATELY INSTRUCTS THAT THE
20  COURT'S CONSTRUCTIONS SHOULD NOT BE TAKEN TO MEAN THE
21  COURT HAS ANY VIEW REGARDING HOW THE JURY SHOULD DECIDE
22  THE COC AND OTHER INVALIDITY ISSUES.
23
24
25
26
27
28

**PRELIMINARY INSTRUCTION NO. 9 (AS PROPOSED BY PLAINTIFFS) (Burden of Proof)**

In these instructions, I will often refer to a party's burden of proof. I will be discussing two different burdens of proof.

The first is known as a burden of proof by a preponderance of the evidence. When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more likely true than not true.

The second burden of proof I will discuss is known as a burden of proof by clear and convincing evidence. When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly likely that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

You should base your decision on all of the evidence, regardless of which party presented it.

Authority:   9th Cir. Model, Instructions 1.6 and 1.7 (2017 Edition – Last Updated October 2019) ("9th Cir. Model") (combined into a single instruction for simplicity; further modified the portion from Ninth Circuit Model Instruction 1.6 to use the phrase "more likely true than not true" for the preponderance of the evidence standard, consistent with N.D. Cal. Model Instructions A.5, B.3.1, & B.5.1, and FCBA Model Instructions A.5, B.3.1 & B.6.1; further modified the portion from Ninth Circuit Model Instruction 1.7 to use the phrase "highly likely" for the "clear and convincing evidence" standard for clarity).

**DEFENDANT'S OBJECTIONS:** *FIRST,* PLAINTIFFS' PROPOSED INSTRUCTION ON CLEAR-AND-CONVINCING EVIDENCE DEPARTS FROM FEDERAL CIRCUIT PRECEDENT, WHICH HAS CONSISTENTLY USED "HIGHLY PROBABLE" TO DESCRIBE THE CLEAR-AND-CONVINCING EVIDENCE STANDARD, NOT "HIGHLY LIKELY." *SEE, E.G.*, *IMPAX LABS. INC. V. LANNETT HOLDINGS*, 893 F.3D 1372, 1378 (FED. CIR. 2018); *PROCTER & GAMBLE CO. V. TEVA PHARM. USA*, 566 F.3D 989, 994 (FED. CIR. 2009).

*SECOND*, THIS NINTH CIRCUIT MODEL JURY INSTRUCTION USES THE CONFUSING LANGUAGE "FIRM BELIEF" WHEN BOTH THE N.D. CAL. MODEL INSTRUCTIONS ON BURDEN OF PROOF AND THE AIPLA MODEL INSTRUCTIONS AVOID JURY CONFUSION BY OMITTING THE PHRASE "FIRM BELIEF" AND SIMPLY USING THE PHRASE "HIGHLY PROBABLE." *SEE, E.G.*, N.D. CAL MODEL 4.1A; AIPLA MODEL II.B, 4.

*THIRD*, THE OTHER MODEL INSTRUCTIONS ALREADY ADDRESS THE BURDEN OF PROOF ISSUE-BY-ISSUE, AND KITE'S PROPOSED INSTRUCTIONS FOLLOW THAT APPROACH. *SEE* KITE'S PROPOSED INSTRUCTIONS 20, 21, 22. A STANDALONE INSTRUCTION SUCH AS THIS IS UNNECESSARY AND DUPLICATIVE. *SEE, E.G.,* PLAINTIFFS' PROPOSED PRELIMINARY INSTRUCTION NO. 23 ("OUTLINE OF TRIAL") (EXPLAINING THERE ARE TWO DIFFERENT BURDENS OF PROOF THE JURY WILL APPLY). IF THE COURT IS INCLINED TO GIVE SUCH AN INSTRUCTION, KITE RESPECTFULLY REQUESTS THAT THE COURT OFFER THE ALTERNATIVE PROPOSED DIRECTLY BELOW.

**PRELIMINARY INSTRUCTION NO. 9** <span style="color:red">**(AS PROPOSED BY DEFENDANT)**</span>
**(Burden of Proof)**

In these instructions, I will often refer to a party's burden of proof.  I will be discussing two different burdens of proof.

The first is known as a burden of proof by a preponderance of the evidence.  When a party has the burden of proving a claim or defense by a preponderance of the evidence, it means the party must persuade you that it is more likely than not that the claim or defense is established.

The second burden of proof I will discuss is known as a burden of proof by clear and convincing evidence.  When a party has the burden of proving something by clear and convincing evidence, it means the party must persuade you that it is highly probable that the claim or defense is established.

Authority:  N.D. Cal. Model Instructions 4.1a, 5.1 (combined into a single instruction, and modified to track Plaintiffs' proposed introductory language and substitute "the party" for "[Patent holder]" and "[alleged infringer]," respectively).

**PLAINTIFFS' OBJECTIONS: (1)** PLAINTIFFS OBJECT THAT KITE'S PROPOSAL DEVIATES WITHOUT REASON FROM THE NINTH CIRCUIT'S MODEL INSTRUCTION SPECIFICALLY ON POINT (*I.E.*, A BASIC INSTRUCTION DEFINING THE APPLICABLE BURDENS OF PROOF). KITE DRAWS ITS PROPOSED INSTRUCTION FROM NON-CORRESPONDING N.D. CAL. MODEL PATENT JURY INSTRUCTIONS, WHICH CONCERN INVALIDITY AND INFRINGEMENT AND ARE TOPICS AND INSTRUCTIONS ALREADY ADDRESSED ELSEWHERE (CLOSING INSTR. NOS. 18, 19, 21, 22). THOSE MODEL INSTRUCTIONS ARE DESIGNED TO "REMIND" THE JURY ABOUT THE BURDEN OF PROOF, NOT DEFINE THOSE BURDENS. BY CONTRAST, PLAINTIFFS' PROPOSAL DIRECTLY FOLLOWS THE NINTH CIRCUIT MODEL; PLAINTIFFS' PROPOSAL INCORPORATES LIMITED MATTER FROM THE N.D. CAL. MODEL INSTRUCTIONS (*E.G.*, USING "MORE LIKELY" RATHER THAN "MORE PROBABLY") THAT ARE HELPFUL GENERAL CONCEPTS FOR THE JURY. **(2)** PLAINTIFFS OBJECT THAT KITE'S PROPOSAL INSTRUCTS THE JURY TO CONSIDER WHETHER "THE PARTY" (AS OPPOSED TO "THE EVIDENCE," AS USED IN THE NINTH CIRCUIT MODEL PLAINTIFFS PROPOSE) HAS PERSUADED THE JURY, WHICH FAILS TO COMMUNICATE THE IMPORTANCE OF EVIDENCE IN ASSESSING WHETHER A BURDEN HAS BEEN MET. THE NINTH CIRCUIT MODEL PLAINTIFFS PROPOSE, BY CONTRAST, PROPERLY FOCUSES ON THE EVIDENCE. **(3)** PLAINTIFFS OBJECT TO KITE'S OMISSION OF LANGUAGE COMPARING THE STANDARDS APPLICABLE IN THIS CASE. THE NINTH CIRCUIT MODEL USED BY PLAINTIFFS (21:13-15) PROVIDES IMPORTANT GUIDANCE TO THE JURY IN THE FORM OF THIS CLARIFICATION.

**<u>PRELIMINARY INSTRUCTION NO. 10</u> (AS PROPOSED BY PLAINTIFFS)**

**<u>(Overview of Applicable Law)</u>**

In deciding the issues, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

Kite has admitted that its Yescarta® product is covered by the asserted claims of the '190 Patent as corrected by the Certificate of Correction.  So infringement of the '190 Patent is not an issue you are deciding in this case.  You will be asked to decide whether Kite's infringement of the '190 Patent was willful.  Juno and Sloan Kettering must show willfulness by a preponderance of the evidence.

You will also be asked to decide whether the Certificate of Correction of the '190 Patent is invalid.  Kite must prove, by clear and convincing evidence, that the Certificate of Correction of the '190 Patent is invalid.

You will also be asked to decide whether the asserted claims of the '190 Patent are invalid.  A patent claim may be invalid for a number of reasons, each of which is assessed on a claim-by-claim basis.  A patent claim may be invalid if the patent's description in the specification does not meet certain requirements.  To be valid, a patent must meet the "written description" requirement.  In order to meet this written description requirement, the description of the invention in the specification portion of the patent must be detailed enough to demonstrate that the applicant actually possessed the invention as claimed.  Kite must show by clear and convincing evidence that the patent does not meet the written description requirement.  The disclosure of a patent must also meet the "enablement" requirement.  To meet this requirement, the description in the patent has to be sufficiently full and clear to have allowed persons of ordinary skill in the field of technology of the patent to make and use the invention without undue experimentation, at the time the patent application was originally filed.  Kite must show by clear and convincing evidence that the patent does not meet the enablement requirement.

If you decide that Kite has failed to prove that the Certificate of Correction is invalid, and that Kite has failed to prove that any of the asserted claims of the '190 Patent is invalid, you will then need to decide any money damages to be awarded to compensate Juno and Sloan Kettering for the infringement.  Juno and Sloan Kettering have the burden to persuade you of the amount of their damages by a preponderance of the evidence.  A damages award should put Juno and Sloan Kettering in approximately the same financial position that they would have been in had the infringement not occurred, but in no event may the damages award be less than what Juno and Sloan Kettering would have received had they been paid a reasonable royalty.  I will instruct you later on the meaning of a reasonable royalty.  The damages you award are meant to compensate Juno and Sloan Kettering and not to punish Kite.  You may not include in your award any additional amount as a fine or penalty, above what is necessary to compensate Juno and Sloan Kettering for the infringement, in order to punish Kite.  I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

Authority:  N.D. Cal. Model, Instruction A.4; FCBA Model, Instruction A.4 (modified to incorporate the parties' joint stipulation on infringement; modified at 25:6-8 to be consistent with other issues for which their burden of proof is noted; modified throughout to reflect the specific patent invalidity arguments asserted by Kite and to consistently provide the burden of proof associated with each issue that the jury is asked to decide; modified the sentence ending at 25:21 to replace "as broadly as claimed in the claims of the issued patent" in FCBA Model Instruction A.4, with "as claimed," consistent with the written description standard, *see* Closing Instruction No. 21; *see also, e.g.*, *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) ("[T]he test for sufficiency [of written description support] is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the

1    claimed subject matter as of the filing date.")).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S OBJECTIONS:  1.** KITE DOES NOT ADMIT IT INFRINGES THE PATENT AS CORRECTED BY THE COC.  TO THE CONTRARY, KITE CONTESTS THE VALIDITY AND EFFECTIVENESS OF THE COC. *SEE* DKT #223 ¶ 1 (STIPULATING THAT "***IF*** THE [COC] IS NOT FOUND TO BE INVALID" YESCARTA MEETS EACH LIMITATION OF THE ASSERTED CLAIMS). IF THE COC IS INVALID, THEN THE ASSERTED CLAIMS HAVE THE SAME MEANING AND SCOPE AS WHEN THE PATENT ORIGINALLY ISSUED. IT IS UNDISPUTED THAT YESCARTA'S COSTIMULATORY REGION IS ENCODED BY AMINO ACIDS 11**4**-220 IN THE CD28 SEQUENCE (DKT #121-1  ¶¶ 31-33), WHEREAS, UNDER THE COURT'S CLAIM CONSTRUCTION ORDER (DKT #100 AT 19), THE PATENT AS ORIGINALLY ISSUED CLAIMED A COSTIMULATORY REGION ENCODED BY AMINO ACIDS 11**3**-220 IN CD28. THEREFORE, IF THE COC IS INVALID AND THE PATENT IS LIMITED TO ITS ORIGINAL SCOPE, YESCARTA DOES ***NOT*** INFRINGE ***AS A MATTER OF LAW***. (DKT #246 AT 8-9) (PLAINTIFFS ARE ESTOPPED FROM ASSERTING THE DOCTRINE OF EQUIVALENTS). **2.** THIS PROPOSED INSTRUCTION, LIKE PLAINTIFFS' PROPOSED VERDICT FORM, ALSO PUTS THE CART BEFORE THE HORSE WITH REGARD TO WILLFULNESS.  BECAUSE THE JURY DOES NOT NEED TO DECIDE WILLFUL INFRINGEMENT IF IT FINDS EITHER THE COC OR THE ASSERTED CLAIMS INVALID, WILLFUL INFRINGEMENT LOGICALLY SHOULD BE DISCUSSED <u>AFTER</u> THOSE ISSUES. **3.** THIS INSTRUCTION IS ONE-SIDED AND INCOMPLETE. IT DOES NOT DISCUSS THE LEGAL STANDARD FOR INVALIDATING A CERTIFICATE OF CORRECTION, AND IT FAILS TO MENTION THE OPERATIVE LEGAL STANDARD FOR WRITTEN DESCRIPTION OF GENUS CLAIMS OR THAT THE *FULL SCOPE* OF THE INVENTION MUST BE DESCRIBED AND ENABLED.  IT ALSO UNNECESSARILY REPEATS BURDEN OF PROOF INSTRUCTIONS.

1   **PRELIMINARY INSTRUCTION NO. 10** (AS PROPOSED BY

2   DEFENDANT)

3   **(Overview of Applicable Law)**

4       In deciding the issues I just discussed, you will be asked to consider specific

5   legal standards.  I will give you an overview of those standards now and will review

6   them in more detail before the case is submitted to you for your verdict.

7       The first issue you will be asked to decide is whether the certificate of

8   correction for the '190 patent is valid.  A patent owner may obtain a certificate of

9   correction only for "a mistake of a clerical or typographical nature, or of minor

10  character."  Because the certificate of correction for the '190 patent broadened the

11  scope of its claims, the certificate of correction is invalid unless both of the following

12  would have been clearly evident to a person skilled in the art of the invention: (1) the

13  presence of a clerical error and (2) how that error should be corrected.  If you find

14  the certificate of correction is invalid, Kite's product YESCARTA does not infringe

15  the '190 patent.

16      A patent claim may be invalid if its description in the specification does not

17  meet certain requirements.  To be valid, a patent must meet the "written description"

18  requirement.  To sufficiently describe the claims, the specification must provide a

19  precise definition of the claimed invention, such as by structure, formula, or chemical

20  name of the claimed subject matter sufficient to distinguish it from other materials.

21  The law also distinguishes between a patent claim that covers a specific compound

22  and patent claims that cover a class of compounds.  A claim that cover a class of

23  compounds is called a "genus claim."  The claims at issue here are all genus claims.

24  In order for a genus claim to meet the written description requirement, the

25  specification of the '190 patent must include (1) a representative number of species

26  falling within the scope of the genus or (2) describe structural features common to

27  the members of the genus so that a person of skill in the art can "visualize or

28  recognize" the members of the genus.

The disclosure of a patent must also meet the "enablement" requirement.  To meet this requirement, the description in the patent has to be sufficiently full and clear to have allowed persons of ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention without undue experimentation, at the time the provisional patent application was filed.  There are a number factors you must consider in assessing enablement, which I will instruct you on after the parties have presented their evidence.

If you decide both that certificate of correction is not invalid and that any of the asserted claims is not invalid, you will then need to decide any money damages to be awarded to Plaintiffs to compensate them for the infringement.  Damages are determined based on what the Sloan Kettering Institute would have received had it been paid a reasonable royalty.  I will instruct you later on the meaning of a reasonable royalty.  The damages you award are meant to compensate Plaintiffs and not to punish Kite.  You may not include in your award any additional amount as a fine or penalty, above what is necessary to compensate Plaintiffs for the infringement, in order to punish Kite.  I will give you more detailed instructions on the calculation of damages at the conclusion of the case.


Authority:  Federal Circuit Bar Association's Model Patent Jury Instructions ("FCBA Model") A.4 (as modified to remove prior art defenses, infringement, and damages other than a reasonable royalty and to add certificate of correction defense, written description requirements for genus and biotechnology claims, and more complete explanation of enablement defense).  For authorities justifying written description and enablement elaboration as well as certificate of correction defense, see the corresponding final instructions.

**PLAINTIFFS' OBJECTIONS: (1)** KITE'S PROPOSED INSTRUCTION IMPROPERLY INVERTS THE ORDER OF PROOF, AND THE ORDER IN WHICH THE EVIDENCE SHOULD BE PRESENTED AT TRIAL. *SEE* DKT. NO. 335 AT 2-3.  THE FIRST ISSUE FOR THE JURY TO DECIDE IS WHETHER KITE'S ADMITTED INFRINGEMENT OF THE CORRECTED PATENT IS WILLFUL, NOT WHETHER THE COC IS INVALID.  **(2)** THIS PURPORTED OVERVIEW OF THE APPLICABLE LAW FAILS TO MENTION WILLFULNESS WHICH IS AN ISSUE FOR THE JURY, AND IS PREJUDICIAL IN ITS DETAILED DISCUSSION OF INVALIDITY ISSUES BY MAKING THE REQUIREMENTS OF A PATENT SEEM OVERLY CONVOLUTED AND COMPLEX, PARTICULARLY THIS EARLY IN THE CASE, AND BY DEVOTING NEARLY THE ENTIRE "OVERVIEW" TO INVALIDITY.  AN OVERVIEW INSTRUCTION SHOULD BE A STRAIGHTFORWARD AND BALANCED DESCRIPTION OF THE ISSUES.  **(3)** THERE IS NO MENTION OF THE CLEAR AND CONVINCING BURDEN ON THE INVALIDITY ISSUES, AND THAT IT IS KITE'S BURDEN.  **(4)** KITE MISCONSTRUES THE COURT'S DECISION IN DKT. NO. 304 IN OMITTING JUNO/JUNO'S INTEREST FROM THE HYPOTHETICAL NEGOTIATION.  PLAINTIFFS' PROPOSAL, BY CONTRAST, PROPERLY IDENTIFIES JUNO AND SLOAN KETTERING AS THE PARTIES NEGOTIATING THE REASONABLE ROYALTY AT THE HYPOTHETICAL NEGOTIATION WITH KITE/GILEAD.

**PRELIMINARY INSTRUCTION NO. 23 (AS PROPOSED BY PLAINTIFFS) (Outline of Trial)**

The trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.

The presentation of evidence will then begin.  Witnesses will take the witness stand and the documents will be offered and admitted into evidence.  There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  On some issues, you must decide whether something is more likely true than not.  On other issues, you must use a higher standard and decide whether it is highly likely that something is true.

Juno and Sloan Kettering will present evidence on their contention that the infringement by Kite has been and continues to be willful.  Juno and Sloan Kettering will also present evidence on money damages to be awarded to compensate them for Kite's infringement.  These witnesses will be questioned by Plaintiffs' counsel in what is called direct examination.  After the direct examination of a witness is completed, the opposing side, Kite's counsel, has an opportunity to cross-examine the witness.  After that, Plaintiffs' counsel has the opportunity to question the witness one more time in what is called redirect examination, and finally, Kite's counsel has an opportunity to question the witness one more time in what is called re-cross-examination.  To persuade you that any infringement was willful, Juno and Sloan Kettering must prove that it is more likely true than not that the infringement was willful.  The same "more likely true than not" standard also applies to the amount of money damages.

After Juno and Sloan Kettering have presented their witnesses, Kite will call its witnesses, who will also be examined and subject to cross-examination, redirect, and re-cross-examination.  Kite will present its evidence on its contention that the Certificate of Correction of the '190 Patent is invalid and that the asserted claims of

the '190 Patent are invalid.  To prove invalidity of the Certificate of Correction and invalidity of the asserted claims, Kite must persuade you that it is highly likely that the Certificate of Correction is invalid, and that it is highly likely that the asserted claims of the '190 Patent are invalid.  In addition to presenting its evidence on its contentions of invalidity, Kite will put on evidence responding to the Plaintiffs' contentions regarding willfulness and money damages.

Juno and Sloan Kettering will then return and will put on evidence responding to Kite's contentions that the Certificate of Correction and the asserted claims of the '190 Patent are invalid.  Juno and Sloan Kettering will also have the option to put on what is referred to as "rebuttal" evidence to any evidence offered by Kite of lack of willfulness and regarding the amount of damages.

Finally, Kite will have the option to put on "rebuttal" evidence to any evidence offered by Juno and Sloan Kettering on the validity of the Certificate of Correction and the asserted claims of the '190 Patent.

During the presentation of the evidence, the attorneys will be allowed brief opportunities to explain what they believe the evidence has shown or what they believe upcoming evidence will show.  Such comments are not evidence and are being allowed solely for the purpose of helping you understand the evidence.

Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence comes in and wait for all the evidence before you make any decisions. In other words, you should keep an open mind throughout the entire trial.

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case. Closing arguments are not evidence.  After the closing arguments and instructions, you will then decide the case.

Authority:  N.D. Cal. Model, Instruction A.5 (instruction at 32:19-21 and 32:27 regarding re-cross examination added, consistent with the Court's Standing

1   Order; deleted a paragraph that would follow the paragraph ending at 33:21 because
2   it relates to deposition testimony, for which a separate instruction has been proposed
3   (Evidentiary Instruction No. 1); also modified as to the standard of proof for
4   willfulness at 32:22, consistent with *Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
5   136 S. Ct. 1923 (2016)); proposed instruction amended on 12/1/19 (at 33:9-18 above)
6   to account for rulings at the Pretrial Conference regarding rebuttal presentations and
7   interim summations.

1   **DEFENDANT'S OBJECTIONS:**   THIS PROPOSED INSTRUCTION IS

2   BIASED.  ANY INSTRUCTION ABOUT THE ORDER OF TRIAL SHOULD BE

3   BALANCED AND NON-ARGUMENTATIVE.   PLAINTIFFS' PROPOSED

4   INSTRUCTION    ERRONEOUSLY    PRESUMES    INFRINGEMENT,

5   REPEATEDLY REFERRING  TO "THE INFRINGEMENT BY KITE," AND

6   "KITE'S INFRINGEMENT." AS DISCUSSED ABOVE, WHETHER KITE

7   INFRINGES THE '190 PATENT IS AN ISSUE TO BE DECIDED AT TRIAL; AS

8   A MATTER OF LAW, YESCARTA DOES NOT INFRINGE THE PATENT IF

9   THE COC IS FOUND TO BE INVALID. IT WOULD BE EXTREMELY

10  PREJUDICIAL AND LEGALLY INCORRECT TO SUGGEST THAT

11  INFRINGEMENT HAS BEEN DECIDED IN FAVOR OF PLAINTIFFS.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRELIMINARY INSTRUCTION NO. 23 (AS PROPOSED BY DEFENDANT)**

**(Outline of Trial)[1]**

The trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.

The presentation of evidence will then begin.  Witnesses will take the witness stand and the documents will be offered and admitted into evidence.  There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  On some issues, you must decide whether something is more likely true than not.  On other issues you must use a higher standard and decide whether it is highly probable that something is true.

Plaintiffs will present their evidence on their contention that some claims of the '190 patent have been willfully infringed by Kite.  They will also present evidence about the amount of damages they are seeking.  These witnesses will be questioned by Plaintiffs' counsel in what is called direct examination. After the direct examination of a witness is completed, Kite's counsel has an opportunity to cross-examine the witness.  Finally, Plaintiffs' counsel has the opportunity to question the witness one more time in what is called redirect examination.  To persuade you that any infringement was willful, Plaintiffs must prove that it is more likely true than not that the infringement was willful.

After Plaintiffs have presented their witnesses on willfulness and damages, Kite will call its witnesses, who will also be examined and subject to cross-

---

[1] Kite objects to submitting "willfulness" and alleged evidence thereof to the jury as not required by the Seventh Amendment, confusing, unfairly prejudicial, a waste of time, and inconsistent with Supreme Court precedent, including but not limited to *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016), and *Tull v. United States*, 481 U.S. 412 (1987).  Kite submits this instruction under protest solely because current Federal Circuit precedent has rejected Kite's objection, *see, e.g.*, *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 & n.13 (Fed. Cir. 2016), and reserves its right to challenge that precedent on appeal.

1  examination and redirect.  Kite will present its evidence that it does not infringe the

2  '190 patent because the certificate of correction is invalid and that the asserted claims

3  of the '190 patent are invalid.  To prove invalidity of the certificate of correction or

4  any claim, Kite must persuade you that it is highly probable that the certificate of

5  correction or claim is invalid.  In addition to presenting its evidence of invalidity,

6  Kite will put on evidence responding to Plaintiffs' willfulness contention and to

7  Plaintiffs' damages calculations.

8        Plaintiffs will then return and will put on evidence responding to Kite's

9  contention that the certificate of correction and claims of the '190 patent are invalid.

10 Plaintiffs will also have the option to put on what is referred to as "rebuttal" evidence

11 to any evidence offered by Kite of lack of willfulness and damages.

12       Finally, Kite will have the option to put on "rebuttal" evidence to any evidence

13 offered by Plaintiffs on the validity of the certification of correction and asserted

14 claims of the '190 patent.

15       During the presentation of the evidence, the attorneys will be allowed brief

16 opportunities to explain what they believe the evidence has shown or what they

17 believe upcoming evidence will show.  Such comments are not evidence and are

18 being allowed solely for the purpose of helping you understand the evidence.

19       Because the evidence is introduced piecemeal, you need to keep an open mind

20 as the evidence comes in and wait for all the evidence before you make any decisions.

21 In other words, you should keep an open mind throughout the entire trial.

22       The parties may present the testimony of a witness by reading from his or her

23 deposition transcript or playing a videotape of the witness's deposition testimony.  A

24 deposition is the sworn testimony of a witness taken before trial and is entitled to the

25 same consideration as if the witness had testified at trial.

26       After the evidence has been presented, [the attorneys will make closing

27 arguments and I will give you final instructions on the law that applies to the case] [I

28 will give you final instructions on the law that applies to the case and the attorneys

will make closing arguments].   Closing arguments are not evidence. After the [closing arguments and instructions] [instructions and closing arguments], you will then decide the case.

*Authority:*  N.D. Cal. Model Instruction A.5 (as modified to add certificate of correction defense, omit some discussion of infringement, and incorporate the standard of proof set forth in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016)).

**PLAINTIFFS' OBJECTIONS: (1)** PLAINTIFFS OBJECT TO KITE'S PROPOSAL DISREGARDING KITE'S EXPRESS STIPULATION TO LITERAL INFRINGEMENT AFTER THE COC, *SEE* DKT. NO. 223, AND IMPROPERLY SUGGESTING THAT PLAINTIFFS NEED TO PROVE INFRINGEMENT. FOR EXAMPLE, KITE'S STATEMENT AT 36:13-14 SUGGESTS THAT PLAINTIFFS MUST PROVE BOTH INFRINGEMENT AND WILLFUL INFRINGEMENT. IN CONTRAST, PLAINTIFFS' PROPOSAL (AT 32:12-13) IS ACCURATE AND CONSISTENT WITH THE MODEL. KITE'S STATEMENT AT 37:1-3 LIKEWISE MISLEADS THAT PLAINTIFFS MUST PROVE INFRINGEMENT. AND KITE'S STATEMENTS ARE CONTRARY TO THE PRESUMPTION OF VALIDITY. **(2)** PLAINTIFFS OBJECT TO KITE'S PROPOSAL AT 36:14 OMITTING THE MODEL LANGUAGE, AND AS PLAINTIFFS CONTEND, THAT KITE'S INFRINGEMENT "CONTINUES TO BE WILLFUL." **(3)** PLAINTIFFS OBJECT TO KITE'S PROPOSAL AT 36:13 REFERRING TO "SOME CLAIMS." PLAINTIFFS ASSERT KITE WILLFULLY INFRINGES <u>ALL</u> THE ASSERTED CLAIMS. KITE'S USE OF "SOME" IS CONFUSING AND INACCURATE. **(4)** KITE'S REFERENCE AT 36:14-15 TO DAMAGES PLAINTIFFS "ARE SEEKING" IS NOT BALANCED AND DISREGARDS THAT PLAINTIFFS ARE ENTITLED TO COMPENSATION FOR KITE'S INFRINGEMENT. *SEE* 35 U.S.C. § 284. PLAINTIFFS' PROPOSAL (AT 32:13-15) IS ACCURATE. **(5)** KITE'S PROPOSAL (*E.G.*, 36:10-12, 36:20, 37:4) AND THE UNDERLYING N.D. CAL. MODEL INSTRUCTION CONFUSINGLY USE "LIKELY" AND "PROBABLE" TO DESCRIBE THE APPLICABLE BURDENS (*E.G.*, REFERRING TO "HIGHLY PROBABLE" AND "MORE LIKELY TRUE THAN NOT"). "LIKELY" SHOULD BE CONSISTENTLY USED, AS PROPOSED BY PLAINTIFFS. **(6)** KITE'S PROPOSAL FAILS TO NOTE THE AVAILABILITY FOR RE-CROSS EXAMINATION. *SEE* DKT. NO. 12 AT B-4. PLAINTIFFS' PROPOSAL ACCOUNTS FOR THIS (AT 32:19-21, 32:27).

**(AS PROPOSED BY DEFENDANT)**

**<u>Glossary</u>**

Some of the terms in this glossary will be defined in more detail in the instructions you are given. The definitions in the instructions must be followed and must control your deliberations.

| <u>Term</u> | <u>Definition</u> |
|---|---|
| Application | The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the "USPTO" or "PTO"). |
| Amendment | A patent applicant's change to one or more claims or to the specification either in response to an office action taken by a Patent Examiner or independently by the patent applicant during the patent application examination process. |
| Assignment | A transfer of patent rights to another called an "assignee" who upon transfer becomes the owner of the rights assigned. |
| Claim | Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed.  Claims may be independent or dependent.  An independent claim stands alone. A dependent claim does not stand alone and refers to one or more other claims.  A dependent claim incorporates whatever the other referenced claim or claims say. |
| Drawings | The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention. |

| Elements | The required parts of a device.  A device infringes a patent if it contains each and every requirement of a patent claim. |
|---|---|
| Embodiment | A product or method that contains the claimed invention. |
| Examination | Procedure before the U.S. Patent and Trademark Office whereby a Patent Examiner reviews the filed patent application to determine if the claimed invention is patentable. |
| Filing Date | Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office. |
| Limitation | A required part of an invention set forth in a patent claim.  A limitation is a requirement of the invention.  The word "limitation" is often used interchangeably with the word "requirement." |
| Office Action | A written communication from the Patent Examiner to the patent applicant in the course of the application examination process. |
| Patent | A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, offering to sell, or selling an invention within the United States, or from importing it into the United States, during the term of the patent.  When the patent expires, the right to make, use or sell the invention is dedicated to the public.  The patent has three parts, which are a specification, drawings and claims.  The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history. |
| Patent and Trademark Office (PTO) | An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks.  It is responsible for examining all patent applications and issuing all patents in the United States. |
| Person of Ordinary Skill in the Art | The level of experience, education, or training generally possessed by those individuals who work in the area of the invention at the time of the invention. |

| Prosecution History | The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent.  The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process. |
|---|---|
| Requirement | A required part or step of an invention set forth in a patent claim.  The word "requirement" is often used interchangeably with the word "limitation." |
| Request for Continued Examination | A Request for Continued Examination, sometimes abbreviated as "RCE," may be filed by the patent applicant after the examiner finds that the application and claims meet the requirements for a patent, but before the patent is actually issued, in order for the applicant to submit additional information to be considered by the examiner. |
| Royalty | A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use or sell the claimed invention. |
| Specification | The specification is a required part of a patent application and an issued patent.  It is a written description of the invention and of the manner and process of making and using the claimed invention. |

Authority:  N.D. Cal. Glossary (as modified to remove inapplicable concepts and with additions from AIPLA glossary).

1   **PLAINTIFFS' OBJECTIONS: (1)** PLAINTIFFS OBJECT TO THE PROPOSED

2   GLOSSARY, AS THE DESCRIPTIONS ARE CONDENSED, AND SOME ARE

3   NOT HELPFUL TO THE JURY GIVEN THE ISSUES IT IS TO DECIDE.  THE

4   PROPOSED PRELIMINARY AND CLOSING INSTRUCTIONS SUFFICIENTLY

5   AND MORE ACCURATELY EXPLAIN TERMS RELEVANT TO THIS CASE,

6   AND GIVE THEM PROPER CONTEXT WHICH A GLOSSARY DOES NOT

7   PROVIDE.  IN THE N.D. CAL. MODEL (AT P. 4), WHICH KITE INVOKES, A

8   GLOSSARY IS OPTIONAL ("THE COURT MAY WISH TO HAND OUT" A

9   GLOSSARY.); THE AIPLA MODEL, ALSO USED BY KITE, CONTEMPLATES

10  A GLOSSARY ONLY WHERE "AGREED UPON BETWEEN THE PARTIES,"

11  WHICH IS NOT SO HERE.   A GLOSSARY IS NO SUBSTITUTE TO

12  INSTRUCTIONS; IT MERELY PROVIDES DEFINITIONS IN ISOLATION,

13  WITHOUT CONTEXT, WHICH WILL LIKELY CAUSE JURY CONFUSION

14  AND INVITE ERROR.  HERE IN PARTICULAR, WHERE THE GLOSSARY

15  SUBSTANTIALLY OVERLAPS WITH THE INSTRUCTIONS, A GLOSSARY IS

16  UNNECESSARY AND RISKS CONFUSION AND UNDUE PREJUDICE.  **(2)** IN

17  THE EVENT THAT THE COURT DECIDES TO PROVIDE A GLOSSARY, IT

18  SHOULD PROVIDE PLAINTIFFS', WHICH INCLUDES ONLY THE TERMS

19  WARRANTED HERE.   KITE'S PROPOSAL IS OVERLY LONG AND

20  INCLUDES TERMS NOT CENTRAL TO THIS CASE, *E.G.*, ASSIGNMENT,

21  DRAWINGS, LIMITATION, AND REQUIREMENT.

22

23

24

25

26

27

28

**(PLAINTIFFS' PROPOSED ALTERNATIVE GLOSSARY, SUBJECT TO THE ABOVE OBJECTIONS TO ANY GLOSSARY)**

**Glossary**

Some of the terms in this glossary will be defined in more detail in the legal instructions you are given.  The definitions in the instructions must be followed and must control your deliberations.

| Term | Definition |
|------|------------|
| Claim | Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e., similar to a landowner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed.  Claims may be independent or dependent.  An independent claim stands alone.  A dependent claim does not stand alone and refers to one or more other claims.  A dependent claim incorporates whatever the other referenced claim or claims say. |
| Element | The required parts of a device or the required steps of a method.  A device or method infringes a patent if it contains each and every requirement of a patent claim. |

| **Term** | **Definition** |
|---|---|
| Examination | Procedure before the U.S. Patent and Trademark Office whereby a Patent Examiner reviews the filed patent application to determine if the claimed invention is patentable. |
| Office Action | A written communication from the Patent Examiner to the patent applicant in the course of the application examination process. |
| Patent | A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, offering to sell, or selling an invention within the United States, or from importing it into the United States, during the term of the patent. When the patent expires, the right to make, use or sell the invention is dedicated to the public.  The patent has three parts, which are a specification, drawings and claims.  The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history. |
| Patent and Trademark Office (PTO) | An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks.  It is responsible for examining all patent applications and issuing all patents in the United States. |

| Term | Definition |
|------|------------|
| Prosecution history | The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent.  The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process. |
| Royalty | A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use or sell the claimed invention. |
| Specification | The specification is a required part of a patent application and an issued patent.  It is a written description of the invention and of the manner and process of making and using the claimed invention. |

Authority:   N.D. Cal. Model Instructions, Glossary (modified to omit inapplicable terms or terms more appropriately covered in an instruction).

1   **DEFENDANT'S OBJECTIONS:**   THE PURPOSE OF A GLOSSARY IS TO

2   ASSIST THE JURY IN UNDERSTANDING THE TERMS THEY WILL HEAR

3   DURING THE TRIAL AND TO PROVIDE A USEFUL REFERENCE FOR

4   JURORS   IN   THE   DELIBERATION   ROOM.   PLAINTIFFS'   PROPOSED

5   ALTERNATIVE GLOSSARY, HOWEVER, IS AT CROSS-PURPOSES WITH

6   THAT OBJECTIVE BECAUSE IT IS INCOMPLETE AND ONE-SIDED. IT

7   OMITS TECHNICAL TERMINOLOGY TO WHICH KITE IS LIKELY TO

8   REFER, INCLUDING   "APPLICATION," "AMENDMENTS," "DRAWINGS,"

9   "EMBODIMENT," "FILING DATE," AND "PERSON OF ORDINARY SKILL IN

10  THE ART," WHICH ARE RELEVANT TO KITE'S DEFENSES; AND

11  "ASSIGNMENT," WHICH IS RELEVANT TO DAMAGES.   ADDITIONALLY,

12  PLAINTIFFS'   PROPOSED   ALTERNATIVE   GLOSSARY   OMITS

13  "LIMITATIONS"   AND   "REQUIREMENTS,"   WHICH   ARE   COMMON

14  ALTERNATIVE   WAYS   OF   REFERRING   TO   "ELEMENTS."   JUROR

15  COMPREHENSION WILL BE ASSISTED BY A GLOSSARY NOTING THAT

16  THESE TERMS ARE OFTEN USED INTERCHANGEABLY.

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CLOSING INSTRUCTION NO. 6</u>** **(AS PROPOSED BY PLAINTIFFS)**

**<u>(Impeachment Evidence—Witness)</u>**

The evidence that a witness, *e.g.*, lied under oath on a prior occasion, may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

Authority:  9th Cir. Model, Instruction 2.9.

**DEFENDANT'S OBJECTIONS:**  AS THE COMMENTS TO THE MODEL INSTRUCTION MAKE CLEAR, THIS IS A *LIMITING INSTRUCTION* TO BE GIVEN IF AND WHEN CHARACTER EVIDENCE OR OTHER SIMILARLY POTENTIALLY PREJUDICIAL EVIDENCE IS ADMITTED FOR THE PURPOSE OF ATTACKING WITNESS CREDIBILITY.   IT THUS IS GIVEN ONLY WHEN THE FOUNDATION FOR SUCH AN INSTRUCTION HAS BEEN LAID AT TRIAL; IT IS NOT A ROUTINE INSTRUCTION.  *SEE* 9TH CIR. MODEL, INSTRUCTION 2.9 (CITING FRE 806 (CHARACTER EVIDENCE ADMISSIBLE FOR LIMITED PURPOSE OF ATTACKING CREDIBILITY); FRE 809 (EVIDENCE OF PRIOR CONVICTION ADMISSIBLE FOR LIMITED PURPOSE OF ATTACKING CHARACTER FOR TRUTHFULNESS); *UNITED STATES V. HANKEY*, 203 F.3D 1160, 1173 (9TH CIR. 2000) (EVIDENCE OF GANG MEMBERSHIP ADMITTED SUBJECT TO LIMITING INSTRUCTION TO SHOW BIAS OF WITNESS)).  THUS, THE INSTRUCTION SHOULD BE GIVEN, IF AT ALL, IF AND WHEN THE NEED ARISES. AND, AS THE COMMENT TO THE MODEL INSTRUCTION MAKES CLEAR, THIS INSTRUCTION SHOULD *NOT* BE REPEATED IN CLOSING AS PLAINTIFFS HAVE REQUESTED.   INSTEAD, THE MODEL STATES THAT "IF THIS INSTRUCTION IS GIVEN DURING THE TRIAL, THE COMMITTEE RECOMMENDS GIVING THE SECOND SENTENCE IN NUMBERED PARAGRAPH 3 OF INSTRUCTION 1.10 (WHAT IS NOT EVIDENCE) WITH THE CONCLUDING INSTRUCTIONS. SEE ALSO INSTRUCTION 1.11 (EVIDENCE FOR LIMITED PURPOSE)."

**CLOSING INSTRUCTION NO. 7** **(AS PROPOSED BY PLAINTIFFS)**

**(Stipulations of Fact)**

The parties have agreed to certain facts that have been read to you.  You must therefore treat these facts as having been proved.

[List Facts]


Authority:  9th Cir. Model, Instruction 2.2 (modified to reflect that stipulated facts have been read in open court; modified to include stipulated facts with closing instructions).

1   **DEFENDANT'S OBJECTIONS:** AS THE "AGREED" SET OF
2   INSTRUCTIONS REFLECT, KITE DOES NOT OBJECT TO THIS
3   INSTRUCTION BEING PROVIDED DURING TRIAL. THE JURY SHOULD BE
4   INFORMED OF THE FACTS TO WHICH THE PARTIES HAVE STIPULATED.
5   HOWEVER, IT IS UNNECESSARY TO REPEAT THE INSTRUCTION IN
6   CLOSING.

**<u>CLOSING INSTRUCTION NO. 11</u>** (AS PROPOSED BY PLAINTIFFS)

**<u>(Burden of Proof)</u>**

In my instructions to you before trial began and in these final instructions, I often refer to a party's burden of proof.  There are two different burdens of proof relevant to this case.

The first is known as a burden of proof by a preponderance of the evidence. When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more likely true than not true.

The second burden of proof I will discuss is known as a burden of proof by clear and convincing evidence.  When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly likely that the factual contentions of the claim or defense are true.  This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

You should base your decision on all of the evidence, regardless of which party presented it.


Authority:  9th Cir. Model, Instructions 1.6 and 1.7 (combined into a single instruction for simplicity; further modified the portion from Ninth Circuit Model Instruction 1.6 to use the phrase "more likely true than not true" for the preponderance of the evidence standard, consistent with N.D. Cal. Model Instructions A.5, B.3.1, & B.5.1, and FCBA Model Instructions A.5, B.3.1 & B.6.1; further modified the portion from Ninth Circuit Model Instruction 1.7 to use the phrase "highly likely" for the "clear and convincing evidence" standard for clarity).

**DEFENDANT'S OBJECTIONS:** *FIRST,* PLAINTIFFS' PROPOSED INSTRUCTION ON CLEAR-AND-CONVINCING EVIDENCE DEPARTS FROM FEDERAL CIRCUIT PRECEDENT, WHICH HAS CONSISTENTLY USED "HIGHLY PROBABLE" TO DESCRIBE THE CLEAR-AND-CONVINCING EVIDENCE STANDARD, NOT "HIGHLY LIKELY." *SEE, E.G.*, *IMPAX LABS. INC. V. LANNETT HOLDINGS*, 893 F.3D 1372, 1378 (FED. CIR. 2018); *PROCTER & GAMBLE CO. V. TEVA PHARM. USA*, 566 F.3D 989, 994 (FED. CIR. 2009).

*SECOND*, THIS NINTH CIRCUIT MODEL JURY INSTRUCTION USES THE CONFUSING LANGUAGE "FIRM BELIEF" WHEN BOTH THE N.D. CAL. MODEL INSTRUCTIONS ON BURDEN OF PROOF AND THE AIPLA MODEL INSTRUCTIONS AVOID JURY CONFUSION BY OMITTING THE PHRASE "FIRM BELIEF" AND SIMPLY USING THE PHRASE "HIGHLY PROBABLE." *SEE, E.G.*, N.D. CAL MODEL 4.1A; AIPLA MODEL II.B, 4.

*THIRD*, THE OTHER MODEL INSTRUCTIONS ALREADY ADDRESS THE BURDEN OF PROOF ISSUE-BY-ISSUE, AND KITE'S PROPOSED INSTRUCTIONS FOLLOW THAT APPROACH, *SEE* KITE'S PROPOSED INSTRUCTIONS 20, 21, 22. A STANDALONE INSTRUCTION SUCH AS THIS IS UNNECESSARY AND DUPLICATIVE. *SEE, E.G.,* PLAINTIFFS' PROPOSED PRELIMINARY INSTRUCTION NO. 23 ("OUTLINE OF TRIAL") (EXPLAINING THERE ARE TWO DIFFERENT BURDENS OF PROOF THE JURY WILL APPLY). IF THE COURT IS INCLINED TO GIVE SUCH AN INSTRUCTION, KITE RESPECTFULLY REQUEST THAT THE COURT OFFER THE ALTERNATIVE PROPOSED DIRECTLY BELOW.

**CLOSING INSTRUCTION NO. 11** <span style="color:red">**(AS PROPOSED BY DEFENDANT)**</span>
**(Burden of Proof)**

In these instructions, I will often refer to a party's burden of proof.  I will be discussing two different burdens of proof.

The first is known as a burden of proof by a preponderance of the evidence.  When a party has the burden of proving a claim or defense by a preponderance of the evidence, it means the party must persuade you that it is more likely than not that the claim or defense is established.

The second burden of proof I will discuss is known as a burden of proof by clear and convincing evidence.  When a party has the burden of proving something by clear and convincing evidence, it means the party must persuade you that it is highly probable that the claim or defense is established.

Authority:   N.D. Cal. Model Instructions 4.1a, 5.1 (combined into a single instruction, and modified to track Plaintiffs' proposed introductory language and substitute "the party" for "[Patent holder]" and "[alleged infringer]," respectively).

**PLAINTIFFS' OBJECTIONS: (1)** PLAINTIFFS OBJECT THAT KITE'S PROPOSAL DEVIATES WITHOUT REASON FROM THE NINTH CIRCUIT'S MODEL INSTRUCTION SPECIFICALLY ON POINT (*I.E.*, A BASIC INSTRUCTION DEFINING THE APPLICABLE BURDENS OF PROOF).  KITE DRAWS ITS PROPOSED INSTRUCTION FROM NON-CORRESPONDING N.D. CAL. MODEL PATENT JURY INSTRUCTIONS, WHICH CONCERN INVALIDITY AND INFRINGEMENT AND ARE TOPICS AND INSTRUCTIONS ALREADY ADDRESSED ELSEWHERE (CLOSING INSTR. NOS. 18, 19, 21, 22).  THOSE MODEL INSTRUCTIONS ARE DESIGNED TO "REMIND" THE JURY ABOUT THE BURDEN OF PROOF, NOT DEFINE THOSE BURDENS.  BY CONTRAST, PLAINTIFFS' PROPOSAL DIRECTLY FOLLOWS THE NINTH CIRCUIT MODEL; PLAINTIFFS' PROPOSAL INCORPORATES LIMITED MATTER FROM THE N.D. CAL. MODEL INSTRUCTIONS (*E.G.*, USING "MORE LIKELY" RATHER THAN "MORE PROBABLY") THAT ARE HELPFUL GENERAL CONCEPTS FOR THE JURY. **(2)** PLAINTIFFS OBJECT THAT KITE'S PROPOSAL INSTRUCTS THE JURY TO CONSIDER WHETHER "THE PARTY" (AS OPPOSED TO "THE EVIDENCE," AS USED IN THE NINTH CIRCUIT MODEL PLAINTIFFS PROPOSE) HAS PERSUADED THE JURY, WHICH FAILS TO COMMUNICATE THE IMPORTANCE OF EVIDENCE IN ASSESSING WHETHER A BURDEN HAS BEEN MET.  THE NINTH CIRCUIT MODEL PLAINTIFFS PROPOSE, BY CONTRAST, PROPERLY FOCUSES ON THE EVIDENCE. **(3)** PLAINTIFFS OBJECT TO KITE'S OMISSION OF LANGUAGE COMPARING THE STANDARDS APPLICABLE IN THIS CASE.  THE NINTH CIRCUIT MODEL USED BY PLAINTIFFS (52:14-16) PROVIDES IMPORTANT GUIDANCE TO THE JURY IN THE FORM OF THIS CLARIFICATION.

**CLOSING INSTRUCTION NO. 12** (AS PROPOSED BY PLAINTIFFS)
**(Summary of Contentions)**

I will first give you a summary of each side's contentions in this case.  I will then tell you what each side must prove to win on each of its contentions.  As I previously told you, Juno and Sloan Kettering seek money damages from Kite for infringing claims 3, 5, 9, and 11 of the '190 Patent by making, importing, using, selling, and offering for sale Kite's Yescarta® product.  Juno and Sloan Kettering also argue that Kite's infringement has been willful.

Kite has admitted that its Yescarta® product infringes the '190 Patent as corrected by the Certificate of Correction.  So infringement of the '190 Patent as corrected is not an issue you are deciding in this case.  Kite argues that the Certificate of Correction is invalid.  Kite also argues that the asserted claims are invalid.

Your job is to decide whether Juno and Sloan Kettering have shown that Kite's infringement was willful.  Juno and Sloan Kettering must prove willfulness by a preponderance of the evidence.

You will also need to decide whether Kite has shown that the Certificate of Correction is invalid and the asserted claims of the '190 Patent are invalid.  Kite must prove invalidity of the Certificate of Correction and invalidity of the asserted claims by clear and convincing evidence.

If you decide that Kite has not proven, by clear and convincing evidence, that the Certificate of Correction is invalid and that at least one of the asserted claims is invalid, you will then need to decide any money damages to be awarded to Juno and Sloan Kettering to compensate them for Kite's infringement.  Juno and Sloan Kettering have the burden to persuade you of the amount of their damages by a preponderance of the evidence.  If you decide that any infringement was willful, that decision should not affect any damage award you make.  I will take willfulness into account later.

1    <u>Authority</u>:  N.D. Cal. Model, Instruction B.1 (modified to describe the issues

2    to be decided by the jury consistent with Preliminary Instruction No. 6, and in a

3    manner consistent with N.D. Cal. Model Instruction A.5 (Plaintiffs' Proposed

4    Instruction No. 23 on "Outline of Trial"), in which willful infringement is presented

5    before invalidity defenses, and to include the standard of proof for each issue; also

6    modified at 56:6 to replace "allegedly infringing" with "infringing" because Kite has

7    stipulated to infringement of the corrected '190 Patent).

**DEFENDANT'S OBJECTIONS: 1.** IT IS HIGHLY MISLEADING TO SAY: "KITE ADMITS THAT IT INFRINGES THE ASSERTED CLAIMS OF THE '190 PATENT AS CORRECTED BY THE CERTIFICATE OF CORRECTION. SO YOU MUST ACCEPT THAT KITE INFRINGES THE '190 PATENT AS CORRECTED BY THE CERTIFICATE OF CORRECTION." KITE IN FACT CONTESTS THAT THE COC IS VALID AND EFFECTIVE. *SEE* DKT #223 ¶ 1 (STIPULATING THAT "*IF* THE [COC] IS NOT FOUND TO BE INVALID" YESCARTA MEETS EACH LIMITATION OF THE ASSERTED CLAIMS). IF THE COC IS INVALID, THEN THE ASSERTED CLAIMS HAVE THE SAME MEANING AND SCOPE AS WHEN THE PATENT ORIGINALLY ISSUED. IT IS UNDISPUTED THAT YESCARTA'S COSTIMULATORY REGION IS ENCODED BY AMINO ACIDS 11**4**-220 IN THE CD28 SEQUENCE (DKT #121-1 ¶¶ 31-33), WHEREAS, UNDER THE COURT'S CLAIM CONSTRUCTION ORDER (DKT #100 AT 19), THE PATENT AS ORIGINALLY ISSUED CLAIMED A COSTIMULATORY REGION ENCODED BY AMINO ACIDS 11**3**-220 IN CD28. THEREFORE, IF THE COC IS INVALID AND THE PATENT IS LIMITED TO ITS ORIGINAL SCOPE, YESCARTA DOES *NOT* INFRINGE *AS A MATTER OF LAW*. (DKT #246 AT 8-9) (PLAINTIFFS ARE ESTOPPED FROM ASSERTING THE DOCTRINE OF EQUIVALENTS). PLAINTIFFS' PROPOSAL, BY IMPROPERLY SUGGESTING THAT INFRINGEMENT HAS ALEADY BEEN DETERMINED, IS HIGHLY INACCURATE AND INVITES ERROR. **2.** FOR THE SAME REASONS, IT IS PREJUDICIAL TO REPLACE "ALLEGEDLY INFRINGING" WITH "INFRINGING" AND TO TELL THE JURY THAT THEY WILL DECIDE IF "KITE'S INFRINGEMENT" WAS WILLFUL. WHETHER KITE INFRINGED IS AN ISSUE TO BE DECIDED AT TRIAL. KITE'S PROPOSED INSTRUCTION NO. 12 ACCURATELY DESCRIBES THE PARTIES' STIPULATION AND ITS LEGAL IMPORT.

**CLOSING INSTRUCTION NO. 12 (AS PROPOSED BY DEFENDANT)**
**(Summary of Contentions of the Parties)**

As I did at the start of the case, I will give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions. It will be my job to tell you what the language of the patent claim means. You must follow my instructions as to the meaning of the patent claim. You are not to define the patent claim yourselves.

Plaintiffs contend that Kite sells a product that infringes claims 3, 5, 9, and 11 of the '190 patent. A patent claim is literally infringed only if the accused product includes each and every element in that patent claim.

Kite denies that it has infringed the '190 patent because it contends the certificate of correction for the '190 patent is invalid. Separately, Kite contends that claims 3, 5, 9, and 11 are invalid because the '190 patent neither has an adequate written description of those claims nor does it properly enable those claims.

Invalidity of the certificate of correction or asserted patent claim is a defense to infringement in this case. Therefore, even though the Patent Examiner has allowed the certificate of correction and claims 3, 5, 9, and 11 of the '190 patent, you, the jury, must decide whether the certificate of correction and claims 3, 5, 9, and 11 are invalid.


Authority: AIPLA Model II.B (as modified to add introduction, discussion of certificate of correction and to remove some discussion of infringement and standard of proof, the latter of which is discussed separately).

**PLAINTIFFS' OBJECTIONS:** **(1)** PLAINTIFFS OBJECT TO KITE'S MISLEADING AND UNDULY PREJUDICIAL STATEMENT THAT "KITE DENIES THAT IT HAS INFRINGED THE '190 PATENT BECAUSE IT CONTENDS THE [COC] FOR THE '190 PATENT IS INVALID." KITE HAS EXPRESSLY STIPULATED TO LITERAL INFRINGEMENT AFTER THE COC. *SEE* DKT. NO. 223. IT DID SO WHEN CONFRONTED WITH PLAINTIFFS' PROPOSED MOTION OF SJ OF INFRINGEMENT OF THE CORRECTED CLAIMS, BECAUSE KITE HAD NO EVIDENCE OF NON-INFRINGEMENT. IT MERELY WANTED TO PRESERVE ITS ARGUMENT THAT THE COC IS INVALID. JUST LIKE OTHER INVALIDITY DEFENSES, THE VALIDITY OF THE COC IS AN ISSUE THAT KITE BEARS THE BURDEN TO PROVE BY CLEAR AND CONVINCING EVIDENCE. KITE IMPROPERLY SEEKS TO PRESENT THE COC VALIDITY ISSUE AS AN INFRINGEMENT ISSUE TO SHIFT THE BURDEN TO PLAINTIFFS; IT WOULD CONFUSE THE JURY AND UNDULY PREJUDICE PLAINTIFFS. **(2)** PLAINTIFFS OBJECT TO KITE'S ARGUMENTATIVE AND IMBALANCED INSTRUCTION THAT PURPORTS TO PROVIDE "A SUMMARY OF EACH SIDES' CONTENTIONS" (LINES 3-4) BUT IN FACT REFERS ONLY TO KITE'S ISSUES (COC, WRITTEN DESCRIPTION, ENABLEMENT) AND DOES NOT REFER TO PLAINTIFFS' ISSUES (WILLFULNESS AND DAMAGES). **(3)** PLAINTIFFS OBJECT TO THE COURT PROVIDING CLAIM CONSTRUCTION (*SEE* LINES 6-7). PLAINTIFFS' INSTRUCTION IS BALANCED, FAIR, AND INCLUDES ALL ISSUES. **(4)** PLAINTIFFS OBJECT TO REFERENCES TO "THE PATENT CLAIM" AS INACCURATE. **(5)** PLAINTIFFS OBJECT TO KITE'S IMPROPER BURDEN DESCRIPTIONS, WHICH USE "HIGHLY PROBABLE" WHILE OMITTING "EVIDENCE."

**CLOSING INSTRUCTION NO. 13** (AS PROPOSED BY PLAINTIFFS)

**(What Is a Patent and How One Is Obtained)**

This case involves a dispute relating to a United States patent.

Patents are granted by the United States Patent and Trademark Office, sometimes called "the PTO." A valid United States patent gives the patent holder the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by means of a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO. The process of obtaining a patent is called patent prosecution. The PTO is an agency of the federal government and employs trained patent examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed and how to make and use it. In examining a patent application, the patent examiner reviews information about the state of the technology at the time the application was filed. As part of that effort, the patent examiner searches for and reviews information that is publicly available, submitted by the applicant, or both. That information is called "prior art." Prior art

1   is defined by law.  In general, prior art includes things that existed before the claimed

2   invention, that were publicly known, or used in a publicly accessible way in this

3   country, or that were patented or described in a publication in any country.  The

4   patent examiner considers, among other things, whether each claim defines an

5   invention that is new, useful, and not obvious in view of the prior art.  A patent lists

6   the prior art that the examiner considered; this list is called the "cited references."

7       After the prior art search and examination of the application, the patent

8   examiner then informs the applicant in writing what the examiner has found and

9   whether any claim is patentable, and thus will be "allowed."  This writing from the

10  patent examiner is called an "office action."  If the examiner rejects the claims, the

11  applicant has an opportunity to respond and sometimes changes the claims or submits

12  new claims.  The patent applicant may file a Request for Continued Examination,

13  sometimes abbreviated as "RCE."  An RCE may be filed after the examiner finds that

14  the application and claims meet the requirements for a patent, but before the patent

15  is actually issued, in order for the applicant to submit additional information to be

16  considered by the examiner.  This process, which takes place only between the

17  examiner and the patent applicant, may go back and forth for some time until the

18  examiner is satisfied that the application and claims meet the requirements for a

19  patent and the patent is issued.  The papers generated during this time of

20  communicating back and forth between the patent examiner and the applicant make

21  up what is called the "prosecution history."  All of this material becomes available to

22  the public no later than the date when the patent issues.  Occasionally, patents are

23  issued with errors.  The patentee can request a Certificate of Correction to correct

24  such errors.  The request for a Certificate of Correction and the PTO's decision on

25  that request also become part of the prosecution history of that patent.  If the PTO

26  grants the request for a Certificate of Correction, the Certificate of Correction

27  becomes part of the patent.

28      The fact that the PTO grants a patent does not necessarily mean that any

Parties' First Amended Disputed Jury Instructions
Case No. 2:17-cv-07639-SJO-KSx

invention claimed in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not have had available to it all the information that will be presented to you.  A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

Authority:   N.D. Cal. Model, Instruction A.1 (modified at 61:3 to delete a sentence stating "Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained"; modified at 62:1 to delete a sentence that refers to later instructions describing prior art, because Kite does not bring any prior art-based validity challenges, and further modified to explain to the jury the concept of a Request for Continued Examination ("RCE") and a Certificate of Correction ("CoC"), and to include enablement among the patentability requirements considered by the examiner when examining a patent application; also modified to delete a sentence that would follow the sentence ending on 62:19, stating "Sometimes, patents are issued after appeals with the PTO or to the court," to avoid confusion with the RCE and CoC); 35 U.S.C. §§ 132(b), 254, 255; 37 C.F.R. § 1.114.

1    **DEFENDANT'S OBJECTIONS:**   THE PARTIES AGREED IN THE FINAL

2    PRETRIAL CONFERENCE ORDER TO PLAY A VIDEO PREPARED BY THE

3    FEDERAL JUDICIAL CENTER THAT EXPLAINS WHAT A PATENT IS AND

4    HOW ONE IS OBTAINED. THE FORM INSTRUCTION DUPLICATES WHAT

5    IS IN THAT VIDEO AND IS THEREFORE UNNECESSARY.  IN FACT, THIS IS

6    AN AIPLA MODEL PRELIMINARY INSTRUCTION, NOT A CLOSING ONE.

7    THE   LANGUAGE   PLAINTIFFS   HAVE   ADDED   REGARDING   THE

8    CERTIFICATE OF CORRECTION ("COC") IS (1) UNNECESSARY IN LIGHT

9    OF SPECIFIC COC INSTRUCTIONS THE PARTIES HAVE PROPOSED, (2)

10   INCLUDES STATEMENTS OF FACT THAT ARE ARGUMENTATIVE AND

11   INAPPROPRIATE FOR JURY INSTRUCTIONS ("OCCASIONALLY PATENTS

12   ARE ISSUED WITH ERRORS"), AND (3) IS INACCURATE IN THAT IT FAILS

13   TO APPRISE THE JURY THAT A COC THAT BROADENS THE SCOPE OF

14   THE PATENT MAY BE ISSUED ONLY FOR "A MISTAKE OF A CLERICAL

15   OR TYPOGRAPHICAL NATURE, OR OF MINOR CHARACTER," 35 U.S.C. §

16   255, AND WHERE THE CLERICAL ERROR OR HOW TO CORRECT IT

17   WOULD HAVE BEEN CLEARLY EVIDENT TO A PERSON OF SKILL IN THE

18   ART ("POSITA").   *CENT. ADMIXTURE PHARMACY SERVS., INC. V.*

19   *ADVANCED CARDIAC SOLS., P.C.*, 482 F.3D 1347, 1353 (FED. CIR. 2007).

20   FINALLY, THE LANGUAGE PLAINTIFFS HAVE ADDED REGARDING A

21   REQUEST FOR CONTINUED EXAMINATION ("RCE") IS UNNECESSARY,

22   BUT KITE DOES NOT OBJECT TO INCLUDING A DEFINITION OF RCE IN A

23   GLOSSARY  TO  BE  PROVIDED  TO  THE  JURY,  AS  SET  FORTH  IN

24   DEFENDANT'S PROPOSED GLOSSARY.

25

26

27

28

1   **CLOSING INSTRUCTION NO. 14 (AS PROPOSED BY PLAINTIFFS)**

2   **(Interpretation of Claims)**

3   **Plaintiffs object to an instruction on claim construction as improperly**

4   **interfering with the jury's right to decide whether the Certificate of Correction**

5   **is valid.  In the event the Court overrules Plaintiffs' objection, Plaintiffs propose**

6   **the following:**

7          As I mentioned at the beginning of the case, the patent claims are numbered

8   sentences at the end of the patent that describes the boundaries of the patent's

9   protection.  It is my job as judge to explain to you the meaning of any language in

10  the claims that needs interpretation.

11         I have interpreted the meaning of some of the language in the patent claims

12  involved in this case.  My constructions are as follows:

13         For the term "the amino acid sequence encoded by SEQ ID NO:6":

14     •   As originally issued, this term is construed as "Amino Acids 113-220 of

15         CD28 (starting with lysine (K))"; and

16     •   As corrected by the Certificate of Correction, this term is construed as

17         "Amino Acids 114-220 of CD28 (starting with isoleucine (I))."

18         For the term "nucleic acid polymer encoding . . . a binding element that

19  specifically interacts with a selected target," you should apply its plain and ordinary

20  meaning.

21         For other claim terms for which I have not provided a definition, you should

22  apply the plain and ordinary meaning.

23         My interpretation of the language should not be taken as an indication that I

24  have a view regarding whether the Certificate of Correction or any one of the asserted

25  claims is invalid.  That question involves issues for you, the jury, to decide.  The

26  decisions regarding invalidity of the Certificate of Correction and the asserted patent

27  claims are yours to make.

28

1    <u>Authority</u>:   N.D. Cal. Model, Instruction B.2.1 (modified to delete the first

2    sentence in the model instruction, which stated: "Before you decide whether [the

3    alleged infringer] has infringed the claims of the patent or whether the claims are

4    invalid, you will need to understand the patent claims"; modified to delete this

5    sentence from the model instruction, which would have appeared at line 23 above:

6    "You must accept those interpretations as correct," to be consistent with Plaintiffs'

7    Proposed Preliminary Instruction No. 8, as based on N.D. Cal. Model Instruction

8    A.3); Claim Construction Order, Dkt. No. 100, at 19.

**DEFENDANT'S OBJECTIONS: 1.** PLAINTIFFS' OBJECTION IS MERITLESS. AN INSTRUCTION ABOUT WHAT THE PATENT MEANS DOES NOT REMOVE ANY ISSUE FROM THE JURY. COURTS, NOT JURIES, CONSTRUE PATENTS, AND "IT IS THE DUTY OF THE COURT TO INFORM JURORS BOTH OF THE COURT'S CLAIM CONSTRUCTION … AND OF THE JURY'S OBLIGATION TO ADOPT AND APPLY" THAT CONSTRUCTION. *SULZER TEXTIL A.G. V. PICANOL N.V.,* 358 F.3D 1356, 1366. FURTHER, WHICHEVER SET OF INSTRUCTIONS THE COURT ADOPTS, THE JURY WILL BE TOLD THAT THE VALIDITY OF THE COC IS FOR THEM TO DECIDE. **2.** FOR THE SAME REASON, IT IS UNNECESSARY TO TELL THE JURY THAT THE COURT'S INTERPRETATION DOES NOT MEAN IT HAS A VIEW ON THE ISSUES IN DISPUTE. RECOGNIZING AS MUCH, OTHER MODEL INSTRUCTIONS DO NOT INCLUDE SUCH AN ADMONITION. *SEE* AIPLA MODEL 2.0 & 2.1 **3.** PLAINTIFFS HAVE OMITTED A CRUCIAL SENTENCE IN THE MODEL THEY USE: "YOU MUST ACCEPT [THE COURT'S] INTERPRETATIONS AS CORRECT." THIS INVITES ERROR. THE JURY ***MUST*** FOLLOW THE COURT'S CONSTRUCTION AND THE JURY ***MUST*** BE SO INSTRUCTED. *SULZER,* 358 F.3D AT 1366 ("THE JURY MUST BE TOLD THAT THE COURT HAS MADE A CLAIM CONSTRUCTION RULING THAT THE JURY MUST FOLLOW….") **4.** COMPOUNDING THE PROBLEM, THE STATEMENT: "THAT QUESTION INVOLVES ISSUES FOR YOU TO DECIDE" IS AMBIGUOUS AND COULD ERRONEOUSLY SUGGEST THE JURY IS FREE TO DISAGREE WITH THE COURT'S CONSTRUCTION. **5.** IT IS DUPLICATIVE AND CONFUSING TO INSTRUCT THAT THE "BINDING ELEMENT" SHOULD RECEIVE ITS PLAIN AND ORDINARY MEANING AND SEPARATELY STATE THAT EVERY UNDEFINED TERM SHOULD ALSO RECEIVE ITS PLAIN AND ORDINARY MEANING.

**CLOSING INSTRUCTION NO. 14 (AS PROPOSED BY DEFENDANT)**

**(Claim Interpretation)**

Before you decide whether Plaintiffs' certificate of correction and claims 3, 5, 9 and 11 are invalid, you will have to understand the patent claims. The patent claims are numbered sentences at the end of the patent. The patent claims involved here are 3, 5, 9 and 11, beginning at column 25, line 41 of the patent, which is Exhibit XX in evidence. Each of these claims incorporates claim 1, beginning at column 25, line 29 of the patent.

The claims are intended to define, in words, the boundaries of the inventor's rights. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed.

It is my job to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any claim is invalid. I will now tell you the meaning of the following group of words from the patent claim.

My interpretation is the following:

| Term | Meaning |
|------|---------|
| "the amino acid sequence encoded by SEQ ID NO:6" | **Before the Certificate of Correction:** Amino Acids 113-220 of CD28 (starting with lysine (K)) **After the Certificate of Correction:** Amino Acids 114-220 of CD28 (starting with isoleucine (I)) |

For other claim terms for which I have not provided a definition, you should apply the plain and ordinary meaning.

1    <u>Authority</u>:  AIPLA Model 2.0 & 2.1 (as modified to incorporate certificate of
2    correction defense and the Court's claim construction order and to remove some
3    discussion of infringement).

**PLAINTIFFS' OBJECTIONS: (1)** PLAINTIFFS RESERVE ALL OBJECTIONS TO THE COURT'S CLAIM CONSTRUCTION ORDER.   **(2)** PLAINTIFFS OBJECT TO INCLUDING ANY CLAIM CONSTRUCTION INSTRUCTION AS PREJUDICIAL; IT WOULD SUGGEST TO THE JURY THAT THE COC IS INVALID AND THUS INTERFERE WITH THE JURY'S ABILITY TO FAIRLY DECIDE THE ISSUE.   *SEE* DKT. NO. 246 AT 7.   KITE'S PROPOSAL EXACERBATES THIS PROBLEM BY OMITTING ANOTHER TERM ADDRESSED BY THE COURT, THUS CREATING A GREATER FOCUS, IMPROPERLY, ON THE TERM AT ISSUE FOR COC VALIDITY.  WITH OR WITHOUT THE OMITTED TERM, HOWEVER, KITE'S INSTRUCTION IMPROPERLY SUGGESTS THE COURT HAS A FAVORABLE VIEW OF KITE'S COC POSITION AND IS UNDULY PREJUDICIAL AND MISLEADING TO THE JURY.   **(3)** IF THE COURT ISSUES A CLAIM CONSTRUCTION INSTRUCTION, IT SHOULD USE PLAINTIFFS' PROPOSAL, WHICH: (A) INCLUDES ALL TERMS CONSTRUED BY THE COURT; (B) AVOIDS KITE'S INAPPROPRIATE AND UNDULY CONFUSING AND MISLEADING REFERENCE TO CONSTRUCTIONS "BEFORE" AND "AFTER" THE COC; IF THE COC IS VALID, ANY MEANING OF THE PATENT "BEFORE" THE COC IS IRRELEVANT; AND (C) APPROPRIATELY INSTRUCTS THAT THE COURT'S CONSTRUCTIONS SHOULD NOT BE TAKEN TO MEAN THE COURT HAS ANY VIEW REGARDING HOW THE JURY SHOULD DECIDE THE COC AND OTHER INVALIDITY ISSUES.

**CLOSING INSTRUCTION NO. 15 (AS PROPOSED BY DEFENDANT)**

**(Infringement)**

If you find that the certificate of correction is invalid, then claim(s) 3, 5, 9, and 11 of the '190 patent have the same meaning and scope as when the patent was originally issued, and Kite's YESCARTA does not infringe those claims. You must not award Plaintiffs any damages under this circumstance.

Kite has also asserted defenses that claim(s) 3, 5, 9, and 11 of the '190 patent are invalid for lack of an adequate written description and enablement. If you find that those claims are invalid for lack of an adequate written description or enablement, then Kite's YESCARTA does not infringe those claims, and you also must not award plaintiffs any damages, regardless of whether you find the certificate of correction to be valid.

On the other hand, if you do not find either that the certificate of correction is invalid, or that each of the asserted claims is invalid, then Kite's YESCARTA infringes the asserted claims and you must award damages according to the instructions you will be given.

Authority:  Joint Stipulation:  Dkt. 223.

**PLAINTIFFS' OBJECTIONS: (1)** PLAINTIFFS RESERVE ALL OBJECTIONS TO THE COURT'S ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT [DKT. NO. 246] INCLUDING FOR THE REASONS SET FORTH IN PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION [DKT. NO. 264]. **(2)** ANY INFRINGEMENT INSTRUCTION MUST ACCORD WITH KITE'S STIPULATION OF INFRINGEMENT AFTER THE COC [DKT NO. 223] AND MAKE CLEAR THAT THE COC IS PRESUMED VALID. **(3)** KITE'S ASSERTION THAT IT DOES NOT INFRINGE IF THE COC IS INVALID IS FALSE AND CONTRARY TO EVIDENCE. THE COURT'S ORDER [DKT. NO. 246] DOES NOT CHANGE THIS FACTUAL REALITY. **(4)** THE INSTRUCTION IS PREJUDICIAL IN CONFUSING ISSUES OF INFRINGEMENT AND INVALIDITY – THE COC AND 112 ISSUES ARE ISSUES OF INVALIDITY AND CONFLATING THEM WITH INFRINGEMENT CREATES CONFUSION OVER WHO BEARS THE BURDEN OF PROOF.

**CLOSING INSTRUCTION NO. 17** (AS PROPOSED BY PLAINTIFFS)

**(Willful Infringement)**

Kite has admitted that its Yescarta® product infringes the asserted claims of the '190 Patent as corrected by the Certificate of Correction.  In this case, Juno and Sloan Kettering argue that Kite willfully infringed the '190 Patent.

To prove willful infringement of a claim, Juno and Sloan Kettering must persuade you that it is more likely true than not true that Kite intentionally ignored or recklessly disregarded that claim.  You must base your decision on Kite's knowledge and actions at the time of infringement.  Evidence that Kite had knowledge of the '190 Patent at the time of infringement by itself is not sufficient to show willfulness.  Rather, to show willfulness, you must find that Kite engaged in additional conduct evidencing deliberate or reckless disregard of the Plaintiffs' patent rights.

In deciding whether Kite willfully infringed, you should consider all of the facts surrounding the infringement including:  whether Kite intentionally copied the patented technology in developing the accused product; whether Kite knew, or should have known, that its conduct involved an unreasonable risk of infringement; and whether Kite had a reasonable belief that at the time of infringement that its products did not infringe the asserted patent or that the patent was invalid.

Authority:  N.D. Cal. Model, Instruction B.3.8 (modified at lines 3-4 above to incorporate the parties' joint stipulation on infringement and to delete the second paragraph in the model instruction as redundant).

**DEFENDANT'S OBJECTIONS:   1.**  AS NOTED *INFRA*, KITE OBJECTS TO SUBMITTING "WILLFULNESS" TO THE JURY.  **2.** KITE DOES NOT ADMIT IT INFRINGES THE PATENT AS CORRECTED BY THE COC.  TO THE CONTRARY, KITE DISPUTES THE VALIDITY AND EFFECTIVENESS OF THE COC.  *SEE* DKT #223 ¶ 1 (STIPULATING THAT "***IF*** THE [COC] IS NOT FOUND TO BE INVALID" YESCARTA MEETS EACH LIMITATION OF THE ASSERTED CLAIMS). IF THE COC IS INVALID, THEN THE ASSERTED CLAIMS HAVE THE SAME MEANING AND SCOPE AS WHEN THE PATENT ORIGINALLY ISSUED. IT IS UNDISPUTED THAT YESCARTA'S COSTIMULATORY REGION IS ENCODED BY AMINO ACIDS 11**4**-220 IN THE CD28 SEQUENCE (DKT #121-1 ¶¶ 31-33), WHEREAS, UNDER THE COURT'S CLAIM CONSTRUCTION ORDER (DKT #100 AT 19), THE PATENT AS ORIGINALLY ISSUED CLAIMED A COSTIMULATORY REGION ENCODED BY AMINO ACIDS 11**3**-220 IN CD28. THEREFORE, IF THE COC IS INVALID AND THE PATENT IS LIMITED TO ITS ORIGINAL SCOPE, YESCARTA DOES ***NOT*** INFRINGE ***AS A MATTER OF LAW***. (DKT #246 AT 8-9) (PLAINTIFFS ARE ESTOPPED FROM ASSERTING THE DOCTRINE OF EQUIVALENTS). PLAINTIFFS' PROPOSAL IS HIGHLY INACCURATE AND INVITES ERROR.  **3.** THE USE OF "SHOULD HAVE KNOWN," "RECKLESS DISREGARD," "UNREASONABLE RISK," AND "REASONABLE BELIEF" WRONGLY STATES A NEGLIGENCE OR RECKLESSNESS CULPABILITY STANDARD.  *SEE, E.G.*, *GLOB.-TECH APPLIANCES*, 563 U.S. AT 769.  *HALO* MAKES CLEAR THAT ONLY "**INTENTIONAL OR KNOWING**" CONDUCT SUFFICES.  136 S. CT. AT 1926.  **4.**  PLAINTIFFS' INSTRUCTION OMITS *HALO*'S CRUCIAL GUIDANCE THAT ENHANCED DAMAGES ARE RESERVED ONLY FOR "EGREGIOUS CASES," WHERE INFRINGEMENT IS WANTON, MALICIOUS, BAD-FAITH, CONSCIOUSLY WRONGFUL, FLAGRANT, OR "CHARACTERISTIC OF A PIRATE."

**CLOSING INSTRUCTION NO. 17 <span style="color:red">(AS PROPOSED BY DEFENDANT)</span>**

**(Willful Infringement)**

**Kite objects to submitting "willfulness" and evidence thereof to the jury as not required by the Seventh Amendment, confusing, unfairly prejudicial, a waste of time, and inconsistent with Supreme Court precedent, including but not limited to *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016), and *Tull v. United States*, 481 U.S. 412 (1987).  Kite submits this instruction under protest solely because current Federal Circuit precedent has rejected Kite's objection, *see, e.g.*, *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 & n.13 (Fed. Cir. 2016), and reserves its right to challenge that precedent on appeal.**

If you find that neither the certificate of correction nor claims 3, 5, 9, and 11 of the '190 patent are invalid, Kite has infringed those claims.  You must then determine whether or not Kite's infringement was willful.

To show that Kite's infringement was willful, Plaintiffs must prove by a preponderance of the evidence that Kite knew of Plaintiffs' patent and intentionally infringed at least one asserted claim of the patent.  For example, you may consider whether Kite's behavior was malicious, wanton, consciously wrongful, flagrant, or in bad faith.  However, you may not find that Kite's infringement was willful merely because Kite knew about the patent, without more.  In determining whether Plaintiffs have proven that Kite's infringement was willful, you must consider all of the circumstances and assess Kite's knowledge at the time the challenged conduct occurred.

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement.

Authority:  AIPLA Model 11.0 (as modified to address certificate of correction defense and to remove deliberate).

**PLAINTIFFS' OBJECTIONS: (1)** KITE HAS STIPULATED TO INFRINGEMENT AFTER THE CERTIFICATE OF CORRECTION, DKT. NO. 223, AND BOTH THE PATENT AND THE COC ARE PRESUMED VALID. KITE'S INSTRUCTION IS MISLEADING AND PREJUDICIAL IN PLACING AN EMPHASIS ON KITE'S INVALIDITY ARGUMENTS IN THE FIRST SENTENCE IN A WAY THAT UNDERMINES THE PRESUMPTION OF VALIDITY AND THAT IGNORES ITS STIPULATION OF INFRINGEMENT. **(2)** THE N.D. CAL. MODEL INSTRUCTION PROPOSED BY PLAINTIFFS BEGINS: "IN THIS CASE, [PATENT HOLDER] ARGUES THAT [ALLEGED INFRINGER] WILLFULLY INFRINGED…." THAT INTRODUCTION PROPERLY RECOGNIZES THAT THE JURY SHOULD DECIDE WILLFUL INFRINGEMENT REGARDLESS OF ANY INVALIDITY DETERMINATIONS IN ORDER TO HAVE A COMPLETE VERDICT. EVEN THE MODEL ON WHICH KITE DRAWS BEGINS WITH INFRINGEMENT AND DOES NOT INTRODUCE THE PREJUDICIAL AND MISLEADING STATEMENTS ABOUT INVALIDITY IN THE LEAD-IN SENTENCES. (THE AIPLA MODEL BEGINS: "IF YOU FIND THAT IT IS MORE LIKELY THAN NOT THAT [THE DEFENDANT] INFRINGED A VALID CLAIM….") **(3)** KITE'S MODIFICATION OF THE AIPLA MODEL TO REMOVE THE WORD "DELIBERATE" FROM 75:17 ABOVE IS UNJUSTIFIABLE. KITE DOES NOT OFFER ANY AUTHORITY FOR THIS CHANGE, AND IN FACT, KITE'S MODIFICATION CONTRADICTS SUPREME COURT PRECEDENT. *SEE HALO ELECS., INC. V. PULSE ELECS., INC.*, 136 S. CT. 1923, 1932 (2016) (INCLUDING "DELIBERATE" IN THE LISTING OF CONDUCT INCLUDED IN THE AIPLA INSTRUCTIONS).

**CLOSING INSTRUCTION NO. 18** **(AS PROPOSED BY PLAINTIFFS)**

**(Invalidity – Burden of Proof)**

I will now instruct you on the rules you must follow in deciding whether or not Kite has proven that the Certificate of Correction and claims 3, 5, 9, and 11 of the '190 Patent are invalid.  To prove that the Certificate of Correction and the claims of the '190 Patent are invalid, Kite must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction, that the Certificate of Correction and the asserted claims are invalid.  In other words, to prove invalidity of the Certificate of Correction or any claim of the '190 Patent, Kite must persuade you that it is highly likely that the Certificate of Correction or the claim is invalid.

Authority:   N.D. Cal. Model, Instruction B.4.1a; FCBA Model, Instruction B.4.1 (modified to combine the N.D. Cal. Model and FCBA Model regarding burden of proof); *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1367 (Fed. Cir. 2001) (burden of proof for invalidity of CoC).

**DEFENDANT'S OBJECTIONS:**  PLAINTIFFS' PROPOSED INSTRUCTION PIECES TOGETHER DIFFERENT MODEL INSTRUCTIONS AND IS CONFUSING.  THE INSTRUCTION GIVES THE JURY THREE DIFFERENT DEFINITIONS OF THE BURDEN TO PROVE INVALIDITY, VARIOUSLY DESCRIBING IT AS "CLEAR AND CONVINCING," "YOU MUST BE LEFT WITH A CLEAR CONVICTION," AND "HIGHLY LIKELY."  ELSEWHERE, PLAINTIFFS' PROPOSED INSTRUCTIONS REFER TO THE BURDEN AS REQUIRING A "FIRM BELIEF OR CONVICTION THAT IT IS HIGHLY LIKELY" THE CLAIM OR DEFENSE HAS BEEN PROVEN, OR SIMPLY AS "CLEAR AND CONVINCING EVIDENCE." *SEE* CLOSING INSTRUCTION NOS. 9, 26, 27, 28. TO AVOID CONFUSION, THE JURY SHOULD BE GIVEN A CLEAR AND CONSISTENT INSTRUCTION ABOUT THE CLEAR AND CONVINCING STANDARD.  KITE HAS PROPOSED CONSISTENT BURDEN OF PROOF INSTRUCTIONS THAT TRACK FEDERAL CIRCUIT PRECEDENT AND THE NORTHERN DISTRICT OF CALIFORNIA'S MODEL PATENT INSTRUCTIONS IN REFERRING TO THE CLEAR AND CONVINCING STANDARD AS ONE THE REQUIRES A SHOWING THAT A CLAIM OR DEFENSE IS "HIGHLY PROBABLE."  *SEE, E.G.*, *IMPAX LABS. INC. V. LANNETT HOLDINGS*, 893 F.3D 1372, 1378 (FED. CIR. 2018); *PROCTER & GAMBLE CO. V. TEVA PHARM. USA*, 566 F.3D 989, 994 (FED. CIR. 2009); N.D. CAL MODEL 4.1A; AIPLA MODEL II.B.

**CLOSING INSTRUCTION NO. 18** <span style="color:red">**(AS PROPOSED BY DEFENDANT)**</span>
**(Invalidity – Burden of Proof)**

I will now instruct you on the rules you must follow in deciding whether Kite has proven that the certificate of correction and claims 3, 5, 9, and 11 of the '190 patent are invalid.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense.   To prove invalidity of the certification of correction or any patent claim, Kite must persuade you that it is highly probable that the claim is invalid.


Authority:  N.D. Cal. Model 4.1a (as modified to add certificate of correction defense and omit discussion of prior art defenses).

**PLAINTIFFS' OBJECTIONS:** **(1)** THIS INSTRUCTION USES "HIGHLY PROBABLE" WITHOUT REFERENCE TO EVIDENCE. IT MAY SUGGEST THAT IT IS SUFFICIENT FOR THE JURY TO FEEL PERSUADED BY ARGUMENT, WHICH IS NOT CORRECT. **(2)** THE JURY SHOULD BE PROVIDED A FULSOME DESCRIPTION OF THE CLEAR AND CONVINCING EVIDENTIARY BURDEN IN WELL-ACCEPTED TERMS, AND NOT THIS SHORTHAND VERSION THAT SEEKS TO UNDULY MINIMIZE THE WEIGHT OF THE EVIDENCE NEEDED TO SATISFY IT. THERE IS NO REASON NOT TO USE THE TERM "CLEAR AND CONVINCING EVIDENCE" IN EXPLAINING THAT BURDEN. IT INVITES LEGAL ERROR NOT TO DO SO. PLAINTIFFS' INSTRUCTION IS CLEAR AND FAIRLY EXPLAINS THIS BURDEN BY EXPRESSLY REFERRING TO "CLEAR AND CONVINCING EVIDENCE." PLAINTIFFS' PROPOSAL ALSO SUFFICIENTLY COVERS KITE'S PREFERRED TERM BY INSTRUCTING THE JURY THAT, "IN OTHER WORDS," "KITE MUST PERSUADE YOU THAT IT IS HIGHLY LIKELY…."

**CLOSING INSTRUCTION NO. 19** **(AS PROPOSED BY PLAINTIFFS)**

**(Invalidity – Perspective of One of Ordinary Skill in the Art)**

The questions of whether a Certificate of Correction is valid, and whether a patent claim is valid, are determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of the effective filing date of the patent.   In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1) the levels of education and experience of persons working in the field;

(2) the types of problems encountered in the field; and

(3) the sophistication of the technology.


Authority:   N.D. Cal. Model, Instruction B.4.1b (modified to reflect the multiple "validity" issues in this case).

1    **DEFENDANT'S   OBJECTIONS:**      THE   COURT   HAS   ALREADY
2    DETERMINED  THE  LEVEL  OF  ORDINARY  SKILL  IN  THE  ART  IN  ITS
3    CLAIM CONSTRUCTION ORDER.  (DKT # 100 AT 8-9.)  THERE IS THUS NO
4    ISSUE FOR THE JURY TO DECIDE, AND THE JURY SHOULD INSTEAD BE
5    INSTRUCTED  AS  TO  THE  QUALIFICATIONS  OF  A  POSITA,  AS
6    DETERMINED BY THE COURT.

**CLOSING INSTRUCTION NO. 19 (AS PROPOSED BY DEFENDANT) (Invalidity – Perspective of One of Ordinary Skill in the Art)**

The question of invalidity of a certificate of correction or a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of May 28, 2002. A person of ordinary skill has the level of experience, education, or training generally possessed by those individuals who work in the area of the invention at the time of the invention.

In this case, the person of ordinary skill has a Ph.D., M.D., or an M.Sc. in immunology, biochemistry, cell biology, molecular biology, or a related discipline and either (1) at least two years of experience in conducting laboratory research on chimeric TCR therapies, TCRs, T cells or other types of immune cells, chimeric TCRs, or related work or (2) knowledge of the scientific literature relating to T cell biology as well as laboratory techniques and strategies in designing recombinant DNA.

Authority: N.D. Cal. Model 4.1b (as modified to remove discussion of determining POSITA and to incorporate N.D. Cal Glossary definition, claim construction order, and certification of correction defense).

**PLAINTIFFS' OBJECTIONS:   (1)** PLAINTIFFS OBJECT TO KITE'S PROPOSED INSTRUCTION REGARDING THE DEFINITION OF POSITA.  IT IS UNCLEAR WHERE KITE'S PROPOSAL DEFINITION COMES FROM. DURING CLAIM CONSTRUCTION, THE PARTIES OFFERED DIFFERENT DEFINITIONS.  KITE'S PROPOSED DEFINITION IS NOT THAT ACCEPTED BY THE COURT.  FOR CLAIM CONSTRUCTION, THE COURT "ADOPT[ED] A   DEFINITION   THAT   INCORPORATES   THE   CHARACTERISTICS PROPOSED BY BOTH PARTIES."  DKT. NO. 100 AT 8-9.

**(2)** NO ISSUE IN THE CASE TO BE DECIDED BY THE JURY TURNS ON   THE   DEFINITION   OF   A   POSA,   AND   THEREFORE   A   SPECIFIC DEFINITION OF CHARACTERISTICS NEED NOT BE GIVEN.   TO THE EXTENT THAT A MORE SPECIFIC DEFINITION IS TO BE APPLIED TO THE VALIDITY   ISSUES   AT   TRIAL,   PLAINTIFFS'   PROPOSED   JURY INSTRUCTION, WHICH SETS FORTH THE STANDARD FOR DETERMINING THE LEVEL OF ORDINARY SKILL, ALLOWS THE JURY TO RESOLVE THE REMAINING FACTUAL DISPUTES.

**(3)** IDENTIFICATION OF THE '190 PATENT'S PRIORITY DATE (MAY 28, 2002) IS CONFUSING AND UNNECESSARY IN THE CONTEXT OF THIS INSTRUCTION.

**CLOSING INSTRUCTION NO. 20 (AS PROPOSED BY PLAINTIFFS)**

**(Certificate of Correction)**

When a patent issues with errors, the patentee may be allowed to have the errors corrected by obtaining a Certificate of Correction from the Patent Office. A Certificate of Correction is one way to correct certain kinds of errors in issued patents. The Patent Office reviews the application for the Certificate of Correction and may issue the Certificate if certain conditions are met.

When the patentee is the one who made the error, the patentee may use a Certificate of Correction to correct errors of a clerical or typographical nature, or of minor character. A Certificate of Correction may correct a clerical or typographical error even if the correction broadens the scope of the claims, as long as the error is clearly evident to a person of ordinary skill in the art, reviewing the full patent record. In other words, if a person of ordinary skill in the art can clearly identify the error and tell how it should be corrected from the reviewing the full patent record including the patent claims, the specification, and the prosecution history, then the Certificate of Correction is valid.

Kite argues that the Certificate of Correction of the '190 Patent is invalid and thus was wrongly issued. Kite must prove by clear and convincing evidence that the Certificate of Correction should not have been issued.

When the Patent Office issues a Certificate of Correction, the patent owner may assert the corrected patent only against acts of infringement thereafter arising, in other words, acts of infringement that occur after the Certificate of Correction issued. A patent owner may apply for a Certificate of Correction at any time before the patent expires.

Authority: 35 U.S.C. § 255 ("Such patent, together with the certificate, shall have the same effect and operation in law on the trial of actions for causes thereafter arising as if the same had been originally issued in such corrected form."); *Superior*

1  *Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1370 (Fed. Cir. 2001) ("The

2  common understanding of a clerical or typographical mistake certainly includes

3  mistakes that, upon correction, would either broaden or narrow a claim."); *id.* at 1370

4  ("[W]e interpret § 255 to allow broadening corrections of clerical or typographical

5  mistakes."); *id.* at 1373 ("[W]e interpret § 255 to require that a broadening correction

6  of a clerical or typographical error be allowed only where it is clearly evident from

7  the specification, drawings, and prosecution history how the error should

8  appropriately be corrected. . . . The intrinsic record, that is, the public record, consists

9  of the original and corrected claims, the written description and drawings, and the

10  prosecution history."); *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac*

11  *Sols., P.C.*, 482 F.3d 1347, 1353 (Fed. Cir. 2007) ("*Superior Fireplace* held that if a

12  certificate of correction broadens a claim, it is only valid if it corrects a 'clerical or

13  typographical' error that would have been clearly evident to one of skill in the art

14  reading the intrinsic evidence." (citation omitted)); *id.* at 1353 ("Since the result is to

15  invalidate a certificate of correction which is part of a duly issued patent, the party

16  seeking invalidation must meet 'the clear and convincing standard of persuasion.'"

17  (citing *Superior Fireplace*, 270 F.3d at 1367)); *id.* at 1354 ("[W]hether the error and

18  its correction would both be clearly evident to one of skill in the art, has been treated

19  as a factual question.").

20

21

22

23

24

25

26

27

28

**DEFENDANT'S OBJECTIONS:**  PLAINTIFFS' PROPOSED INSTRUCTION CONTAINS UNNECESSARY, SELF-SERVING MATERIAL THAT OBSCURES THE CLEAR LEGAL TEST THE JURY MUST APPLY TO DECIDE WHETHER THE COC IS INVALID. **1.** WHERE, AS HERE, A CERTIFICATE OF CORRECTION BROADENS THE PATENT, THE COC IS INVALID IF (1) THE PRESENCE OF A CLERICAL ERROR IN THE ORIGINAL PATENT WOULD NOT HAVE BEEN CLEARLY EVIDENT TO A POSITA; OR (2) HOW TO CORRECT THAT ERROR WOULD NOT HAVE BEEN CLEARLY EVIDENT TO A POSITA. *CENT. ADMIXTURE PHARMACY SERVS., INC. V. ADVANCED CARDIAC SOLS., P.C.*, 482 F.3D 1347, 1353 (FED. CIR. 2007).  IN PLAINTIFFS' PROPOSED INSTRUCTION, THIS TEST IS BURIED AMONG IMMATERIAL, SELF-SERVING, AND REPETITIVE STATEMENTS SLANTING THE ISSUE TOWARDS PLAINTIFFS, SUCH AS "THE PATENTEE MAY BE ALLOWED TO HAVE THE ERRORS CORRECTED," "THE PATENTEE MAY USE A CERTIFICATE OF CORRECTION TO CORRECT ERRORS," AND MULTIPLE REFERENCES TO THE ROLE OF THE "PATENT OFFICE" IN ISSUING A CERTIFICATE OF CORRECTION.  **2.** THE LAST PARAGRAPH OF THE INSTRUCTION, IN ADDITION TO BEING UNNECESSARY, IS ALSO HIGHLY MISLEADING IN SUGGESTING THAT NO WEIGHT SHOULD BE GIVEN TO THE SIGNIFICANT DELAY BEFORE THE PATENTEE NOTICED THE SUPPOSEDLY OBVIOUS MISTAKE IN THE '190 PATENT. INSTRUCTING THE JURY THAT "A PATENT OWNER MAY APPLY FOR A [COC] AT ANY TIME BEFORE THE PATENT EXPIRES" IMPROPERLY SUGGESTS THAT SKI'S DELAY DOES NOT MATTER, WHEN IN FACT IT IS HIGHLY RELEVANT TO SHOW THAT THE PURPORTED MISTAKE OR HOW TO CORRECT IT WOULD NOT HAVE BEEN OBVIOUS TO A POSITA.  *SEE ARTHROCARE*, 406 F.3D AT 1374; *SEE ALSO SUPERIOR FIREPLACE*, 270 F.3D AT 1371.

**CLOSING INSTRUCTION NO. 20 (AS PROPOSED BY DEFENDANT)**

**(Invalidity – Certificate of Correction)**

A certificate of correction is permitted to correct mistakes of a clerical or typographical nature, or of minor character, that appear in an issued patent.

In July 2013, the Sloan Kettering Institute obtained a certificate of correction that broadened the scope of the '190 patent's claims. Kite contends that this certificate of correction is invalid. To prevail on this defense, Kite must show that it is highly probable either:

(1) that the presence of a clerical error in the original patent would not have been clearly evident to a person skilled in the art of the invention; OR

(2) how to correct that error would not have been clearly evident to such a person of skill in the art.

Authority:   35 U.S.C. § 255; *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1353 (Fed. Cir. 2007).

**PLAINTIFFS' OBJECTIONS:** **(1)** PLAINTIFFS PRESERVE THEIR OBJECTION TO CHARACTERIZING THE COC AS "BROADENING." *SEE* DKT. NO. 84 AT 6. **(2)** PLAINTIFFS OBJECT TO KITE'S OMISSION OF THE ESTABLISHED STANDARD THAT A COC'S VALIDITY IS ASSESSED FROM THE PERSPECTIVE OF A POSITA READING THE ENTIRE INTRINSIC RECORD, INCLUDING "THE ORIGINAL AND CORRECTED CLAIMS, THE WRITTEN DESCRIPTION, AND DRAWINGS, AND THE PROSECUTION HISTORY." *SUPERIOR FIREPLACE CO. V. MAJESTIC PRODS. CO.*, 270 F.3D 1358, 1373 (FED. CIR. 2001); *CENT. ADMIXTURE PHARMACY SERVS., INC. V. ADVANCED CARDIAC SOLS., P.C.*, 482 F.3D 1347, 1353 (FED. CIR. 2007) (SAME). **(3)** PLAINTIFFS OBJECT TO KITE'S IMPROPER BURDEN DESCRIPTIONS, WHICH USE "HIGHLY PROBABLE" RATHER THAN "CLEAR AND CONVINCING EVIDENCE." *SEE SUPERIOR FIREPLACE*, 270 F.3D AT 1367. "HIGHLY PROBABLE" OMITS THE KEY WORD "EVIDENCE," SUGGESTING THAT ARGUMENT IS ON THE SAME FOOTING AS EVIDENCE TO SATISFY THE BURDEN. **(4)** PLAINTIFFS OBJECT TO KITE'S INJECTION OF THE IRRELEVANT FACT OF WHEN THE COC ISSUED. THE TIMING OF A COC IS LEGALLY IRRELEVANT TO ITS VALIDITY. *SEE* DKT. NO. 284-1 AT 9-10. **(5)** KITE'S PROPOSED INSTRUCTION IS INCOMPLETE AND CONFUSING. FOR EXAMPLE, THE INSTRUCTION BEGINS BY IDENTIFYING THREE TYPES OF ERRORS (CLERICAL, TYPOGRAPHICAL, AND MINOR), YET THE SUBSEQUENT PARAGRAPHS ONLY REFER TO CLERICAL ERROR. IN CONTRAST, PLAINTIFFS' PROPOSED INSTRUCTION IS COMPLETE ON THE TYPES OF ERRORS, CORRECTLY STATES THE PROPER BURDEN AND THE REQUIREMENT TO REVIEW THE FULL INTRINSIC RECORD, AND EXPLAINS THE LEGAL STANDARDS IN ACCURATE AND CLEAR LANGUAGE.

**CLOSING INSTRUCTION NO. 21** (AS PROPOSED BY PLAINTIFFS)

**(Written Description)**

A patent claim is invalid if the patent does not contain an adequate written description of the claimed invention.   The purpose of this written description requirement is to demonstrate that the inventor was in possession of the invention at the time the application for the patent was filed, even though the claims may have been changed or new claims added since that time.   The written description requirement is satisfied if a person of ordinary skill in the field reading the original patent application at the time it was filed would have recognized that the patent application described the invention as claimed, even though the description may not use the exact words found in the claim.   A requirement in a claim need not be specifically disclosed in the patent application as originally filed if a person of ordinary skill would understand that the missing requirement is necessarily implied in the patent application as originally filed.  A patent is not required to disclose what is well-known in the art.

Kite must prove by clear and convincing evidence that the asserted claims are invalid because the '190 Patent does not have adequate written description of the claimed invention.

Authority:  N.D. Cal. Model, Instruction B.4.2a (modified at lines 14-15 above to include a sentence to explain that a patent need not disclose what is well-known in the art, and at lines 16-18 above to include a sentence on the burden of proof); *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010) (en banc); *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1285 (Fed. Cir. 2012) ("This test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art.  Given this perspective, in some instances, a patentee can rely on information that is well-known in the art to satisfy written description. (internal quotation marks and citations omitted)); *Falko-Gunter*

1   *Falkner v. Inglis*, 448 F.3d 1357, 1366-68 (Fed. Cir. 2006) (same).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S OBJECTIONS:** PLAINTIFFS' INSTRUCTION IS INCOMPLETE AND LEGALLY ERRONEOUS. **1.** IT OMITS THE STANDARD FOR ASSESSING WRITTEN DESCRIPTION OF GENUS CLAIMS, LIKE THOSE AT ISSUE HERE. THE *EN BANC* FEDERAL CIRCUIT HAS HELD, "A SUFFICIENT DESCRIPTION OF A GENUS…REQUIRES THE DISCLOSURE OF EITHER A REPRESENTATIVE NUMBER OF SPECIES FALLING WITHIN THE SCOPE OF THE GENUS OR STRUCTURAL FEATURES COMMON TO MEMBERS OF THE GENUS SO THAT ONE OF SKILL IN THE ART CAN 'VISUALIZE OR RECOGNIZE' THE MEMBERS OF THE GENUS." *ARIAD*, 598 F.3D AT 1350-51; *SEE ALSO IDENIX*, 2019 WL 5583543, AT *9. KITE'S INSTRUCTION INCLUDES THIS CRITICAL LEGAL REQUIREMENT, AND NECESSARY EXPLANATION OF THIS REQUIREMENT TO PROPERLY INSTRUCT THE JURY ON THE LAW. **2.** PLAINTIFFS' INSTRUCTION OMITS THAT IN THE BIOTECH ARTS, "AN ADEQUATE WRITTEN DESCRIPTION REQUIRES A PRECISE DEFINITION, SUCH AS BY STRUCTURE, FORMULA, CHEMICAL NAME, PHYSICAL PROPERTIES, OR OTHER PROPERTIES …." *REGENTS*, 119 F.3D at 1566. **3.** PLAINTIFFS' INSTRUCTION INCORRECTLY STATES, "A PATENT IS NOT REQUIRED TO DISCLOSE WHAT IS WELL-KNOWN IN THE ART." A PATENTEE MAY RELY ON SUCH INFORMATION ONLY "IN SOME INSTANCES" DEPENDING ON THE PREDICTABILITY OF THE ART. *STRECK*, 665 F.3D at 1285; *SEE ALSO BOS. SCI.*, 647 F.3D at 1364. PLAINTIFFS' INSTRUCTION THUS INVITES LEGAL ERROR BY ANSWERING FACTUAL QUESTIONS ABOUT THE PREDICTABILITY OF THE ART. FURTHER, "THE SPECIFICATION ITSELF . . . MUST DEMONSTRATE POSSESSION . . . A DESCRIPTION THAT MERELY RENDERS THE INVENTION OBVIOUS DOES NOT SATISFY THE REQUIREMENT." *ARIAD*, 598 F.3D AT 1352. **4.** SEE PREVIOUS OBJECTIONS REGARDING BURDEN OF PROOF.

**CLOSING INSTRUCTION NO. 21 (Invalidity – Written Description)**

**(AS PROPOSED BY DEFENDANT)**

**CLOSING INSTRUCTION NO. 21(A) (The Written Description Defense)**

The patent law contains certain requirements for the part of the patent called the specification, which is the entirety of the patent before its claims. One of those requirements is that the specification contain a sufficient written description of the full scope of the claimed invention.  The public must receive meaningful disclosure in exchange for being excluded from practicing the invention for a limited period of time.

Kite contends that claims 3, 5, 9, and 11 of Plaintiffs' '190 patent are invalid because the specification of the '190 patent does not contain an adequate written description of the invention. To succeed, Kite must prove that it is highly probable that the specification fails to meet the law's requirements for written description of the invention.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed. The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application, in this case May 28, 2002.

The claims at issue here are to "nucleic acid polymers," such as DNA or RNA.  To sufficiently describe the claims, the specification must provide a precise definition of the claimed invention, such as by structure, formula, or chemical name of the claimed subject matter sufficient to distinguish it from other materials.

Authority:  FBCA Model Instruction 4.2a (as modified to address the written description requirement for nucleic acid polymer claims, *see Regents of the Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1566 (Fed. Cir. 1997) ("An adequate written description of a DNA, such as the cDNA of the recombinant plasmids and microorganisms of the '525 patent, requires a precise definition, such as by structure, formula, chemical name, or physical properties, not a mere wish or plan for obtaining the claimed chemical invention.") (internal quotation omitted)).

## **CLOSING INSTRUCTION NO. 21(B) (Written Description—Genus Claims)**

The law also distinguishes between patent claims that cover a genus and patent claims that cover a species.  A genus refers to a class of molecules, while a species refers to a specific member of that class.  In this case, claims 3, 5, 9, and 11 of the '190 patent each cover a genus of CARs that contain numerous species of different CARs varying at the scFv portion of the CAR.  For these genus claims, Kite can meet its burden of proving that the specification of the '190 patent fails to satisfy the written description requirement by showing that the specification (1) does not include a representative number of species falling within the scope of the claimed genus, and (2) does not describe structural features common to the members of the claimed genus, so that a person of ordinary skill in the art can "visualize" or recognize the members of the claimed genus.  I will now explain these two parts in more detail.

For a patent to satisfy the written description requirement by disclosing  a representative number of species, the specification needs to show that the inventors had truly invented the claimed genus, i.e., that the inventors had conceived of and described sufficient representatives covering the breadth of the claimed genus.  When there is substantial variation within the claimed genus, the specification must describe a sufficient variety of species to reflect the variation within the claimed genus.

1    For a patent to satisfy the written description requirement by disclosing
2    structural features common to the members of the genus, the specification must
3    identify structural features common to the members of the genus so that one of skill
4    in the art can "visualize or recognize" the members of the genus.  Structural features
5    may be disclosed by functional language if a reasonable structure-function
6    correlation is established, whether by the inventor as described in the specification
7    or known in the art at the time of the filing date.

8

9    Authority:  The available model instructions do not reflect Federal Circuit case
10   law regarding written description of genus claims and claims involving biotech
11   inventions.  *See, e.g.*, *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1373, 1375-79 (Fed. Cir.
12   2017).  By contrast, Kite's proposed written-description instruction, which accurately
13   explains the law with respect to such claims, derives from the following authorities:
14   *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 970 (Fed. Cir. 2002) ("Such
15   description is the *quid pro quo* of the patent system; the public must receive
16   meaningful disclosure in exchange for being excluded from practicing the invention
17   for a limited period of time."); *Regents of the Univ. of California v. Eli Lilly & Co.*,
18   119 F.3d 1559, 1568 (Fed. Cir. 1997) ("A written description of an invention
19   involving a chemical genus, like a description of a chemical species, requires a
20   precise definition, such as by structure, formula, or chemical name, of the claimed
21   subject matter sufficient to distinguish it from other materials." (internal quotation
22   omitted)); *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1124
23   (Fed. Cir. 2008) ("A 'representative number of species' means that the species which
24   are adequately described are representative of the entire genus. Thus, when there is
25   substantial variation within the genus, one must describe a sufficient variety of
26   species to reflect the variation within the genus."); *Ariad Pharm., Inc. v. Eli Lilly &
27   Co.*, 598 F.3d 1336, 1350 (Fed. Cir. 2010) (en banc) ("[A] sufficient description of a
28   genus instead requires the disclosure of either a representative number of species

Parties' First Amended Disputed Jury Instructions
Case No. 2:17-cv-07639-SJO-KSx

falling within the scope of the genus or structural features common to the members of the genus so that one of skill in the art can 'visualize or recognize' the members of the genus."); *id.* at 1350 ("We have also held that functional claim language can meet the written description requirement when the art has established a correlation between structure and function."); *id.* at 1351 ("In other words, the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date."); *see also Amgen*, 872 F.3d at 1373 ("To provide this 'precise definition' for a claim to a genus, a patentee must disclose 'a representative number of species falling within the scope of the genus or structural features common to the members of the genus so that one of skill in the art can visualize or recognize the members of the genus." (internal quotation marks omitted)); *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1301 (Fed. Cir. 2014) ("Moreover, the ′128 and ′485 patents do not describe any common structural features of the claimed antibodies. The asserted claims attempt to claim every fully human IL–12 antibody that would achieve a desired result, i.e., high binding affinity and neutralizing activity, and cover an antibody as different as Stelara, whereas the patents do not describe representative examples to support the full scope of the claims."); *Wyeth v. Abbott Labs.*, No. CIV.A. 08-1021 JAP, 2012 WL 175023, at *9 (D. N.J. Jan. 19, 2012), *aff'd sub nom. Wyeth & Cordis Corp. v. Abbott Labs.*, 720 F.3d 1380 (Fed. Cir. 2013) ("Here, the specification contains no data, examples or other disclosures sufficient to demonstrate that the inventors were in possession of the full scope of their invention.").

**PLAINTIFFS' OBJECTIONS: (1)** THIS COMPLICATED 2-PART INSTRUCTION UNFAIRLY SUGGESTS KITE HAS TWO DIFFERENT WRITTEN DESCRIPTION DEFENSES. NO MODEL INSTRUCTIONS TAKE SUCH AN APPROACH. *SEE* N.D. CAL. MODEL INSTRUCTION B.4.2A; AIPLA MODEL INSTRUCTION 9; FCBA MODEL INSTRUCTION 4.2A. **(2)** KITE'S INSTRUCTION IS UNDULY LONG AND COMPLEX WITH TOO MANY TECHNICAL AND LEGAL CONCEPTS THAT WILL CONFUSE THE JURY. THIS ARTIFICIALLY BOLSTERS KITE'S WRITTEN DESCRIPTION ("WD") ARGUMENT BY OVERSTATING THE WD REQUIREMENT. THERE IS NO REASON FOR A NEWLY CRAFTED INSTRUCTION WHERE MODEL INSTRUCTIONS ARE AVAILABLE. PLAINTIFFS HAVE WORKED FROM A MODEL. **(3)** THE PROPOSAL CHERRY-PICKS CASE LAW KITE FINDS FAVORABLE. **(4)** KITE'S SENTENCE THAT "THE LAW ALSO DISTINGUISHES BETWEEN PATENT CLAIMS THAT COVER A GENUS AND PATENT CLAIMS THAT COVER A SPECIES" IS UNCLEAR AND SUGGESTS THAT GENUS CLAIMS ARE NECESSARILY FLAWED. **(5)** THE FACTUAL ASSERTIONS IN THIS PROPOSED INSTRUCTION ARE PREJUDICIAL. FOR EXAMPLE, THE STATEMENT THAT "THE CLAIMS AT ISSUE HERE ARE TO 'NUCLEIC ACID POLYMERS,' SUCH AS DNA OR RNA" IS INCOMPLETE, MISLEADING AND PREJUDICIAL TO PLAINTIFFS. THIS IS ALSO THE CASE FOR 94:12-14. **(6)** KITE OMITS THE PHRASE "CLEAR AND CONVINCING EVIDENCE" TO DESCRIBE ITS BURDEN. KITE USES INSTEAD ONLY THE PHRASE "HIGHLY PROBABLE," WHICH UNDERSTATES THE IMPORTANCE OF EVIDENCE OVER ARGUMENT. **(7)** IDENTIFICATION OF THE '190 PATENT'S PRIORITY DATE (MAY 28, 2002) IS CONFUSING AND UNNECESSARY IN THE CONTEXT OF THIS INSTRUCTION.

**CLOSING INSTRUCTION NO. 22** **(AS PROPOSED BY PLAINTIFFS)**

**(Enablement)**

A patent claim is invalid if the patent at the time it was originally filed did not contain a description of the claimed invention that is sufficiently full and clear to enable a person of ordinary skill in the field at the time to make and use the full scope of the invention without undue experimentation.  This is known as the "enablement" requirement.

The patent may be enabling even though it does not expressly state some information if a person of ordinary skill in the field could make and use the invention without having to do excessive experimentation.  In determining whether excessive experimentation is required, you may consider the following factors:

- the scope of the claimed invention;
- the amount of guidance presented in the patent;
- the amount of experimentation necessary;
- the time and cost of any necessary experimentation;
- how routine any necessary experimentation is in the field of the patent;
- whether the patent discloses specific working examples of the claimed invention;
- the nature and predictability of the field; and
- the level of ordinary skill in the field of the patent.

The question of whether a patent is enabling is judged as of the date the original application for the patent was first filed.

Kite must prove by clear and convincing evidence that the asserted claims are invalid because the '190 Patent fails to satisfy the enablement requirement.

Authority:  N.D. Cal. Model, Instruction B.4.2b (modified at line 6 to include a reference to the "undue experimentation" standard and at lines 23-24 to include a sentence on the burden of proof); *In re Wands*, 858 F.2d 731 (Fed. Cir. 1988).

**DEFENDANT'S OBJECTIONS:** PLAINTIFFS' INSTRUCTION INCORRECTLY STATES THAT THE LEGAL STANDARD FOR ENABLEMENT IS WHETHER IT WOULD REQUIRE "EXCESSIVE" EXPERIMENTATION FOR A PERSON HAVING ORDINARY SKILL IN THE ART TO PRACTICE THE FULL SCOPE OF THE CLAIMED INVENTION. THIS IS NOT THE LEGALLY CORRECT ARTICULATION OF THE TEST. "ENABLEMENT REQUIRES THAT 'THE SPECIFICATION TEACH THOSE IN THE ART TO MAKE AND USE THE INVENTION WITHOUT *UNDUE* EXPERIMENTATION.'" *IDENIX PHARM. LLC V. GILEAD SCIS. INC.*, NO. 2018-1691, 2019 WL 5583543, AT *1 (FED. CIR. OCT. 30, 2019) (QUOTING *IN RE WANDS*, 858 F.2D 731, 737 (FED. CIR. 1988)) (EMPHASIS ADDED). THE NEED FOR "EXCESSIVE" EXPERIMENTATION SATISFIES THE REQUIREMENT OF "UNDUE EXPERIMENTATION," BUT EXPERIMENTATION CAN BE "UNDUE" WITHOUT RISING TO THE LEVEL OF BEING EXCESSIVE. *SEE ID*. AT *8; *SEE ALSO WYETH & CORDIS CORP. V. ABBOTT LABS.*, 720 F.3D 1380, 1386 (FED. CIR. 2013) ("THE RESULTING NEED TO ENGAGE IN A SYSTEMATIC SCREENING PROCESS FOR EACH OF THE MANY RAPAMYCIN CANDIDATE COMPOUNDS IS EXCESSIVE EXPERIMENTATION. WE THUS HOLD THAT THERE IS NO GENUINE DISPUTE THAT PRACTICING THE FULL SCOPE OF THE CLAIMS, MEASURED AT THE FILING DATE, REQUIRED UNDUE EXPERIMENTATION."). IN ADDITION, PLAINTIFFS' INSTRUCTION IS LESS DESCRIPTIVE AND PROVIDES THE JURY LESS DIRECTION THAN KITE'S PROPOSED INSTRUCTION. FINALLY, PLAINTIFFS' INSTRUCTION USES THE LANGUAGE "CLEAR AND CONVINCING," INSTEAD OF THE "HIGHLY PROBABLE" LANGUAGE ENDORSED BY THE N.D. CAL AND AIPLA MODEL INSTRUCTIONS.

**CLOSING INSTRUCTION NO. 22 (AS PROPOSED BY DEFENDANT) (Invalidity – Enablement)**

The patent law contains another requirement for the part of the patent called the specification. Kite contends that claims 3, 5, 9, and 11 of Plaintiffs' '190 patent are invalid because the specification does not contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention. To succeed, Kite must show that it is highly probable that the '190 patent does not contain a description with enough information to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time the '190 patent application was filed, which in this case is May 28, 2002. This is known as the "enablement" requirement. If a patent claim is not enabled, it is invalid.

In order to be enabling, the patent must permit persons having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time of original filing without having to conduct undue experimentation. However, some amount of experimentation to make and use the invention is allowable. A patent specification need not include the information already well-known and available to one of ordinary skill in the art. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1) the amount of experimentation necessary;

(2) the time and cost of any necessary experimentation;

(3) how routine any necessary experimentation is in the field of [identify field];

(4) whether the patent discloses specific working examples of the claimed invention;

(5) the amount of guidance presented in the patent;

(6) the nature and predictability of the field of [identify field];

(7) the level of ordinary skill in the field of [identify field]; and

(8) the scope of the claimed invention.

No one or more of these factors is alone dispositive. Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the original application, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

Authority:  FCBA Model 4.2b (as modified to more closely track the *Wands* factors, *see In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988) ("Factors to be considered . . . include (1) the quantity of experimentation necessary"), to specify the date of the provisional application for the '190 patent, to clarify some language in the model instruction, and to reflect the legal principles set forth in *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1366 (Fed. Cir. 1997) ("[A] specification need not disclose what is well known in the art. . . . [T]he omission of minor details does not cause a specification to fail to meet the enablement requirement.  However, when there is no disclosure of any specific starting material or of any of the conditions under which a process can be carried out, undue experimentation is required; there is a failure to meet the enablement requirement that cannot be rectified by asserting that all the disclosure related to the process is within the skill of the art. It is the specification, not the knowledge of one skilled in the art, that must supply the novel aspects of an invention in order to constitute adequate enablement.  This specification provides only a starting point, a direction for further research.").

1   **PLAINTIFFS' OBJECTIONS:   (1)** THIS PROPOSED INSTRUCTION IS
2   OVERLY LONG AND COMPLEX AS COMPARED TO PLAINTIFFS'
3   PROPOSAL. **(2)** KITE'S INSERTION OF "ANOTHER" IN THE FIRST
4   SENTENCE IS UNNECESSARY AND GIVES UNDUE WEIGHT TO
5   INVALIDITY ARGUMENTS GENERALLY. **(3)** THE FCBA MODEL
6   EXPLAINS THAT LACK OF ENABLEMENT REQUIRES THAT "THE
7   SPECIFICATION DOES NOT CONTAIN A SUFFICIENTLY FULL AND
8   CLEAR DESCRIPTION OF HOW TO MAKE AND USE THE FULL SCOPE OF
9   THE CLAIMED INVENTION." KITE REPLACES THIS EXPLANATION,
10  WHICH STATES THE LAW, WITH "THE SPECIFICATION DOES NOT
11  ENABLE THE FULL SCOPE OF THE CLAIMED INVENTION, AND THAT
12  THEREFORE THE ASSERTED CLAIMS ARE INVALID," WHICH IS
13  ARGUMENTATIVE. **(4)** ALTHOUGH KITE'S EDITS TO THE *WANDS*
14  FACTORS TRACK THAT CASE, THE LANGUAGE PRESENTED IN BOTH
15  THE N.D. CAL. AND FCBA MODEL INSTRUCTIONS IS MORE
16  UNDERSTANDABLE. EVEN IN CASES CITED BY KITE, THIS LANGUAGE
17  HAS BEEN AFFIRMED. *SEE IDENIX PHARM. LLC V. GILEAD SCIS. INC.*, 2019
18  WL 5583543, AT *3 (FED. CIR. OCT. 30, 2019); *IDENIX PHARM. LLC V. GILEAD*
19  *SCIS., INC.*, 2018 WL 922125, AT *21 (D. DEL. FEB. 16, 2018); *SEE ALSO*
20  *CONCEPTUS, INC. V. HOLOGIC, INC.*, 2012 WL 44237, AT *2 (N.D. CAL. JAN.
21  9, 2012). **(5)** KITE OMITS THE PHRASE "CLEAR AND CONVINCING
22  EVIDENCE" TO DESCRIBE ITS BURDEN. KITE USES INSTEAD ONLY THE
23  PHRASE "HIGHLY PROBABLE," WHICH UNDERSTATES ITS "HEAVY
24  BURDEN OF PERSUASION." *MICROSOFT CORP. V. I4I LTD. P'SHIP*, 564 U.S.
25  91, 102 (2011). **(6)** IDENTIFICATION OF THE '190 PATENT'S PRIORITY
26  DATE (MAY 28, 2002) IS CONFUSING AND UNNECESSARY.
27
28

**<u>CLOSING INSTRUCTION NO. 23</u> (AS PROPOSED BY PLAINTIFFS)**

**<u>(Damages – Burden of Proof)</u>**

I will instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that Kite has not proven, by clear and convincing evidence, either that the Certificate of Correction is invalid, or that every asserted claim of the '190 Patent is invalid, you must then determine the amount of money damages to be awarded to Juno and Sloan Kettering to compensate them for the infringement.

The amount of those damages must be adequate to compensate Juno and Sloan Kettering for the infringement.  A damages award should put Juno and Sloan Kettering in approximately the financial position they would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate Juno and Sloan Kettering and not to punish an infringer.

Juno and Sloan Kettering have the burden to persuade you of the amount of their damages.  You should award only those damages that Juno and Sloan Kettering more likely than not suffered.  While Juno and Sloan Kettering are not required to prove their damages with mathematical precision, they must prove them with reasonable certainty.  Juno and Sloan Kettering are not entitled to damages that are remote or speculative.


Authority:  N.D. Cal. Model, Instruction B.5.1 (modified at lines 5-6 above to refer to the validity issues to be decided by the jury).

**DEFENDANT'S OBJECTIONS:** PLAINTIFFS' INSTRUCTION IS MISLEADING AND ARGUMENTATIVE. **1.** PLAINTIFFS' INSTRUCTION WRONGLY SUGGESTS THAT JUNO, WHICH DID NOT ACQUIRE RIGHTS TO THE '190 PATENT UNTIL APPROXIMATELY ONE YEAR AFTER THE HYPOTHETICAL NEGOTIATION, WOULD HAVE PARTICIPATED IN THAT NEGOTIATION. IN FACT, ONLY SKI WOULD HAVE BEEN A PARTY TO THAT NEGOTIATION. SEE DKT # 328-4 (KITE'S SUPPLEMENT TO ITS MOTION IN LIMINE ON DR. SULLIVAN'S OPINIONS). **2.** THE REPETITION OF THE "CLEAR AND CONVINCING" STANDARD IS NOT NECESSARY IN AN INSTRUCTION ABOUT DAMAGES AND SERVES IMPROPERLY TO SUGGEST TO THE JURY THAT IT SHOULD REJECT KITE'S DEFENSES.

**CLOSING INSTRUCTION NO. 23** (**AS PROPOSED BY DEFENDANT**)
**(Damages – Introduction)**

If you find that Kite infringed any valid claim of the '190 patent, you must then consider what amount of damages to award to Plaintiffs.  I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case, on any issue.  If you find that either the certificate of correction or claim(s) 3, 5, 9, and 11 are invalid, then Plaintiffs are is not entitled to any damages.

The damages you award must be adequate to compensate Plaintiffs for the infringement.  They are not meant to punish an infringer.  Your damages award, if you reach this issue, should put Plaintiffs in approximately the same financial position that it would have been in had the infringement not occurred.

Plaintiffs have the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should award only those damages that Plaintiffs have established by a preponderance of the evidence that they have suffered.  While Plaintiffs are not required to prove the amount of its damages with mathematical precision, they must prove them with reasonable certainty.  You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, Plaintiffs seek damages, which they claim are a reasonable royalty.  A reasonable royalty is defined as the money amount the Sloan Kettering Institute and Kite would have agreed upon as a fee for use of the invention at the time prior to when infringement began.  In determining the reasonable royalty you may choose to award, you must be careful to ensure that award is no more or no less than the value of the patented invention.

I will give more detailed instructions regarding damages shortly.


Authority:  FCBA Model 6.1 (as modified to add certificate of correction and

to remove infringement and types of damages other than a reasonable royalty).

**PLAINTIFFS' OBJECTIONS: (1)** PLAINTIFFS OBJECT TO KITE'S CONVOLUTED INSTRUCTION, E.G., KITE'S ADDITIONS TO THE FIRST PARAGRAPH'S FOURTH SENTENCE MAY MISLEAD THE JURY TO BELIEVE THAT IF IT FINDS ANY ASSERTED CLAIM INVALID, IT SHOULD AWARD NO DAMAGES; PLAINTIFFS' USE OF THE N.D. CAL. MODEL INSTRUCTION IS SIMPLER. **(2)** PLAINTIFFS OBJECT TO KITE'S PIECEMEAL EXCLUSIONS FROM THE MODEL INSTRUCTION, E.G., OF A SENTENCE CLARIFYING THAT A REASONABLE ROYALTY IS ONLY ONE TYPE OF DAMAGES. **(3)** PLAINTIFFS OBJECT TO KITE'S ADDITIONS TO THE FOURTH PARAGRAPH'S FIRST SENTENCE BECAUSE THEY IMPLY PLAINTIFFS' DAMAGES THEORY IS UNREASONABLE. **(4)** PLAINTIFFS OBJECT TO KITE'S ADDITIONS TO THE SECOND SENTENCE OF THE FOURTH PARAGRAPH. THE PARTIES DISAGREE REGARDING THE PARTICIPANTS IN THE HYPOTHETICAL NEGOTIATION, AND KITE UNFAIRLY ELEVATES ITS VIEWS ON THIS TOPIC; THE HYPOTHETICAL NEGOTIATION DOES NOT ALLOW EXPERTS TO DISREGARD THE REAL-WORLD FACTUAL CIRCUMSTANCES OF THE PARTIES (*EXMARK MFG. CO. V. BRIGGS & STRATTON POWER PROD. GRP., LLC*, 879 F.3D 1332, 1351 (FED. CIR. 2018) (EXCLUDING OPINION BECAUSE "PROPOSED ROYALTY RATE LACKED SUFFICIENT TIES TO THE FACTS OF THE CASE")); PLAINTIFFS CONTEND SLOAN KETTERING WOULD REPRESENT JUNO/JUNO'S INTERESTS IN ANY NEGOTIATION BECAUSE IT HAD CONTRACTUAL OBLIGATIONS TO JUNO THROUGH THE NOVEMBER 2013 AGREEMENT BETWEEN JUNO AND MSKCC. **(5)** PLAINTIFFS OBJECT TO KITE'S OMISSION OF MODEL INSTRUCTION LANGUAGE ENSURING PLAINTIFFS "RECOVER NO LESS THAN A REASONABLE ROYALTY." **(6)** PLAINTIFFS RESERVE ALL OBJECTIONS TO THE COURT'S ORDER ON KITE'S MOTION TO DISMISS. *SEE* DKT. NO. 304.

**CLOSING INSTRUCTION NO. 24 (AS PROPOSED BY PLAINTIFFS)**

**(Reasonable Royalty - Definition)**

There are various mechanisms for calculating damages for patent infringement, but both sides are in agreement that damages here should be in the form of a reasonable royalty.  A royalty is a payment made to the Plaintiffs in exchange for the right to make, use or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the Plaintiffs and Kite taking place at the time when the infringing activity first began.

In considering the nature of this negotiation, you must assume that both parties would have acted reasonably and would have entered into a license agreement.  You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

Authority:  N.D. Cal. Model, Instruction B.5.7 (modified at lines 3-5 above to reflect that the parties have agreed that damages would be in the form of a reasonable royalty; omitted additional paragraphs in the model instruction on the calculation of royalty, which is addressed separately in a closing instruction following this instruction; separated instruction into two instructions for clarity (*see* instruction on Reasonable Royalty – Form (below)).

1  **DEFENDANT'S OBJECTIONS:**  PLAINTIFFS HAVE NOT ACCURATELY
2  REFLECTED THE BREADTH OF THEIR CHANGES TO THIS INSTRUCTION,
3  AND THE INSTRUCTION THEY HAVE CREATED IS LEGALLY
4  ERRONEOUS, UNCLEAR, AND MISLEADING. **1.** PLAINTIFFS OMIT THE
5  CORE OF THE MODEL INSTRUCTION, WHICH DISCUSSES THREE
6  PRINCIPLES THAT THE JURY MAY CONSIDER IN CALCULATING A
7  REASONABLE ROYALTY. **2.**  PLAINTIFFS ALSO OMIT CRUCIAL
8  LANGUAGE ON THE NEED FOR APPORTIONMENT FROM THE
9  INSTRUCTION. **3.** PLAINTIFFS' ADDED SENTENCE TO THIS
10 INSTRUCTION AND THE USE OF "INFRINGEMENT" WITHOUT
11 "ALLEGED" ARE LEGALLY ERRONEOUS AND MISLEADING BECAUSE
12 THEY ARE WRITTEN TO SUGGEST THAT THE PARTIES AGREE THAT
13 DAMAGES ARE APPROPRIATE (AND THUS THAT KITE INFRINGES A
14 VALID PATENT).  **4.** PLAINTIFFS' INSTRUCTION WRONGLY INDICATES
15 THAT JUNO, WHICH DID NOT ACQUIRE RIGHTS TO THE '190 PATENT
16 UNTIL APPROXIMATELY ONE YEAR AFTER THE HYPOTHETICAL
17 NEGOTIATION, WOULD HAVE PARTICIPATED IN THAT NEGOTIATION.
18 DKT # 304; SEE DKT # 328-4. (KITE'S SUPPLEMENT TO ITS MOTION IN
19 LIMINE ON DR. SULLIVAN'S OPINIONS).
20
21
22
23
24
25
26
27
28

1    **CLOSING INSTRUCTION NO. 24 <span style="color:red">(AS PROPOSED BY DEFENDANT)</span>**

2    **(Reasonable Royalty - Definition)**

3       A reasonable royalty is the royalty that would have resulted from a

4    hypothetical license negotiation between the Sloan Kettering Institute and Kite.  Of

5    course, we know that they did not agree to a license and royalty payment.  But, in

6    order to decide on the amount of reasonable royalty damages, you should consider

7    what would have happened if the parties had negotiated a license just before the

8    infringement began.  This is why it is called a "hypothetical" license negotiation.

9    You should assume that both parties to the hypothetical negotiation understood that

10    the patent was valid and infringed and both were willing to enter into a license just

11    before the infringement began.  You should also presume that the parties had full

12    knowledge of the facts and circumstances surrounding the infringement at the time

13    of the hypothetical negotiation.

14

15       Authority:  AIPLA Model 10.2.5.2 (as modified for clarity).

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **PLAINTIFFS' OBJECTIONS: (1)** PLAINTIFFS OBJECT TO KITE'S

2   ADDITIONS TO THE FIRST SENTENCE. THE PARTIES DISAGREE

3   REGARDING THE PARTICIPANTS IN THE HYPOTHETICAL

4   NEGOTIATION, AND KITE UNFAIRLY ELEVATES ITS VIEWS ON THIS

5   TOPIC; THE HYPOTHETICAL NEGOTIATION DOES NOT ALLOW EXPERTS

6   TO DISREGARD THE REAL-WORLD FACTUAL CIRCUMSTANCES OF THE

7   PARTIES (*EXMARK MFG. CO. INC. V. BRIGGS & STRATTON POWER PROD.*

8   *GRP., LLC*, 879 F.3D 1332, 1351 (FED. CIR. 2018) (EXCLUDING OPINION

9   BECAUSE "PROPOSED ROYALTY RATE LACKED SUFFICIENT TIES TO

10   THE FACTS OF THE CASE")); PLAINTIFFS CONTEND SLOAN KETTERING

11   WOULD REPRESENT JUNO/JUNO'S INTERESTS IN ANY NEGOTIATION

12   BECAUSE IT HAD CONTRACTUAL OBLIGATIONS TO JUNO THROUGH

13   THE NOVEMBER 2013 AGREEMENT BETWEEN JUNO AND MSKCC.

14   **(2)** PLAINTIFFS RESERVE ALL OBJECTIONS TO THE COURT'S ORDER ON

15   KITE'S MOTION TO DISMISS. *SEE* DKT. NO. 304.

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLOSING INSTRUCTION NO. 25 (AS PROPOSED BY PLAINTIFFS)**

**(Reasonable Royalty – Date Of Hypothetical Negotiation)**

The date for the hypothetical negotiation is the time that infringement began. In this case, the parties agree that the date of the hypothetical negotiation is October 18, 2017, when Kite received approval to begin selling Yescarta®.

Authority:  N.D. Cal. Model, Instruction B.5.9 (modified/replaced at lines 2-5 above to reflect the parties' agreements regarding the date of the hypothetical negotiation in this case; omitted additional paragraphs in the model instruction on marking and notice).

1  **DEFENDANT'S OBJECTIONS:  1.** THE USE OF "THE" IN "<u>THE</u> DATE FOR

2  <u>THE</u> HYPOTHETICAL NEGOTIATION" AND THE PHRASE "<u>THE</u> TIME

3  THAT <u>INFRINGEMENT</u> BEGAN" FALSELY IMPLY THAT THE PARTIES

4  AGREE THAT KITE INFRINGES AND THAT DAMAGES ARE APPROPRIATE

5  IN THIS CASE.   PLAINTIFFS' PROPOSAL IS THUS MISLEADING AND

6  WOULD CONFUSE THE JURY.

**CLOSING INSTRUCTION NO. 29 (AS PROPOSED BY DEFENDANT) (Reasonable Royalty – Timing)**

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation.  You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by Kite, and non-infringing alternatives.

Authority:  AIPLA Model 10.2.5.7 (as modified to refer more directly to the allegations in this case).

1   **PLAINTIFFS' OBJECTIONS: (1)** PLAINTIFFS OBJECT TO THE THIRD

2   SENTENCE AS CONFUSING. IT REFERS TO ISSUES NOT PRESENT IN THIS

3   CASE (E.G., "LICENSE AGREEMENTS ENTERED INTO BY THE PARTIES

4   SHORTLY AFTER THE DATE OF THE HYPOTHETICAL NEGOTIATION").

5   **(2)** PLAINTIFFS OBJECT TO THE THIRD SENTENCE'S LANGUAGE

6   REFERRING TO "NON-INFRINGING ALTERNATIVES" AS IMPROPER AS

7   THE PARTIES' EXPERTS DISAGREE ABOUT WHETHER ANY NON-

8   INFRINGING ALTERNATIVES WERE AVAILABLE; KITE UNFAIRLY

9   ELEVATES ITS EXPERTS' VIEWS BY SPECIFICALLY MENTIONING THIS

10  CONSIDERATION.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLOSING INSTRUCTION NO. 30 (AS PROPOSED BY DEFENDANT) (Reasonable Royalty – Time Period)**

The date for the start of any reasonable royalty calculation is October 18, 2017, and the end date of any reasonable royalty calculation is the last day of trial.  Your verdict must not include a reasonable royalty for any alleged infringement before or after this time period.

Authority:  AIPLA Model 10.1.1 (as modified to fit case).

**PLAINTIFFS' OBJECTIONS: (1)** PLAINTIFFS OBJECT TO KITE'S ATTEMPT TO ADAPT A MODEL INSTRUCTION DESIGNED TO REFER TO THE "DATE OF THE START OF THE DAMAGES PERIOD" TO INSTEAD REFER TO THE "REASONABLE ROYALTY – TIME PERIOD;" KITE'S INSTRUCTION AS WORDED IS CONFUSING AND IMPLIES THAT THE REASONABLE ROYALTY COULD BE CALCULATED BASED ON INFORMATION THE PARTIES WOULD NOT HAVE KNOWN AT THE TIME OF FIRST INFRINGEMENT. **(2)** PLAINTIFFS OBJECT TO THE FIRST SENTENCE IN THAT THE INSTRUCTION IS CONFUSING AS IT REFERS TO THE "REASONABLE ROYALTY CALCULATION" AS OPPOSED TO THE "HYPOTHETICAL NEGOTIATION," WHICH BOTH PARTIES AGREE IS THE PROPER FRAMEWORK IN THIS CASE. **(3)** PLAINTIFFS OBJECT TO KITE'S ADDITION TO THE FIRST SENTENCE OF AN "END DATE" AND "THE LAST DAY OF TRIAL" AS IMPROPER AS SALES FIGURES FOR YESCARTA WILL NOT BE AVAILABLE THROUGH TRIAL; MOREOVER, THE PARTIES' EXPERTS DISAGREE ABOUT THE PURPOSE OF THE UPFRONT PAYMENT AND KITE UNFAIRLY ELEVATES ITS EXPERTS' VIEWS REGARDING PRORATING THE UPFRONT PAYMENT. **(4)** PLAINTIFFS OBJECT TO THE SECOND SENTENCE'S LANGUAGE "ANY ALLEGED INFRINGEMENT BEFORE … THIS TIME PERIOD" AS UNNECESSARY AND CONFUSING; PLAINTIFFS HAVE NOT ALLEGED INFRINGEMENT BY KITE PRIOR TO YESCARTA'S APPROVAL. **(5)** PLAINTIFFS OBJECT TO THE SECOND SENTENCE'S LANGUAGE "ANY ALLEGED INFRINGEMENT … AFTER THIS TIME PERIOD" AS IMPROPER AS THE PARTIES DISAGREE ABOUT THE PURPOSE OF THE UPFRONT PAYMENT AND KITE UNFAIRLY ELEVATES ITS VIEWS REGARDING PRORATING THE UPFRONT PAYMENT.

1  **CLOSING INSTRUCTION NO. 26** (AS PROPOSED BY PLAINTIFFS)

2  **(Reasonable Royalty – Form)**

3      A royalty can be calculated in several different ways and it is for you to

4  determine which way is the most appropriate based on the evidence you have heard.

5  Here, both sides are in agreement that a reasonable royalty in this case includes two

6  components:  (1) an upfront amount that Kite would have paid upon entering into the

7  hypothetical license for the '190 Patent; and (2) a running royalty rate applied to

8  Kite's sales revenues from Yescarta®.

9

10      Authority:  N.D. Cal. Model, Instruction B.5.7 (separated instruction into two

11  instructions for clarity (*see* instruction on Reasonable Royalty – Definition (above);

12  modified at lines 5-8 above to reflect that both parties propose a reasonable royalty

13  that includes an upfront payment as well as a running royalty and agree on the royalty

14  base; omitted the inapt hypothetical in the model instruction to avoid confusion).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S OBJECTIONS:** PLAINTIFFS' INSTRUCTION IS MISLEADING, CONFUSING, ONE-SIDED, ARGUMENTATIVE, AND LEGALLY ERRONEOUS.  **1.** THE STATEMENT "A ROYALTY CAN BE CALCULATED IN SEVERAL DIFFERENT WAYS AND IT IS FOR YOU TO DETERMINE WHICH WAY IS THE MOST APPROPRIATE" IS UNNECESSARY AND CONFUSING IN THIS CASE BECAUSE BOTH SIDES PRESENT OPINIONS THAT INCLUDE AN UPFRONT AND RUNNING ROYALTY.  **2.** THE SECOND PART OF PLAINTIFFS' INSTRUCTION ERRONEOUSLY SUGGESTS THAT THE PARTIES AGREE THAT DAMAGES ARE APPROPRIATE IN THIS CASE.  IN THE MEET-AND-CONFER PROCESS, KITE PROPOSED A NEUTRAL ALTERNATIVE (KITE'S PROPOSED INSTRUCTION NO. 26).

**CLOSING INSTRUCTION NO. 26 (AS PROPOSED BY DEFENDANT)**

**(Reasonable Royalty – Form)**

     In the event that you determine that damages should be awarded in this case, both sides agree that the hypothetical license could include two components:  (1) an upfront amount to be paid upon entering into the hypothetical license for the '190 Patent; and (2) a running royalty rate applied to Kite's sales revenues from Yescarta®.

**PLAINTIFFS' OBJECTIONS:** PLAINTIFFS OBJECT TO THE FIRST SENTENCE IN THE INSTRUCTION AS UNNECESSARY AND CONFUSING; IF THE CERTIFICATE OF CORRECTION IS VALID AND ONE OR MORE OF THE CLAIMS ARE VALID, THEN A REASONABLE ROYALTY IS THE MINIMUM AMOUNT THAT CAN BE AWARDED (35 U.S.C. § 284); THE CLAUSE "IN THE EVENT THAT YOU DETERMINE THAT DAMAGES SHOULD BE AWARDED IN THIS CASE …" SUGGESTS THAT A LESSER AMOUNT MAY BE CONSIDERED.

**CLOSING INSTRUCTION NO. 27 (AS PROPOSED BY PLAINTIFFS)**

**(Reasonable Royalty – Factors)**

In determining both the upfront amount and the running royalty rate, you should consider all the facts known and available to the parties at the time the infringement began. Factors that you may consider in making your determination include:

(1) The royalties received by the Plaintiffs for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2) The rates paid by licensees for the use of other patents comparable to the patent-in-suit.

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7) The duration of the patent and the term of the license.

(8) The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as the Plaintiffs) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty that Kite would have been willing to pay and that Juno and Sloan Kettering would

have been willing to accept, acting as normally prudent business people.

Authority:  FCBA Model, Instruction B6.7 (modified for clarity to reflect that both parties propose a reasonable royalty that includes an upfront payment as well as a running royalty and agree on the royalty base and in portions to expressly incorporate the *Georgia-Pacific* factors as set forth in the Committee Comments and Authorities to FCBA Model Instruction 6.7 that are potentially relevant); *Energy Transp. Group, Inc. v. William Demant Holding A/S/*, 697 F.3d 1342, 1357 (Fed. Cir. 2012) ("[T]his court does not endorse *Georgia-Pacific* as setting forth a test for royalty calculations, but only as a list of admissible factors informing a reliable economic analysis."); *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

1   **DEFENDANT'S OBJECTIONS:**  PLAINTIFFS HAVE NOT ACCURATELY
2   SHOWN THE BREADTH OF THEIR CHANGES TO THIS INSTRUCTION AND
3   THE INSTRUCTION THEY HAVE CREATED IS LEGALLY ERRONEOUS,
4   UNCLEAR, AND MISLEADING.  **1.**   THE FACTORS LISTED IN THE
5   PLAINTIFFS' PROPOSED INSTRUCTION ARE NOT IN THE INSTRUCTION
6   BUT RATHER IN THE "COMMITTEE COMMENTS AND AUTHORITIES"
7   AFTER THE INSTRUCTION.  ALTHOUGH PLAINTIFFS CITE THE MODEL
8   INSTRUCTION AS THE SOURCE, PLAINTIFFS HAVE OMITTED NEARLY
9   ALL OF THE ACTUAL INSTRUCTION. **2.** PLAINTIFFS' INSTRUCTION
10  WRONGLY INDICATES THAT JUNO, WHICH DID NOT ACQUIRE RIGHTS
11  TO THE '190 PATENT UNTIL APPROXIMATELY ONE YEAR AFTER THE
12  HYPOTHETICAL NEGOTIATION, WOULD HAVE PARTICIPATED IN THAT
13  NEGOTIATION.  SEE DKT # 328-4 (KITE'S SUPPLEMENT TO ITS MOTION
14  IN LIMINE ON DR. SULLIVAN'S OPINIONS).

**CLOSING INSTRUCTION NO. 27(a)** **(AS PROPOSED BY DEFENDANT)**

**(Reasonable Royalty – Relevant Factors)**

In determining both the upfront amount and/or the running royalty rate, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1) The value that the claimed invention contributes to YESCARTA, for which the Sloan Kettering Institute is entitled to compensation.

(2) The value that factors other than the claimed invention contribute to YESCARTA, for which the Sloan Kettering Institute is not entitled to compensation.

(3) Comparable license agreements, such as those covering the use of the claimed invention or similar technology.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.


Authority:   FCBA Model 6.7 (as modified to refer more directly to the allegations in this case).

**PLAINTIFFS' OBJECTIONS:  (1)** PLAINTIFFS OBJECT TO THE SECOND SENTENCE AND ITS LIST OF FACTORS AS CONFUSING AND PREJUDICIAL; THE INSTRUCTION CONCERNS "RELEVANT FACTORS," AND THE PARTIES' DAMAGES EXPERTS HAVE ADDRESSED MOST, IF NOT ALL, OF THE *GEORGIA PACIFIC* FACTORS (*GEORGIA-PACIFIC CORP. V. UNITED STATES PLYWOOD CORP.*, 318 F. SUPP. 1116 (S.D.N.Y. 1970)); INCLUDING ONLY SOME PRESENT *GEORGIA PACIFIC* FACTORS IS CONFUSING AND PLACES UNDUE EMPHASIS ON THOSE LISTED. **(2)** PLAINTIFFS OBJECT TO THE ADDITION TO THE FIRST TWO FACTORS: "FOR WHICH THE SLOAN KETTERING INSTITUTE IS ENTITLED TO COMPENSATION." THE PARTIES DISAGREE ABOUT THE PARTICIPANTS IN THE HYPOTHETICAL NEGOTIATION, AND KITE UNFAIRLY ELEVATES ITS VIEWS ON THIS TOPIC; THE HYPOTHETICAL NEGOTIATION DOES NOT ALLOW EXPERTS TO DISREGARD THE REAL-WORLD FACTUAL CIRCUMSTANCES OF THE PARTIES (*EXMARK MFG. CO. INC. V. BRIGGS & STRATTON POWER PROD. GRP., LLC*, 879 F.3D 1332, 1351 (FED. CIR. 2018) (EXCLUDING OPINION BECAUSE "PROPOSED ROYALTY RATE LACKED SUFFICIENT TIES TO THE FACTS OF THE CASE")); PLAINTIFFS CONTEND SLOAN KETTERING WOULD REPRESENT JUNO/JUNO'S INTERESTS IN ANY NEGOTIATION BECAUSE IT HAD CONTRACTUAL OBLIGATIONS TO JUNO THROUGH THE NOVEMBER 2013 AGREEMENT BETWEEN JUNO AND MSKCC.  MOREOVER, THE PHRASE MISLEADINGLY SUGGESTS JUNO WILL NOT RECEIVE COMPENSATION.  IT IS UNDISPUTED THAT JUNO HAS AN EXCLUSIVE LICENSE TO THE '190 PATENT, INCLUDING THE RIGHT TO PAST DAMAGES; THUS, JUNO WOULD BE RECEIVING THE DAMAGES AWARD AS WELL; PLAINTIFFS' FRAMING IS SIMPLER AND NEUTRAL.  **(3)** PLAINTIFFS RESERVE ALL OBJECTIONS TO THE COURT'S ORDER ON KITE'S MOTION TO DISMISS.  *SEE* DKT. NO. 304.

**CLOSING INSTRUCTION NO. 27(b)** <span style="color:red">**(AS PROPOSED BY DEFENDANT)**</span>

**(Reasonable Royalty – Attribution/Apportionment)**

The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or [the Defendant]'s size or market position.

<u>Authority</u>:  AIPLA Model 10.2.5.4. (as modified to omit discussion of royalty rate and royalty base).

**PLAINTIFFS' OBJECTIONS:  (1)** PLAINTIFFS OBJECT TO INCLUSION OF THIS INSTRUCTION AS UNNECESSARY AND CONFUSING; THE 2013 EXCLUSIVE LICENSE AGREEMENT IS THE ONLY AGREEMENT FOR THE '190 PATENT, AND BOTH SIDES' EXPERTS USE IT AS THE STARTING POINT FOR THEIR REASONABLE ROYALTY CALCULATIONS; THE FEDERAL CIRCUIT HAS RECOGNIZED THAT IN A COMPARABLE-LICENSE APPROACH, SUCH AS USED HERE, APPORTIONMENT IS "BUILT IN" (*COMMONWEALTH SCI. V. CISCO SYS.*, 809 F.3D 1295, 1303 (FED. CIR. 2015) ("BECAUSE THE PARTIES' DISCUSSIONS CENTERED ON A LICENSE RATE FOR THE [ASSERTED] PATENT, THIS STARTING POINT FOR THE DISTRICT COURT'S ANALYSIS ALREADY BUILT IN APPORTIONMENT.")); INCLUSION OF THE INSTRUCTION IMPROPERLY SUGGESTS THAT FURTHER APPORTIONMENT IS REQUIRED.

**(2)** PLAINTIFFS OBJECT TO INCLUSION OF THIS INSTRUCTION AS THERE IS A DISPUTE REGARDING THE ALLEGED DRIVERS OF VALUE FOR YESCARTA; PLAINTIFFS CONTEND THAT WITHOUT THE TECHNOLOGY CLAIMED IN THE '190 PATENT, I.E., THE THERAPEUTIC AGENT IN YESCARTA, KITE WOULD HAVE NO PRODUCT; INCLUSION OF THIS INSTRUCTION WOULD THUS UNFAIRLY ELEVATE KITE'S VIEWS ON THIS TOPIC.

**CLOSING INSTRUCTION NO. 28 (AS PROPOSED BY PLAINTIFFS)**
**(Reasonable Royalty – Comparability)**

When determining the upfront amount and the running royalty rate, you may consider evidence concerning the amounts that other parties have paid for rights to the '190 Patent, or for rights to similar technologies.  A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between the Plaintiffs and Kite in order for you to consider it.  However, if you choose to rely upon evidence from any other license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between the Plaintiffs and Kite, in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination.

Authority:  American Intellectual Property Law Association Model Patent Jury Instruction 10.2.5.9 (2018 Edition) (modified for clarity to reflect that both parties propose a reasonable royalty that includes an upfront payment as well as a running royalty and agree on the royalty base).

**DEFENDANT'S OBJECTIONS:**  PLAINTIFFS' INSTRUCTION IS LEGALLY ERRONEOUS, ONE-SIDED, ARGUMENTATIVE, AND MISLEADING.  **1.** PLAINTIFFS' INSTRUCTION WRONGLY IMPLIES THAT JUNO, WHICH DID NOT ACQUIRE RIGHTS TO THE '190 PATENT UNTIL APPROXIMATELY ONE YEAR AFTER THE HYPOTHETICAL NEGOTIATION (DKT # 304), WOULD HAVE PARTICIPATED IN THAT NEGOTIATION.  *SEE* DKT # 328-4 (KITE'S SUPPLEMENT TO ITS MOTION IN LIMINE ON DR. SULLIVAN'S OPINIONS).  **2.** THE USE OF "THE" RATHER THAN "AN" IN "THE UPFRONT PAYMENT AND THE RUNNING ROYALTY RATE" WRONGLY IMPLIES THAT THE JURY SHOULD AWARD DAMAGES.

**CLOSING INSTRUCTION NO. 28 (AS PROPOSED BY DEFENDANT)**

**(Reasonable Royalty – Use of Comparable License Agreement)**

When determining an upfront amount or running royalty rate, you may consider evidence concerning the amounts that other parties have paid for rights to the patent in question, or for rights to similar technologies.  A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between the Sloan Kettering Institute and Kite in order for you to consider it.  However, if you choose to rely upon evidence from any other license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between the Sloan Kettering Institute and Kite, in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination.

Authority:  AIPLA Model 10.2.5.9.

**PLAINTIFFS' OBJECTIONS:   (1)** PLAINTIFFS OBJECT TO KITE'S LIMITATION OF THE NEGOTIATING PARTIES TO SLOAN KETTERING INSTITUTE AND KITE AS THE PARTIES DISAGREE REGARDING THE PARTICIPANTS IN THE HYPOTHETICAL NEGOTIATION, AND KITE UNFAIRLY ELEVATES ITS VIEWS ON THIS TOPIC; THE HYPOTHETICAL NEGOTIATION DOES NOT ALLOW EXPERTS TO DISREGARD THE REAL-WORLD FACTUAL CIRCUMSTANCES OF THE PARTIES (*EXMARK MFG. CO. INC. V. BRIGGS & STRATTON POWER PROD. GRP., LLC*, 879 F.3D 1332, 1351 (FED. CIR. 2018) (EXCLUDING OPINION BECAUSE "PROPOSED ROYALTY RATE LACKED SUFFICIENT TIES TO THE FACTS OF THE CASE")); PLAINTIFFS CONTEND SLOAN KETTERING WOULD REPRESENT JUNO/JUNO'S INTERESTS IN ANY NEGOTIATION BECAUSE IT HAD CONTRACTUAL OBLIGATIONS TO JUNO THROUGH THE NOVEMBER 2013 AGREEMENT BETWEEN JUNO AND MSKCC.   **(2)** PLAINTIFFS RESERVE ALL OBJECTIONS TO THE COURT'S ORDER ON KITE'S MOTION TO DISMISS. *SEE* DKT. NO. 304.

**(VERDICT FORM AS PROPOSED BY PLAINTIFFS, PP. 131-134)**

## <u>PLAINTIFFS' PROPOSED JURY VERDICT FORM</u>

When answering the following questions and filling out this Verdict Form, please follow the directions provided throughout the form.  Please refer to the Jury Instructions if you are unsure about the meaning or usage of any legal term that appears in the questions below.

We, the jury, unanimously agree to the answers to the following questions and return them as our verdict in this case:

## I.   WILLFUL INFRINGEMENT

1.  Have Plaintiffs proven by a preponderance of the evidence that Kite's infringement of the corrected claims of the '190 Patent was willful?

Yes _____          No _____
(in favor of Juno)          (in favor of Kite)

## II.   CERTIFICATE OF CORRECTION

2.  Has Kite proven by clear and convincing evidence that the Certificate of Correction is invalid?

Yes _____          No _____
(in favor of Kite)          (in favor of Juno)

## III.   VALIDITY OF ASSERTED PATENT CLAIMS

### A.   ENABLEMENT

3.  Has Kite proven by clear and convincing evidence that the following claims of the '190 Patent are invalid because the specification of the '190 Patent does not enable the claims?

| Asserted Patent Claims | Yes (in favor of Kite) | No (in favor of Juno) |
|---|---|---|
| Claim 3 | | |
| Claim 5 | | |
| Claim 9 | | |
| Claim 11 | | |

*[continue to next page]*

## B.   WRITTEN DESCRIPTION

4.  Has Kite proven by clear and convincing evidence that the following claims of the '190 Patent are invalid because the specification of the '190 Patent does not contain an adequate written description of the claims?

| Asserted Patent Claims | Yes (in favor of Kite) | No (in favor of Juno) |
|---|---|---|
| Claim 3 | | |
| Claim 5 | | |
| Claim 9 | | |
| Claim 11 | | |

## IV.   **DAMAGES**

*If you answered "no" to question #2, and you answered "no" to both question #3 and question #4 for any claim, then answer this question. Otherwise, you should not answer this question.*

5.  What is the total amount of damages that you find Plaintiffs have proven by a preponderance of the evidence?

a.    Upfront Payment (dollars):   $_____

and

b.    Running Royalty (percentage):   _____%
(to be applied to Yescarta® revenues through trial)

**END**

Please review your selections above to confirm that they accurately reflect your unanimous determinations.  Your [Foreperson] [Presiding Juror] should then sign and date below, and notify the [Clerk] [Bailiff] [Officer] that you have reached a verdict.  Your [Foreperson] [Presiding Juror] should bring it when the jury is brought back into the courtroom.

Dated: _____, 2019        By _____
                                        [Foreperson] [Presiding Juror]

**[DEFENDANT'S OBJECTIONS APPEAR ON THE FOLLOWING PAGES.]**

**(DEFENDANT'S OBJECTIONS TO PLAINTIFFS' VERDICT FORM, PP. 135-142)**

We, the jury, unanimously agree to the answers to the following questions and return them as our verdict in this case:

## I.    WILLFUL INFRINGEMENT

1.  Have Plaintiffs proven by a preponderance of the evidence that Kite's infringement of the corrected claims of the '190 Patent was willful?

Yes _____            No _____
(in favor of Juno)        (in favor of Kite)

1  **DEFENDANT'S OBJECTIONS:** WILFULLNESS SHOULD NOT BE THE

2  FIRST QUESTION PRESENTED TO THE JURY.  A NECESSARY

3  PREDICATE TO A FINDING OF WILLFULNESS IS A FINDING OF

4  INFRINGEMENT OF A VALID PATENT CLAIM.  IF THE JURY FINDS THAT

5  THE CERTIFICATE OF CORRECTION IS INVALID OR THAT THE

6  ASSERTED CLAIMS LACK ADEQUATE WRITTEN DESCRIPTION OR

7  ENABLEMENT, THE JURY WILL HAVE NO NEED TO DECIDE

8  WILLFULNESS.  PLAINTIFFS' PROPOSAL RISKS CONFUSING THE JURY

9  AND PREJUDICING KITE BY REQUIRING THE JURY TO ANSWER THE

10 QUESTION OF WILFULNESS WITHOUT REGARD TO WHETHER THERE IS

11 INFRINGEMENT OF ANY VALID CLAIM.

12        FOR PURPOSES OF PRESERVING ITS OBJECTION FOR APPEAL,

13 KITE FURTHER OBJECTS THAT SUBMITTING THIS ISSUE TO THE JURY

14 IS NOT REQUIRED BY THE SEVENTH AMENDMENT, CONFUSING,

15 UNFAIRLY PREJUDICIAL, AND INCONSISTENT WITH SUPREME COURT

16 PRECEDENT.  *SEE HALO*, *SUPRA,* AND *TULL V. UNITED STATES*, 481 U.S.

17 412 (1987).

18

19

20

21

22

23

24

25

26

27

28

## II.     <u>CERTIFICATE OF CORRECTION</u>

2.  Has Kite proven by clear and convincing evidence that the Certificate of Correction is invalid?

Yes _____               No _____
(in favor of Kite)           (in favor of Juno)

1 **<u>DEFENDANT'S OBJECTIONS:</u>** TO AID JUROR COMPREHENSION KITE
2 HAS PROPOSED THAT THE INSTRUCTION REFER TO THE BURDEN OF
3 PROOF BY ASKING WHETHER IT IS "HIGHLY PROBABLE" THAT KITE
4 HAS ESTABLISHED THE DEFENSE, RATHER THAN ASKING WHETHER
5 KITE HAS SHOWN "BY CLEAR AND CONVINCING EVIDENCE" THAT
6 THE DEFENSE IS ESTABLISHED. *SEE* N.D. CAL. MODEL PATENT JURY
7 INSTRUCTION NO. 4.1A.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.   <u>VALIDITY OF ASSERTED PATENT CLAIMS</u>

### A.   ENABLEMENT

3.  Has Kite proven by clear and convincing evidence that the following claims of the '190 Patent are invalid because the specification of the '190 Patent does not enable the claims?

| Asserted Patent Claims | Yes (in favor of Kite) | No (in favor of Juno) |
|---|---|---|
| Claim 3 | | |
| Claim 5 | | |
| Claim 9 | | |
| Claim 11 | | |

*[continue to next page]*

### B.   WRITTEN DESCRIPTION

4.  Has Kite proven by clear and convincing evidence that the following claims of the '190 Patent are invalid because the specification of the '190 Patent does not contain an adequate written description of the claims?

| Asserted Patent Claims | Yes (in favor of Kite) | No (in favor of Juno) |
|---|---|---|
| Claim 3 | | |
| Claim 5 | | |
| Claim 9 | | |
| Claim 11 | | |

**DEFENDANT'S OBJECTIONS:**

**1.** PLAINTIFFS' VERDICT FORM ASKS THE JURY WHETHER THE PATENT CONTAINS AN "ADEQUATE" WRITTEN DESCRIPTION, BUT DOES NOT SIMILARLY ASK WHETHER IT "ADEQUATELY" ENABLES THE ASSERTED CLAIMS. ADDITIONALLY, IT FAILS TO ASK THE JURY WHETHER THE PATENT HAS DESCRIBED AND ENABLED THE FULL SCOPE OF THE ASSERTED CLAIMS. BECAUSE THE ASSERTED CLAIMS ARE DIRECTED TO A GENUS, WHETHER THEY HAVE ADEQUATELY DESCRIBED AND ENABLED THE FULL SCOPE OF WHAT THEY CLAIM IS A CRITICAL INVALIDITY ISSUE AND SHOULD BE ANSWERED BY THE JURY ON THE VERDICT FORM. *SEE, E.G., WYETH & CORDIS CORP. V. ABBOTT LABS.*, 720 F.3D 1380, 1386 (FED. CIR. 2013) (SPECIFICATION MUST ENABLE "PRACTICING THE FULL SCOPE OF THE CLAIMS, MEASURED AT THE FILING DATE.").

**2.** TO AID JUROR COMPREHENSION KITE HAS PROPOSED THAT THE INSTRUCTION REFER TO THE BURDEN OF PROOF BY ASKING WHETHER IT IS "HIGHLY PROBABLE" THAT KITE HAS ESTABLISHED THE DEFENSE, RATHER THAN ASKING WHETHER KITE HAS SHOWN "BY CLEAR AND CONVINCING EVIDENCE" THAT THE DEFENSE IS ESTABLISHED.

**3.** TO AVOID CONFUSION ABOUT HOW TO FILL OUT THE CHARTS, KITE HAS PROPOSED A SHORT EXPLANATION OF WHAT IT MEANS TO ANSWER "YES" OR "NO" TO THE INVALIDITY QUESTIONS.

## IV.  **DAMAGES**

*If you answered "no" to question #2, and you answered "no" to both question #3 and question #4 for any claim, then answer this question. Otherwise, you should not answer this question.*

5.  What is the total amount of damages that you find Plaintiffs have proven by a preponderance of the evidence?

        a.      Upfront Payment (dollars):  $_____

              and

        b.      Running Royalty (percentage):  _____%
              (to be applied to Yescarta® revenues through trial)

**DEFENDANT'S OBJECTIONS:**

    **1.** PLAINTIFFS' VERDICT FORM INTRODUCES THE POTENTIAL FOR SIGNIFCANT ERROR BECAUSE IT IS VAGUE ABOUT THE TIME PERIOD FOR WHICH THE JURY SHOULD AWARD DAMAGES. UNTIL THE EVE OF TRIAL, PLAINTIFFS AND THEIR DAMAGES EXPERT RYAN SULLIVAN HAVE BEEN EXPLICIT THAT THEY ARE SEEKING DAMAGES *ONLY* FOR PAST INFRINGEMENT. *SEE, E.G.,* DKT # 311-1 ¶¶ 169 (SULLIVAN EXPERT REPORT) (STATING HIS UPFRONT PAYMENT "DOES NOT INCLUDE COMPENSATION FOR ANY TYPE OF FUTURE ANTICIPATED HARM").  IN RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE SULLIVAN, PLAINTIFFS SEEK TO HEDGE, CLAIMING THAT THEY WOULD FOREGO A PERMANENT INJUNCTION, IN RECOGNITION OF HAVING OBTAINED COMPENSATION FOR FUTURE HARMS, *IF* THE JURY GIVES THEM THE ENTIRE UPFRONT PAYMENT THAT THEY SEEK. THE JURY SHOULD NOT BE MADE COMPLICIT WITH PLAINTIFFS' DELIBERATE STRATEGY TO PRESENT AN AMBIGUOUS AND MOVING TARGET.  THE JURY SHOULD BE CLEARLY AND PRECISELY INSTRUCTED ABOUT THE TIME PERIOD THAT WILL BE COVERED BY THEIR DAMAGES AWARD, INCLUDING THE UPFRONT PAYMENT.

    **2.** PLAINTIFFS' PROPOSED VERDICT FORM WOULD ALSO MASK THE FULL SCOPE OF THE EXCESSIVE AWARD THEY SEEK BECAUSE IT DOES NOT REQUIRE THE JURY TO CALCULATE THE TOTAL DAMAGES AWARDED (UPFRONT PAYMENT PLUS RUNNING ROYALTY).  THE JURY IS CAPABLE OF BASIC ARITHMETIC. IT SHOULD RENDER ANY DAMAGES AWARD WITH A FULL AND COMPLETE APPRECIATION OF THE SIZE OF THE AWARD.

**(VERDICT FORM AS PROPOSED BY DEFENDANT, PP. 143-145)**

## DEFENDANT'S PROPOSED JURY VERDICT FORM

When answering this Verdict Form, follow the directions provided in bold after the questions.  Your answers must be unanimous.  This Verdict Form contains legal terms that are defined and explained in the Jury Instructions.  You must follow the Jury Instructions in answering this Verdict Form.

*　　*　　*　　*

We, the jury, unanimously agree to the answers to the following questions and return them under the instructions of this Court as our verdict in this case.

FINDINGS ON INVALIDITY DEFENSES

**Certificate of Correction**

1.  Has Kite proven that it is highly probable that the certificate of correction for the '190 patent is invalid?

    **Please answer with a "Yes" or "No."**

    Yes ＿＿＿    No ＿＿＿
    (for Kite)    (for Plaintiffs)

**Whatever your answer is to Question 1, answer Question 2.**

**Written Description Requirement**

2.  Has Kite proven that it is highly probable that the specification of the '190 patent does not contain an adequate written description of any of the asserted claims?

    **Please answer each claim with a "Yes" or a "No."**

    **"Yes" means the claim does not contain adequate written description support in the specification, and "No" means the claim does contain adequate written description support in the specification.**

| '190 Patent | Yes (for Kite) | No (for Plaintiffs) |
|---|---|---|
| Claim 3 | | |
| Claim 5 | | |
| Claim 9 | | |
| Claim 11 | | |

**Whatever your answer is to Question 2, answer Question 3 on the next page.**

1

2      **Enablement**

3      3.  Has Kite proven that it is highly probable that the specification of the '190 patent does
           not enable the full scope of the following claims?

4          **Please answer each claim with a "Yes" or a "No."**

5          **"Yes" means the claim is not adequately enabled by the specification, and "No"
           means the claim is adequately enabled by the specification.**

6

7

| '190 Patent | Yes (for Kite) | No (for Plaintiffs) |
|---|---|---|
| Claim 3 | | |
| Claim 5 | | |
| Claim 9 | | |
| Claim 11 | | |

8

9

10

11

12     **If you answered "Yes" to Question 1, do not answer Question 4 or Question 5.  Sign
       and date page 3 of the Verdict Form and inform the bailiff that you have reached a
       verdict.**

13

14     **If you answered "Yes" to either Question 2, Question 3 or both questions, for each of
       the asserted claims (Claims 3, 5, 9, and 11), do not answer Question 4 or Question 5.
       Sign and date page 3 of the Verdict Form and inform the bailiff that you have
       reached a verdict.**

15

16

17     **If you answered "No" to Question 1 <u>AND</u> "No" to <u>BOTH</u> Question 2 and Question 3
       for at least one claim, answer Question 4 and Question 5.**

18

19                                   **FINDING ON WILLFUL INFRINGEMENT**

20     4.  Have Plaintiffs proven that it is more likely than not that Kite's infringement was
           willful?

21         Yes _____    No _____
           (for Plaintiffs) (for Kite)

22

23

24     **If you answered Question 4, answer Question 5.**

25

26

27

28

**FINDING ON REASONABLE ROYALTY**

5.  What amount of damages have Plaintiffs proven, by a preponderance of the evidence, would be adequate to compensate them for Kite's infringement from October 18, 2017 through today's date?

**Upfront payment** of $_____  +  **% royalty** on $_____ of net sales of YESCARTA® from October 18, 2017 through trial = $_____.

You have now reached the end of the Verdict Form and should review it to ensure it accurately reflects your unanimous determinations. The Presiding Juror should then sign and date the verdict form in the spaces below and notify the Courtroom Deputy that you have reached a verdict. The Presiding Juror should retain possession of the verdict form and bring it when the jury is brought back into the courtroom.

Date: _____                    By: _____
                                         Presiding Juror

**[PLAINTIFFS' OBJECTIONS APPEAR ON THE FOLLOWING PAGE.]**

1   **PLAINTIFFS' OBJECTIONS: (1)** PLAINTIFFS OBJECT THAT KITE'S
2   VERDICT FORM DOES NOT FOLLOW THE ORDER OF PROOF—
3   WILLFULNESS BEFORE DEFENSES. *SEE* DKT. NO. 335. THE COC AND
4   PATENT CLAIMS ARE PRESUMED VALID; IT MAKES SCANT SENSE TO
5   ASK FIRST IF THEY ARE INVALID BEFORE ASKING WHETHER KITE'S
6   INFRINGEMENT WAS WILLFUL, PARTICULARLY BECAUSE KITE HAS
7   STIPULATED TO INFRINGEMENT UNLESS IT PROVES THE COC INVALID.
8   MOREOVER, AS PLAINTIFFS PROPOSE BUT KITE DOES NOT, THE JURY
9   SHOULD ASSESS WILLFULNESS EVEN IF IT ACCEPTS A KITE DEFENSE,
10  TO PRESERVE RESOURCES IF PLAINTIFFS OBTAINED JMOL OR
11  PREVAILED ON APPEAL ON KITE'S DEFENSES. **(2)** PLAINTIFFS OBJECT
12  TO KITE'S BURDEN DESCRIPTIONS, WHICH OBSCURE ITS BURDEN OF
13  CLEAR AND CONVINCING EVIDENCE. "HIGHLY PROBABLE" OMITS THE
14  KEY WORD "EVIDENCE" AND IS INCOMPLETE. KITE'S REFERENCE TO
15  "MORE LIKELY THAN NOT" FOR THE PREPONDERANCE STANDARD IS
16  FLAWED FOR SIMILAR REASONS. PLAINTIFFS' USE OF THE STANDARDS
17  THEMSELVES IS SIMPLER AND EASIER FOR THE JURY. **(3)** PLAINTIFFS
18  OBJECT TO KITE'S UNDULY CONVOLUTED INSTRUCTIONS, *E.G.*,
19  UNNECESSARY DIRECTIONS TO PROCEED TO THE NEXT QUESTION,
20  WHICH RISK CONFUSING THE JURY INTO MAKING AN ERROR.
21  **(4)** PLAINTIFFS OBJECT TO KITE'S DAMAGES QUESTION. THE PARTIES
22  AGREE ON THE REVENUE SUBJECT TO THE RUNNING ROYALTY, SO
23  ONLY A RATE IS NEEDED; ASKING FOR TWO UNNECESSARY
24  CALCULATIONS INVITES ERROR. "THROUGH TRIAL" IS ALSO
25  IMPROPER; THE PARTIES' EXPERTS DISAGREE ABOUT THE PURPOSE OF
26  THE UPFRONT PAYMENT; KITE UNFAIRLY ELEVATES ITS EXPERTS'
27  VIEWS. PLAINTIFFS' FRAMING IS SIMPLER AND NEUTRAL.

28

Respectfully submitted,

Dated:  December 1, 2019          JONES DAY

By:  */s/ Andrea W. Jeffries*
Andrea W. Jeffries

*Attorneys for Plaintiffs*
*Juno Therapeutics, Inc., Memorial Sloan*
*Kettering Cancer Center, and Sloan*
*Kettering Institute for Cancer Research*

Dated:  December 1, 2019          MUNGER, TOLLES & OLSON LLP

By:  */s/ Markus A. Brazill*
Markus A. Brazill

*Attorneys for Defendant-Counterclaimant*
*Kite Pharma, Inc.*

### **ATTESTATION**

Pursuant to Civil L.R. 5-4.3.4(a)(2), I certify that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

.

/s/ *Andrea W. Jeffries*
Andrea W. Jeffries

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

A copy of the foregoing document was electronically filed with the Court this 1st day of December, 2019.  Notice of this filing will be sent by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Andrea W. Jeffries*
Andrea W. Jeffries