1
2
3
4
5
6
7
8

**FILED**
CLERK, U.S. DISTRICT COURT

December 12, 2019

CENTRAL DISTRICT OF CALIFORNIA
BY: ____VPC____ DEPUTY

9          UNITED STATES DISTRICT COURT

10     CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

| | |
|---|---|
| JUNO THERAPEUTICS, INC., et al., | Case No. 2:17-cv-7639-SJO-KS |
| Plaintiffs, | [PROPOSED] SECOND AMENDED FINAL PRETRIAL CONFERENCE ORDER |
| vs. | |
| KITE PHARMA, INC., | Judge: Hon. S. James Otero |
| Defendant. | |
| AND RELATED COUNTERCLAIMS | |

# TABLE OF CONTENTS

**Page**

1.  THE PARTIES .................................................................................. 1
2.  JURISDICTION AND VENUE ........................................................ 2
3.  TRIAL TIME ..................................................................................... 2
4.  JURY TRIAL ..................................................................................... 2
5.  ADMITTED FACTS REQUIRING NO PROOF ............................ 2
6.  STIPULATED FACTS SUBJECT TO EVIDENTIARY OBJECTION ......... 4
7.  CLAIMS AND DEFENSES TO BE PRESENTED AT TRIAL .................... 4
8.  ULTIMATE ISSUES REMAINING TO BE TRIED ................................. 23
9.  STATUS OF DISCOVERY ............................................................. 26
10. STATUS OF DISCLOSURES ......................................................... 26
11. WITNESSES ..................................................................................... 26
12. PENDING MOTIONS ...................................................................... 27
13. BIFURCATION ................................................................................. 29
14. ADDITIONAL AGREEMENTS BETWEEN THE PARTIES ................... 29
15. OTHER ISSUES ............................................................................... 33
16. FINAL ORDER ................................................................................. 34

1    Following pretrial proceedings, pursuant to Fed. R. Civ. P. 16 and L.R. 16,
2 IT IS ORDERED:

3 **1.    THE PARTIES**

4    The parties are:

5    - Plaintiff and Counterclaim Defendant Juno Therapeutics, Inc.
6      ("Juno");

7    - Plaintiff and Counterclaim Defendant Sloan Kettering Institute for
8      Cancer Research ("SKI") (together, "Plaintiffs"); and

9    - Defendant and Counterclaim Plaintiff Kite Pharma, Inc. ("Kite" or
10      "Defendant").

11    Each of these parties has been served and has appeared.  No other parties
12 named in the pleadings remain in the case.

13    The pleadings which raise the issues are:

14    - Plaintiffs' Complaint For Patent Infringement [Dkt. No. 1];

15    - Kite Pharma, Inc.'s Amended Answer and Counterclaims [Dkt. No.
16      66];

17    - Plaintiffs and Counterclaim Defendants' Answer to Counterclaim
18      Plaintiff's Counterclaims [Dkt. No. 68];

19    - Plaintiffs' First Amended Complaint For Patent Infringement [Dkt.
20      No. 174]; and

21    - Second Amended and Supplemental Complaint For Patent
22      Infringement [Dkt. No. 484].[1]

23    No claims or counterclaims have been dismissed or abandoned.

---

[1] On December 3, 2019, the Court ordered Plaintiffs to file a supplemental complaint [Dkt. No. 473].

**2. JURISDICTION AND VENUE**

The facts requisite to federal jurisdiction are admitted. Federal jurisdiction is invoked based upon the following grounds:

- Plaintiffs' claims arise under the patent laws of the United States of America; thus, this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

Venue is proper based upon the following grounds:

- Defendant resides in this District, maintains a regular and established place of business in this District, and has committed acts alleged to constitute infringement in this district; thus, venue is proper pursuant to 28 U.S.C. § 1400(b).

**3. TRIAL TIME**

The Court ordered at the November 26, 2019 pretrial conference that each side is permitted 11 hours for questioning witnesses. Of the 11 hours allotted, each party may use up to 1 hour on interim summation.

**4. JURY TRIAL**

The parties have requested a jury trial. The parties have filed and served: (a) proposed jury instructions as required by L.R. 51-1 and (b) any special questions requested to be asked on voir dire.

However, certain claims and requests for relief are to be determined by the Court, as indicated below.

**5. ADMITTED FACTS REQUIRING NO PROOF**

The following facts are admitted and require no proof:

a. The Parties

1. Juno Therapeutics, Inc. ("Juno") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Seattle, Washington.

2. Sloan Kettering Institute for Cancer Research ("SKI") is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York, New York.

3. Defendant Kite Pharma, Inc. ("Kite") is a corporation organized under the laws of the State of Delaware with its principal place of business in Santa Monica, California.

b. U.S. Patent No. 7,446,190 (the "'190 Patent")

4. The 190 Patent is titled "Nucleic Acids Encoding Chimeric T Cell Receptors."

5. Dr. Michel Sadelain, Dr. Renier Brentjens, and Dr. John Maher are the listed inventors of the '190 Patent.

6. The listed assignee of the '190 Patent is SKI.

7. The patent application from which the '190 patent issued was filed on May 28, 2003.

8. The '190 Patent claims priority to a provisional patent application filed on May 28, 2002.

9. The '190 Patent was issued by the United States Patent and Trademark Office on November 4, 2008.

10. The '190 Patent expires on August 28, 2024.

c. YESCARTA®

11. On August 31, 2012, Kite entered into a Cooperative Research and Development Agreement ("CRADA") with the National Cancer Institute ("NCI"), with Dr. Steven A. Rosenberg listed as the NCI Principal Investigator.

12. Kite received approval from the Food and Drug Administration ("FDA") on October 18, 2017 to market and sell the product

YESCARTA® for the treatment of certain types of large B-cell lymphoma.

13. Kite manufactures, uses, offers to sell, and/or sells YESCARTA® within the United States.

14. YESCARTA® is also known as axicabtagene ciloleucel, axi-cel, and KTE-C19.

15. From October 18, 2017 through September 30, 2019, Kite's sales of YESCARTA® totaled $603,650,765.

d. The Present Action For Alleged Patent Infringement

16. Kite does not have a license for the '190 Patent.

17. Plaintiffs' cause of action for infringement of the '190 Patent arose on or after October 18, 2017.

e. Technology Background

18. The letters a, c, g, and t in a nucleic acid sequence denote the four bases of deoxyribonucleic acid ("DNA"), which are adenine, cytosine, guanine, and thymine, respectively.

**6.    STIPULATED FACTS SUBJECT TO EVIDENTIARY OBJECTION**

The parties stipulate to the following facts subject to any evidentiary objections:

None.

**7.    CLAIMS AND DEFENSES TO BE PRESENTED AT TRIAL**

**PLAINTIFFS**

a. Plaintiffs' claims against Kite are as follows:

**Claim 1**:  Kite has infringed and continues to infringe the Asserted Claims of the '190 Patent under 35 U.S.C. § 271(a) as a result of making, using, offering to sell, and selling Yescarta® in the United States.  For example, Kite manufactures nucleic acid polymers within the scope of the Asserted Claims for use in making, using, selling, and offering for sale Yescarta® in the United States.  Furthermore,

Kite has stipulated to literal infringement of the '190 Patent unless it can prove at trial by clear and convincing evidence that the Certificate of Correction is invalid [Dkt. No. 223].  Kite is now, for purposes of trial, attempting to recast this argument about invalidity, as to which it bears the burden of proof by clear and convincing evidence, as one of non-infringement.  That is incorrect, improper, and unduly prejudicial to Plaintiffs.  Plaintiffs address herein below Kite's Certificate of Correction invalidity arguments in the section relating to its responses to Kite's invalidity defenses, which is where the argument about the invalidity of the Certificate of Correction is properly placed.[2]

**Claim 2**:  Plaintiffs are entitled to damages for Kite's infringement of the '190 Patent pursuant to 35 U.S.C. § 284 in an amount adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by Kite, together with interest and costs as fixed by the Court.

**Claim 3**:  Kite's infringement of the '190 Patent has been and is willful and, at the Court's discretion, Plaintiffs are entitled to enhanced damages pursuant to 35 U.S.C. § 284.

**Claim 4**:  Unless the jury awards the upfront payment portion of the damages amount(s) presented by Plaintiffs' damages expert, Dr. Ryan Sullivan, Plaintiffs will be entitled to an injunction at the appropriate time following trial.[3]  Specifically, if

---

[2] For purposes of this Pretrial Conference Order, Plaintiffs limit their infringement claims, contentions, and evidence to literal infringement, given the Court's September 27, 2019 Order granting summary judgment to Kite on the doctrine of equivalents [Dkt. No. 247].  Plaintiffs reserve all rights to appeal the Court's order granting summary judgment to Kite on the doctrine of equivalents.

[3] Plaintiffs recognize their request for an injunction is an issue for the Court, to be decided following the trial.  It is not an issue to be decided by the jury.  It would be highly prejudicial to Plaintiffs for there to be any mention in the presence of the jury of a possible injunction in this matter.  Indeed, courts routinely recognize that requests for injunctive relief are irrelevant to the issues before a jury, and therefore exclude reference to the plaintiff's request for an injunction.  *See, e.g.*, *SynQor, Inc.*

1  the jury does not award Dr. Sullivan's proposed upfront payment, Plaintiffs will be

2  entitled to an injunction at such time that Juno receives FDA approval for its CAR-T

3  product presently known as JCAR017, which is expected sometime in 2020.  Prior

4  to that FDA approval date, in lieu of an injunction, Plaintiffs will be entitled to an

5  ongoing royalty to be determined by the Court following trial.  If the jury does

6  award the upfront payment portion of the damages amount(s) presented by Dr.

7  Sullivan at trial, Plaintiffs will not seek an injunction and will pursue only ongoing

8  royalties in lieu of an injunction.

9      **Claim 5:**  This case qualifies as exceptional pursuant to 35 U.S.C. § 285 and,

10  at the Court's discretion, Plaintiffs are entitled to attorneys' fees.

11      **Plaintiffs' Defense to Kite's Counterclaim 1 (Invalidity of the Certificate**

12  **of Correction):**

13      Kite cannot prove by clear and convincing evidence that the Certificate of

14  Correction is invalid.

15      **Plaintiffs' Defense to Kite's Counterclaim 2 (Invalidity of the Asserted**

16  **Claims):**

17      Kite cannot prove by clear and convincing evidence that the Asserted Claims

18  are invalid for failure to satisfy the written description or enablement requirements

19  in 35 U.S.C. § 112.

20          b.  The elements required to establish Plaintiffs' claims are:

21      **Claim 1:**  To prove literal infringement, Plaintiffs must show that Kite makes,

22  uses, offers for sale, or sells the nucleic acid polymer(s) of the claims of the '190

23  Patent in the making, using, and/or selling of the accused product, Yescarta®, in the

24  United States.  Kite has stipulated to literal infringement of the '190 Patent after the

25

26  *v. Artesyn Techs., Inc.*, No. 2:07-cv-497, 2011 WL 3625036, at *22 (E.D. Tex. Aug.

27  17, 2011); *Evolved Wireless, LLC v. Apple, Inc.*, No. 15-cv-542, 2019 WL 1100471,

28  at *6 (D. Del. Mar. 7, 2019); *Ciena Corp. v. Corvis Corp.*, 352 F. Supp. 2d 526, 528
   (D. Del. 2005).

Certificate of Correction unless it can prove by clear and convincing evidence that the Certificate of Correction invalid [Dkt. 223].

**Claim 2:**  Upon a finding of infringement, Plaintiffs are entitled to damages pursuant to 35 U.S.C. § 284.  In this case, Plaintiffs are seeking a reasonable royalty as compensation for Kite's infringing sales of Yescarta®, which is the minimum measure of damages to which Plaintiffs are entitled by statute.  Plaintiffs must prove by a preponderance of the evidence the reasonable royalty to which they are entitled. That royalty is defined as the royalty to which Plaintiffs and Kite would have agreed as a license for Kite's use of Plaintiffs' invention on the eve of Kite's infringement. *See* 35 U.S.C. § 284; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).  The hypothetical negotiation would have proceeded with both sides having adopted the assumption the '190 Patent is both valid and infringed.

Some of the factors the jury may consider in determining a reasonable royalty include:

(1)   The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)   The rates paid by licensees for the use of other patents comparable to the patent-in-suit.

(3)   The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)   The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)   The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the product made under the patent, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been

-8-

willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  Plaintiffs will prove that the reasonable royalty arising from the hypothetical negotiation, on the eve of Kite's infringement of the '190 Patent, would have taken the form of an initial payment of approximately $1.1 billion plus a running royalty of 27.6% on infringing sales of Yescarta® through the date of the judgment (with ongoing royalties assessed by the Court if an injunction is not granted).

**Claim 3:**  Kite's infringement of the '190 Patent has been and is willful and, at the Court's discretion, Plaintiffs are entitled to enhanced damages pursuant to 35 U.S.C. § 284.  To prove Kite's infringement has been and is willful, Plaintiffs will prove by a preponderance of the evidence that Kite intentionally ignored or recklessly disregarded Plaintiffs' patent rights, *see* 35 U.S.C. § 284; N.D. Cal. Model, Instruction B.3.8, or that Kite acted despite a risk of infringement that was either known or so obvious that it should have been known to Kite.  *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016) (interpreting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1930 (2016)), *rev'd on other grounds sub nom. WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129 (2018).

In assessing Kite's conduct for willful infringement, the jury should consider all relevant facts including whether Kite intentionally copied Plaintiffs' patented technology in developing Yescarta®; whether Kite knew, or should have known, that its conduct involved an unreasonable risk of infringement; and whether Kite had a reasonable belief that at the time of infringement that Yescarta® did not infringe the '190 Patent.  *See* N.D. Cal. Model Patent Jury Instruction B.3.8.

In so proving, Plaintiffs will demonstrate that the Court should, in its discretion, enhance damages up to three times the amount found or assessed by the jury.  *See* 35 U.S.C. § 284.

**Claim 4:**  To prove entitlement to an injunction, Plaintiffs must show: (1) that they have suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between Plaintiffs and Kite, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Plaintiffs accept that if the jury adopts Dr. Sullivan's upfront payment and awards the full upfront payment as damages, Plaintiffs cannot receive a permanent injunction.  *Innogenetics v. Abbott Labs.*, 512 F.3d 1363, 1380 (Fed. Cir. 2008).  Plaintiffs also are not entitled to an injunction until Juno's JCAR017 receives FDA approval.

The Court may determine that an award of an ongoing royalty for patent infringement in lieu of an injunction is appropriate in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the Court deems reasonable.  35 U.S.C. § 283; *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007).  To set the ongoing royalty to which Plaintiffs are entitled, the Court should consider changes in the parties' bargaining positions; the *Georgia-Pacific* factors, using the date of judgment as the date of the new hypothetical negotiation; and the fact that any continued sale and/or use of the relevant products is necessarily willful.  *See Paice*, 504 F.3d at 1314; *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1361-62 (Fed. Cir. 2008); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1342 (Fed. Cir. 2012); *Affinity Labs of Tex., LLC v. BMW N. Am., LLC*, 783 F. Supp. 2d 891, 897-99 (E.D. Tex. 2011).

**Claim 5:**  To prove exceptionality and entitlement to attorneys' fees, Plaintiffs must prove by a preponderance of the evidence that this case stands out from others with respect to the substantive weakness of Kite's positions or the

unreasonable manner in which Kite has conducted the litigation.  The Court may find this case "exceptional" and award attorneys' fees at the Court's discretion, considering the totality of the circumstances.  *See Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545 (2014).

**Plaintiffs' Defense to Kite's Counterclaim 1 (Invalidity of the Certificate of Correction):**

The Certificate of Correction is presumed valid.  To prove that the Certificate of Correction is invalid, Kite must prove by clear and convincing evidence that the Certificate of Correction was wrongly issued by the U.S. Patent and Trademark office.  A Certificate of Correction may correct a clerical or typographical error even if the correction broadens the scope of the claims, as long as the error is clearly evident to a person of ordinary skill in the art, reviewing the full patent record.  In other words, if a person of ordinary skill in the art can clearly identify the error and tell how it should be corrected from the reviewing the full patent record including the patent claims, the specification, and the prosecution history, then the Certificate of Correction is valid.  For the jury to find that the Certificate of Correction is invalid, Kite must prove by clear and convincing evidence that, reviewing the full patent record, a person of ordinary skill in the art would not identify the error or how it should be corrected.  35 U.S.C. § 255; *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1370 (Fed. Cir. 2001); *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1353 (Fed. Cir. 2007).

**Plaintiffs' Defense to Kite's Counterclaim 2 (Invalidity of the Asserted Claims):**

To prove the Asserted Claims are invalid for failure to satisfy the written description or enablement requirements in 35 U.S.C. § 112, Kite must prove by clear and convincing evidence that (a) a person of ordinary skill in the field reading the original patent application at the time it was filed would not have recognized that the patent application described the invention as claimed (*Ariad Pharm., Inc. v. Eli*

-11-

*Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010) (en banc)) or (b) the '190 Patent at the time it was originally filed did not contain a description of the claimed invention that is sufficiently full and clear to enable a person of ordinary skill in the field at the time to make and use the full scope of the invention without undue experimentation (*In re Wands*, 858 F.2d 731 (Fed. Cir. 1988)).

      c.  The key evidence Plaintiffs rely on for each of the claims is:

**Claim 1**:  The evidence on which Plaintiffs will rely to prove Kite literally infringes the Asserted Claims of the '190 Patent includes:

- Plaintiffs will rely on Dkt. No. 223, the Joint Stipulation re: Literal Infringement Of The '190 Patent After The Certificate Of Correction Under The Court's Claim Construction.

- Plaintiffs may rely on the expert testimony of Wayne Marasco, M.D., Ph.D., and Ryan Sullivan, Ph.D., as well as on testimony from former or current Kite or Gilead employees regarding the making, using, offering for sale, and selling of Yescarta® in the United States, and how that satisfies each of the elements of the Asserted Claims.

- Plaintiffs reserve the right to rely on any other document properly submitted as a trial exhibit which bears relevance or later comes to bear relevance to this claim, as well as evidence submitted to the Court in connection with these issues.

**Claim 2**:  To prove the measure of damages to which Plaintiffs are entitled as compensation for Kite's infringement, Plaintiffs may rely on the following evidence:

- Plaintiffs may rely on the expert testimony of Ryan Sullivan, Ph.D., Mark Gilbert, M.D., Mark Robbins, Ph.D., J.D., and Wayne Marasco, M.D., Ph.D. to show the proper measure of damages to compensate Plaintiffs for Kite's infringement, including the proper

measure of a reasonable royalty.  Plaintiffs may further rely on Drs. Sullivan's, Gilbert's, Robbins's, and Marasco's expert reports and the documents cited therein to establish the proper measure of damages.

- Plaintiffs may rely on contemporaneous documents from Juno, Celgene, Kite, Gilead, and external financial analysts regarding strategy and/or valuations to show the proper valuations and royalty rates for the accused product and the various factors which are relevant to that analysis.

- Plaintiffs may rely on comparable license agreements to show what a proper royalty rate should be.

- Plaintiffs may rely on Kite's and Gilead's SEC filings to show accurate valuations for the various CAR-T therapies developed by those companies.

- Plaintiffs may rely on contemporaneous records of Plaintiffs' interactions with the FDA to show how Kite's infringement affected Plaintiffs' own FDA approval process.

- Plaintiffs may rely on contemporaneous technical documents in the CAR-T field to prove and/or disprove the availability of non-infringing alternatives.

- Plaintiffs may rely on contemporaneous technical documents related to Yescarta®, Kymriah®, JCAR017 (also known as "lisocabtagene maraleucel" or "liso-cel"), and other CAR-T therapies to demonstrate the value of the claimed invention and its effect on safety, efficacy, and manufacturing.

- Plaintiffs may rely on documents related to Kite's and Gilead's internal valuation of Yescarta®.

- Plaintiffs may rely on documents related to Kite's and Gilead's sales of Yescarta®.
- Plaintiffs may rely on Kite's interrogatory responses and contentions.
- Plaintiffs may rely on testimony from former or current Kite and Gilead employees, including for example Michael Amoroso, Arie Belldegrun, Andrew Dickinson, Neville Mehenti, Tim Moore, Timothy Pigot, and Shawn Tomasello, as well as current or former Juno and Celgene witnesses, including for example Hans Bishop, Mark Gilbert, and Steven Harr.
- Plaintiffs reserve the right to rely on any other document properly submitted as a trial exhibit which bears relevance or later comes to bear relevance to this claim, as well as evidence submitted to the Court in connection with these issues.

**Claim 3**:  To prove Kite's knowledge of and deliberate disregard for the '190 Patent, and that Plaintiffs are entitled to enhanced damages, Plaintiffs may rely on the following testimony and evidence:

- Plaintiffs may rely on the fact testimony of Drs. Michel Sadelain, Yashodhara Dash, Arie Belldegrun, and other contemporaneous witnesses to show that Kite was aware of the '190 Patent and acted knowingly, intentionally and/or recklessly with regard to infringing it.
- Plaintiffs may rely on contemporaneous emails and other documents from Sloan Kettering personnel to demonstrate that Dr. Steven Rosenberg and the NCI obtained information that they used to make the construct used in Yescarta® from Sloan Kettering.  Plaintiffs may further rely on such documents to show that Kite attempted, and failed, to license the '190 Patent.

- Plaintiffs may rely on contemporaneous emails and other documents from Kite personnel to show that Kite was aware of and concerned about the '190 Patent. Plaintiffs may further rely on such documents to show that Kite intentionally sought to avoid fairly acquiring a license to Plaintiffs' intellectual property.

- Plaintiffs may rely on contemporaneous academic papers published by Kite and NCI personnel to show that Kite was aware of the construct of the '190 Patent, and specifically relied on and incorporated that construct in its own research and development efforts.

- Plaintiffs may rely on publications and statements by Kite's NCI collaborators.

- Plaintiffs may rely on Kite's public statements, filings, and disclosures.

- Plaintiffs may rely on documents related to the origins of the Yescarta® construct.

- Plaintiffs may rely on Kite's interrogatory responses and contentions.

- Plaintiffs may rely on Kite's stipulation of literal infringement.

- Plaintiffs may rely on documents from *inter partes* review proceeding IPR2015-01719 to show, among other things, Kite's knowledge of and intentional or reckless disregard of the '190 Patent, Kite's knowledge that the CAR construct used in Yescarta® is covered by the '190 Patent and hence that Yescarta® would infringe upon commercial release, Kite's awareness, when it commercially released Yescarta®, that its invalidity challenge to the '190 Patent had already been rejected, depriving Kite of its freedom

to operate rationale, and Kite's lack of a good-faith belief of noninfringement.

- Plaintiffs reserve the right to rely on any other document properly submitted as a trial exhibit which bears relevance or later comes to bear relevance to this claim, as well as evidence submitted to the Court in connection with these issues.

**Claim 4**:  To demonstrate that Plaintiffs are entitled to an injunction or, in the alternative, to ongoing royalties in lieu of an injunction for Kite's ongoing infringement after the judgment, Plaintiffs may rely on the following testimony and evidence:

- Plaintiffs may rely on the expert testimony of Dr. Sullivan, Dr. Robbins, Dr. Gilbert, and Dr. Marasco to show the damage which Plaintiffs continue to suffer through Kite's ongoing infringement.

- Plaintiffs may rely on the testimony of Juno fact witnesses regarding the effect of Yescarta® FDA approval on Juno FDA approval and business outlook.

- Plaintiffs may rely on clinical and pharmacological data, contemporaneous documents, and fact testimony showing that Juno's JCAR017 candidate is safer and just as efficacious as Yescarta®, and the equities thus favor restraint of Kite's impact on Juno's entry into the market or commensurate compensation to Plaintiffs.

- Plaintiffs may rely on evidence previously cited for Claim 2 (Damages) to show the proper ongoing royalty rate.

- Plaintiffs reserve the right to rely on any other document properly submitted as a trial exhibit which bears relevance or later comes to bear relevance to this claim, as well as evidence submitted to the Court in connection with these issues.

**Claim 5**:  To show that this case is exceptional and that Plaintiffs are entitled to attorneys' fees, Plaintiffs may rely on the following testimony and evidence:

- The testimony and evidence cited previously for Claim 3 (Willful Infringement/Enhancement) to show that Kite's infringement was willful.
- Kite's interrogatory responses, invalidity contentions, and infringement contentions.
- Kite's bad faith claim that Dr. Anja Krause was an inventor of the '190 Patent.
- Plaintiffs reserve the right to rely on any other document properly submitted as a trial exhibit which bears relevance or later comes to bear relevance to this claim, as well as evidence submitted to the Court in connection with these issues.

**Plaintiffs' Defense to Kite's Counterclaim 1 (Invalidity of the Certificate of Correction):**

The evidence on which Plaintiffs may rely to respond to Kite's evidence purporting to show that the Certificate of Correction is invalid includes the '190 Patent and its prosecution history.  Plaintiffs also may rely on the expert testimony of John Quackenbush, Ph.D.; Thomas Brocker, Ph.D.; and/or Bruce Stoner, Jr.

**Plaintiffs' Defense to Kite's Counterclaim 2 (Invalidity of the Asserted Claims):**  The evidence on which Plaintiffs may rely to respond to Kite's evidence purporting to show that the Asserted Claims of the '190 Patent are invalid includes the '190 Patent and its prosecution history.  Plaintiffs also may rely on the expert testimony of Thomas Brocker, Ph.D.

This is a non-exhaustive list of testimony and evidence.  Plaintiffs also may rely on additional evidence and reserve the right to present such evidence at trial.

## **DEFENDANT**

a. Kite plans to pursue the following counterclaims and affirmative defenses:[4]

**Defense/Counterclaim 1—Noninfringement**:  Kite has not infringed and does not infringe the Asserted Claims of the '190 patent, whether literally or under the doctrine of equivalents.  Plaintiffs' claims of infringement depend upon the certificate of correction to the '190 patent, which broadened the scope of the claims more than 4.5 years after the patent issued.  That certificate of correction is invalid.  Because the certificate of correction is invalid, the scope of the claims is limited to their scope as originally issued.  Plaintiffs have conceded that the CAR construct used in YESCARTA® does not meet the limitations of those claims literally, and the Court has granted summary judgment that Plaintiffs are estopped from asserting that the CAR construct used in YESCARTA® infringes those claims under the doctrine of equivalents.  Plaintiffs are mistaken that Kite has stipulated to literal infringement, and should not be permitted to make this misleading statement to the jury.  If the certificate of correction is found invalid, as Kite contends, the Court should enter judgment in favor of Kite on the basis of noninfringement, not invalidity of the patent.

**Defense/Counterclaim 2—Invalidity**:  Each Asserted Claim of the '190 patent is invalid for failure to comply with the adequate written description requirement of 35 U.S.C. § 112, ¶ 1, and, separately and independently, for failure to comply with the adequate enablement requirement of 35 U.S.C. § 112, ¶ 1.

---

[4] Pursuant to L.R. 16-7.2, Kite has not included rebuttal evidence regarding issues on which Plaintiffs bear the burden of proof, including damages, willfulness, and injunctive relief.  A summary of Kite's key evidence regarding those issues can be found in Kite's Memorandum of Contentions of Fact and Law, ECF No. 342, at pp. 12-25.

**Defense/Counterclaim 3—Exceptional Case**:  This case qualifies as exceptional pursuant to 35 U.S.C. § 285 and, at the Court's discretion, Kite is entitled to attorneys' fees.

b.  The elements required to establish Kite's counterclaims and affirmative defenses are:

**Defense/Counterclaim 1—Noninfringement**:  To prove that the certificate of correction is invalid, and that Kite thus does not infringe literally or under the doctrine of equivalents, Kite must show that: (1) the corrected claims are broader than the original claims; and (2) the presence of a clerical or typographical error, or how to correct that error, is not clearly evident to one of skill in the art.  *Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Sols. P.C.*, 482 F.3d 1347, 1353 (Fed. Cir. 2007).  "The first element poses a question of law."  *Id.*  The Court has already determined as a matter of law that the certificate of correction broadened the claims.  [Dkt. No. 246 at 6.]

**Defense/Counterclaim 2—Invalidity**:

(a) ***Adequate written description***.  To prove that the Asserted Claims are invalid for lack of adequate written description, Kite must show that the '190 patent's written description does not "reasonably convey[] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).  An "adequate written description requires a precise definition, such as by structure, formula, chemical name, physical properties, or other properties, of species falling within the genus sufficient to distinguish the genus from other materials."  *Id.* at 1350.  "[M]erely drawing a fence around the outer limits of a purported genus is not an adequate substitute for describing a variety of materials constituting the genus and showing that one has invented a genus and not just a species."  *Id.*  To provide an adequate written description of a genus, "a patentee must disclose 'a representative number of species falling within the scope of the

genus or structural features common to the members of the genus so that one of skill in the art can 'visualize or recognize' the members of the genus.'" *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1373 (Fed. Cir. 2017) (quoting *Ariad*, 598 F.3d at 1350).

(b) ***Adequate enablement***.  To prove that the Asserted Claims are invalid for lack of adequate enablement, Kite must show that the specification of the '190 patent does not "teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997) (quoting *In re Wright*, 999 F.2d 1557, 1561(Fed. Cir. 1993)).  In determining whether making or using the full scope of the invention would require undue experimentation, the Court may consider "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

**Defense/Counterclaim 3—Exceptional Case**:  To prove exceptionality and entitlement to attorneys' fees, Kite must prove by a preponderance of the evidence that this case stands out from others with respect to the substantive weakness of Plaintiffs' positions or the unreasonable manner in which Plaintiffs have conducted the litigation.  The Court may find this case "exceptional" and award attorneys' fees at the Court's discretion, considering the totality of the circumstances. *See Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545 (2014).

c.  In brief, the key evidence Kite relies on for each counterclaim and affirmative defense is:

**Defense/Counterclaim 1—Noninfringement**:  The evidence on which Kite may rely to prove that the certificate of correction is invalid, and that Kite thus does not infringe, includes:

- The claims, specification, and prosecution history of the '190 patent.

- The expert testimony of Richard Junghans, M.D., Ph.D., as well as the percipient testimony of Adrian Bot, M.D., Ph.D., and Thomas Schuetz, M.D., Ph.D., regarding the interpretation of the claims of the '190 patent from the perspective of a person skilled in the art.

- If permitted, the expert testimony of Nicholas Godici regarding Patent and Trademark Office practices and procedures relating to certificates of correction.

- The more than 4.5-year delay between the issuance of the '190 patent and the patentee's request for the certificate of correction.

- Testimony of Juno witnesses regarding the prosecution of the '190 patent, the failure to seek reissue pursuant to 35 U.S.C. § 251, and the certificate of correction.

**Defense/Counterclaim 2—Invalidity**:

(a) ***Adequate written description***.  The evidence on which Kite may rely to prove that the Asserted Claims are invalid for failure to satisfy the requirement of an adequate written description includes:

- The claims, specification, and prosecution history of the '190 patent.

- The expert testimony of K. Christopher Garcia, Ph.D., regarding topics such as the role of the scFvs in the CAR construct claimed in the '190 patent, the state of the art at the time of the invention, the failure of the '190 patent to disclose sufficient representative species for each claim, the lack of common structural features among scFvs that bind to CD19, and the lack of an established correlation between scFv structure and the function of binding to CD19.

- Percipient testimony and documents regarding the variety and unpredictability of CAR constructs and scFvs, the importance of scFvs in CAR constructs, and the breadth of the claim inventions.

(a) ***Adequate enablement***.  The evidence on which Kite will rely to prove that the Asserted Claims are invalid for failure to satisfy the requirement of adequate enablement includes:

- The claims, specification, and prosecution history of the '190 patent.
- The expert testimony of K. Christopher Garcia, Ph.D., regarding topics such as the role of the anti-CD19 scFv in the CAR construct claimed in the '190 patent, the state of the art at the time of the invention, and the number of steps required to develop CAR constructs, including the amount of time and effort needed to perform those steps.

Percipient testimony and contemporaneous documents regarding relevant factors under *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988), including the variety and unpredictability of CAR constructs.

**Defense/Counterclaim 3—Exceptional Case**:  The evidence on which Kite may rely to show that this case is exceptional and that Kite is entitled to attorneys' fees includes:

- Plaintiffs' discovery disclosures, including interrogatory responses and responses to requests for admission.
- Papers that Plaintiffs have filed with the Court, including claim construction briefs and summary judgment briefs.
- Kite reserves the right to rely on any other document properly submitted as a trial exhibit that is or later becomes relevant to this claim, as well as evidence submitted to the Court in connection with these issues.

This is a nonexhaustive list of testimony and evidence.  Kite also may rely on additional evidence and reserve the right to present such evidence at trial.

**8.      ULTIMATE ISSUES REMAINING TO BE TRIED**

In view of the admitted facts and the elements required to establish the claims, counterclaims, and affirmative defenses, the parties agree the following issues remain to be tried:

    a.  Whether the Certificate of Correction granted by the United States Patent and Trademark Office on July 16, 2013, is invalid;

    b.  Whether the '190 Patent is invalid under 35 U.S.C. § 112 for failure to satisfy the written description requirement;

    c.  Whether the '190 Patent is invalid under 35 U.S.C. § 112 for failure to satisfy the enablement requirement;

    d.  The measure of damages to which Plaintiffs are entitled as a result of alleged Kite's infringement of the '190 Patent;

    e.  Whether the Court should award Plaintiffs enhanced damages as a result of Kite's alleged willful infringement of the '190 Patent;

    f.  Whether the Court should find this case exceptional and award Plaintiffs or Kite their attorneys' fees.

Plaintiffs contend that the following additional issues remain to be tried:

    a.  Whether Kite's stipulated infringement of the Asserted Claims of the '190 Patent after the Certificate of Correction, as set forth in Dkt. No. 233, has been and is willful;

    b.  Depending on whether the jury accepts Dr. Sullivan's proposed damages, whether Plaintiffs are entitled to an injunction at the appropriate time or, in the alternative, to ongoing royalties in lieu of an injunction for Kite's alleged ongoing infringement after the judgment.

    c.  If the Court determines Plaintiffs are entitled to ongoing royalties in lieu of an injunction, the measure of ongoing royalty the Court should award to Plaintiffs as a result of Kite's alleged continuing, post-trial willful infringement of the '190 Patent.

Defendant contends that the following issues remain to be tried:

    a. Whether Kite's alleged infringement of the Asserted Claims of the '190 Patent has been and is willful;

    b. Whether Plaintiffs are entitled to an injunction; and

    c. Whether the Court should order a compulsory license for Kite's alleged ongoing infringement after the judgment.

**<u>Plaintiffs' Separate Statement Regarding Post-Trial Relief</u>**

Kite contends Plaintiffs' position on their request for injunction has shifted. Not so. Plaintiffs have consistently maintained their request for an injunction, and have made clear that they will abide Federal Circuit law by withdrawing their request for an injunction if the jury awards Plaintiffs their requested upfront payment portion of the reasonable royalty. *See Innogenetics v. Abbott Labs.*, 512 F.3d 1363, 1380 (Fed. Cir. 2008). In that event, Plaintiffs will instead seek an ongoing royalty on such terms as the Court deems reasonable. 35 U.S.C. § 283; *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007). Plaintiffs' recognition that they may be entitled to an ongoing royalty in lieu of an injunction does not constitute a shift in position. Similarly, Kite's complaint that Plaintiffs' position on the timing of a request for an injunction is "new" is wrong. Plaintiffs have always appreciated that any request for an injunction would be subject to *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), and hence that any request for an injunction would be made at the time when Plaintiffs can satisfy the *eBay* factors. Plaintiffs appreciate that *eBay* would be satisfied once Juno's CAR-T therapy receives FDA approval, and they have never stated otherwise. Kite also suggests the Court would not or should not retain jurisdiction to enforce any post-trial relief to which Plaintiffs are entitled. Again, Kite's position is wrong. Whatever the form, post-trial relief is equitable, and the Court retains jurisdiction to enforce or modify it as appropriate. *Paice*, 504 F.3d at 1315. Finally, Kite contends it should be permitted to reference Plaintiffs' request for an injunction in front of the jury.

Contrary to Kite's assertion, however, Plaintiffs' request for injunctive relief is irrelevant to any issue the jury will be asked to decide, and no such reference should be permitted in front of the jury. *SynQor, Inc. v. Artesyn Techs., Inc.*, No. 2:07-cv-497, 2011 WL 3625036, at *22 (E.D. Tex. Aug. 17, 2011); *Evolved Wireless, LLC v. Apple, Inc.*, No. 15-cv-542, 2019 WL 1100471, at *6 (D. Del. Mar. 7, 2019); *Ciena Corp. v. Corvis Corp.*, 352 F. Supp. 2d 526, 528 (D. Del. 2005)..

**Defendant's Separate Statement Regarding Post-Trial Relief**

From the outset of this litigation, Plaintiffs have sought a permanent injunction in their prayer for relief. ECF No. 1 (October 18, 2017). Plaintiffs also seek an upfront payment that exceeds Kite's *revenues* through trial. Kite has moved *in limine* to exclude this excessive and irrational "reasonable royalty." ECF No. 270. In opposition to that motion, Plaintiffs admit that they are not entitled to both an upfront payment compensating future harms and an injunction under binding Federal Circuit precedent, but argue that this rule should apply only in the event that they receive every penny of the upfront payment they have demanded. ECF No. 326, at 1. Now, in the Final Pretrial Conference Order, Plaintiffs state for the first time that they do not intend to seek an injunction after trial, but rather at some unspecified point in time, at minimum months from now, when Plaintiffs hope to launch their own product. Plaintiffs cite no authority for their proposition that the Court suspend the determination of whether injunctive relief is appropriate until the Plaintiffs decide that the facts suit their prayer for relief. In *Paice,* the district court declined to enter an injunction and the Federal Circuit remanded for further consideration of an ongoing royalty rate. *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007). Finally, Plaintiffs also argue for the first time in this Final Pretrial Conference Order that Kite should not be permitted to mention Plaintiffs' request for injunctive relief.

For the reasons set forth in Kite's motion *in limine* no. 1, Dr. Sullivan's proposed upfront payment should be excluded. To the extent Dr. Sullivan is

permitted to opine as to his upfront payment, fairness requires that Kite be permitted to rebut its reasonableness by referring to Juno's request for a permanent injunction. *See Apple, Inc. v. Samsung Elecs. Co.*, 67 F. Supp. 3d 1100, 1134 (N.D. Cal. 2014), *aff'd*, 816 F.3d 788 (Fed. Cir.), *vacated in part on reh'g en banc*, 839 F.3d 1034 (Fed. Cir.), *and aff'd*, 839 F.3d 1034 (Fed. Cir. 2016) (holding that "there is no rule holding that as a matter of law, references to the possibility of a permanent injunction must be excluded in patent trials. Rather, whether to allow such references at trial is a matter within the court's discretion subject to balancing under Federal Rule of Evidence 403.").  If the jury finds infringement and Juno seeks to permanently enjoin Kite's lifesaving therapy, it should do so based on the facts as they exist through trial, not an indeterminate number of months later in a completely changed situation about which Kite has been afforded no opportunity to take discovery.  Kite agrees, however, that post-trial relief is not an issue for this jury trial, and should be presented separately to the Court.

**9.      STATUS OF DISCOVERY**

The parties agree all discovery is complete except for (a) ongoing productions of documents relating to Juno's Biologics License Application for JCAR017 and (b) additional damages discovery from Kite regarding sales of Yescarta®.

**10.      STATUS OF DISCLOSURES**

The parties confirm they have made the disclosures required under Federal Rule of Civil Procedure 26(a)(3).

The parties confirm the joint exhibit list has been filed under separate cover as required by L.R. 16-6.1 [Dkt. No. 320].  The parties also confirm the joint Pretrial Exhibit Stipulation has been filed under separate cover [Dkt. No. 410].

**11.      WITNESSES**

The parties' joint witness list has been filed with the Court [Dkt. No. 298], along with amended witness lists [Dkt. Nos. 400, 406, 431, 437, 438].  A joint

amended witness list was filed at Dkt 475.  Only the witnesses identified on the parties' witness lists will be permitted to testify.

Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7.  For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:

**Plaintiffs:**

David Chang, Edward Dulac, Steven Harr, Shawn Tomasello, Jeffrey Wiezorek, and Jed Wiltzius.

**Defendant:**

Nadim Ahmed, Robert Azelby, Hans Bishop, Reiner Bretjens, Bryan Campbell, Edward Dulac, David Fontana, Mark Frohlich, Steven Harr, Aya Jakobovits, Helen Kim, Marina Larson, Neville Mehenti, Fang Sun, and Jeffrey Wiezorek.

The parties have exchanged deposition designations and objections thereto. For deposition testimony to be played at trial, the parties will follow the disclosure and objection procedures outlined in Section 14, below.

Disclosure of witnesses shall be governed by the parties' agreement as set forth in Section 14, below.

## 12.   PENDING MOTIONS

The following law and motion matters were filed, and all have been ruled upon as indicated below:

Plaintiffs filed the following motions *in limine*:

- Plaintiffs' Motion *in Limine* #1 to Exclude Kite's Irrelevant and Inappropriate Evidence and Argument Regarding the Certificate of Correction [Dkt. No. 284]:  granted-in-part and denied-in-part, *see* 11/26/19 Final Pretrial Conference Order ("11/26/19 Order") at 3.

- Plaintiffs' Motion *in Limine* #2 Regarding Evidence and Argument Relating to the ROCKET Clinical Trial [Dkt. No. 276]:  granted-in-part and denied-in-part, *see* 11/26/19 Order at 3-4.

- Plaintiffs' Motion *in Limine* #3 Regarding Evidence and Argument Relating to the Pending BMS Acquisition [Dkt. No. 283]:  granted, *see* 11/26/19 Order at 4.

Defendant filed the following motions *in limine*:

- Kite's Motion *in Limine* (No. 3) to Exclude Evidence and Argument About the *Inter Partes* Review [Dkt. No. 272]:  as ruled upon during the December 5, 2019 proceedings, *see* Trial Tr. at 599:24-610:1; 617:10-618:6; 623:22-624:5.

- Kite's Motion *in Limine* (No. 4) to Preclude Argument Referencing the Absence of Testimony from Witnesses Outside the Court's Subpoena Power [Dkt. No. 273]:  granted, *see* 11/26/19 Order at 4.

The parties also filed the following *Daubert* motions:

- Plaintiffs' *Daubert* Motion to Exclude Dr. Mohan Rao's Testimony Regarding Damages [Dkt. No. 274]:  granted-in-part and denied-in-part, *see* 12/3/19 Order at 14.

- Kite's Motion *in Limine* (No. 1) to Exclude Damages Opinions of Ryan Sullivan, Ph.D. [Dkt. No. 270]:  granted-in-part and denied-in-part, *see* 12/3/19 Order at 14.

- Kite's Motion *in Limine* (No. 2) to Exclude Expert Testimony of Mark Gilbert, M.D. [Dkt. No. 271]:  granted-in-part and denied-in-part, *see* 12/3/19 Order at 14.

In addition, during the November 26, 2019 pretrial conference, the Court made additional rulings on matters raised in the parties' Contentions of Law and Fact.  *See* 11/26/19 Order at 2.

**13.    BIFURCATION**

The parties agree no issue for the jury shall be bifurcated.  The order of proof was determined by the Court at the November 26, 2019 pretrial conference.  *See* 11/26/19 Order at 1.

**14.    ADDITIONAL AGREEMENTS BETWEEN THE PARTIES**

The parties have further agreed to the following:

    a.  Disclosure of Witnesses Testifying at Trial:  In lieu of the deadline set forth in the Court's Order Re Jury Trial For Civil Cases, Section 3.B, the parties have agreed to the deadlines for disclosure of trial witnesses as follows:

- During its case-in-chief, each side will identify any witnesses it expects to call (live or by deposition) and the order in which it expects to call them by noon three calendar days before the trial day during which the witnesses are called (for example, by noon on Sunday for a witness who will be called on Wednesday).

    b.  Disclosure of Deposition Designations:  The parties have agreed to the deadlines for disclosure of deposition designations as follows:

- If a party identifies a witness that it intends to call at trial by deposition, then the party shall identify the specific pages and lines of the witness's deposition testimony that the party expects to play by noon three calendar days before the trial day during the which the deposition is expected to be read or played.

- For each such witness, the opposing party shall identify objections and counter-designations by noon the following day (i.e., two calendar days before the trial day during which the testimony is expected to be read of played).

- The parties will meet and confer by 8:00 PM that night (i.e., two calendar days before the trial day during which the testimony is

1    expected to be read of played) in an effort to resolve their objections

2    and any other issues relating to the deposition designations.

3    • If to be offered by video, the party offering the testimony is

4    responsible for preparing video deposition clips of all designated

5    testimony for that witness.  A copy of the video deposition clips

6    shall be provided to the opposing party no later than 7:00 PM the

7    calendar day before the deposition testimony is expected to be read

8    or played.

9    • Each party agrees that correct copies of transcripts and video

10   recordings of depositions taken in this litigation may be used by

11   either party at trial, without respect to whether the copy is certified.

12   No party shall object to the authenticity of a copy of a deposition

13   transcript or video recording of a deposition absent evidence that the

14   copy is, in fact, inaccurate or inauthentic.  The party challenging the

15   authenticity of a deposition transcript or video recording shall bear

16   the burden of establishing that the transcript or video recording is

17   not authentic.  All other objections to admissibility of deposition

18   testimony are preserved.

19   c. Disclosure of Exhibits:  The parties have agreed to the deadlines for

20   disclosure of exhibits and objections thereto as follows:

21   • Each side will identify exhibits that will be offered into evidence

22   during the testimony of a witness called by that side by 7:00 P.M.

23   two calendar days before the trial day the witness is called (for

24   example, by 7:00 P.M. on Monday for a witness who will be called

25   on Wednesday).

26   • The parties will meet and confer by 8:00 P.M. one calendar day

27   before the witness is called (for example, by 8:00 P.M. on Tuesday

28   for a witness who will be called on Wednesday) in an effort to

resolve their objections and any other issues relating to the disclosed exhibits and to any demonstrative material disclosed pursuant to paragraph (e) below.

- Unless a party objects to the exhibit at trial and the objection is sustained, exhibits will be deemed received in evidence upon their identification in connection with the examination of a witness without the need for the party identifying the exhibit to offer the exhibit into evidence.

d.  Authenticity of Exhibits:  The parties have agreed to the authenticity of exhibits as follows:

- Each party agrees that all documents produced in this litigation and listed on a trial exhibit list served by a party—including but not limited to emails with attachments, databases, spreadsheets, and other electronic and hardcopy documents, and including the metadata produced with the document—are presumed to be authentic within the meaning of Rules 901-902 of the Federal Rules of Evidence.  Except as specified in the bullet point below, no party shall object to the admissibility of any document on a trial exhibit list and bearing production numbers evidencing that the document was produced in this litigation on the ground that the document is not authentic.  In other words, subject to paragraph 2 below, the parties stipulate that all such documents are presumed to be authentic.

- Notwithstanding the bullet point above, each party reserves the right to object to the authenticity of any particular document covered by this stipulation should evidence be proffered or introduced during the trial indicating that such document may not in fact be authentic. The party challenging the authenticity of a trial exhibit shall bear the

-31-

burden of establishing that the document is not authentic.  Although the review of proposed trial exhibits is ongoing and not yet complete, each party represents that, as of the date of this order, it is not aware of any specific document for which it currently intends to challenge authenticity.

- Nothing in this section shall be construed to waive any objections to admissibility other than with respect to authenticity.  The parties reserve their rights to object to the admissibility of documents or testimony on all other grounds, including as outlined in this order.

e. Disclosure of Trial Demonstratives:  In lieu of the deadline set forth in L.R. 16-3, the parties have agreed [Dkt. No. 255] to the deadline for disclosure of trial demonstratives as follows, as modified by the Court during the proceedings held December 3, 2019 and December 4, 2019:

- Each side will disclose graphical, illustrative, or demonstrative material that will be shown to the trier of fact during opening statements by 5:00 P.M. one calendar day before the date on which opening statements are presented to the jury.

- The parties agreed that each side will disclose graphical, illustrative, or demonstrative material that will be shown to the trier of fact during the testimony of a witness called by that side by 6:00 P.M. the calendar day before the witness is called (for example, by 6:00 P.M. on Tuesday for a witness who will be called on Wednesday). On December 3, 2019 and December 4, 2019, the Court ordered the parties to disclose all demonstratives to be used in the case with a witness by noon on December 4, 2019, except demonstratives for damages experts which Plaintiffs were ordered to produce by 6:00pm on December 4, 2019 and Defendants were ordered to produce by noon on December 5, 2019.

- The parties will meet and confer to agree upon a time for each side to disclose graphical, illustrative, or demonstrative material to be shown to the trier of fact during closing arguments that is not (i) graphical, illustrative or demonstrative material consisting solely of material excerpted from an exhibit or exhibits admitted into evidence; or (ii) graphic, illustrative or demonstrative materials previously used during opening statements or the testimony of a witness.  Graphical, illustrative, and demonstrative material to be shown to the trier of fact during closing arguments falling within in categories (i) and/or (ii) need not be disclosed in advance.

- Graphical, illustrative, or demonstrative material that consists solely of an excerpt from an exhibit to which admissibility has been stipulated (including, for example, highlighting and call-outs from such exhibit) need not be disclosed in advance of being shown to the trier of fact.  Exhibits or graphical, illustrative, or demonstrative material that will be shown to the trier of fact during the examination of an adverse witness need not be disclosed in advance of such examination.

- Graphic or illustrative material not disclosed in accordance with relevant stipulation and order (Dkt #255) may not be used at trial except by order of the Court on a finding of good cause for the failure to disclose.

## 15.    OTHER ISSUES

The Court ordered the following at the November 26, 2019 pretrial conference, as reflected in the Court's 11/26/19 Order at 1-2:

- The Court has determined it will show "The Patent Process: An Overview for Jurors" (Jan. 1, 2013) and associated sample patent (United States Patent No. 8,412,345) to the jury before the start of

-33-

1        trial.  The video is available at

2        https://www.fjc.gov/publications/patent-process-overview-jurors.

3        • The parties shall jointly prepare juror notebooks including the '190

4        Patent with its Certificate of Correction.  Pursuant to the Court's

5        11/26/19 Order that the parties meet and confer as to whether the

6        notebooks will include the names and pictures of the witnesses each

7        side is certain will be called, the parties have jointly proposed juror

8        notebooks that include the names and positions of such witnesses

9        and pages for note-taking during trial.

10  **16.   FINAL ORDER**

11        The foregoing admissions having been made by the parties, and the parties

12  having specified the foregoing issues remaining to be litigated, this Final Pretrial

13  Conference Order shall supersede the pleadings and govern the course of the trial of

14  this cause, unless modified to prevent manifest injustice.

15

16  DATED:  December 12 , 2019.

17

18

19  UNITED STATES DISTRICT JUDGE

20

21  Approved as to form and content.

22

23  /s/ Andrea W. Jeffries

24  Attorney for Plaintiffs

25

26

27  /s/ Blanca F. Young

28  Attorney for Defendant