CV 17-07639-SJO
TRIAL JURY INSTRUCTIONS

FILED
CLERK, U.S. DISTRICT COURT

December 13, 2019

CENTRAL DISTRICT OF CALIFORNIA
BY:        VPC        DEPUTY

## CLOSING INSTRUCTION NO. 1

### (Duty of Jury)

Members of the Jury:  Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

## <u>CLOSING INSTRUCTION NO. 2</u>

### <u>(What Is Evidence)</u>

The evidence you are to consider in deciding what the facts are consists of:

(1)  the sworn testimony of any witness;

(2)  the exhibits that are admitted into evidence;

(3)  any facts to which the lawyers have agreed; and

(4)  any facts that I have instructed you to accept as proved.

1  **<u>CLOSING INSTRUCTION NO. 3</u>**

2  **<u>(What Is Not Evidence)</u>**

3      In reaching your verdict, you may consider only the testimony and exhibits

4  received into evidence.  Certain things are not evidence, and you may not consider

5  them in deciding what the facts are.  I will list them for you:

6      (1)    Arguments and statements by lawyers are not evidence.  The lawyers

7  are not witnesses.    What they have said in their opening statements, closing

8  arguments and at other times is intended to help you interpret the evidence, but it is

9  not evidence.  If the facts as you remember them differ from the way the lawyers

10  have stated them, your memory of them controls.

11      (2)    Questions and objections by lawyers are not evidence.  Attorneys have

12  a duty to their clients to object when they believe a question is improper under the

13  rules of evidence.  You should not be influenced by the objection or by the court's

14  ruling on it.

15      (3)    Testimony that is excluded or stricken, or that you have been instructed

16  to disregard, is not evidence and must not be considered.  In addition some evidence

17  was received only for a limited purpose; when I have instructed you to consider

18  certain evidence only for a limited purpose, you must do so and you may not consider

19  that evidence for any other purpose.

20      (4)    Anything you may have seen or heard when the court was not in session

21  is not evidence.  You are to decide the case solely on the evidence received at the

22  trial.

23

24

25

26

27

28

## CLOSING INSTRUCTION NO. 4

### (Credibility of Witnesses)

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the

1  number of witnesses who testify.  What is important is how believable the witnesses
2  were, and how much weight you think their testimony deserves.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CLOSING INSTRUCTION NO. 5
### (Charts, Summaries, and Demonstratives Not Received in Evidence)

Certain charts, summaries, and demonstratives not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts, summaries, and demonstratives are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

1  **CLOSING INSTRUCTION NO. 6**

2  **(Charts and Summaries in Evidence)**

3        Certain charts and summaries have been admitted into evidence to illustrate

4  information brought out in the trial.  Charts and summaries that have been admitted

5  into evidence are only as good as the testimony or other admitted evidence that

6  supports them.  You should, therefore, give them only such weight as you think the

7  underlying evidence deserves.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CLOSING INSTRUCTION NO. 7

## (Notes Taken During Trial)

If you wish, you may review your notes to help you remember the evidence.

Whether or not you took notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

## CLOSING INSTRUCTION NO. 8

### (Burden of Proof)

In these instructions, I will often refer to a party's burden of proof. I will be discussing two different burdens of proof.

The first is known as a burden of proof by a preponderance of the evidence. When a party has the burden of proving a claim or defense by a preponderance of the evidence, it means the party must persuade you that it is more likely than not that the claim or defense is established.

The second burden of proof I will discuss is known as a burden of proof by clear and convincing evidence. When a party has the burden of proving something by clear and convincing evidence, it means the party must persuade you that it is highly probable that the claim or defense is established.

## CLOSING INSTRUCTION NO. 9

### (Summary of Contentions)

I will first give you a summary of each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions. As I previously told you, Juno and Sloan Kettering seek money damages from Kite for infringing claims 3, 5, 9, and 11 of the '190 Patent by making, importing, using, selling, and offering for sale Kite's Yescarta® product. Juno and Sloan Kettering also argue that Kite's infringement has been willful.

Kite contends that the Certificate of Correction to the '190 Patent is invalid. The parties have agreed that if the Certificate of Correction is not found to be invalid, then Defendant's Yescarta® therapy infringes the asserted claims of the '190 Patent. In addition to Kite contending the Certificate of Correction is invalid, Kite also argues that the asserted claims are invalid.

Your job is to decide whether Juno and Sloan Kettering have shown that Kite's infringement was willful. Juno and Sloan Kettering must prove willfulness by a preponderance of the evidence.

You will also need to decide whether Kite has shown that the Certificate of Correction is invalid and the asserted claims of the '190 Patent are invalid. Kite must prove invalidity of the Certificate of Correction and invalidity of the asserted claims by clear and convincing evidence.

If you find both that (i) the certificate of correction is not invalid, and (ii) that any of claims 3, 5, 9, and 11 of the '190 Patent is not invalid, Kite infringes those claims. You will then need to decide any money damages to be awarded to Juno and Sloan Kettering to compensate them for Kite's infringement. Juno and Sloan Kettering have the burden to persuade you of the amount of their damages by a preponderance of the evidence. If you decide that any infringement was willful, that decision should not affect any damage award you make. I will take willfulness into account later.

## CLOSING INSTRUCTION NO. 9(a)

### (What Is a Patent and How One Is Obtained)

This case involves a dispute relating to a United States patent.

Patents are granted by the United States Patent and Trademark Office, sometimes called "the PTO." To obtain a patent one must file an application with the PTO. After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed and how to make and use it.

After the examination of the application, the patent examiner informs the applicant in writing whether any claim is patentable, and thus will be "allowed." The patent applicant may file a Request for Continued Examination, sometimes abbreviated as "RCE." An RCE may be filed after the examiner finds that the application and claims meet the requirements for a patent, but before the patent is actually issued, in order for the applicant to submit additional information to be considered by the examiner.

The documents generated in the communications back and forth between the patent examiner and the applicant make up what is called the "prosecution history." The prosecution history becomes available to the public no later than the date when the patent issues.

Occasionally, patents are issued with errors. The patentee can request a Certificate of Correction to correct such errors. The request for a Certificate of Correction and the PTO's decision on that request also become part of the prosecution history of that patent. If the PTO grants the request for a Certificate of Correction, the Certificate of Correction becomes part of the patent.

## CLOSING INSTRUCTION NO. 10

### (Interpretation of Claims)

As I mentioned at the beginning of the case, the patent claims are numbered sentences at the end of the patent that describes the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. My constructions are as follows:

For the term "the amino acid sequence encoded by SEQ ID NO:6":

- As originally issued, this term is construed as "Amino Acids 113-220 of CD28 (starting with lysine (K))"; and
- As corrected by the Certificate of Correction, this term is construed as "Amino Acids 114-220 of CD28 (starting with isoleucine (I))."

For the term "nucleic acid polymer encoding . . . a binding element that specifically interacts with a selected target," you should apply its plain and ordinary meaning.

For other claim terms for which I have not provided a definition, you should apply the plain and ordinary meaning.

My interpretation of the language should not be taken as an indication that I have a view regarding whether the Certificate of Correction or any one of the asserted claims is invalid. That question involves issues for you, the jury, to decide. The decisions regarding invalidity of the Certificate of Correction and the asserted patent claims are yours to make.

## CLOSING INSTRUCTION NO. 11

## (How a Claim Defines What It Covers)

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

## CLOSING INSTRUCTION NO. 12

### (Independent and Dependent Claims)

The '190 Patent has two types of claims: independent and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claim 1 of the '190 Patent is an independent claim.

The remainder of the claims in the '190 Patent are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

## CLOSING INSTRUCTION NO. 13

### (Willful Infringement)

If you find both that (i) the certificate of correction is not invalid, and (ii) that any of claims 3, 5, 9, and 11 of the '190 Patent is not invalid, Kite infringes those claims. You must then determine whether or not Kite's infringement was willful.

To show that Kite's infringement was willful, Plaintiffs must prove by a preponderance of the evidence that Kite knew of Plaintiffs' patent and intentionally infringed at least one asserted claim of the patent. For example, you may consider whether Kite's behavior was deliberate, malicious, wanton, consciously wrongful, flagrant, or in bad faith. However, you may not find that Kite's infringement was willful merely because Kite knew about the patent, without more. In determining whether Plaintiffs have proven that Kite's infringement was willful, you must consider all of the circumstances and assess Kite's knowledge at the time the challenged conduct occurred.

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement.

## CLOSING INSTRUCTION NO. 14

## (Invalidity – Burden of Proof)

I will now instruct you on the rules you must follow in deciding whether or not Kite has proven that the Certificate of Correction and claims 3, 5, 9, and 11 of the '190 Patent are invalid. To prove that the Certificate of Correction and the claims of the '190 Patent are invalid, Kite must persuade you by clear and convincing evidence the Certificate of Correction and the asserted claims are invalid. In other words, to prove invalidity of the Certificate of Correction or any claim of the '190 Patent, Kite must persuade you that it is highly likely that the Certificate of Correction or the claim is invalid.

**CLOSING INSTRUCTION NO. 15**

**(Invalidity – Perspective of One of Ordinary Skill in the Art)**

  The question of invalidity of a certificate of correction or a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of May 28, 2002.  A person of ordinary skill has the level of experience, education, or training generally possessed by those individuals who work in the area of the invention at the time of the invention.

  In this case, the person of ordinary skill has a Ph.D., M.D., or an M.Sc. in immunology, biochemistry, cell biology, molecular biology, or a related discipline and either (1) at least two years of experience in conducting laboratory research on chimeric TCR therapies, TCRs, T cells or other types of immune cells, chimeric TCRs, or related work or (2) knowledge of the scientific literature relating to T cell biology as well as laboratory techniques and strategies in designing recombinant DNA.

## CLOSING INSTRUCTION NO. 15(a)

### (Inter Partes Review)

You have heard evidence that Kite filed a separate challenge to the '190 patent in the Patent and Trademark Office called an inter partes review. And in an IPR, a party has the right to provide the Patent and Trademark Office with certain evidence of technology available before the patent invention to prove that the invention would have been anticipated or obvious to a person of skill in the art.

A patent can only be challenged during an IPR on grounds of anticipation and obviousness, not for a certificate of correction, inadequate written description, or enablement defenses.

1    **CLOSING INSTRUCTION NO. 16**

2    **(Certificate of Correction)**

3         When a patent issues with errors, the patentee may be allowed to have the

4    errors corrected by obtaining a Certificate of Correction from the Patent Office.  A

5    Certificate of Correction is one way to correct certain kinds of errors in issued

6    patents.  The Patent Office reviews the application for the Certificate of Correction

7    and may issue the Certificate if certain conditions are met.

8         When the patentee is the one who made the error, the patentee may use a

9    Certificate of Correction to correct errors of a clerical or typographical nature, or of

10   minor character.  A Certificate of Correction may correct a clerical or typographical

11   error even if the correction broadens the scope of the claims, as long as both (1) the

12   error and (2) how to correct the error are clearly evident to a person of ordinary skill

13   in the art, reviewing the full patent record.  In other words, if a person of ordinary

14   skill in the art can clearly identify the error and tell how it should be corrected from

15   the reviewing the full patent record including the patent claims, the specification, and

16   the prosecution history, then the Certificate of Correction is valid.

17        Kite argues that the Certificate of Correction of the '190 Patent is invalid and

18   thus was wrongly issued.  Kite must prove by clear and convincing evidence that the

19   Certificate of Correction should not have been issued.

20        When the Patent Office issues a Certificate of Correction, the patent owner

21   may assert the corrected patent only against acts of infringement thereafter arising,

22   in other words, acts of infringement that occur after the Certificate of Correction

23   issued.  A patent owner may apply for a Certificate of Correction at any time before

24   the patent expires.

25

26

27

28

## CLOSING INSTRUCTION NO. 17

## (Written Description)

A patent claim is invalid if the patent does not contain an adequate written description of the claimed invention. The purpose of this written description requirement is to demonstrate that the inventor was in possession of the invention at the time the application for the patent was filed, even though the claims may have been changed or new claims added since that time. The written description requirement is satisfied if a person of ordinary skill in the field reading the original patent application at the time it was filed would have recognized that the patent application described the invention as claimed, even though the description may not use the exact words found in the claim. A requirement in a claim need not be specifically disclosed in the patent application as originally filed if a person of ordinary skill would understand that the missing requirement is necessarily implied in the patent application as originally filed.

Kite must prove by clear and convincing evidence that the asserted claims are invalid because the '190 Patent does not have adequate written description of the claimed invention.

# CLOSING INSTRUCTION NO. 18

## (Enablement)

A patent claim is invalid if the patent at the time it was originally filed did not contain a description of the claimed invention that is sufficiently full and clear to enable a person of ordinary skill in the field at the time to make and use the full scope of the invention without undue experimentation.  This is known as the "enablement" requirement.

The patent may be enabling even though it does not expressly state some information if a person of ordinary skill in the field could make and use the invention without having to do excessive experimentation.  In determining whether excessive experimentation is required, you may consider the following factors:

- the scope of the claimed invention;
- the amount of guidance presented in the patent;
- the amount of experimentation necessary;
- the time and cost of any necessary experimentation;
- how routine any necessary experimentation is in the field of the patent;
- whether the patent discloses specific working examples of the claimed invention;
- the nature and predictability of the field; and
- the level of ordinary skill in the field of the patent.

The question of whether a patent is enabling is judged as of the date the original application for the patent was first filed.

Kite must prove by clear and convincing evidence that the asserted claims are invalid because the '190 Patent fails to satisfy the enablement requirement.

## CLOSING INSTRUCTION NO. 19

## (Damages – Burden of Proof)

I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that Kite has not proven, by clear and convincing evidence, either that the Certificate of Correction is invalid, or that every asserted claim of the '190 Patent is invalid, you must then determine the amount of money damages to be awarded to Juno and Sloan Kettering to compensate them for the infringement.

The amount of those damages must be adequate to compensate Juno and Sloan Kettering for the infringement. A damages award should put Juno and Sloan Kettering in approximately the financial position they would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate Juno and Sloan Kettering and not to punish an infringer.

Juno and Sloan Kettering have the burden to persuade you of the amount of their damages. You should award only those damages that Juno and Sloan Kettering more likely than not suffered. While Juno and Sloan Kettering are not required to prove their damages with mathematical precision, they must prove them with reasonable certainty. Juno and Sloan Kettering are not entitled to damages that are remote or speculative.

## CLOSING INSTRUCTION NO. 20

### (Reasonable Royalty - Definition)

There are various mechanisms for calculating damages for patent infringement, but both sides are in agreement that damages here should be in the form of a reasonable royalty. A royalty is a payment made to the Plaintiffs in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the Plaintiffs and Kite taking place at the time when the infringing activity first began.

In considering the nature of this negotiation, you must assume that both parties would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

## CLOSING INSTRUCTION NO. 21

## (Reasonable Royalty – Date Of Hypothetical Negotiation)

The date for the hypothetical negotiation is the time that the alleged infringement began. In this case, the parties agree that the date of the hypothetical negotiation is October 18, 2017, when Kite received approval to begin selling Yescarta®.

## CLOSING INSTRUCTION NO. 22

### (Reasonable Royalty – Form)

A royalty can be calculated in several different ways.  Here, both sides are in agreement that a reasonable royalty in this case includes two components:  (1) an upfront amount that Kite would have paid upon entering into the hypothetical license for the '190 Patent; and (2) a running royalty rate applied to Kite's sales revenues from Yescarta®.

## CLOSING INSTRUCTION NO. 23

## (Reasonable Royalty – Factors)

In determining both the upfront amount and the running royalty rate, you should consider all the facts known and available to the parties at the time the infringement began.  Factors that you may consider in making your determination include:

(1)  The royalties received by the Plaintiffs for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)  The rates paid by licensees for the use of other patents comparable to the patent-in-suit.

(3)  The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)  The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)  The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)  The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)  The duration of the patent and the term of the license.

(8)  The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)  The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)  The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)  The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)  The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)  The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)  The opinion and testimony of qualified experts.

(15)  The amount that a licensor (such as the Plaintiffs) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty that Kite would have been willing to pay and that Juno and Sloan Kettering would

1  have been willing to accept, acting as normally prudent business people.

1  **<u>CLOSING INSTRUCTION NO. 23(a)</u>**

2  **<u>(Reasonable Royalty – Attribution/Apportionment)</u>**

3         The amount you find as damages must be based on the value attributable to the

4  patented technology, as distinct from other, unpatented features of the accused

5  product, or other factors such as marketing or advertising, or the Defendant's size or

6  market position.

## CLOSING INSTRUCTION NO. 24

### (Reasonable Royalty – Comparability)

When determining the upfront amount and the running royalty rate, you may consider evidence concerning the amounts that other parties have paid for rights to the '190 Patent, or for rights to similar technologies. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between the Plaintiffs and Kite in order for you to consider it. However, if you choose to rely upon evidence from any other license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between the Plaintiffs and Kite, in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination.

# CLOSING INSTRUCTION NO. 25

## (Reasonable Royalty – Timing)

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by Kite, and non-infringing alternatives.

## CLOSING INSTRUCTION NO. 26

### (Consideration of Evidence—Conduct of Jury)

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath

1   to tell the truth, and the accuracy of their testimony is tested through the trial process.
2   If you do any research or investigation outside the courtroom, or gain any information
3   through improper communications, then your verdict may be influenced by
4   inaccurate, incomplete or misleading information that has not been tested by the trial
5   process. Each of the parties is entitled to a fair trial by an impartial jury, and if you
6   decide the case based on information not presented in court, you will have denied the
7   parties a fair trial. Remember, you have taken an oath to follow the rules, and it is
8   very important that you follow these rules.

9        A juror who violates these restrictions jeopardizes the fairness of these
10  proceedings, and a mistrial could result that would require the entire trial process to
11  start over. If any juror is exposed to any outside information, please notify the court
12  immediately.

## CLOSING INSTRUCTION NO. 27
### (Communication with Court)

If it becomes necessary during your deliberations to communicate with me, you may send a note through the U.S. Marshal, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

## CLOSING INSTRUCTION NO. 28

### (Return of Verdict)

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your Presiding Juror should complete the verdict form according to your deliberations, sign and date it, and advise the U.S. Marshal that you are ready to return to the courtroom.

## CLOSING INSTRUCTION NO. 29

### (Duty to Deliberate)

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.