JEFFREY I. WEINBERGER (State Bar No. 56214)
jeffrey.weinberger@mto.com
TED DANE (State Bar No. 143195)
ted.dane@mto.com
GARTH T. VINCENT (State Bar No. 146574)
garth.vincent@mto.com
BLANCA F. YOUNG (State Bar No. 217533)
blanca.young@mto.com
PETER E. GRATZINGER (State Bar No. 228764)
peter.gratzinger@mto.com
ADAM R. LAWTON (State Bar No. 252546)
adam.lawton@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

GEOFFREY D. BIEGLER (State Bar No. 290040)
biegler@fr.com
GRANT T. RICE (admitted *pro hac vice*)
rice@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone:  (858) 678-5070
Facsimile:   (858) 678-5099

Attorneys for Defendant-Counterclaimant
KITE PHARMA, INC.

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

|  |  |
|---|---|
| JUNO THERAPEUTICS, INC. AND SLOAN KETTERING INSTITUTE FOR CANCER RESEARCH, <br><br> Plaintiffs, <br><br> vs. <br><br> KITE PHARMA, INC., <br><br> Defendant. | Case No. 2:17-cv-7639-SJO-KS <br><br> **KITE PHARMA, INC.'S ANSWER TO PLAINTIFFS' SECOND AMENDED AND SUPPLEMENTAL COMPLAINT AND COUNTERCLAIMS** <br><br> **DEMAND FOR JURY TRIAL** <br><br> Judge:  Hon. S. James Otero <br> Ctrm:   10C |

1

2    KITE PHARMA, INC.,

3              Counterclaimant,

4          vs.

5    JUNO THERAPEUTICS, INC. AND
     SLOAN KETTERING INSTITUTE
6    FOR CANCER RESEARCH,

7              Counterdefendants.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Kite Pharma, Inc. ("Kite") answers as follows in response to the corresponding numbered paragraphs in Plaintiffs Juno Therapeutics, Inc. and Sloan Kettering Institute for Cancer Research's ("Plaintiffs") Second Amended and Supplemental Complaint for Patent Infringement ("Second Amended Complaint") dated December 4, 2019:

## ANSWER

### INTRODUCTORY PARAGRAPHS

The introductory, non-numbered paragraphs of the Second Amended Complaint are Plaintiffs' characterization of their claims and argument, for which no response is required.  Additionally, there are statements within the introductory paragraphs that call for legal analyses and conclusions for which no response is required, but to the extent one is required, Kite denies those statements.

### NATURE OF THE ACTION

1. Kite admits that this action purports to arise under the patent laws of the United States.  Kite denies any express or implied allegation in Paragraph 1 that it has infringed or is infringing any patent, or that Plaintiffs are entitled to any relief on their Second Amended Complaint.  Except as expressly admitted, Kite denies the allegations of Paragraph 1 of the Second Amended Complaint.

### THE PARTIES

2. Kite admits that, upon information and belief, Juno Therapeutics, Inc. ("Juno") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 400 Dexter Avenue North, Suite 1200, Seattle, Washington 98109.

3. Kite admits that, upon information and belief, Sloan Kettering Institute for Cancer Research ("Sloan Kettering") is a corporation organized and existing under the laws of the State of New York with its principal place of business at 1275 York Avenue, New York, New York 10065.  Kite denies that Sloan

Kettering is an "affiliate" of Memorial Sloan Kettering Cancer Center ("MSKCC"). Except as expressly admitted, Kite denies the allegations of Paragraph 3 of the Second Amended Complaint.

4.     Kite admits that it is a wholly owned subsidiary of Gilead Sciences, Inc., organized and existing under the laws of the State of Delaware.  Kite denies that its principal place of business is located at 2225 Colorado Avenue, Santa Monica, California 90404.  Except as expressly admitted, Kite denies the allegations of Paragraph 4 of the Second Amended Complaint.

## JURISDICTION

5.     Kite admits that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).  Except as expressly admitted, Kite denies the allegations of Paragraph 5 of the Second Amended Complaint.

6.     Kite admits that this Court has personal jurisdiction over Kite in this matter; that it has a principal place of business in Santa Monica, California; and that Kite manufactures, uses, sells and/or offers to sell YESCARTA® in the United States.  Except as expressly admitted, Kite denies the allegations of Paragraph 6 of the Second Amended Complaint.

## VENUE

7.     Kite admits that the Central District of California is a suitable venue for Plaintiffs' claims.  Except as expressly admitted, Kite denies the allegations of Paragraph 7 of the Second Amended Complaint.

## BACKGROUND

8.     Kite lacks sufficient knowledge or information to form a belief as to the truthfulness of the allegations contained in Paragraph 8, and on that basis denies each and every allegation.

9.     Kite lacks sufficient knowledge or information to form a belief as to the truthfulness of the allegations contained in Paragraph 9, and on that basis denies each and every allegation.

10.     Kite admits that the '190 patent is attached to the Second Amended Complaint as Exhibit 1.  Kite admits that the '190 patent states on its face that it was issued on November 4, 2008, and that it is entitled "Nucleic Acids Encoding Chimeric T Cell Receptors."  Except as expressly admitted, Kite denies the allegations of Paragraph 10 of the Second Amended Complaint.

11.     Kite admits that Michel Sadelain, Renier Brentjens, and John Maher are listed as inventors on the face of the '190 patent.  The remaining allegations in Paragraph 11 are legal conclusions for which no response is required. To the extent a response is required, Kite lacks sufficient knowledge or information to form a belief as to the truthfulness of the allegations contained therein, and on that basis denies each and every allegation except as expressly admitted.

12.     Kite admits that claim 1 of the '190 patent recites "a nucleic acid polymer."  Except as expressly admitted, Kite denies the allegations of Paragraph 12 of the Second Amended Complaint.

13.     Kite admits that the claims of the '190 patent recite "a nucleic acid polymer encoding a chimeric T cell receptor" "comprising (a) a zeta chain portion comprising the intracellular domain of human CD3ζ chain, (b) a costimulatory signaling region, and (c) a binding element that specifically interacts with a selected target."  Except as expressly admitted, Kite denies the allegations of Paragraph 13 of the Second Amended Complaint.

14.     Kite admits that it has conducted clinical trials involving chimeric antigen receptor (CAR) T-cell therapy.  Except as expressly admitted, Kite denies the allegations of Paragraph 14 of the Second Amended Complaint.

15.     Kite denies that the 2013 agreement conferred any rights on Juno or that MSKCC acted as Sloan Kettering's agent in connection with the 2013 agreement.  Kite admits that Plaintiffs have filed as Dkt. 110-2 an agreement purporting to be dated October 25, 2018, among Juno, Sloan Kettering, and MSKCC.  The remaining allegations of Paragraph 15 are legal conclusions for

1  which no response is required.  To the extent a response is required, Kite lacks

2  sufficient knowledge or information to form a belief as to the truthfulness of the

3  allegations, and on that basis denies each and every allegation except as expressly

4  admitted.

5        16.    Kite admits that it filed an IPR petition on August 13, 2015

6  against the '190 patent, which Plaintiffs attached to their Complaint as Exhibit 2.

7  Kite admits that the text of 35 U.S.C. §311(a) has been reproduced accurately in

8  Paragraph 16 of the Second Amended Complaint.  Kite admits that on December 16,

9  2016, the Board issued a Final Written Decision, which Plaintiffs attached to their

10  Second Amended Complaint as Exhibit 3.  Except as expressly admitted, Kite

11  denies the allegations of Paragraph 16 of the Second Amended Complaint.

12        17.    The allegations of Paragraph 17 call for a legal conclusion and/or

13  legal analysis for which no response is required here.

14  **KITE'S ALLEGED INFRINGEMENT**

15        18.    Kite admits that YESCARTA® is one of its products.  Kite

16  admits that it issued a press release on December 13, 2016, which Plaintiffs attached

17  to their Second Amended Complaint as Exhibit 4.

18        19.    Kite admits that the Maher publication, which Plaintiffs attached

19  to their Second Amended Complaint as Exhibit 5, states on its face that it was

20  published in 2002.  Kite also admits that Exhibit 6 appears on its face to be

21  Provisional Application No. 60/383,872 and that the '190 patent purports to claim

22  the benefit of that provisional application.  The remaining allegations of Paragraph

23  19 are legal conclusions for which no response is required.  To the extent a response

24  is required, Kite lacks sufficient knowledge or information to form a belief as to the

25  truthfulness of the allegations, and on that basis denies each and every allegation

26  except as expressly admitted.

27        20.    Kite admits that Dr. Steven Rosenberg works at the National

28  Cancer Institute ("NCI").  Kite lacks sufficient knowledge or information to form a

belief as to the truthfulness of the remaining allegations of Paragraph 20, and on that basis denies each and every remaining allegation.

21.     Kite admits that it entered into a Cooperative Research and Development Agreement with the NCI, which developed a construct using an scFv derived from FMC63.  Except as expressly admitted, Kite denies the allegations of Paragraph 21 of the Second Amended Complaint.

22.     Kite admits that James N. Kochenderfer et al. published Exhibit 8 to the Second Amended Complaint, and that Paragraph 22 contains some, but not all, of the information set forth in that publication.  The remainder of the allegations in Paragraph 22 contain legal conclusions for which no response is required.  Except as expressly admitted, Kite denies the allegations of Paragraph 22 of the Second Amended Complaint.

23.     Kite admits that Exhibit 8 references the publication that Plaintiffs have attached to their Second Amended Complaint as Exhibit 5.  Kite denies the remainder of the allegations in Paragraph 23.

24.     Kite admits that Dr. Rosenberg is one of its scientific collaborators and that Dr. Rosenberg gave a speech at the 2015 American Society of Gene & Cell Therapy Conference.  Kite lacks sufficient knowledge or information to form a belief as to the truthfulness of the remaining allegations contained therein, and on that basis denies each and every remaining allegation.

25.     Kite admits that Exhibits 9 and 10 of the Second Amended Complaint appear on their face to be New York Times articles and that Paragraph 25 quotes selected portions of those articles.  Kite lacks sufficient knowledge or information to form a belief as to the truthfulness of the remaining allegations contained therein, and on that basis denies each and every remaining allegation.

26.     Kite admits that Exhibit 11 to the Second Amended Complaint is an abstract publication from the American Society of Hematology (ASH) and that Exhibit 12 is a presentation by Armin Ghobadi.  Kite admits that Plaintiffs have

copied a schematic from Exhibit 12 into the Second Amended Complaint.  Except as expressly admitted, Kite denies the allegations of Paragraph 26 of the Second Amended Complaint.

27.     Kite denies each and every allegation of Paragraph 27 of the Complaint.

28.     Kite admits that Paragraph 28 refers to, and cites excerpts from, select pages from Appendix M of Kite's OBA/RAC Review document attached as Exhibits 13 and 14 to the Second Amended Complaint.  The remainder of the allegations in this Paragraph are argument and call for legal analyses and/or legal conclusions, and therefore do not require a response.  To the extent a response is required, except as expressly admitted above, Kite denies the remaining allegations of Paragraph 28 of the Second Amended Complaint.

29.     Kite admits that Exhibit 15 to the Complaint contains Professor Brocker's declaration that was submitted in the IPR proceeding.  Kite further admits that the NCI chimeric TCR analyzed by Professor Brocker contains the same nucleotide sequence as KTE-C19's chimeric TCR.  The remainder of the allegations in this paragraph are argument and call for legal analyses and/or legal conclusions, and therefore do not require a response.  To the extent a response is required to those remaining allegations, Kite lacks sufficient knowledge or information to form a belief as to their truthfulness, and on that basis denies each and every such allegation.

30.     Kite admits that on October 18, 2017, it received approval from the FDA to market and sell YESCARTA® (axicabtagene ciloleucel) in the United States.

## SUPPLEMENTAL ALLEGATIONS

31.     Kite admits that the '190 patent states on its face that it was issued on November 4, 2008 and that the Court's November 6, 2019 Order

dismissed MSKCC as a plaintiff in this action.  Except as expressly admitted, Kite denies the allegations in Paragraph 31.

32.     Kite admits that Sloan Kettering is the assignee listed on the face of the '190 patent.

33.     Kite admits that Exhibit 17 to the Second Amended Complaint is an agreement purporting to be dated October 25, 2018, among Juno, Sloan Kettering, and MSKCC.  Except as expressly admitted, Kite denies the allegations of Paragraph 33 of the Second Amended Complaint.

34.     Kite admits that Paragraph 34 accurately quotes a portion of the Court's order appearing at Dkt. No. 304.  The remaining allegations of Paragraph 34 call for a legal conclusion and/or legal analysis for which no response is required.

35.     Kite denies each and every allegation of Paragraph 35.

36.     Kite admits that Exhibit 18 appears to be Kite's Form 10-Q for the quarterly period ending on September 30, 2016.  Except as expressly admitted, Kite denies the allegations in Paragraph 36.

37.     The allegations of Paragraph 37 call for a legal conclusion and/or legal analysis for which no response is required here.  To the extent a response is required, Kite denies each and every allegation in Paragraph 37.

38.     The allegations of Paragraph 38 call for a legal conclusion and/or legal analysis for which no response is required here.  To the extent a response is required, Kite denies each and every allegation in Paragraph 38.

## COUNT 1

### (Alleged Infringement of the '190 Patent Under 35 U.S.C. § 271(a))

39.     Kite incorporates its responses to and denials of the allegations contained in Paragraphs 1 through 38 of the Second Amended Complaint, as if fully set forth herein.

40.     Kite denies the allegations in Paragraph 40 of the Second Amended Complaint.

41.     Kite denies the allegations in Paragraph 41 of the Second Amended Complaint.

42.     Kite denies the allegations in Paragraph 42 of the Second Amended Complaint.

43.     Kite denies the allegations in Paragraph 43 of the Second Amended Complaint.

44.     Kite denies the allegations in Paragraph 44 of the Second Amended Complaint.

45.     Kite denies the allegations in Paragraph 45 of the Second Amended Complaint.  Specifically, Kite denies that the contents of Exhibit 16 to the Second Amended Complaint demonstrate Kite's infringement of the '190 patent.

46.     Kite denies the allegations in Paragraph 46 of the Second Amended Complaint.

47.     Kite admits that it filed a petition for *inter partes* review against the '190 patent on August 13, 2015, that it had knowledge of the '190 patent at that time, and that a true and correct copy of its petition appears as Exhibit 2 to the Complaint.  Kite further admits that it received a copy of the Complaint.  Except as expressly admitted, Kite denies the allegations of Paragraph 47 of the Second Amended Complaint.

48.     Kite denies the allegations in Paragraph 48 of the Second Amended Complaint.

49.     Kite denies the allegations in Paragraph 49 of the Second Amended Complaint.

50.     Kite admits that it filed a petition for *inter partes* review against the '190 patent on August 13, 2015 and that it had knowledge of the '190 patent at that time.  Except as expressly admitted, Kite denies the allegations of Paragraph 50 of the Second Amended Complaint.

1

## **JURY TRIAL DEMANDED**

2      51.   Kite demands a trial by jury, pursuant to Rule 38(b) of the

3  Federal Rules of Civil Procedure, of all issues presented by the Second Amended

4  Complaint that are so triable.

5

## **PRAYER FOR RELIEF**

6      Kite denies that Plaintiffs are entitled to any relief whatsoever, either

7  legal or equitable, from Kite or this Court.  Further, Kite denies that this is an

8  exceptional case such that an award of attorneys' fees to Plaintiffs or an award of

9  enhanced damages to Plaintiffs is appropriate.

10

## **GENERAL DENIAL AND NON-WAIVER**

11      Each and every allegation in the Second Amended Complaint not

12  specifically admitted is denied, and the failure to deny a specific allegation, or assert

13  a specific defense, shall not be deemed to be an admission of an allegation or a

14  waiver of a defense.

15

## **AFFIRMATIVE DEFENSES**

16      Without assuming any burden of proof that it would not otherwise bear,

17  Kite asserts the following separate and additional defenses, all of which are pled in

18  the alternative, and none of which constitutes an admission that Kite is in any way

19  liable to Plaintiffs, that Plaintiffs have been or will be injured or damaged in any

20  way, or that Plaintiffs are entitled to any relief whatsoever.  Kite reserves the right to

21  assert additional defenses in the event that discovery and other analyses indicate that

22  additional defenses are appropriate.

23

## **FIRST AFFIRMATIVE DEFENSE**

24

### **(Non-Infringement based on Invalidity of the Certificate of Correction)**

25      1.   Kite has not infringed and does not infringe, directly or

26  indirectly, either literally or by application of the doctrine of equivalents, either

27  willfully or otherwise, any claim of the '190 patent, nor does Kite contribute to the

28

1   infringement of, or actively induce others to infringe, either literally or by
2   application of the doctrine of equivalents, any claim of the '190 patent.

3          2.     For example, Kite does not infringe any claim of the '190 patent
4   because every claim of the '190 patent requires, expressly or by incorporation, a
5   "costimulatory signaling region compris[ing] the amino acid sequence encoded by
6   SEQ ID NO:6."

7          3.     In 2013—more than four years after the '190 patent was
8   issued—the alleged inventors purported to modify the '190 patent specification's
9   definition of SEQ ID NO:6 by requesting that the U.S. Patent and Trademark Office
10  ("PTO") issue a certificate of correction to the '190 patent's specification.  In its
11  request, the alleged inventors admitted that the '190 patent's specification contained
12  a mistake and that the mistake was not the fault of the PTO.

13         4.     Under 35 U.S.C. § 255, which governs certificates of correction
14  for mistakes that were not the fault of the PTO, a certificate of correction cannot be
15  validly issued unless the mistake to be corrected is "of a clerical or typographical
16  nature, or of minor character."  The mistake corrected by the certificate of
17  correction, however, was not of a clerical or typographical nature and was not of
18  minor character.  Accordingly, the certificate of correction is invalid.

19         5.     Because the certificate of correction is invalid, the claims of the
20  '190 patent must be interpreted without the benefit of the certificate of correction.

21         6.     The accused product does not comprise a costimulatory signaling
22  region comprising the amino acid sequence encoded by SEQ ID NO:6, as defined in
23  the originally issued patent and without the benefit of the certificate of correction.

24         7.     Therefore, according to the claim limitations and the definition
25  of SEQ ID NO:6 in the originally issued patent, which is the operative definition,
26  Kite does not infringe any claim of the '190 patent.

27         8.     Further, to the extent that the complaint alleges that Kite made,
28  used, offered to sell, sold, or imported the accused product for uses reasonably

related to the development and submission of a Biologics License Application with the FDA, the claim of infringement is barred by 35 U.S.C. § 271(e)(1).

## SECOND AFFIRMATIVE DEFENSE

### (Invalidity)

9. The claims of the '190 patent are invalid, in whole or in part, for failing to meet one or more of the requirements for patentability under United States law, including, *inter alia*, 35 U.S.C. §§ 102 and 112.

10. The claims of the '190 patent are invalid under 35 U.S.C. § 102(f) because the patent does not name as an inventor each person who made a significant contribution to the conception of each claim of the patent. For example, on information and belief, Anja Krause made a significant contribution to the conception of at least claim 1 through her work developing a chimeric construct containing a costimulatory signaling region comprising the amino acid sequence encoded by SEQ ID NO:6 (as purportedly corrected by the certificate of correction), but is not named as an inventor of the '190 patent.

11. The claims of the '190 patent are invalid under 35 U.S.C. § 112, ¶ 1. For example, the '190 patent fails to provide a written description that conveys with reasonable clarity to those skilled in the art that, as of the filing date, the purported inventors of the '190 patent were in possession of the subject matter claimed therein. The claims of the '190 patent are also not enabled because the specification does not teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation.

## COUNTERCLAIMS

Counterclaimant Kite Pharma, Inc. ("Kite") hereby alleges against Counterdefendants Juno Therapeutics, Inc. and Sloan Kettering Institute for Cancer Research ("Counterdefendants") as follows:

**THE PARTIES**

1.  Kite was founded in 2009 as a biopharmaceutical company seeking to develop novel immunotherapy treatments for cancer.  In association with its strategic collaborators, including the National Cancer Institute ("NCI"), Kite has advanced an industry-leading pipeline of life-saving therapies for the treatment of hematological and solid cancers.  Using its small team of key innovators in the cutting-edge field of T cell therapy, Kite is one of the first companies to receive approval from the FDA to use a chimeric antigen receptor for the treatment of cancer.

2.  Kite is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 2400 Broadway, Santa Monica, CA 90404.

3.  Upon information and belief, Sloan Kettering Institute for Cancer Research ("Sloan Kettering") is a corporation organized and existing under the laws of the State of New York, with a principal place of business at 1275 York Avenue, New York, New York, 10065.  Upon information and belief, Sloan Kettering is the named assignee of U.S. Patent No. 7,446,190 (the "'190 patent").

4.  Upon information and belief, Juno Therapeutics, Inc. ("Juno") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 400 Dexter Avenue North, Suite 1200, Seattle, Washington 98109, and is a wholly owned subsidiary of Bristol-Myers Squibb Company.

**JURISDICTION AND VENUE**

5.  These counterclaims arise under the Declaratory Judgment Act and the patent laws of the United States of America, Titles 28 and 35 of the United States Code.

6.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

7.      This Court has personal jurisdiction over Juno, including because Juno has purposefully availed itself of the benefits and protections of this State, and has consented to jurisdiction in this State.

8.      This Court has personal jurisdiction over Sloan Kettering, including because Sloan Kettering has purposefully availed itself of the benefits and protections of this State, and has consented to jurisdiction in this State.

9.      Venue is proper based on the choice of forum by Counterdefendants.

10.      Counterdefendants have accused Kite of infringement of the '190 patent, which Kite denies.

11.      Counterdefendants' filing of their Complaint, including their allegations that Kite has infringed certain claims of the '190 patent, has created an actual and justiciable controversy between Kite and Counterdefendants with respect to noninfringement and invalidity of the '190 patent.

## **FACTUAL BACKGROUND**

12.      Kite is the owner of axicabtagene ciloleucel ("KTE-C19" or "YESCARTA®"), a revolutionary drug therapy for the treatment of various forms of cancer. YESCARTA® involves the engineering of a cancer patient's own T cells to produce a chimeric antigen receptor ("CAR-T"), which targets CD19, an antigen found on the surface of leukemias and B-cell lymphomas. A chimeric antigen receptor is an engineered protein that is introduced into a patient's own immune cells (T cells) allowing the cells to recognize a specific protein (antigen) on tumor cells and target and kill those cancer cells. CAR-T effectively repurposes the body's immune system to treat the specific form of cancer a patient presents.

13.      Kite's KTE-C19 therapy is the product of a long development process by its renowned team of researchers and collaborators.

14.      Unlike conventional cancer therapies, the field of CAR-T treatments represents a truly individualized form of treatment. This therapy

involves taking T cells out of a patient, engineering the cells to express the appropriate CAR, expanding the engineered cell population, and ultimately reintroducing the cells back into the patient's body, where they attack the target cancer.

### (a)   YESCARTA®: A Clinical Success

15.   In 2012, Kite entered into a Cooperative Research and Development Agreement ("CRADA") with NCI, with Dr. Steven A. Rosenberg as the Principal Investigator for the CRADA.  Exhibit A (2012 CRADA) at 24.  The principal goal of the CRADA was to "develop and clinically evaluate safe and effective NCI proprietary genetically modified peripheral blood Autologous T Cell Therapy (ACT)/T cell receptor (TCR) products for treating patients with various advanced and metastatic cancer indications, utilizing the development expertise of Kite Pharma, Inc." *Id.* at 23.

16.   By 2012, NCI-conducted trials evaluating early CARs had demonstrated significant, durable clinical responses in cancer patients with advanced (metastatic) cancers.  Exhibit B (October 16, 2012 GEN News Highlights).

17.   Through its collaboration with Dr. Rosenberg and NCI, Kite further developed its drug therapy, KTE-C19, now known as YESCARTA®. Kite successfully completed a KTE-C19 diffuse large B-cell lymphoma Phase 1 study with a rapid and durable response rate in patients who did not otherwise respond to chemotherapy.  Exhibit C (October 7, 2016, "Kite Pharma Presents 12-Month Follow-Up Data from ZUMA-1 Phase 1 at the European Society for Medical Oncology (ESMO) Annual Congress").

18.   Kite also reported further positive results on its ZUMA-1 trial of YESCARTA®, wherein 76% of patients with diffuse large B-cell lymphoma achieved the objective—*i.e.*, measurable—response, and 47% achieved complete remission. Exhibit D (December 6, 2016, "Kite Pharma Presents Results of Multi-

-14-

Center Pivotal ZUMA-1 Trial of Axicabtagene Ciloleucel (KTE-C19) in Aggressive Non-Hodgkin Lymphoma as Late-Breaking Abstract at Annual Meeting of American Society of Hematology").

19.     Following the successes of the ZUMA-1 trial, Kite prepared for and is conducting four additional clinical trials using the KTE-C19 therapy: ZUMA-2, a Phase II trial in patients with relapsed/refractory mantle cell lymphoma; ZUMA-3, a Phase I/II trial in patients with relapsed/refractory B-precursor acute lymphoblastic leukemia; ZUMA-4, a Phase I/II study in pediatric and adolescent patients with relapsed/refractory B-precursor acute lymphoblastic leukemia; and ZUMA-6, a Phase I/II study involving the combination of KTE-C19 and atezolizumab in patients with refractory diffuse large B-cell lymphoma conducted in collaboration with Genentech.

20.     Kite has planned or is running three additional clinical studies to evaluate the safety and efficacy of KTE-C19 in patients suffering from (1) indolent non-Hodgkin's lymphoma (ZUMA-5), (2) diffuse large B-cell lymphoma (ZUMA-7), and (3) chronic lymphocytic leukemia (ZUMA-8).

21.     Kite is also in the beginning stages of a European clinical program in order to pursue approval for the use of its breakthrough YESCARTA® therapy in the European Union ("EU").  All of these studies may be used to support current and future regulatory submissions.  Exhibit E (August 7, 2017, "Kite Announces Initiation of Axicabtagene Ciloleucel CAR-T Clinical Program in the European Union").

22.     On December 3, 2015, the FDA granted KTE-C19 "Breakthrough Therapy Designation" status for treatment of diffuse large B-cell lymphoma, transformed follicular lymphoma, and primary mediastinal B-cell lymphoma.  Such a designation is assigned to a drug if it is "intended alone or in combination with one or more other drugs to treat a serious or life threatening disease or condition" and "preliminary clinical evidence indicates that the drug may

demonstrate substantial improvement over existing therapies on one or more clinically significant endpoints, such as substantial treatment effects observed early in clinical development." Exhibit F (Fact Sheet: Breakthrough Therapies).

23.     On December 4, 2016, Kite announced that it had started to make rolling submissions to the FDA of required portions of a Biologics License Application ("BLA") for KTE-C19. Kite also received access to the European Medicines Agency's Priority Medicines regulatory initiative—which provides early and enhanced regulatory support to optimize regulatory applications and speed up the review of medicines that address a high unmet need—for KTE-C19 in the treatment of patients with refractory diffuse large B-cell lymphoma.

24.     Kite completed its BLA submission on March 31, 2017. Simultaneously, the President and Chief Executive Officer of the Leukemia & Lymphoma Society "applaud[ed] Kite for achieving this significant milestone and bringing this promising therapy closer to patients with lymphoma who desperately need new options." Exhibit G (March 31, 2017, "Kite Completes Submission of U.S. Biologics License Application (BLA) for Axicabtagene Ciloleucel as the First CAR-T Therapy for the Treatment of Patients With Aggressive Non- Hodgkin Lymphoma (NHL)").

25.     On August 28, 2017, Kite and Gilead Sciences, Inc. ("Gilead") announced that Gilead had entered into a definitive agreement pursuant to which Gilead would acquire Kite. The deal closed on October 3, 2017.

26.     On October 18, 2017, Kite received marketing approval from the FDA for its YESCARTA® product. Exhibit H (October 18, 2017, "FDA approves CAR-T cell therapy to treat adults with certain types of large B-cell lymphoma").

**(b)     Kite's CAR-T Collaborations**

27.     Kite's success with KTE-C19 has not gone unnoticed. Kite currently collaborates with several top biotechnology companies to further develop its CAR program. For instance, Kite has entered into a partnership with the

Leukemia & Lymphoma Society to enhance the development of KTE-C19 for the treatment of patients with refractory aggressive non-Hodgkin lymphoma.  Exhibit I (July 1, 2015 LLS Press Release).

28.     Kite has also agreed to collaborate with Genentech on a combination therapy involving Roche's atezolizumab and KTE-C19 for treatment of patients with non-Hodgkin lymphoma who have not otherwise responded to treatment.  Exhibit J (March 17, 2016, "Kite Pharma Announces Clinical Collaboration to Evaluate Two Novel Immunotherapies for Patients with Non-Hodgkin Lymphoma").

**(c)     Juno's CAR-T Failure**

29.     Juno's own CAR-T drug candidate JCAR015 has demonstrated serious clinical problems and will not be commercially marketed.

30.     The '190 patent is entitled "Nucleic Acids Encoding Chimeric T Cell Receptors."  Dkt. 484-1, Second Amended Compl. Ex. 1.

31.     Juno entered into a purported license agreement in 2013 with MSKCC, which had no rights to the '190 patent at the time.

32.     Upon information and belief, MSKCC was the site of Juno's clinical trials for JCAR015.

33.     Juno's phase II clinical trial (the "ROCKET" trial) on JCAR015 was put on clinical hold on July 7, 2016 after "[t]hree patients [] died" "from cerebral edema," a condition in which excess fluids flood the brain.  Exhibit K (July 7, 2016, "Juno Therapeutics Stops Trial Of Cancer-Killing Cells After 3 Patient Deaths").

34.     After Juno was permitted to resume its clinical trial involving JCAR015, Juno reported that another two patients participating in Juno's trial had died, again due to cerebral edema.  Exhibit L (Ben Adams, "Juno CAR-T Study Put on Hold, Again, After Cerebral Edemas and Fatality, Again" (November 23, 2016)).

35.     Juno's JCAR015 trial was put on hold and remains on hold to date.  Juno's Executive Vice President of Portfolio Strategy has admitted that "the rapid proliferation of CAR-T cells, once they've been injected back into the body, seems to be directly correlated with patients developing cerebral edema."  Exhibit M (November 23, 2016, "Two Patient Deaths Halt Trial of Juno's New Approach to Treating Cancer").

36.     Upon information and belief, following these deaths, Juno suspended development work on the JCAR015 therapy indefinitely and announced it would pursue its alternative JCAR017 therapy.

37.     Juno's JCAR017 therapy uses a different amino acid sequence from the CAR sequence in JCAR015 and is not an embodiment described in the '190 patent.

**(d)     The '190 Patent**

38.     Every claim of the '190 patent requires, expressly or by incorporation, a "costimulatory signaling region compris[ing] the amino acid sequence encoded by SEQ ID NO:6."

39.     The claims of the '190 patent are invalid under 35 U.S.C. § 102(f) because the patent does not name as an inventor each person who made a significant contribution to the conception of each claim of the patent.  For example, on information and belief, Anja Krause made a significant contribution to the conception of at least claim 1 through her work developing a chimeric construct containing a costimulatory signaling region comprising the amino acid sequence encoded by SEQ ID NO:6 (as purportedly corrected by the certificate of correction), but is not named as an inventor of the '190 patent.

40.     The claims of the '190 patent are invalid under 35 U.S.C. § 112, ¶ 1.  For example, the '190 patent fails to provide a written description that conveys with reasonable clarity to those skilled in the art that, as of the filing date, the purported inventors of the '190 patent were in possession of the subject matter

claimed therein.  The claims of the '190 patent are also not enabled because the specification does not teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation.

41.     Furthermore, in 2013—more than four years after the '190 patent was issued—the alleged inventors purported to modify the '190 patent specification's definition of SEQ ID NO:6 by requesting that the U.S. Patent and Trademark Office ("PTO") issue a certificate of correction to the '190 patent's specification.  In its request, the alleged inventors admitted that '190 patent's specification contained a mistake and that the mistake was not the fault of the PTO.

42.     Under 35 U.S.C. § 255, which governs certificates of correction for mistakes that were not the fault of the PTO, a certificate of correction cannot be validly issued unless the mistake to be corrected is "of a clerical or typographical nature, or of minor character."  The mistake corrected by the certificate of correction, however, was not of a clerical or typographical nature and was not of minor character.  Accordingly, the certificate of correction is invalid.

43.     Because the certificate of correction is invalid, the claims of the '190 patent must be interpreted without the benefit of the certificate of correction. The accused product does not comprise a costimulatory signaling region comprising the amino acid sequence encoded by SEQ ID NO:6, as defined in the originally issued patent.

44.     Therefore, Kite has not infringed and does not infringe any claim of the '190 patent.

## FIRST COUNTERCLAIM

### (Declaratory Judgment of Invalidity of the '190 Patent)

45.     Kite repeats and realleges Paragraphs 1-44 as if set forth specifically herein.

46.     There is an actual, live controversy between Kite and Counterdefendants as to whether the claims of the '190 patent are invalid.

1 Specifically, Kite contends that the claims of the '190 patent are invalid, whereas

2 Counterdefendants contend that the claims are not invalid.

3        47.    The claims of the '190 patent are invalid for failure to comply

4 with one or more of the conditions for patentability specified in 35 U.S.C. §§ 102

5 and 112.

6        48.    Kite hereby seeks a declaration that the claims of the '190 patent

7 are invalid.

8 **SECOND COUNTERCLAIM**

9 **(Declaratory Judgment of Noninfringement of the '190 Patent)**

10        49.    Kite repeats and realleges Paragraphs 1-48 as if set forth

11 specifically herein.

12        50.    There is an actual, live controversy between Kite and

13 Counterdefendants as to whether Kite has infringed or does infringe, directly or

14 indirectly, any valid claim of the '190 patent.  Specifically, Kite contends that the

15 claims of the '190 patent are not infringed, whereas Counterdefendants contend that

16 the claims are infringed.

17        51.    The use, manufacture, sale, offer for sale, and/or importation into

18 the United States of YESCARTA® by Kite does not directly or indirectly, literally

19 or by equivalents, willfully or otherwise, infringe any claim of the '190 patent.

20        52.    Kite hereby seeks a declaration that it has not infringed and does

21 not directly or indirectly infringe any valid claim of the '190 patent.

22 **PRAYER FOR RELIEF**

23      WHEREFORE, Kite respectfully prays for relief as follows:

24      A.    That the Court enter judgment in favor of Kite and against

25 Plaintiffs on the claim alleged in the Second Amended Complaint;

26      B.    That Plaintiffs' claim be dismissed in its entirety with prejudice;

27      C.    That Plaintiffs take nothing by way of their claim;

28

1      D.      That the Court enter a declaratory judgment that that the '190

2   patent, and each claim therein, is invalid;

3      E.      That the Court enter a declaratory judgment that the use,

4   manufacture, sale, offer for sale, and/or importation into the United States of

5   YESCARTA® by Kite do not infringe, directly or indirectly, literally or under the

6   doctrine of equivalents, any valid claim of the '190 patent;

7      F.      That Kite be awarded its costs and attorneys' fees under 35

8   U.S.C. § 285; and

9      G.      That Kite be awarded such other relief as the Court deems just

10  and proper.

**JURY DEMAND**

Kite demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues presented by Kite's Counterclaims that are so triable.

DATED:  December 18, 2019          MUNGER, TOLLES & OLSON LLP


By:  _____/s/ Adam Lawton_____

ADAM R. LAWTON

Attorneys for Defendant-Counterclaimant
KITE PHARMA, INC.