JEFFREY I. WEINBERGER (State Bar No. 56214)
jeffrey.weinberger@mto.com
TED DANE (State Bar No. 143195)
ted.dane@mto.com
GARTH T. VINCENT (State Bar No. 146574)
garth.vincent@mto.com
BLANCA F. YOUNG (State Bar No. 217533)
blanca.young@mto.com
PETER E. GRATZINGER (State Bar No. 228764)
peter.gratzinger@mto.com
ADAM R. LAWTON (State Bar No. 252546)
adam.lawton@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

GEOFFREY D. BIEGLER (State Bar No. 290040)
biegler@fr.com
GRANT T. RICE (admitted *pro hac vice*)
rice@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Attorneys for Defendant-Counterclaimant
KITE PHARMA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JUNO THERAPEUTICS, INC., SLOAN KETTERING INSTITUTE FOR CANCER RESEARCH,<br><br>Plaintiffs,<br><br>vs.<br><br>KITE PHARMA, INC.,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 2:17-cv-7639-SJO-KS<br><br>**DEFENDANT KITE PHARMA, INC.'S OBJECTIONS TO PLAINTIFFS' END RUN AROUND THE COURT'S DAMAGES-RELATED *DAUBERT* ORDER, INCLUDING EXHIBITS AND TESTIMONY OF EDWARD DULAC**<br><br>Judge: Hon. S. James Otero<br>Trial: December 5, 2019<br>Time: 8:30 am<br>Ctrm: 10C<br><br>**PUBLIC REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED CONDITIONALLY UNDER SEAL** |

## I. INTRODUCTION

Plaintiffs are attempting an end run around the Court's December 3, 2019 Order addressing damages, and, *yet again, seeking to introduce new damages theories*, now in the midst of trial. Now that the Court has excluded Dr. Ryan Sullivan's proposed $900+ million upfront payment that was based on a stock swap, Plaintiffs are cobbling together a damages case that violates the Court's Order, contradicts its own expert's disclosed opinions, is improper under patent damages law, and intentionally invites error.

Through Plaintiffs' latest trial disclosures, and a meet-and-confer around 10 pm last night (see below and Ling Decl. ¶¶ 5, 6), it appears that Plaintiffs are now going to rely on a *fact witness*, Edward Dulac *(disclosed to testify today, December 5)* to introduce an upfront payment in the hundreds of millions of dollars (*e.g.*, ███ ███), without expert testimony to explain those numbers. They intend to introduce this evidence through Mr. Dulac and at least (1) a 2015 AstraZeneca-Celgene Collaboration and License Agreement ("Celgene Agreement") (Ex. 1 (PX0646)) that Dr. Sullivan himself stated that this license is *not* appropriate for determining royalty rated, including upfront payment (ECF No. 311-1 (Sullivan Rep.) ¶¶ 189–90); and (2) a January 2018 Celgene modeling worksheet ("Celgene Javeline Workbook") that Dr. Sullivan used only for calculations that the Court has *excluded as irrelevant and confusing* (ECF No. 311-1 (Sullivan Rep.) ¶¶ 266–83). They then seem to intend for Dr. Sullivan to opine that an upfront payment (amount unspecified) would be appropriate for the hypothetical negotiation. This approach is clearly designed to invite the jury to put the two together to consider awarding damages with a large upfront payment that has no expert support. This improper approach would be highly misleading, cause juror confusion, and unfairly prejudice Kite.

The Court should preclude Plaintiffs from offering Mr. Dulac, or any fact witness, to testify regarding projected or actual licensing figures that neither expert

has relied upon from licenses that are sufficiently comparable to the hypothetical negotiation. It should also prevent Plaintiffs from showing the jurors such figures—including those in PX0646 and PX0693—that are not from comparable licenses.

## II. ARGUMENT

### A. Plaintiffs' Latest Change in Damages Theory Relies on Irrelevant Documents, and Is Untimely and Unduly Prejudicial.

Plaintiffs are continuing their pattern of unfairly shifting the sands on their damages theory, in an attempt to recapture the high damages figure that Dr. Sullivan proposed and that the Court largely excluded in its December 3, 2019 Order. This litigation strategy has already been rejected by the Court but, unfortunately, has arisen again in this matter. *See* ECF No. 435 (listing five instances between November 12 and November 30, 2019, of Plaintiffs changing positions on issues related to damages); 12/3/19 Order (rejecting all of those changes in position).

Plaintiffs' disclosures in the last few days, up through around 10 pm last night, lead Kite to conclude that Plaintiffs are changing their damages case in reaction to the Court's *Daubert* ruling in a way that violates the Court's Order and that will invite clear error if the jury were permitted to consider it. The following events lead Kite to this unfortunate conclusion.

**November 26:** At the pretrial conference, the Court made comments regarding concerns with Dr. Sullivan's opinions that were the subject of Kite's motion *in limine* (No. 1).

**November 30:** Plaintiffs disclosed to Kite that Mr. Dulac, who was previously on their "may call" list of trial witnesses, would be a "will call" witness. *See* Ex. 4.

**December 3 at 7 pm:** Plaintiffs disclosed that they may use two trial exhibits with Mr. Dulac for his direct examination: **PX0646** (Celgene Agreement, JUNO016812344); and **PX0693** (Celgene Javelin Workbook, JUNO016590746).

*See* Ling Decl. ¶ 5. Plaintiffs did not disclose PX0646 with Dr. Sullivan's trial exhibits for his direct examination.

**December 4 at 8 am:** Kite immediate disclosed its objections to PX0646 and PX0693.

**December 4 at 6 pm:** Plaintiffs disclosed their proposed demonstratives to use for Dr. Sullivan's direct examination. *See* Ex. 6; Ling Decl. ¶ 6. There is no indication in these slides of any upfront payment number that Dr. Sullivan will offer. However, there is a single slide that states "Agreed License Structure: (1) Upfront payment (2) Running royalty rate" (slide 22).

**December 4 at 6:22 pm:** Counsel for Plaintiffs disclosed Mr. Dulac as a witness Plaintiffs intend to call for direct examination on December 5, despite failing to identify Mr. Dulac in the witness order presented to the Court at the end of the December 4 trial day. Counsel for Plaintiffs subsequently identified Mr. Dulac as their third witness of the day.

**December 4 at 10 pm:** Counsel for the parties held a meet-and-confer to discuss, among other things, objections to Plaintiff's proposed demonstratives for Dr. Sullivan. As the proposed demonstratives seemed to indicate that, in view of the Court's December 3 Order, Dr. Sullivan would no longer be offering any upfront payment figure to the jury, counsel for Kite objected to the reference on slide 22 to an "Upfront payment." Such reference would have be irrelevant, misleading, confusing, and unfairly prejudicial. Kite's counsel requested that Plaintiffs remove the phrase "Upfront payment." Opposing counsel declined to do so and implied that Dr. Sullivan would still opine that an upfront payment would be appropriate. When pressed to disclose what upfront payment *amount* Dr. Sullivan would proffer, though, opposing counsel repeatedly declined to specify. Ling Decl. ¶ 6.

At this point it has become evident that, given Dr. Sullivan has been precluded from opining on an upfront payment large enough to satisfy Plaintiffs, they intend to put similarly large numbers in front of the jury through trial exhibits,

including PX0646 and PX0693, and fact witness testimony. Plaintiffs would likely show the jury that the Celgene Agreement has ███████████████████ ████. Ex. 1 at PX0646.81 §§ 6.1, 6.2.

Such numbers have never been disclosed as coming from sufficiently comparable contexts to provide any support whatsoever to Plaintiffs' damages figures. They are wholly irrelevant to any legitimate damages issues, and their introduction would be highly prejudicial to Kite, who has been sandbagged with the new theory.

Indeed, Kite still remains in the dark as to how exactly Plaintiffs plan to use PX0646, PX0693, and Mr. Dulac's testimony at trial. Kite has already been forced to dedicate substantial resources to turning away Plaintiffs' prior iterations of new damages theory leading up to the eve of trial. Trial is now underway. Instead of focusing on ongoing trial preparation, Kite is again forced to request relief from the Court that should not have arisen in the first place.

But apart from the prejudice that Plaintiffs' new damage theory presents to Kite at trial, it also circumvents the Court's Order, is improper under the law, and invites confusion and error.

### B. Plaintiffs Seek to Circumvent the Court's December 3, 2019 Order Regarding Damages.

The Court's Order excluding Dr. Sullivan's opinions provided Plaintiffs an opportunity to "identify a different disclosed initial amount in Dr. Sullivan's report," in which case "the alternative amount may be introduced with Dr. Sullivan's enhancement factors." Order at 9 (emphasis added). This was a narrow opportunity, limited to a disclosed alternative *amount*, which Plaintiffs have yet to point to for an admissible proposed upfront payment. They cannot circumvent the Court's Order by doing an end run around with fact witness testimony and cherry-picked documents to supply the alternative amount that should have been identified

in Dr. Sullivan's report. Plaintiffs have yet to disclose as supportable upfront payment that would comply with the Court's Order.

### C. Plaintiffs' New Damages Approach Violates Legal Principles of Patent Damages.

Plaintiffs cannot rely on licensing figures that do not come from comparable licenses. As the Federal Circuit has held, "in attempting to establish a reasonable royalty, the 'licenses relied on by the patentee in proving damages [must be] sufficiently comparable to the hypothetical license at issue in suit.'" *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014) (alteration in original) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009)). Here, not only is there no evidence of comparability, Dr. Sullivan has considered and ***expressly rejected*** the comparability of the Celgene Agreement. Plaintiffs have never before relied on that Agreement, the Celgene Javelin Workbook, or Mr. Dulac's testimony to support damages figures in this case.

Mr. Dulac was Celgene's Rule 30(b)(6) witness on topics regarding "[t]he terms, negotiation of, and business rationale for any in-license or out-license of intellectual property relating to CAR-T technology or any other technology [allegedly] comparable to the '190 patent." Ex. 3 (Dulac Dep.) at 277:24–278:9. When asked if he was aware of any such license, he responded that he was not. *Id.* at 278:8–280:4 (answering "[s]ince the acquisition, I'm not aware of licensing any comparable technology" and, upon follow-up, "I wouldn't add anything in addition to the response"). He never testified regarding the Celgene Agreement or the Celgene Javelin Workbook. He cannot do so for the first time at trial, less do so in the ***10 minutes*** that Plaintiffs have allotted for his direct examination. ECF No. 475 at 4.

Dr. Sullivan also did not rely on these figures as comparable terms. He briefly summarized the terms of the Celgene Agreement among a summary of dozens of other produced licenses in Attachment B-1 to his report. *See* ECF No.

-5-
KITE'S EMERGENCY OBJECTIONS TO PLAINTIFFS' END RUN AROUND DAMAGES ORDER

311-1 at Attach. B-1 ¶ 137–38. However, he did not perform any expert analysis of the agreement to support his reasonable royalties. In fact, he expressly rejected the idea that the Celgene Agreement was a comparable agreement, saying **"[n]one of the agreements produced in this case** contain directly analogous economic conditions as those present at the hypothetical negotiation." *Id.* ¶ 189 (emphasis added). He even said that "any agreement produced in this case that is used to estimate reasonable royalties would require significant adjustments to account for the economic conditions present at the hypothetical negotiation," and offered no such adjustment with respect to the Celgene Agreement. *Id.* ¶ 190. And as to the Celgene Javelin Workbook, Dr. Sullivan has offered no admissible opinions.[1] Similarly, Kite's expert Dr. Rao has not opined that the Celgene Agreement would be a comparable license and did not rely on the Celgene Javelin Workbook for his opinions on a reasonable royalty.

Accordingly, Plaintiffs new damages theory attempts to circumvent established case law barring the use of non-comparable licensing terms to establish a reasonable royalty.

### D. The Court Should Not Allow Plaintiffs' End Run Around Its Damages-Related Order to Mislead and Confuse the Jury.

Finally, the jury will have no compass to navigate these large, misleading numbers. That is exactly what Plaintiffs hope will lead them to consider awarding a high damages number, perhaps even approaching Dr. Sullivan's initially proposed reasonable royalty of well over $1 billion. The Court should not allow such misleading and confusion evidence. The Federal Circuit has held that a "damages award cannot stand solely on evidence which amounts to little more than a recitation of royalty numbers, one of which is arguably in the ballpark of the jury's award, particularly when it is doubtful that the technology of those license agreements is in

---

[1] His only reliance on the Workbook was to calculate loss in company value, which the Court excluded in its December 3 Order. *See* ECF No. 311-1 ¶¶ 266–83.

any way similar to the technology being litigated here." *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329 (Fed. Cir. 2009). Plaintiffs' new approach is thus not only unduly prejudicial but also would be the basis for clear error.

The jury will hear about **10 minutes** of direct examination testimony from Mr. Dulac about misleading and highly prejudicial real or actual licensing figures that the experts do not dispute are irrelevant. There simply is not enough time to cross-examine Mr. Dulac for the first time on these new areas of his testimony. Jurors should not be left to their own devices as to how to interpret the figures Plaintiffs are trying to introduce through Mr. Dulac, which is what would happen as Dr. Sullivan has no admissible testimony to support those figures.

### III. CONCLUSION

For the foregoing reasons, Kite respectfully requests that Plaintiffs should not be permitted to offer at trial the testimony of Mr. Dulac regarding actual or projected licensing figures that are not from comparable licenses, or use PX0646, PX0693, or document reflecting such licensing figures.

DATED: December 5, 2019      MUNGER, TOLLES & OLSON LLP

By:  /s/ *Ted Dane*
Ted Dane
Attorneys for Defendant-Counterclaimant
KITE PHARMA, INC.