1  JEFFREY I. WEINBERGER (State Bar No. 56214)
   jeffrey.weinberger@mto.com
2  TED DANE (State Bar No. 143195)
   ted.dane@mto.com
3  GARTH T. VINCENT (State Bar No. 146574)
   garth.vincent@mto.com
4  BLANCA F. YOUNG (State Bar No. 217533)
   blanca.young@mto.com
5  PETER E. GRATZINGER (State Bar No. 228764)
   peter.gratzinger@mto.com
6  ADAM R. LAWTON (State Bar No. 252546)
   adam.lawton@mto.com
7  MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue, 50th Floor
8  Los Angeles, California 90071-3426
   Telephone:  (213) 683-9100
9  Facsimile:   (213) 687-3702

10 GEOFFREY D. BIEGLER (State Bar No. 290040)
   biegler@fr.com
11 GRANT T. RICE (admitted *pro hac vice*)
   rice@fr.com
12 FISH & RICHARDSON P.C.
   12390 El Camino Real
13 San Diego, CA 92130
   Telephone:  (858) 678-5070
14 Facsimile:   (858) 678-5099

15 Attorneys for Defendant-Counterclaimant
   KITE PHARMA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JUNO THERAPEUTICS, INC., SLOAN KETTERING INSTITUTE FOR CANCER RESEARCH,<br><br>Plaintiffs,<br><br>vs.<br><br>KITE PHARMA, INC.,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 2:17-cv-7639-SJO-KS<br><br>**DEFENDANT KITE PHARMA, INC.'S BENCH BRIEF REGARDING REFERENCE TO THE COURT'S CLAIM CONSTRUCTION DECISION**<br><br>Judge: Hon. S. James Otero<br>Ctrm:  10C<br><br>**FILED PUBLICLY PURSUANT TO COURT ORDER DATED JANUARY 2, 2020 (ECF NO. 629)** |

## I.    INTRODUCTION

At the November 26, 2019 pretrial conference, Plaintiffs' counsel asked the Court to prevent Kite from referring to the Court's claim construction order in front of the jury. Plaintiffs' request is a tactical attempt to insulate their expert Dr. John Quackenbush from cross-examination when he testifies contrary to the Court's claim construction order.  At least three other courts when faced with this situation have not allowed parties to flout its ruling in this way.  Nor should this Court.

The Court's construction is "law of the case for purposes of the trial." *Anderson Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1371 n.2 (Fed. Cir. 2007). As Judge Pfaelzer held, expert testimony that purportedly applies a claim construction cannot "undermine[]" or "contradict[]" the Court's "expressed reasoning that lead to those constructions." *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 2007 WL 8081360, at *12 (C.D. Cal. Jan. 22, 2007). To the extent an expert deviates from the Court's constructions or underlying findings, the jury is entitled to hear about that fact. Otherwise, a party can simply ask the jury to reach different findings on issues that have already been resolved.

Accordingly, if Dr. Quackenbush testifies in a manner inconsistent with the Court's claim construction or underlying findings, Kite should be permitted to cross-examine him using the Court's order to impeach his credibility and challenge his opinions as already rejected by the Court.  This is the procedure that other courts have followed when faced with this situation. *See Transamerica Life Ins. v. Lincoln Nat'l Life Ins.*, 597 F. Supp. 2d 897, 912–14 (N.D. Iowa 2009) (allowing cross-examination with the court's constructions and "commentary" in support of those construction "to demonstrate the extent to which the party's proffered arguments or constructions differ from the court's constructions"); *cf. Corning, Inc. v. SRU Biosystems*, 2005 WL 2465900, at *2 (D. Del. Oct. 5, 2005) (allowing "ample opportunity at trial" for counsel in bench trial to cross-examine expert "to the extent that [his opinions] departed from the Court's claim construction").

## II. ARGUMENT

### A. Dr. Quackenbush Improperly Contradicts the Court's Claim Construction Findings.

Dr. Quackenbush is Plaintiffs' expert on the purported validity of the CoC, which involves a question of whether the '190 Patent, as issued, contained a clearly evident error. *See* ECF No. 246 at 7. He replaced Dr. Thomas Brocker, who, at the claim construction stage, expressed many of the same opinions as those offered by Dr. Quackenbush, which the Court rejected.

While the Court has held that there remains a factual dispute for trial regarding whether there was clearly evident error, Dr. Quackenbush's testimony must *accept* the Court's holding that a POSITA would have understood the sequence listing for SEQ ID NO:6 without the CoC to correspond to amino acids **113**–220 of CD28. *See* ECF No. 100 at 17. He cannot revisit how a POSITA would have understood the sequence listing absent the CoC, or reassert the Plaintiffs' proposed interpretation, under the guise of explaining why there was a clearly evident error in the patent.

While Dr. Quackenbush in his report purported to adopt the Court's construction, his deposition made clear that he is not actually doing so. When asked the scope of the patent claims prior to the CoC—the precise issue the Court resolved at claim construction —he repeatedly contradicted the Court's construction. *See, e.g.*, Ex. 1 (Quackenbush Dep.) at 138:8–139:17 ("[L]ook[ing] at the patent itself," one "would rapidly come to the conclusion that the sequence [in the claims] encompasses amino acids 114 to 220."); *id.* at 146:22–147:19 ("If you take all the intrinsic evidence together in the patent, and the prosecution history, it points to nucleic acids 340 to 660 or amino acids 114 to 220."); *id.* at 175:21–176:24 ("If you look at what they are claiming in this patent and the embodiments they describe, it's

obvious it's got to be nucleic acids 340 to 660, amino acids 114 to 220.").[1] Making such arguments "contrary to the court's claim constructions . . . trespass[es] on the court's exclusive authority" to interpret claim terms. *Transamerica*, 597 F. Supp. 2d at 910 (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996)).

Even if Dr. Quackenbush does not overtly propose Plaintiffs' rejected construction at trial, his deposition makes abundantly clear that he intends to straddle a "'gray area' between permissible and impermissible claim constructions," wherein his opinions are "objectionable" for deviating from or mischaracterizing the Court's claim construction order. *Id.* at 913. Here, the Court made several express findings in reaching its construction of the sequence listing for SEQ ID NO:6. For instance, it rejected Plaintiffs' arguments that a POSITA would understand from "other less direct clues" in the intrinsic evidence that the as-issued sequence listing referred to amino acids **114**–220 of CD28. ECF No. 100 at 10. The Court also rejected Plaintiffs' "divisible by three" and "primer" arguments regarding supposed ambiguities in the patent that should have led a POSITA to Plaintiffs' proposed construction. *Id.* at 13–14, 17 ("[W]hen SEQ ID NO:6 is proper[ly] framed, it encodes an amino acid sequence corresponding to 'amino acids 113–220 of CD28 . . . .'"); *id.* at 10 ("[T]he claim term expressly points a reader—not to other potential means of defining the sequence—but directly to the sequence listing itself. The claim term is not, for instance, 'the amino acid sequence encoded by the nucleotide sequence defined by primers SEQ ID NO:4 and SEQ ID NO:5.'"). Ultimately, the Court held that "nothing in the intrinsic record" was "sufficient to overcome th[e] express definition" provided in the patent. *Id.* at 17.

---

[1] Apparently forgetting that the Court had already issued its claim construction ruling, Dr. Quackenbush went as far as to suggest that he was offering opinions to "help inform the court's decision" on its already-issued construction. Ex. 1 (Quackenbush Dep.) at 219:7–220:12; *see also id.* at 181:17–182:4 (same).

As the Court's construction was "based on" its findings, those express findings are also law of the case. ECF No. 246 at 7; *see also Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837–38 (2015) (recognizing that "courts may have to resolve subsidiary factual disputes" as part of claim construction). Dr. Quackenbush's opinions contradict the Court's express claim construction findings on several issues:

| Dr. Quackenbush's Opinion | Claim Construction Order |
|---|---|
| Of the "six possible amino acid[]" sequences corresponding to the as-issued sequence listing for SEQ ID NO:6, "none of those given the nucleic acid sequence would represent what's actually described in the specifications [sic] in the invention." Ex. 1 (Quackenbush Dep.) at 178:2–180:23. | "[A] POSITA would have ***easily been able to determine*** the correct amino acid sequence by applying the correct 'reading frame.'" ECF No. 100 at 13 (emphasis added).<br><br>"[T]he patent is claiming nucleotides 336–660 of CD28, a sequence that, ***correctly framed***, would result in a leading lysine, consistent with Defendant's proposed construction." *Id.* at 13–14 (emphasis added).<br><br>"[The Court] . . . finds that, ***when SEQ ID NO:6 is proper[ly] framed***, it encodes an amino acid sequence corresponding to 'amino acids 113–220 of CD28 (starting with lysine (K)).'" *Id.* at 17 (emphasis added). |
| The primers corresponding to SEQ ID NO:4 and SEQ ID NO:5 "unambiguously" or "precisely" define the as-issued sequence listing as the nucleotides corresponding to amino acids **113**–220 of CD28. Ex. 1 (Quackenbush Dep.) at 146:9–20; *id.* at 177:5–20.<br><br>"A POSITA would have understood that . . . using the identified primers to amplify a region of human CD28 would have resulted | "[T]he sequence listing provides . . . an explicit definition . . . because the claim term ***expressly points a reader***—not to other potential means of defining the sequence—but ***directly to the sequence listing itself***. The claim term is not, for instance, 'the amino acid sequence encoded by the nucleotide sequence defined by primers SEQ ID NO:4 and SEQ ID |

-4-
KITE'S BENCH BRIEF RE REFERENCE TO THE COURT'S CLAIM CONSTRUCTION ORDER

| | |
|---|---|
| in the nucleotide sequence . . . encoding amino acids 114-220." Ex. 2 (Quackenbush Rep.) ¶ 20. | NO:5.'" ECF No. 100 at 10. |

### B. Kite Should Be Allowed to Cross-Examine Dr. Quackenbush on Opinions that Deviate from the Court's Claim Construction Order.

To prevent Dr. Quackenbush from misleading or confusing the jury by paying lip service to applying the Court's construction yet, as shown in the comparisons above, clearly ignoring and contradicting the Court's underlying findings, Kite must in fairness be allowed to cross-examine him based on the Court's findings. Dr. Quackenbush's opinions do not present a mere disagreement about the interpretation or application of the Court's construction. They present a more fundamental "problem," as they so differ from the Court's order as to effectively "relitigate before the jury" the Court's construction. *Transamerica*, 597 F. Supp. 2d at 910, 913; *Corning*, 2005 WL 2465900, at *1–2 (contrasting an expert's application of a court's construction, which may be permissible, to deviations from the court's construction).

This Court should follow Judge Pfaelzer's guidance in *ICU Medical* that expert testimony inconsistent with the Court's claim construction order is improper. 2007 WL 8081360, at *12. Just because Dr. Quackenbush is offering opinions on a factual dispute does not give him license to contradict "the ***language or reasoning*** behind a court's claim construction order." *Id.* (emphasis added). Doing so would displace the Court's "judgment and findings . . . on a previously decided question of law." *Id.* In *ICU Medical*, the court was able to "discount[]" expert opinions on summary judgment that could not be reconciled with its claim construction order. Here, the only safeguard before a jury would be cross-examination. *Id.* at *13.

Indeed, in *Transamerica*—a decision on all fours with the situation at hand— the Court allowed reference to its claim construction order to cross-examine any

difference between expert opinions and the Court's order. 597 F. Supp. 2d at 914. There, the court recognized a party's legitimate concerns that an expert might depart from the court's constructions without directly offering a contrary construction, and warned that "attempts to push a proffered construction into the 'gray area'" between permissible and impermissible testimony would "not be tolerated." *Id.* at 913. It correctly held that the party against whom the opinion was offered was entitled to demonstrate differences between the expert's arguments and the court's construction, as such differences "go[] to the weight to be given to" the evidence. *Id.* at 914.

      Plaintiffs may argue that the court's claim construction analysis is for the parties and need not be included in the jury instructions. *See MercExchange, LLC v. eBay, Inc.*, 401 F.3d 1323, 1329 (Fed. Cir. 2005), *vacated on other grounds*, 547 U.S. 388 (2006). However, the Court cannot abdicate its duty to "take steps to assure that . . . [its] claim construction, determined as a matter of law, is adopted and applied by the jury in its deliberation of the facts." *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004). Without the ability to point out to the jury when Dr. Quackenbush deviates from the Court's construction, there is a high risk that the jury will incorrectly apply the Court's construction. They may be misled to think, for example, that there is some basis to find that the amino acid sequence for SEQ ID NO:6 remained the same throughout and was merely clarified by the CoC. Given that Dr. Quackenbush has already offered opinions entirely *inconsistent* with the Court's construction, the Court should ensure that Kite has a full and fair opportunity to cross-examine him. And "[l]ogically, cross-examination about the extent to which an operating party's or offering expert's opinions depart from the court's claim constructions ***might entail demonstrating that the court has implicitly rejected the proffered construction in its 'commentary' to its claim constructions***, as well as comparison of the proffered construction to the court's claim construction itself." *Transamerica*, 597 F. Supp. 2d at 914 (emphasis added)).

Use of the Court's order for purposes of cross-examination is highly relevant and admissible, and it also comports with Federal Rule of Evidence 403. *Transamerica*, 597 F. Supp. 2d at 914–15. There will be no risk of confusion about what construction is controlling, as the Court's express findings in its claim construction order are law of the case and "necessarily . . . ***consistent with***, not ***contrary to***, [its] claim construction[]." *Id.* at 914 (emphasis added). In addition, for the Court's claim construction findings "to have any value in cross-examination," they "must necessarily be attributed to the ***court's*** claim construction ruling." *Id.* at 915 (emphasis in original). Accordingly, any prejudice from attribution of the order to the Court is not unfair but, rather, entirely invited by the testimony that Plaintiffs decide to elicit from Dr. Quackenbush at trial.

The Court should not allow Plaintiffs to thumb their nose at the Court's claim construction by introducing an expert who can disregard the Court's findings with complete impunity. Doing so would essentially eviscerate the Court's prior ruling and invite clear error in the jury's required application of the Court's construction.

**III.   CONCLUSION**

Kite respectfully requests an evidentiary ruling allowing it to cross-examine Dr. Quackenbush using the Court's claim construction order.

DATED: December 6, 2019           MUNGER, TOLLES & OLSON LLP

                                  By: ___/s/ *Ted Dane*___
                                        Ted Dane
                                        Attorneys for Defendant-Counterclaimant
                                        KITE PHARMA, INC.